IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Jessica Hogan, *On behalf of herself and those similarly situated*, | Case No. 2:15-cv-2883 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Cleveland Ave Restaurant, Inc. (d/b/a Sirens), Francis Sharrak, Michael Sharrak, Chad Sullivan, Dominick Alkammo, | |
| Defendants. | Jury Demand Endorsed Hereon |

CLASS AND COLLECTIVE ACTION COMPLAINT

**I.    Case Overview and Preliminary Statement**

1. Defendant Cleveland Ave Restaurant, Inc. (d/b/a Sirens), an adult entertainment club in Columbus, Ohio, employed Plaintiff Jessica Hogan as a bartender and exotic dancer, paid her less than minimum wage and even charged her various fees to work at the club.

2. Sirens' unlawful pay practices include charging Ms. Hogan fees when she performed exotic dances for customers, charging Ms. Hogan 10% on all customer tips left for Ms. Hogan on a credit card, and requiring Ms. Hogan to tip out various non-tipped employees including disc jockeys and security personnel. Sirens applied its unlawful pay policies to all employees that performed duties similar to those performed by Ms. Hogan.

3. Ms. Hogan, on behalf of herself and all similarly-situated individuals, brings this action against Defendants Cleveland Ave Restaurant, Inc. (d/b/a Sirens), Francis Sharrak, Michael Sharrak, Chad Sullivan, and Dominick Alkammo. Ms. Hogan seeks appropriate monetary, declaratory, and

equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("§34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and O.R.C. § 4113.15.

## II.  Jurisdiction and Venue

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's OMFWSA, Ohio law, and Ohio Constitutional claims pursuant to 28 U.S.C. 1367.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## III.  Parties

7. Plaintiff Jessica Hogan is an individual residing in Canal Winchester, Ohio.

8. Ms. Hogan has given written consent to bring this action to collect unpaid wages. The consent form is filed with Plaintiff's Complaint.

9. Defendant Cleveland Ave Restaurant, Inc. d/b/a Sirens ("Sirens") is a for-profit corporation registered to do business in Ohio. Sirens' principal place of business is 6190 Cleveland Avenue, Columbus, OH 43231.

10. Defendant Francis Sharrak is an individual and is sued in his individual capacity.

11. On information and belief, Mr. F. Sharrak's parole terms did not allow him to have any involvement with Sirens.

12. In spite of those terms, Mr. F. Sharrak directed one or more of Sirens' pay and other policies, made hiring and firing decisions at Sirens, had the authority to ban or unban people from Sirens, and discussed employment issues with employees.

13. Employees were generally aware that Mr. F. Sharrak was not supposed to have an official role at the club but that he still had authority over the employees.

14. Mr. F. Sharrak acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

15. Defendant Michael Sharrak was one of Sirens' owners. Mr. M. Sharrak had ultimate hiring and firing and policy making authority.

16. Mr. M. Sharrak acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

17. Defendant Chad Sullivan was Sirens' General Manager.

18. Mr. Sullivan hired, fired, and disciplined employees and directed their work.

19. Mr. Sullivan acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

20. Defendant Dominick Alkammo was represented to the employees as a part-owner or investor in Sirens. Mr. Alkammo hired, fired, and disciplined employees and directed their work.

21. Mr. Alkammo acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

22. Sirens, Mr. F. Sharrak, Mr. M. Sharrak, Mr. Sullivan, and Mr. Alkammo will be collectively referred to "Defendants."

23. Defendants employed Ms. Hogan as a bartender, server, and dancer at Sirens.

24. Defendants employed Ms. Hogan from approximately August 2013 to June 10, 2015.

25. During all relevant times, Ms. Hogan was Defendants' "employee" within the meaning of the FLSA and the OMFWSA.

26. During all relevant times, Defendants were Ms. Hogan's "employers" within the meaning of the FLSA and the OMFWSA.

27. Defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

28. During all relevant times, Defendants were, and continue to be an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and OMFWSA.

29. Defendants' gross revenue exceeds $500,000 per year during the relevant time period.

**IV.  Statement of Facts**

30. Sirens is an adult entertainment club in Columbus, Ohio. As such, Sirens employs bartenders, servers, managers, DJs, exotic entertainers/dancers, and security personnel.

31. Many employees work in more than one capacity during their employment at Sirens.

32. For example, Ms. Hogan worked primarily as a bartender, but also performed dancer and "friction" duties ("friction" is a security/monitoring function).

33. While Ms. Hogan worked as a bartender, a customer often requested that Ms. Hogan perform a private dance for the customer. At the discretion of Ms. Hogan's manager and depending on whether Ms. Hogan could find someone else to watch the bar for her, she could dance for the customer. While Ms. Hogan (or any other bartender) danced for a customer, another employee could temporarily assume bartender duties.

34. In addition, on more than one occasion, Ms. Hogan was called into work specifically as an exotic dancer. During these times, Ms. Hogan was subject to the rules, fees, etc. to which the exotic dancers were subject. This included not being paid an hourly wage.

35. Sirens generally categorized workers based on whether dancing was their primary function.

36. Non-dancers (*i.e.*, those who danced as a secondary job function), like Ms. Hogan, were categorized as "employees" and paid a wage, except during those times in which they were specifically called into perform exotic dancing duties.

37. Generally, non-dancers were paid tipped minimum wage, and Sirens relied upon a "tip credit" to make up the difference between tipped minimum wage and regular minimum wage.

38. Dancers, on the other hand, were categorized as "independent contractors" and not paid any wage at all (with the exception of "guarantees," see below).

39. It is now well-established that exotic dancers, like those at Sirens, are not independent contractors and, instead, are "employees." As one court noted, "Nearly '[w]ithout exception, [ ] courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013), *reconsideration denied* (Nov. 18, 2013), *quoting Harrell v. Diamond A. Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997).

40. Sirens knew or should have known of the substantial amount of case law that categorizes exotic dancers as employees of the club at which they dance.

41. Sirens exerted substantial control over the dancers, including:

    a) controlling and setting the rates that dancers charged customers,

    b) controlling and setting the fees that dancers paid to the club when dancing at the club,

    c) mandating that dancers conform to a certain look, including having make-up, nails, and hair done, subject to Sirens' managers' approval,

    d) requiring that dancers work entire shifts at a time and, if the dancer did not, imposing fees or "fines" on the dancer,

    e) providing dancers with orientation and training regarding Sirens' rules and operations,

    f) explaining the dancers' role and rules regarding Sirens' "drink hustle,"

    g) hiring, firing, and disciplining dancers,

      h)    instructing about and requiring participation in Sirens' "uptime" dance specials, and

      i)    requiring dancers to tip out various Sirens' employees,

      j)    providing "guaranteed" minimum payments to Sirens dancers if they met certain requirements (like fulfilling certain shifts or being the first to sign up for a shift).

42.    Exotic dancers are an integral part of Defendants' business.

43.    Regardless of whether someone was a dancer or non-dancer, they were still subject to the same set of pay policies and practices.

44.    Those policies and practices resulted in Sirens paying employees less than the required minimum wage.

45.    Sirens' unlawful practices included:

      a)    All dancers and non-dancers who earned or received credit card tips were required to relinquish 10% of credit card tips to the club. To the extent that the tips were shared or split with other employees, the sharing or splitting occurred *after* the 10% charge was taken. Accordingly, all employees who either received tips or shared in a percentage of another employees' tips were affected by this policy.

      b)    Dancers and non-dancers were required to pay money to the club if the employee performed a dance in a "champagne room." The amount varied on whether an employee was categorized as a "dancer" or "non-dancer" for that particular shift.

      c)    Dancers and non-dancers were required to pay money to the club on a "per song" basis if the employee performed in the "executive suites" or "friction

dance booths." The amount varied on whether an employee was categorized as a "dancer" or "non-dancer" for that particular shift.

d) Depending on which position an employee was working at a particular time, the employee may be required to "tip out" or share tips with non-tipped employees including disc jockeys or security personnel.

e) Dancers and non-dancers were required to purchase uniforms and outfits to perform their job. Typically, those uniforms were purchased through Sirens and paid for out of the employee's tip money.

f) Those employees (like Ms. Hogan) who had a cash drawer to count and deposit money into, were required to pay both overages and shortages out of their tips.

g) Defendants required employees to attend mandatory but unpaid meetings.

**VI. Collective Action Allegations**

46. Ms. Hogan brings this collective action on behalf of herself and all others similarly situated.

47. Ms. Hogan and the class members were all Sirens' employees and were subject to the same uniform illegal pay practices and policies applicable to all of Defendants' employees.

48. Defendants' illegal pay practices and policies are identified above and generally include failing to pay regular minimum wage for each hour worked, subjecting workers to an illegal tip pool policy, requiring workers to participate in an unlawful "kickback" scheme, charging money to employees for performing their essential job functions, charging money to employees for uniforms and outfits, requiring employees to work off-the-clock, and deducting 10% of employees' tip money that customers left on credit cards.

49. The class members are owed wages for the same reasons as Ms. Hogan.

50. Application of Defendants' illegal pay practices does/did not depend on the personal circumstances of Ms. Hogan or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all class members. Accordingly, Ms. Hogan seeks to represent the following class:

> **All dancers and non-dancers who worked for Defendants within the last three years, and who were not paid at least regular minimum wage for all hours worked.**

51. Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Hogan and the class members.

52. Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

53. Defendants have acted willfully in failing to pay Ms. Hogan and the class members in accordance with the law.

**VII.** **Class Action Allegations**

54. Ms. Hogan sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (3) of the Federal Rules of Civil Procedure.

55. Pursuant to the Ohio Constitution and the Ohio Minimum Fair Wages Standards Act, Ms. Hogan brings her claims on behalf of all persons that Defendants employed at any time from three years prior to the filing of this Complaint to the entry of judgment in this case (the "Class Period"). The class is defined as follows:

> **All dancers and non-dancers who worked for Defendants within the last three years, and who were not paid at least regular minimum wage for all hours worked.**

56. Ms. Hogan brings her claims on behalf of all non-exempt employees within the meaning of Article II, Section 34a of the Ohio Constitution and/or the OMFWSA that were not paid at least minimum wage for each hour worked ("the Class").

57. The people identified in the Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and the facts on which that number can be ascertained are presently within the sole control of Defendants. Upon information and belief, there are over forty members of the Class during the Class Period.

58. Ms. Hogan's claims are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy– particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

59. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

60. Ms. Hogan is committed to pursuing this action and has retained competent counsel that is experienced in wage and hour actions.

61. Ms. Hogan has the same interests in this matter as all other members of the Class and Ms. Hogan's claims are typical of the Class.

62. There are questions of law and fact common to the Class, which predominate over any questions solely affecting the individual members of the Class. These questions include but are not limited to:

    a) Whether Defendants kept a portion of the Class Members' credit card tips;

    b) Whether that retention was unlawful;

    c)    Whether Defendants required Class Members to share tips with non-tipped workers;

    d)    Whether that requirement was unlawful;

    e)    Whether Defendants required Class Members to pay Defendants to work for Defendants and/or required "kickbacks";

    f)    Whether the requirement or "kickback" was unlawful;

    g)    Whether Defendants failed to pay any wages to employees when those employees acted as "dancers";

    h)    Whether such failure to pay wages was unlawful;

    i)    Whether Defendants are liable for all damages claimed hereunder, including but not limited to, double damages, treble damages, costs, disbursements, and attorney's fees.

## VIII. Claims for Relief

**First Count: Ohio Constitution, Article II § 34(a): Failure to Pay Tipped Minimum Wages**

63.    All preceding paragraphs are fully re-alleged and incorporated herein.

64.    Defendants did not pay Plaintiff and Class Members at least regular minimum wage.

65.    Plaintiff and Class Members earned tips.

66.    Tips are the property of the person who earns them.

67.    Defendants claimed a "tip credit" to meet Defendants' obligation to pay Plaintiff and Class Members minimum wage.

68.    At the same time, Defendants retained some of Plaintiff's and Class Members' tips and/or shared those tips with non-tipped employees.

69.    Defendants were not entitled to use the "tip credit" to pay Plaintiff and Class Members less than regular minimum wage because Defendants did not use the tips as part of a valid tip pool.

70. Further, Ohio Constitution, Article II § 34(a) does not authorize any sort of mandatory tip pooling arrangement.

71. As a result, Defendants have violated the Ohio Constitution, Article II § 34(a).

**Second Count: Fair Labor Standards Act: Failure to Pay Tipped Minimum Wages**

72. All preceding paragraphs are fully re-alleged and incorporated herein.

73. By not paying Plaintiff and Class Members at least regular minimum wage for each hour worked, Defendants have violated the FLSA.

**Third Count: Ohio Constitution, Article II § 34(a): Unlawful Deductions and/or Kickbacks**

74. All preceding paragraphs are fully re-alleged and incorporated herein.

75. Defendants' requirement that Plaintiff and Class Members pay Defendants when they performed dances results in reducing Plaintiff and Class Members' wages below minimum wage or tipped minimum wage.

76. By paying Plaintiffs and Class Members less than minimum wage or tipped minimum wage, Defendants violated Ohio Constitution, Article II, Section 34a.

**Fourth Count: Fair Labor Standards Act: Unlawful Deductions and/or Kickbacks**

77. All preceding paragraphs are fully re-alleged and incorporated herein.

78. By paying Plaintiffs and Class Members less than minimum wage or tipped minimum wage, Defendants violated the FLSA.

**Fifth Count: Ohio Constitution, Article II § 34(a): Failure to Pay Minimum Wages**

79. All preceding paragraphs are fully re-alleged and incorporated herein.

80. When Plaintiff and Class Members functioned as a dancer for a particular shift, Defendants did not pay Plaintiff or Class Members any wages.

81. By paying Plaintiffs and Class Members less than minimum wage or tipped minimum wage, Defendants violated Ohio Constitution, Article II, Section 34a.

### Sixth Count: Fair Labor Standards Act: Failure to Pay Minimum Wages

82. All preceding paragraphs are fully re-alleged and incorporated herein.

83. By paying Plaintiffs and Class Members less than minimum wage or tipped minimum wage, Defendants violated the FLSA.

### Seventh Count: Failure to Tender Pay by Regular Payday under Ohio Law (against Defendant Sirens only)

84. All preceding paragraphs are fully re-alleged and incorporated herein.

85. At all relevant times, Sirens failed and continues to fail to make wage payments to Plaintiff and Class Members, as outlined above, within 30 days of when such payments were due.

86. By failing to make the wage payments within 30 days of when such payments were due, Defendants have violated O.R.C. § 4113.15.

87. Further, by retaining Plaintiff's tips without agreement from Plaintiff, Defendants have violated O.R.C. § 4113.15.

## IX. Prayer for Relief

**Wherefore**, Plaintiff and similarly-situated individuals are entitled to and pray for the following relief:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointment of Plaintiff and his counsel to represent the Class;

B. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action and appointment of Plaintiff and his counsel to represent the collective action members;

C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, Ohio Constitution, Article II § 34(a), and OMFWSA;

D. An award of unpaid wages due under the FLSA, Ohio Constitution, Article II § 34(a), the OMFWSA and O.R.C. § 4113.15;

E. An award of liquidated damages as a result of Defendants' failure to pay minimum wages pursuant to 29 U.S.C. § 216;

F. An award of treble damages, based on Defendants' failure to pay minimum wages, pursuant to the Ohio Constitution, Article II § 34(a);

G. Liquidated damages under O.R.C. § 4113.15;

H. An award of prejudgment and post judgment interest;

I. An award of compensatory damages;

J. An award of costs and expenses of this action together with reasonable attorney's fees and expert fees;

K. Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

  /s/ Andrew Biller
Andrew Biller (0081452)
Of Counsel
Markovits, Stock & DeMarco, LLC
Easton Town Center
4200 Regent Street, Suite 200
Columbus, OH 43219
(614) 604-8759
Fax (614) 583-8107
(*abiller@msdlegal.com*)

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff request a trial by a jury of eight (8) persons.

      /s/ Andrew Biller

Andrew Biller