IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

| | |
|---|---|
| Jessica Hogan, *et al.*, | Case No. 2:15-cv-2883 |
| Plaintiffs, | |
| v. | Judge Marbley |
| | Magistrate Judge Deavers |
| Cleveland Ave Restaurant, Inc. (d/b/a Sirens), *et al.*, | |
| Defendants. | Jury Demand Endorsed Hereon |

---

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

---

## I.  Case Overview

1.      Defendant Cleveland Ave Restaurant, Inc. ("Sirens") and other adult entertainment clubs throughout Ohio have conspired and colluded to deny exotic dancers their rightful minimum wages and to require such dancers to pay artificial and illegal fees to club owners to work at their clubs, including a fee called "rent" under a fiction that the dancers are "leasing space" from the club owners while they dance. By these unlawful and collusive practices, clubs throughout Ohio pay their dancers *no* wages. In fact, using something dubbed the "Tenant System," such club owners actually exact money from the dancers for the privilege of working at their clubs. This case seeks to end these unlawful and collusive practices in Ohio and to restore to the affected dancers the amounts illegally collected from them as "rent" and other charges.

1

2.      Sirens, an adult entertainment club in Columbus, Ohio, employed Plaintiff Jessica Hogan as an exotic dancer, paid her less than minimum wage, and charged her various artificial and illegal fees to work at the club.

3.      Sirens' unlawful pay practices include charging Ms. Hogan fees when she performed exotic dances for customers, including excessively charging her 10% on all customer tips left for her on a credit card and requiring her to tip out various non-tipped employees such as disc jockeys and security personnel. Sirens applied its unlawful pay policies to all employees who performed entertainment duties similar to those performed by Ms. Hogan. The artificial and illegal fees typify those concocted by Ohio's adult entertainment industry and its trade associations, the Buckeye Association of Club Executives ("BACE" aka "BACE Ohio") and the Owners Coalition ("OC"), which, due to a merger in 2015, are referred to collectively herein as "BACE."

4.      Ms. Hogan, on behalf of herself and all similarly-situated individuals, bring this action against Defendants Sirens, Francis Sharrak, Michael Sharrak, Chad Sullivan, Jay Nelson, and Dominick Alkammo. Ms. Hogan, as Plaintiff and the representative of the proposed Sirens Class, seeks appropriate monetary, declaratory, and equitable relief based on these Defendants' willful failure to compensate Ms. Hogan and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("§34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and O.R.C. § 4113.15.

5.      Plaintiff additionally is suing BACE and OC, the two main Ohio entertainment club industry trade associations, because, on information and belief, they have been and are

2

responsible for artifices such as the Tenant System by which member clubs, including Sirens, for at least the past six years have purported to deny exotic dancers their rightful minimum wages and have required such dancers to pay various collusive, artificial, and illegal fees to club owners to work at their clubs, including a fee called "rent." Various other persons, firms and corporations not named as defendants have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy. These Defendants are jointly and severally liable for the acts of their co-conspirators whether or not named as defendants in this complaint.

## II.    Jurisdiction and Venue

6.    This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7.    This Court has jurisdiction over Plaintiff's federal antitrust claims, which seek to secure injunctive relief and damages for violation of the Sherman Act, 15 U.S.C. § 1, pursuant to 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

8.    This Court has supplemental jurisdiction over Plaintiffs' OMFWSA, Ohio Constitutional, state antitrust, civil conspiracy, and unjust enrichment claims pursuant to 28 U.S.C. § 1367.

9.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

## III.    Parties

10.    Plaintiff Jessica Hogan is an individual residing in Canal Winchester, Ohio.

11.     Ms. Hogan has given written consent to bring this action to collect unpaid wages. Her consent form was filed with the original Complaint.

12.     Defendant Sirens is a for-profit corporation registered to do business in Ohio. Sirens' principal place of business is 6190 Cleveland Avenue, Columbus, OH 43231.

13.     Defendant Francis Sharrak is an individual and is sued in his individual capacity.

14.     On information and belief, Francis Sharrak's parole terms did and still do not allow him to have any involvement with Sirens.

15.     In spite of those terms, Francis Sharrak directed one or more of Sirens' pay and other policies, made hiring and firing decisions at Sirens, had the authority to ban or un-ban people from Sirens, and discussed employment issues with employees.

16.     Employees were generally aware that Francis Sharrak was not supposed to have an official role at the club but that he still had authority over the employees.

17.     Francis Sharrak acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

18.     Defendant Michael Sharrak was one of Sirens' owners. Michael Sharrak had ultimate hiring and firing and policy making authority.

19.     Michael Sharrak acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

20.     Defendant Chad Sullivan was Sirens' General Manager.

21.     Mr. Sullivan hired, fired, and disciplined employees and directed their work.

22.     Mr. Sullivan acted in furtherance of the interests of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

23. Defendant Jay Nelson was and, on information and belief, still is director of operations at Sirens.

24. In that role, Mr. Nelson claims to make "virtually all decisions related to the operations of the club."

25. Mr. Nelson acted in furtherance of the interests of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

26. Defendant Dominick Alkammo was represented to the employees as a part-owner or investor in Sirens. Mr. Alkammo hired, fired, and disciplined employees and directed their work.

27. Mr. Alkammo acted in furtherance of the interests of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

28. Sirens, Francis Sharrak, Michael Sharrak, Mr. Sullivan, Mr. Nelson, and Mr. Alkammo will be collectively referred to herein as "the Sirens Defendants."

29. The Sirens Defendants employed Ms. Hogan as a bartender, server, and dancer at Sirens.

30. The Sirens Defendants employed Ms. Hogan from approximately August 2013 to June 10, 2015.

31. During all relevant times, Ms. Hogan was the Sirens Defendants' "employee" within the meaning of the FLSA and the OMFWSA.

32. During all relevant times, the Sirens Defendants were Ms. Hogan's "employers" within the meaning of the FLSA and the OMFWSA.

33.     The Sirens Defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

34.     During all relevant times, the Sirens Defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and OMFWSA.

35.     The Sirens Defendants' gross revenue exceeds $500,000 per year during the relevant time period.

36.     BACE and OC were the two main Ohio entertainment club industry trade associations that, on information and belief, have been and are responsible for artifices known as the "Tenant System" (also known as "the lease system"), by which member clubs, including Sirens, for at least the past six years have purported to deny exotic dancers their rightful minimum wages and have required such dancers to pay various artificial and illegal fees to club owners to work at their clubs, including a fee called "rent." On information and belief, other unnamed co-conspirators participated in this conspiracy.

37.     By creating and promoting use of the "Tenant System," BACE acted in the interest of the co-conspirators, including Sirens, with respect to the co-conspirators' employees and employment practices. Accordingly, BACE was and is an "employer" within the meaning of the FLSA and Ohio law.

**IV.     Statement of Facts**

38.     Sirens is an adult entertainment club in Columbus, Ohio. As such, Sirens employs bartenders, servers, managers, DJs, exotic entertainers/dancers, and security personnel.

39.     Many employees work in more than one capacity during their employment at Sirens.

40.     For example, Ms. Hogan worked primarily as a bartender, but also performed duties as a dancer and a "friction monitor," which is a security/monitoring function.

41.     While Ms. Hogan worked as a bartender, customers often requested that Ms. Hogan perform a private dance for the customers. At the discretion of Ms. Hogan's manager and depending on whether Ms. Hogan could find someone else to watch the bar for her, she could dance for a customer. While Ms. Hogan (or any other bartender) danced for a customer, another employee would temporarily assume bartender duties.

42.     In addition, on more than one occasion, Ms. Hogan was called into work specifically as an exotic dancer. During these times, Ms. Hogan was subject to the same rules, fees, etc. to which the exotic dancers were subject. This included not being paid an hourly wage and having to pay artificial and illegal charges to work at the club, including the so-called "rent."

43.     Sirens generally categorized workers based on whether dancing was their primary function.

44.     Those who danced as a secondary job function, like Ms. Hogan, were categorized as "employees" and paid a wage, except during those times in which they were specifically called into perform exotic dancing duties. At those times, they were treated like workers whose primary function is dancing. Those who dance at Sirens as their primary or exclusive job function were and are categorized by Sirens as "independent contractors" and not paid any wage at all (with the exception of "guarantees," see below), although in fact and in law they were employees.

45.     BACE, Sirens, and other BACE-member clubs throughout Ohio, in malicious combination and pursuant to a mutual understanding and a common plan and scheme that Sirens has characterized under oath as "an industry agreement," devised, promulgated, and/or used, and they continue to promulgate and/or use, an unconscionable adhesion contract entitled "Entertainer Tenant Space Lease Agreement" ("the Lease Agreement"), by which they systematically and uniformly have perpetrated the fraud that their exotic dancers are not employees but rather independent contractors who "lease space" from the clubs while performing.

46.     The purported "term" under the Lease Agreement is for one day, renewable every day, until either a year has passed or one of the parties—the club or the dancer—gives a one-day notice.

47.     The "conditions" under the Lease Agreement require the dancer to "pay all lease, rent, damage, and assistance fees before leaving the club" following a night of entertaining guests.

48.     Under the Lease Agreement:

   a)     The "damage" cost for "each lease time" that the dancer misses is $50—the same amount as the "rent" the dancer is charged for a night of dancing at Sirens and other BACE-member clubs.

   b)     The club owner establishes the "fixed fee for the price of specialty dances (such as private, champagne and table dances) performed on the premises.

   c)     The club owner may "modify, delete or add to any of the conditions contained" in the Lease Agreement "without notice" to the dancer.

d)     The dancer is forced to make all contributions "imposed or required by Unemployment … in connection with any money earned by" her.

e)     While at the club, the dancer "may be subjected to advances by customers, to depictions or portrayals of explicit fantasy sexual conduct, or to similar types of behavior," but she is forced to submit to and "not be offended by such conduct, depictions, portrayals, and language" and is forced to assume "any and all risks associated with being subject to these matters."

49.     It is now well-established that exotic dancers, like those at Sirens, whether dancing is their exclusive, primary or secondary job function, are not independent contractors and, instead, are "employees." As one court noted, "Nearly '[w]ithout exception, [ ] courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013), *reconsideration denied* (Nov. 18, 2013), *quoting Harrell v. Diamond A. Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997).

50.     The result is the same whether someone signed a Lease Agreement or not; *i.e.*, dancers are "employees" under the FLSA and Ohio law.

51.     Sirens knew or should have known of the substantial amount of case law that categorizes exotic dancers as employees of the club at which they dance.

52.     Sirens exerted substantial control over the dancers, including:

a)     controlling and setting the rates that dancers charged customers,

b)     controlling and setting the fees that dancers paid to the club when dancing at the club,

c)    mandating that dancers conform to a certain look, including having make-up, nails, and hair done, subject to the approval of Sirens' managers,

d)    requiring that dancers work entire shifts at a time and, if the dancer did not, imposing fees or "fines" on the dancer,

e)    providing dancers with orientation and training regarding Sirens' rules and operations,

f)    explaining the dancers' role and rules regarding Sirens' "drink hustle,"

g)    hiring, firing, and disciplining dancers,

h)    instructing about and requiring participation in Sirens' "uptime" dance specials,

i)    requiring dancers to tip out various Sirens' employees, and

j)    providing "guaranteed" minimum payments to Sirens dancers if they met certain requirements (like fulfilling certain shifts or being the first to sign up for a shift).

53.    Exotic dancers are an integral part of the Sirens Defendants' business.

54.    Regardless of whether someone was a dancer or non-dancer, they were still subject to the same set of pay policies and practices.

55.    Those policies and practices resulted in Sirens paying employees less than the required minimum wage.

56.    Sirens' unlawful practices included:

a)    All dancers and non-dancers who earned or received credit card tips were required to relinquish 10% of credit card tips to the club. To the extent that

the tips were shared or split with other employees, the sharing or splitting occurred *after* the 10% charge was taken. Accordingly, all employees who either received tips or shared in a percentage of another employee's tips were affected by this policy.

b)    Dancers and non-dancers were required to pay money to the club if the employee performed a dance in a "champagne room."

c)    Dancers and non-dancers were required to pay money to the club on a "per song" basis if the employee performed in the "executive suites" or "friction dance booths."

d)    Depending on which position an employee was working in at a particular time, the employee may be required to "tip out" or share tips with non-tipped employees including disc jockeys or security personnel.

e)    Dancers and non-dancers were required to purchase uniforms and outfits to perform their job. Typically, those uniforms were purchased through Sirens and paid for out of the employee's tip money.

f)    Those employees (like Ms. Hogan) who had a cash drawer to count and deposit money into, were required to pay both overages and shortages out of their tips.

g)    Defendants required employees to attend mandatory but unpaid meetings.

## V. The Sirens Collective Action Allegations

57.    Ms. Hogan brings this collective action on behalf of herself and all others similarly situated.

58. Ms. Hogan and other collective action members were all Sirens' employees and were subject to the same uniform illegal pay practices and policies applicable to all of the Sirens Defendants' employees.

59. The Sirens Defendants' illegal pay practices and policies are identified above and generally include failing to pay regular minimum wage for each hour worked, subjecting workers to an illegal tip pool policy, requiring workers to participate in an unlawful "kickback" scheme, charging money to employees for performing their essential job functions, charging money to employees for uniforms and outfits, requiring employees to work off-the-clock, and deducting 10% of employees' tip money that customers left on credit cards.

60. The other collective action members are owed wages for the same reasons Ms. Hogan is.

61. Application of the Sirens Defendants' illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan, or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all members. Accordingly, Ms. Hogan seeks to represent the following persons in the Sirens collective action:

> All persons who worked for the Sirens Defendants from October 6, 2012 to the present, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked.

62. The Sirens Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Hogan and the collective action members.

63.     The Sirens Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

64.     The Sirens Defendants have acted willfully in failing to pay Ms. Hogan and the collective action members in accordance with the law.

**VI. The Sirens Class Action Allegations**

65.     Ms. Hogan sues on behalf of a class of persons under Rules 23(a), (b)(2) and (3) of the Federal Rules of Civil Procedure.

66.     Pursuant to the Ohio Constitution, the OMFWSA, Ohio common law, and federal and state antitrust law, Ms. Hogan brings claims on behalf of all persons that the Sirens Defendants employed at any time from three years prior to the filing of the Complaint in this action to the entry of judgment in this case (the "Sirens Class Period"). The Sirens Class is defined as follows:

> All persons who worked for the Sirens Defendants within the past six years, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked.

67.     For purposes of the wage-related claims of the Sirens Class, Ms. Hogan brings claims on behalf of all non-exempt employees within the meaning of Article II, Section 34a of the Ohio Constitution and/or the OMFWSA who were not paid at least minimum wage for each hour worked.

68.     The people identified in the Sirens Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and the facts on which that number can be ascertained are presently within the sole control of the Sirens

Defendants. Upon information and belief, there are over three hundred members of the Sirens Class during the Sirens Class Period.

69.     Ms. Hogan's claims are typical of the claims of the Sirens Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

70.     The Sirens Defendants have acted or refused to act on grounds generally applicable to the Sirens Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Sirens Class as a whole.

71.     Ms. Hogan is committed to pursuing this action and has retained competent counsel experienced in wage and hour actions and class actions.

72.     Ms. Hogan has the same interests in this matter as the members of the Sirens Class, and her claims are typical of the Sirens Class's claims.

a)     There are questions of law and fact common to the Sirens Class, which predominate over any questions solely affecting the individual members of the Sirens Class. These questions include but are not limited to:Whether the Sirens Defendants kept a portion of the Sirens Class members' credit card tips;

b)     Whether that retention was unlawful;

c)     Whether the Sirens Defendants required Sirens Class members to share tips with non-tipped workers;

d)     Whether that requirement was unlawful;

14

e)      Whether the Sirens Defendants required Sirens Class members to pay them to work at Sirens and/or required "kickbacks";

f)      Whether the requirement or "kickback" was unlawful;

g)      Whether the Sirens Defendants failed to pay any wages to employees when those employees acted as "dancers";

h)      Whether such failure to pay wages was unlawful;

i)      Whether the Sirens Defendants conspired to violate federal and state antitrust laws by fixing or restraining payments to Sirens Class members;

j)      Whether such conspiracy was unlawful;

k)      Whether the Sirens Defendants' unlawful actions should be enjoined; and

l)      Whether the Sirens Defendants are liable for all damages claimed hereunder, including but not limited to, double damages, treble damages, costs, disbursements, and attorney's fees.

**VII. The Statewide Class Action Allegations**

73.      Ms. Hogan also brings a class action on behalf of herself and all others similarly situated against a defendant class encompassing Sirens, BACE (including OC), and the BACE-member adult entertainment clubs throughout Ohio that have used and/or are using the Lease Agreement and/or the Tenant System to deny exotic dancers their rightful minimum wages and to require such dancers to pay artificial and illegal fees to club owners to work at their clubs, including a fee called "rent," and they have in fact collected such "rent." This action will be referred to herein as the "Statewide Class Action." Those on whose behalf this action is asserted

will be referred to herein as the "Statewide Plaintiff Class," and those against whom it is brought will be referred to herein as the "Statewide Defendant Class."

74. Ms. Hogan and other Statewide Plaintiff Class members were all dancers subject to the same illegal pay practices and policies applicable to all of the Statewide Defendant Class's dancers. The other Statewide Plaintiff Class members are owed wages for the same reasons Ms. Hogan is. Application of the Statewide Defendant Class's illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan or other members of the Statewide Plaintiff Class.

75. Accordingly, in the Statewide Class Action, Ms. Hogan seeks to represent the following Statewide Plaintiff Class:

> All persons who performed exotic dancing at any BACE-member adult entertainment club in Ohio within the past six years while subject to the Lease Agreement, the Tenant System, or any similar ruleset.

76. Ms. Hogan sues on behalf of the Statewide Plaintiff Class under Rules 23(a), (b)(2) and (3) of the Federal Rules of Civil Procedure.

77. Ms. Hogan brings claims on behalf of the above-defined Statewide Plaintiff Class against a Statewide Defendant Class that is defined as follows:

> All BACE-member adult entertainment clubs and employers in Ohio within the past six years that used and/or are using the Lease Agreement, the Tenant System, or any similar ruleset.

78. The members of the Statewide Plaintiff Class and the Statewide Defendant Class are so numerous that joinder of all members is impracticable. The precise number of such members is unknown, and the facts on which that number can be ascertained are presently within the sole control of the Statewide Defendant Class. Upon information and belief, the members of

the Statewide Plaintiff Class number in the thousands, while the members of the Statewide Defendant Class exceed 25 in number.

79. A class action is superior to other available methods of fair and efficient adjudication of the controversy between the Statewide Plaintiff Class and the Statewide Defendant Class, particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit in federal court.

80. The members of the Statewide Defendant Class have acted or refused to act on grounds generally applicable to the Statewide Plaintiff Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Statewide Plaintiff Class as a whole.

81. Ms. Hogan is committed to pursuing this action and has retained competent counsel experienced in wage and hour actions and class actions.

82. Sirens is represented by competent counsel likewise experienced in wage and hour and class actions. Based on third-party discovery practice in this case, BACE also has competent counsel experienced in wage and hour and class actions.

83. Ms. Hogan has the same interests in this matter as the members of the Statewide Plaintiff Class, and her claims are typical of that Class's claims.

84. Sirens having used the Lease Agreement under an industry agreement, and BACE having conceived and devised the Lease Agreement and having promoted, promulgated, and perpetuated the Lease Agreement and the Tenant System throughout Ohio, possess the same interests in this matter as the members of the Statewide Defendant Class, and the claims brought

against Sirens and BACE are typical of the claims asserted against the Statewide Defendant Class as a whole.

85.     There are questions of law and fact common to the Statewide Plaintiff Class and the Statewide Defendant Class, which predominate over any questions solely affecting the individual members of the Statewide Plaintiff Class and the Statewide Defendant Class. These questions include but are not limited to:

a)      Whether the members of the Statewide Defendant Class used the Lease Agreement or the artifice known as the Tenant System to deny the members of the Statewide Plaintiff Class their rightful wages and to exact illegal payments, including the so-called "rent" from the members of the Statewide Plaintiff Class;

b)      Whether the Lease Agreement and the Tenant System are unlawful under Ohio and federal wage and hour laws, the Ohio Constitution, and Ohio common law;

c)      Whether in using the Lease Agreement and the Tenant System the Statewide Defendant Class conspired to violate federal and state antitrust laws by fixing or restraining payments to members of the Statewide Plaintiff Class;

d)      Whether such conspiracy was unlawful;

e)      Whether the Statewide Defendant Class's unlawful actions should be enjoined;

18

   f)   Whether the members of the Statewide Defendant Class are liable to the members of the Statewide Plaintiff Class for all damages claimed hereunder, including but not limited to, compensatory damages, double damages, treble damages, costs, disbursements, and attorney's fees.

## VIII.  The Statewide Collective Action Allegations

86.  Ms. Hogan also brings this collective action on behalf of herself and all others similarly situated against the Statewide Defendant Class, identified above. Those on whose behalf this action is asserted will be referred to herein as the "Statewide Collective."

87.  Ms. Hogan and other Statewide Collective members were all dancers subject to the same illegal pay practices and policies applicable to all of the Statewide Defendant Class's dancers. The other Statewide Collective members are owed wages for the same reasons Ms. Hogan is. Application of the Statewide Defendant Class's illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan or other members of the Statewide Collective.

88.  The Statewide Defendant Class's illegal pay practices and policies are identified above and generally include failing to pay regular minimum wage for each hour worked, requiring workers to participate in an unlawful "kickback" scheme, and charging money to employees for performing their essential job functions.

89.  The Statewide Collective members are owed wages for the same reasons Ms. Hogan is.

90.  Application of the Statewide Defendant Class's illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan, or those joining this lawsuit. Rather,

the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all members. Accordingly, Ms. Hogan seeks to represent the following Statewide Collective:

> All persons who performed exotic dancing at any BACE-member adult entertainment club in Ohio from October 6, 2012 to the present, while subject to the Lease Agreement, the Tenant System, or any similar ruleset.

91. The Statewide Defendant Class members knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Hogan and the Statewide Collective members.

92. The Statewide Defendant Class members did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

93. The Statewide Defendant Class members have acted willfully in failing to pay Ms. Hogan and the Statewide Collective members in accordance with the law.

## IX.   <u>Claims for Relief</u>

**First Count: Ohio Constitution, Article II § 34(a)—Failure to Pay Tipped Minimum Wages (by the Sirens Class against the Sirens Defendants)**

94. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

95. The Sirens Defendants did not pay Ms. Hogan and the Sirens Class Members at least regular minimum wage. Ms. Hogan and all Sirens Class Members earned tips.

96. Tips are the property of the person who earns them.

97. The Siren Defendants claimed a "tip credit" to meet their obligation to pay Ms. Hogan, and the Sirens Class Members their rightful minimum wages.

98. At the same time, the Sirens Defendants retained some of Ms. Hogan's and the Sirens Class Members' tips and/or shared those tips with non-tipped employees.

99. The Sirens Defendants were not entitled to use the "tip credit" to pay Ms. Hogan and the Sirens Class Members less than regular minimum wage because the Sirens Defendants did not use the tips as part of a valid tip pool.

100. Further, Ohio Constitution, Article II § 34(a) does not authorize any sort of mandatory tip pooling arrangement.

101. As a result, the Sirens Defendants have violated the Ohio Constitution, Article II § 34(a).

**Second Count: Fair Labor Standards Act (FLSA)—Failure to Pay Tipped Minimum Wages (by the Sirens Class against the Sirens Defendants)**

102. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

103. By not paying Ms. Hogan and the Sirens Class Members at least regular minimum wage for each hour worked, the Sirens Defendants have violated the FLSA.

**Third Count: Ohio Constitution, Article II § 34(a)—Unlawful Deductions and/or Kickbacks (by the Sirens Class against the Sirens Defendants)**

104. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

105. The Sirens Defendants' requirement that Ms. Hogan and the Sirens Class Members pay the Sirens Defendants when they performed dances results in reducing Ms. Hogan's and the Sirens Class Members' wages below minimum wage or tipped minimum wage.

106. By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated Ohio Constitution, Article II, Section 34a.

**Fourth Count: Fair Labor Standards Act: Unlawful Deductions and/or Kickbacks (by the Sirens Class against the Sirens Defendants)**

21

107.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

108.    By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated the FLSA.

**Fifth Count: Ohio Constitution, Article II § 34(a)—Failure to Pay Minimum Wages (by the Sirens Class against the Sirens Defendants)**

109.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

110.    When Ms. Hogan and the Sirens Class Members functioned as dancers for a particular shift, the Sirens Defendants did not pay them any wages and in fact exacted payment of "rent" from them.

111.    By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated Ohio Constitution, Article II, Section 34a.

**Sixth Count: Fair Labor Standards Act (FLSA)—Failure to Pay Minimum Wages (by the Sirens Class against the Sirens Defendants)**

112.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

113.    By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated the FLSA.

**Seventh Count: Failure to Tender Pay by Regular Payday under Ohio Law (by the Sirens Class against Defendant Sirens only)**

114.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

115.    At all relevant times, Defendant Sirens failed and continues to fail to make wage payments to Ms. Hogan and the Sirens Class Members, as outlined above, within 30 days of when such payments were due.

116. By failing to make the wage payments within 30 days of when such payments were due, Defendant Sirens violated O.R.C. § 4113.15.

117. Further, by retaining Ms. Hogan's and the Sirens Class Members' tips without agreement from such persons, Defendant Sirens violated O.R.C. § 4113.15.

**Eighth Count: Spoliation of Evidence (by the Sirens Class against Defendants Sirens and Jay Nelson only)**

118. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

119. While this litigation was pending and with full knowledge of it on their part, Sirens and Mr. Nelson willfully destroyed the evidence needed by Plaintiff and the Sirens Class to establish the identities and the work and pay records of Sirens employees who have danced at Sirens during the pendency of this lawsuit, including records known at Sirens as "bubble sheets" and "penthouse sheets," which Mr. Nelson claims to have destroyed daily, and signed "Lease Agreements," which he claims to have destroyed monthly—all during the pendency of this action.

120. Sirens and Mr. Nelson destroyed this evidence to disrupt Plaintiff's and the Sirens Class's case.

121. The destruction of this evidence disrupted Plaintiff's and the Sirens Class's case and proximately caused harm to Plaintiff and the members of the Sirens Class.

122. The willful destruction of this evidence entitles Plaintiff and the Sirens Class to compensatory and punitive damages.

**Ninth Count: Ohio Constitution, Article II § 34(a)—Failure to Keep Wage and Hour Records (by the Sirens Class against the Sirens Defendants)**

123. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

124.    The Sirens Defendants failed to keep records all of Sirens Class members' wages earned, hours worked, contact information, and other information that Article II, Section 34a of the Ohio Constitution mandates employers keep.

125.    Moreover, the Sirens Defendants actively destroyed these records for Sirens Class members after having received notice of this lawsuit.

126.    The willful destruction of this evidence entitles Plaintiff and the Sirens Class to unpaid wages, treble damages, and equitable relief.

**Tenth Count: Antitrust Violations (by the Sirens Class against the Sirens Defendants and by the Statewide Plaintiff Class against the Statewide Defendant Class)**

127.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

128.    The Sirens Defendants, BACE (including OC), and BACE-member adult entertainment clubs throughout Ohio comprising the Statewide Defendant Class have conspired and colluded to deny exotic dancers including Ms. Hogan, the members of the Sirens Class, and the members of the Statewide Plaintiff Class their rightful minimum wages and to require such dancers to pay artificial and illegal fees to club owners to work at their clubs, including a fee called "rent," and they have in fact collected such "rent."

129.    It would not be in the best interests of BACE-member clubs individually to adopt the Tenant System or the Lease Agreement, unless other BACE-member clubs committed to doing likewise. Indeed, there is evidence of an "industry agreement" among BACE-member clubs to employ and not deviate from the Lease Agreement and the Tenant System. There also is evidence of a blacklisting system among BACE-member clubs that allows them to report,

"compartmentalize," and in effect boycott dancers like Ms. Hogan for causing "problems" such as initiating suits or communicating with lawyers.

130.    The alleged conspiracy was formed knowingly, voluntarily, and intentionally and existed throughout the entire time period covered by this complaint, and the Sirens Defendants, BACE, and the members of the Statewide Defendant Class knowingly, voluntarily, and intentionally joined in the conspiracy.

131.    The alleged conspiracy substantially affected interstate commerce and/or occurred within the flow of interstate commerce.

132.    By these unlawful and collusive practices, the Sirens Defendants, BACE, and BACE-member clubs throughout Ohio that comprise the Statewide Defendant Class and use the fraudulent Lease Agreement and/or Tenant System conspired to concoct and fix, and they did in fact fix, the price of the so-called "rent" and "damage" charged by such clubs.

133.    They in fact have exacted such charges from dancers working at their clubs.

134.    The Sirens Defendants', BACE's, and the Statewide Defendant Class's anticompetitive conduct has restrained or eliminated price competition with respect to Ms. Hogan, the Sirens Class members, and the Statewide Plaintiff Class members, causing antitrust injury. By reason of the alleged violations of the antitrust laws, Ms. Hogan, the Sirens Class members, and the Statewide Plaintiff Class members have sustained injury to their business or property, having been paid less than they would have in the absence of the Sirens Defendants', BACE's, and the Statewide Defendant Class's illegal contract, combination or conspiracy, and as a result have suffered damages. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

135. The conspiracy of Sirens, BACE, and BACE-member clubs throughout Ohio comprising the Statewide Defendant Class and the acts in furtherance thereof constitutes illegal price-fixing in violation of Section 1 of the Sherman Act (15 U.S.C. §1) and the Ohio Valentine Act (R.C. 1331.01 et seq.).

136. By virtue of the alleged conduct, Ms. Hogan, the members of the Sirens Class, and the members of the Statewide Plaintiff Class are entitled to, and do, seek: treble damages; injunctive relief barring Siren, BACE, and all BACE-member clubs in active concert or participation with either of them from using, promoting, promulgating, and/or enforcing the unlawful Lease Agreement and Tenant System, and from exacting the illegal "rent" and "damage" charges thereunder; and equitable relief in the form of full restitution of "rent" and "damage" charges unlawfully collected.

**Eleventh Count: Civil Conspiracy (by the Sirens Class against the Sirens Defendants and by the Statewide Plaintiff Class against the Statewide Defendant Class)**

137. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

138. The Sirens Defendants, BACE, and BACE-member clubs throughout Ohio comprising the Statewide Defendant Class have engaged in a malicious combination to violate Ohio statutes and common law and federal statutes, damaging Ms. Hogan, the members of the Sirens Class, and the members of the Statewide Plaintiff Class.

139. Ms. Hogan, the members of the Sirens Class, and the members of the Statewide Plaintiff Class are entitled to compensatory damages, punitive damages, and equitable restitution of all unlawfully collected "rent," "damage," fees, and other charges.

**Twelfth Count: Unjust Enrichment Justifying Equitable Restitution (by the Sirens Class against the Sirens Defendants and by the Statewide Plaintiff Class against the Statewide Defendant Class)**

140.   All paragraphs of this Complaint are fully re-alleged and incorporated herein.

141.   By virtue of the "rent," "damage," fees, tip shares, and other charges illegally collected, deducted, and/or withheld by the Sirens Defendants, Ms. Hogan and the members of the Sirens Class conferred substantial benefits on the Sirens Defendants, all with such Defendants' knowledge.

142.   Retention of these benefits by the Sirens Defendants would be unjust under the circumstances.

143.   Ms. Hogan and the Members of the Sirens Class are entitled to equitable restitution of all unlawfully collected, deducted, and/or withheld "rent," "damage," tip shares, fees, and other charges.

144.   Likewise, by virtue of the "rent," "damage," fees, tip shares, and other charges illegally collected, deducted, and/or withheld by the Statewide Defendant Class, Ms. Hogan and the members of the Statewide Plaintiff Class conferred substantial benefits on the Statewide Defendant Class, all with such Defendants' knowledge.

145.   Retention of these benefits by the Statewide Defendant Class would be unjust under the circumstances.

146.   Ms. Hogan and the Members of the Statewide Plaintiff Class are entitled to equitable restitution of all unlawfully collected, deducted, and/or withheld "rent," "damage," tip shares, fees, and other charges.

**Thirteenth Count: Ohio Constitution, Article II § 34(a), FLSA, and O.R.C. § 4113.15—Failure to Pay Minimum Wage or Tipped Minimum Wage, Failure to**

27

**Make Wage Payments Within 30 Days, and Unlawful Retention of Tips (by the Statewide Plaintiff Class against the Statewide Defendant Class)**

147.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

148.    The members of the Statewide Defendant Class have used the Lease Agreement and the Tenant System to deny the Statewide Plaintiff Class and Statewide Collective members regular minimum wage or tipped minimum wage for each hour worked. As a result, the Statewide Defendant Class has violated the Ohio Constitution, Article II § 34(a), and the FLSA.

149.    The members of the Statewide Defendant Class failed and continue to fail to make wage payments to the Statewide Plaintiff Class and Statewide Collective members within 30 days of when such payments were due and retained and continue to retain tips without lawful agreement from such persons, in violation of O.R.C. § 4113.15.

150.    Ms. Hogan and the Statewide Class and Statewide Collective members are entitled to unpaid wages, liquidated damages, additional damages, interest, fees and costs.

## X.  Prayer for Relief

**Wherefore**, plaintiffs pray for the following relief:

A.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Classes and appointment of Plaintiff and Plaintiff's counsel to represent the Classes;

B.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and Plaintiff's counsel to represent the collective action members;

C.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, Ohio Constitution, Article II § 34(a), and the OMFWSA;

D.     An award of unpaid wages due under the FLSA, Ohio Constitution, Article II § 34(a), the OMFWSA and O.R.C. § 4113.15;

E.     An award of liquidated damages as a result of the Sirens Defendants' failure to pay minimum wages pursuant to 29 U.S.C. § 216;

F.     An award of treble damages, based on the Sirens Defendants' and the Statewide Defendant Class's failure to pay minimum wages, pursuant to the Ohio Constitution, Article II § 34(a);

G.     An award of treble damages under the Sherman Act and Valentine Act;

H.     Injunctive relief barring the Sirens Defendants, BACE, and all BACE-member clubs in active concert or participation with either of them from using, promulgating, and enforcing the unlawful Lease Agreement and Tenant System, from exacting the illegal "rent," "damage," tip shares, fees, and other charges thereunder, and from engaging in further anticompetitive conspiracies;

I.     Equitable relief in the form of full restitution of all unlawfully collected, deducted, and/or withheld "rent," "damage," tip shares, fees, and other charges;

J.     Liquidated damages under O.R.C. § 4113.15;

K.     An award of prejudgment and post judgment interest;

L.     An award of compensatory damages;

M.     An award of costs and expenses of this action together with reasonable attorney's fees and expert fees;

29

N.      Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

/s/ Andrew Biller
Andrew Biller (0081452)
Markovits, Stock & DeMarco, LLC
Easton Town Center
4200 Regent Street, Suite 200
Columbus, OH 43219
Tel: (614) 604-8759
Fax: (614) 583-8107
abiller@msdlegal.com

Paul M. De Marco (0041153)
Jennifer J. Morales (0076835)
MARKOVITS, STOCK & DE MARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Tel: (513) 651-3700
Fax: (513) 904-6005
pdemarco@msdlegal.com
jmorales@msdlegal.com
www.msdlegal.com

Rachel Bloomekatz (0091376)
GUPTA WESSLER PLLC
1148 Neil Avenue
Columbus, Ohio 43201
Tel: (202) 888-1741
Fax: (202) 888-7792
rachel@guptawessler.com

*Counsel for Plaintiffs*

## **<u>JURY DEMAND</u>**

Plaintiffs request a trial by a jury of 12 persons.


/s/ Andrew Biller

Andrew Biller