UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA HOGAN,

    **Plaintiff,**

    v.

                                          Civil Action 2:15-cv-2883
                                        Judge Algenon L. Marbley
                                        Magistrate Judge Elizabeth P. Deavers

**CLEVELAND AVE RESTAURANT INC.
dba SIRENS,** *et al.,*

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Sanctions and for a Hearing to Show Cause Why Defendants are not in Contempt (ECF No. 43), Defendants' Memorandum in Opposition (ECF No. 47), and Plaintiff's Reply in Support. (ECF No. 58.) For the reasons that follow, Plaintiff's Motion is **GRANTED IN PART and DENIED IN PART**. (ECF No. 43.)

### I.    BACKGROUND

This is a wage lawsuit brought against a Columbus-area adult entertainment club known as "Sirens." (ECF No. 1; "Compl." ¶ 30.) For the entertainment of its patrons, Sirens allegedly employs bartenders, servers, managers, DJs, exotic dancers, and security personnel. (*Id.*) Many employees at Sirens work in more than one of the afore-mentioned capacities. (*Id.* ¶ 31.) Plaintiff Jessica Hogan ("Plaintiff" or "Hogan") worked at Sirens, primarily as a bartender who danced while acting as a bartender. During those times, Hogan was compensated as a bartender. (*Id.* ¶ 33.) Plaintiff also worked in various other positions at the club, including as an exotic

dancer, during which times she was compensated as an exotic dancer under a separate schematic framework. (*Id*. ¶ 34.)

Plaintiff now challenges a number of Defendants' pay practices under both state and federal law, including charging Plaintiff fees for the time she spends performing exotic dances, charging Plaintiff 10% on customer tips left on credit cards, and requiring Plaintiff to pay tips to non-tipped employees. (*Id*. ¶ 2.) Plaintiff alleges that Defendants have violated portions of 29 U.S.C. §§ 201, *et seq*., the Fair Labor Standards Act, Article II § 34(a) of the Ohio Constitution, and § 4113.15 of the Ohio Revised Code. (*Id*. ¶ 3.)

Plaintiff additionally seeks collective/class certification to represent all Sirens dancers and non-dancers who were not paid at least regular minimum wage for all hours worked. On June 9, 2016, this Court denied without prejudice Plaintiff's Motion for Federal Rule of Civil Procedure 23 Class Certification, in order to accord Defendants, who oppose the motion, their right as a matter of law to conduct fact-finding. (ECF No. 27 at 5.)

On March 31, 2016, Plaintiff served discovery requests on Defendants. (ECF No. 34-1.) Defendants issued a First Set of Discovery Responses on May 25, 2016. Plaintiffs then moved to compel Defendants to answer Plaintiff's discovery requests, which the Court granted in part on December 15, 2016. (ECF No. 50.) Leading up to the Court's Order granting in part Plaintiff's Motion to Compel, the Court held two phone conferences and then allowed Plaintiff to conduct a 30(b)(6) deposition to find out what evidence existed.

During the June 27, 2016 conference, the Court instructed Defendants that they were to issue discovery responses that encompassed the entire potential putative class, not just bartenders, servers, and waitresses, which Defendants had argued were the only employees at issue. (ECF No. 31.) Then, on September 1, 2016, the Court held another phone conference

where Defendants' counsel represented that his clients did not have the documents – a class list and documents showing when dancers worked – that Plaintiff had requested. On October 3, 2016, Plaintiff deposed Sirens' corporate representative Jay Nelson.

Plaintiff contends that Defendants should be sanctioned based on information discovered during the October 3, 2016 deposition. Plaintiff's Motion for Sanctions is based on Defendants' assertion throughout discovery that they did not have information related to dancers' identities, timesheets/payroll records, or hours worked each day. However, apparently Mr. Nelson's deposition revealed that Defendants did in fact loosely track dancers' work in two ways: through "lease agreements" and through "Bubblesheets" and "Penthouse Sheets." (Pl.'s Mot. Sanctions at 8–9, ECF No. 43.)

The Court understands the "lease agreements" to be purported contracts between the Defendants and dancers establishing the dancers as independent contractors or renters/lessees under a lease agreement. (*Id.* at 5.) According to Mr. Nelson's deposition, it is Defendants' practice to destroy the lease agreements for any dancers who have not worked for a month or longer. (Nelson Dep. 110:14–111:6, ECF No. 43-7.) Until the June 27, 2016, conference Defendants continued the practice of throwing out the lease agreements. Since the conference, however, Defendants claim that they stopped destruction of the records and that they have "produced over 700 pages of documents and leases to comply with the Courts new directive." (Defs.' Opp. at 3.) To support their position that sanctions are unwarranted, Defendants contend that they were unaware of the litigation-hold rules and that "[u]p until the June 27, 2016 status conference – Defendants were not aware they were required to alter their documentation retention policies as it pertains to leases." (Defs.' Opp. at 3, 7.) Plaintiff on the other hand contends that Defendants did not stop destruction of the lease agreements and Bubble/Penthouse

3

Sheets after the June 27, 2016 conference, but instead only stopped after the October 3, 2016 deposition. (Pl.'s Reply at 8–9.) After reviewing the deposition, the Court concludes that Defendants' current assertion that record destruction ceased before the deposition took place is inconsistent with Jay Nelson's testimony. (*See* Nelson Dep. 107:13–112:12, ECF No. 43-7.)

The "Bubble Sheets" apparently record dancers' names, whether the dancer in question paid her "rent" to the club, how many private dances the dancer gave that night, and the friction monitor's name. (Pls.' Mot. Sanctions at 9.) Penthouse Sheets are similar but record dancers' 'Champagne Room' performances. (*Id.*) Defendants' practice was to destroy the Bubble Sheets and Penthouse Sheets daily. (*Id.* at 10.)

Defendants contend that the Bubble/Penthouse Sheets were not responsive to Plaintiffs' requests because they only contained dancers' stage names, which Defendants note are duplicative, and because all of the financial information contained within the sheets was uploaded into QuickBooks and preserved there. (Defs.' Opp. at 4.)

## II. LAW AND ANALYSIS

Plaintiff asks the Court to impose seven different sanctions for Defendants' failure to retain relevant documents including: (1) certifying as a class dancers who stopped working at Sirens prior to the lawsuit; (2) authorizing "a class action notice of this lawsuit and the default judgment to the Spoliation Class"; (3) payment of unpaid wages and damages to the Spoliation Class members; (4) preclude Defendants from employing a defense "that Ms. Hogan or any other server/bartender did not perform dances or was not subject to the same pay policies as the other dancers"; (5) order Defendants to post a bond of $1,200,000 for the above claims; (6) order Defendants and/or counsel to pay Plaintiff's attorneys fees and costs with respect to Plaintiff's motion to compel, the subsequent Rule 30(b)(6) deposition, this motion, and any subsequent

4

work related to these issues and enforcement; (7) and finally, Plaintiff requests that the Court "schedule a hearing for Defendants and their counsel to show cause as to why they are not in contempt of this Court's June 28, 2016 Order." (Pl.'s Mot. Sanctions at 18–19.)

Federal Rule of Civil Procedure 37(b) authorizes sanctions for a party's failure to obey an order requiring discovery. The strongest sanction available to address discovery abuses is the entry of default judgment against a defendant or an order of dismissal against a plaintiff. *Bivens v. Lisath*, No. 2:05-cv-0445, 2008 WL 4533669, at *2 (S.D. Ohio Oct. 3, 2008) (citing *Quinn v. Kennedy*, No. 1:07-cv-1036, 2008 WL 4145445, at *1 (W.D. Mich., Aug. 20, 2008); (*Grange Mut. Cas. Co. v. Mack*, 270 F.App'x 372, 376 (6th Cir. 2008)). Federal Rule of Civil Procedure 37(b)(2) adds that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The United States Court of Appeals for the Sixth Circuit has identified four factors that it considers when reviewing a district court's dismissal of a case under Rule 37:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Harmon v. CSX Transp. Inc.*, 110 F.3d 364, 366–67 (6th Cir. 1997). Of course, dismissal is a harsh sanction, and is thus "a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985) (citations omitted); *cf.*

*Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643, 676 (1976) (recognizing dismissal as the "most severe in the spectrum of sanctions provided by statute or rule").

To justify destruction of the lease agreements and Bubble/Penthouse Sheets, Defendants contend that they "were not aware they were required to alter their documentation retention policies as it pertains to the leases" but that "[i]mmediately upon the resolution of the [June 27, 2016] phone conference – they began formally preserving those documents." (Defs.' Opp. at 7.) Upon the filing of this suit as a putative class action, Defendants should have, and did not, put a litigation hold in place to ensure the protection of relevant documents. *Design Basics, LLC v. Marhofer*, 2015 U.S. Dist. LEXIS 178465, at *3–4 (E.D. Mich. June 15, 2015) ("As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'") (citing *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008), (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

In this case, while the Court concludes that Defendants' failure to retain relevant information is deserving of sanctions, the extreme sanctions Plaintiff seeks are unwarranted. As noted above, dismissal is a harsh sanction which the Court should only order as a last resort in situations in which a party has acted in bad faith. Although Defendants have failed to preserve the lease agreements and Bubble/Penthouse Sheets, the Court cannot conclude that Defendants' delinquency is the type of extreme, willful, or contumacious conduct that warrants the most severe consequence of dismissal. Second, while Plaintiff has demonstrated that she is prejudiced by the destruction of lease agreements – namely because the lease agreements constitute "the only and best evidence regarding Contact Information and Wage Information for the dancers

described in Plaintiff's Motion for Sanctions," Plaintiff has receive thirty-seven lease agreements to date and will have other methods of identifying members of a class. (Pl.'s Reply at 4.) The third and fourth factors, that is, notice of the severity of a possible sanction and consideration of less severe sanctions, also weigh against entering default. Finally, as a general rule, the Court prefers to decide a case on its merits. *See, e.g., Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003); *Leak v. Lexington Ins. Co.*, 641 F. Supp. 2d 671, 674 (S.D. Ohio 2009) (" . . . as a general rule the Court prefers to decide a case on its merits rather than on a technicality.").

The Court likewise concludes that the alternative sanction Plaintiff requests, namely, precluding Defendants from employing a defense "that Ms. Hogan or any other server/bartender did not perform dances or was not subject to the same pay policies as the other dancers" is also too harsh to justify. Thus, for the reasons set forth above, Plaintiff's alternative requested sanction is too extreme under the circumstances presented here.

Instead, the Court concludes that sanctions in the form of attorneys' fees and expenses under Rule 37(b)(2)(C) are appropriate. Defendants' failure to retain relevant evidence has resulted in the Plaintiff incurring expenses in conducting the deposition of Jay Nelson, filing the instant Motion, and additional expenses in pursuing the production of the lease agreements and retention and production of Bubble/Penthouse Sheets.

Having imposed these lesser sanctions, the Court puts Defendants on notice that all available sanctions under Rule 37, including entry of default or an order prohibiting Defendants from presenting evidence in support of its defense against class certification, could be imposed if Defendants fail to retain and produce lease agreements and Bubble/Penthouse Sheets in the future.

III.

For the foregoing reasons, Plaintiff's Motion for Sanctions is **GRANTED IN PART AND DENIED IN PART**.  (ECF No. 43.)  Plaintiff's requested sanctions, including one for default judgment is **DENIED**.  The Court, however, **AWARDS** Plaintiff her reasonable attorney's fees and costs associated with bringing this Motion and conducting the 30(b)(6) deposition and **DIRECTS** Defendants to pay the same.  The Court encourages the parties to reach an agreement concerning the appropriate amount of fees to be awarded.  In the event the parties cannot reach such an agreement, Plaintiff shall file a supplemental memorandum in support of the awarded attorneys' fees and expenses, setting forth information that would permit the Court to assess the reasonableness of the fees requested, including the timekeeper, rate, and explanation of work, to the extent counsel may do so without violating the attorney-client privilege **WITHIN FOURTEEN (14) DAYS OF THE DATE OF THIS ORDER**.

**IT IS SO ORDERED.**

Date: June 8, 2017   /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE