# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JESSICA HOGAN, et al.,

    Plaintiffs,

v.

CLEVELAND AVE RESTAURANT INC.
d/b/a SIRENS, et al.,

    Defendants.

Case No. 2:15-CV-2883

JUDGE ALGENON L. MARBLEY

Magistrate Judge Deavers

## OPINION & ORDER

This matter comes before the Court on the Magistrate Judge's June 8, 2017 **Report and Recommendation** (ECF No. 81), which recommended that the Court grant in part and deny in part Plaintiff's Motion for Sanctions (ECF No. 43). For the reasons set forth below, this Court and **SUSTAINS** Plaintiff's Objections (ECF No. 91) and **ADOPTS IN PART and DENIES IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 81). Plaintiff's Motion for Sanctions (ECF No. 43) is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff[1] incorporated the Magistrate Judge's description of the facts of this case into her Objections, and this Court does the same. (*See* ECF No. 91 at 5). In sum, this is a wage and hour lawsuit brought on behalf of a group of bartenders and exotic dancers against a Columbus-

---

[1] At the time the Magistrate Judge filed its Report and Recommendation, there was only one Plaintiff in this case: Jessica Hogan. Subsequently, Plaintiff Dejha Valentine filed a Notice of Consent to Join the Action (ECF No. 87) and thus by the time Plaintiff Hogan objected to the Report and Recommendation, Ms. Valentine was also a plaintiff. (*See* ECF No. 91). For simplicity sake, the Court will refer only to Ms. Hogan throughout this Order as "Plaintiff".

area adult entertainment club, Defendant Cleveland Ave Restaurant, Inc., known as "Sirens," and individuals associated with Sirens, including Defendants F. Sharrak, M. Sharrak, Sullivan, and Alkammo (collectively, the "Sirens Defendants"). (ECF No. 1 at ¶ 30).[2] Plaintiff alleges that Defendants have engaged in unlawful employment practices, including charging Plaintiff fees for exotic dances for customers, charging Plaintiff 10% on customer tips left on credit cards, and requiring Plaintiff to pay tips to non-tipped employees. (ECF No. 74 at ¶ 3). Plaintiff alleges that Defendants' behavior violates the Fair Labor Standards Act ("FLSA"), Article II § 34(a) of the Ohio Constitution, and § 4113.15 of the Ohio Revised Code. (*Id.* at ¶ 4).

## B. Procedural History

On March 31, 2016, Plaintiff served discovery requests on the Sirens Defendants. (ECF No. 34-1). Defendants first responded to the requests on May 25, 2016. Plaintiff then moved to compel Defendants to answer their discovery requests, which the Court granted in part on December 15, 2016. (ECF No. 50). Before the Court granted in part the Motion to Compel, the Court held two telephonic status conferences with the parties. During the first conference, on June 27, 2016, the Court instructed the Defendants to broaden their responses to the discovery request to include the entire putative class, including dancers, as opposed to only bartenders, servers, and waitresses, as Defendants contended were at issue based on their characterization of Ms. Hogan's job. (ECF No. 31).

---

[2] After Plaintiff filed her Motion for Sanctions, she filed an Amended Complaint naming three additional defendants: Jay Nelson, an individual also associated with Sirens, and two entertainment club industry trade associations, Buckeye Association of Club Executives and the Owners Coalition. (ECF No. 74). Because these additional defendants were not parties to the lawsuit when the Motion for Sanctions was filed, this Order has no impact on them and the use of the term "Defendant" throughout refers only to the Sirens Defendants.

At the second conference, on September 1, 2016, Defendants' counsel represented to the Court that his clients did not have any documents that would be responsive to some of the discovery requests, namely a class list and documents showing when dancers worked. On October 3, 2016, however, Plaintiff deposed Sirens' Corporate Representative, Jay Nelson, who admitted that Sirens does, in fact, loosely track dancers' work in two ways: (1) through "Lease Agreements" and (2) through "Bubblesheets" and "Penthouse Sheets." (ECF No. 43-7). "Lease Agreements" are alleged contracts between the Sirens Defendants and dancers purporting to establish the dancers as independent contractors or renters/lessees under a lease agreement. (ECF No. 43 at 5). "Bubblesheets" are pieces of paper that Defendants use nightly to record dancers' names, whether the dancer in question paid her "rent" to the club, and how many private dances the dancer gave that night. (ECF No. 43-7 at 74-75). This information is recorded by the "friction monitor." (*Id.*). "Penthouse Sheets" are similar, but are used to record dancers' 'Champagne Room' (or private dancer) performances. (*Id.* at 91-92).

According to Mr. Nelson's deposition, it is Defendants' practice to shred Bubblesheets and Penthouse Sheets daily, the morning after the recorded shifts occurs. (*Id.* at 86, 93). It was also Defendants' practice to destroy the Lease Agreements for any dancers who have not worked at Sirens for a month or longer. (ECF No. 43-7 at 110). It is undisputed that Defendants continued to destroy Lease Agreements for some period of time after this lawsuit was filed on October 6, 2015, but no longer do so. There is a dispute over precisely *when* Defendants stopped destroying the Lease Agreements. Defendants contend that they were "not aware they were required to alter their documentation retention policies as it pertains to leases" until the June 27, 2016 status conference, after which time they stopped destroying them. (ECF No. 47 at 3, 7). Defendants' position is that the lawsuit was only about bartenders and waitresses, like Ms.

Hogan, so the Lease Agreements—which pertain only to dancers—were not relevant and did not need to be preserved until the Court instructed Defendants to broaden their responses during the June 27 status conference.

Plaintiff, on the other hand, contend that Defendants did not stop destruction of the Lease Agreements until after the October 3, 2016 deposition. (ECF No. 58 at 8-9). The Magistrate Judge agreed with Plaintiff and found that Defendants' assertion that record destruction ceased before the deposition "is inconsistent with Jay Nelson's Testimony." (ECF No. 81 at 4). As to the Bubblesheets and Penthouse Sheets, it is undisputed that Defendants did not stop destroying them until after Mr. Nelson's deposition. Defendants' position is that the Bubblesheets and Penthouse sheets were not responsive to Plaintiff's requests because they only contained dancers' stage names and because all of the financial information in the sheets was preserved on an electronic database, QuickBooks. (ECF No. 47 at 4). Mr. Nelson's deposition testimony demonstrates that QuickBooks does not record any information by dancer nor contain any dancers' name—it is merely a tool to record the total amount of money made by the club in one shift. (ECF No. 43-7 at 98).

On November 21, 2016, Plaintiff filed the Motion for Sanctions, seeking to impose a variety of sanctions on Defendants for their destruction of the Lease Agreements and Bubblesheets and Penthouse Sheets (ECF No. 43). Plaintiff contends the destruction of these documents amounts to both spoliation and a disregard of the Court's order to produce documents related to exotic dancers (ECF No. 31). Plaintiff's motion sought seven different sanctions: (1) certifying as a class dancers who stopped working at Sirens from just prior to the start of the lawsuit (October 6, 2015) until the date when Defendants stopped destroying the information (October 4, 2016) ("the Spoliation Class") and granting default judgment against Defendants

with respect to the Spoliation Class; (2) authorizing a class action notice of this lawsuit and the default judgment to the Spoliation class; (3) payment of unpaid wages and damages to the Spoliation Class members; (4) precluding Defendants from asserting a defense "that Ms. Hogan or any other server/bartender did not perform dances or was not subject to the same pay policies as other dancers"; (5) ordering Defendants to post a bond of $1,200,000 for the above claims; (6) ordering Defendants and/or counsel to pay Plaintiff's attorney's fees and costs with respect to Plaintiff's motion to compel, the Rule 36(b) deposition, this motion, and any subsequent work related to these issues; and (7) scheduling a hearing for Defendants and their counsel to show cause as to why they are not in contempt of this Court's June 28, 2016 Order. (ECF No. 43 at 18-19).[3]

On June 8, 2017, the Magistrate Judge issued a Report and Recommendation recommending that this Court award sanctions in the form of attorney's fees and expenses under Rule 37(b)(2)(C). (ECF No. 81 at 7). The Magistrate Judge found that Defendants should have, but did not, put a litigation hold in place and did deserve sanctions, but that the other sanctions Plaintiff's sought were extreme and unwarranted. (*Id.* at 6-7). Plaintiff filed an Objection to the Report and Recommendation on June 22, 2017, objecting to the conclusion that sanctions greater than a fee/cost award were not warranted. (ECF No. 91). Defendants did not file a response to Plaintiff's objection.

---

[3] In Plaintiff's Objection, she suggests alternative sanctions, including: (1) appointing a Special Master to oversee the notice and opt-in process at Defendants' expense; (2) requiring Defendants to pay, up front, the costs of providing alternative notice to putative class members; (3) tolling the statute of limitations for all affected class members; (4) keeping the opt-in period open for one year; and (5) requiring Defendants to pay a fine to Plaintiff as a result of their misconduct. (ECF No. 91 at 17).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(b) authorizes sanctions for a party's failure to obey an order requiring discovery. Sanctions may include directing facts to be taken as established, prohibiting the disobedient party from supporting or opposing designated claims or defenses, striking pleadings, staying proceedings, dismissing the action, rendering default judgment against the disobedient party, or treating as contempt of court the failure to obey any order[4]. FED. R. CIV. P. 37(b)(2)(A). The Court may also order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure to obey an order. FED. R. CIV. P. 37(b)(2)(C). In determining an appropriate sanction under Rule 37, "a court may properly consider both punishment and deterrence." *JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, No. 2:06-CV-0095, 2007 WL 1989752, at *4 (S.D. Ohio July 9, 2007). "The burden of proof is on the sanctioned party to establish that its failure to comply was due to inability and not to willfulness, bad faith, or any fault of the party . . . [which] includes gross negligence." *Id.* (quotations omitted). Default judgment should be a last resort. *See Phelps v. MacConnell*, No. 3:12CV00344, 2014 WL 2006716, at *2 (S.D. Ohio May 16, 2014).

## III. ANALYSIS

Plaintiff first argues that the Magistrate Judge erred in concluding that Plaintiff could obtain the information elsewhere because, unlike in typical wage and hour cases, Defendants do not maintain payroll records for the dancers, and thus Plaintiff's suffered greater harm than the Magistrate Judge found. (ECF No. 91 at 4). Plaintiff next disputes the Magistrate Judge's finding that Defendants' behavior was not "the type of extreme, willful, or contumacious

---

[4] There are exceptions to the Court's ability to treat failure to obey as contempt of Court for orders to submit to physical or mental examinations. These exceptions are not at issue here.

conduct" that warrants the harshest sanctions. (*Id.* citing ECF No. 81). Ultimately, Plaintiff contends that the attorney's fees and cost award is not a severe enough sanction for such an "egregious destruction of evidence." (*Id.* at 4, 13). Plaintiff reasons that the award does nothing to deter Defendants' conduct and still leaves Defendants in a better place than they would have been if they had preserved the evidence. (*Id.* at 13-14). Plaintiff stresses the importance of the documents at issue, which are the only documents Defendants have (or had) to show who danced for them and when, which is critical information for both identifying class members and proving how often members worked, or if they even worked, for Sirens. (*Id.* at 11-12).

Plaintiff's concerns are well taken. As the Magistrate Judge correctly found, Defendants should have, and did not, put a litigation hold in place to ensure the protection of relevant documents. Not only did Defendants fail to do so, they also actively destroyed documents every day during the pendency of the litigation, even *after* the Magistrate Judge ordered them to produce discovery relating to a broader class of individuals, including dancers. *See* ECF No. 43 at 90 ("Q: [O]n all of those days since this lawsuit has been filed, you've been shredding the bubble sheet? A: Absolutely."); *see also id.* at 134-35 (admitting Defendants have destroyed Lease Agreements during the time the lawsuit has been pending). Accordingly, this Court agrees with the Magistrate Judge that "Defendants' failure to retain relevant information is deserving of sanctions" and **ADOPTS** the Report and Recommendation in so far as it grants Plaintiff attorney's fees and costs. The Court, however, **DENIES** the Report and Recommendation to the extent that it conclusively determined fees and costs are the only sanctions warranted.

This Court will grant the seventh sanction requested in Plaintiff's Motion and schedule a hearing for Defendants and their counsel to show cause as to why they are not in contempt of this Court's June 28, 2016 Order. The parties are therefore **ORDERED** to appear on **Thursday,**

**May 9, 2018, at 2:00 p.m.** before the Honorable Algenon L. Marbley, United States District Court, 85 Marconi Boulevard, Columbus, Ohio, Court Room 1, Room 331. At that time, Defendant must show cause as to (1) why they should not be further sanctioned; and (2) why this Court should not proceed with a criminal contempt prosecution, pursuant to its authority under 18 U.S.C. §401[5], for spoliation of evidence and Defendants' failure to follow the Court's June 27, 2016 Order (ECF No. 31). After the show cause hearing takes place, the Court will determine whether any further sanctions are warranted, depending on whether Defendants' actions were due to willfulness, bad faith, or any fault of their own. Consistent with the Magistrate Judge's Order awarding fees and costs, the Sirens Defendants will bear the costs related to the hearing.

## IV. CONCLUSION

For the reasons set forth above, this Court **ADOPTS IN PART and DENIES IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 81). The Court adopts the recommendation in so far as it awards attorney's fees and costs to Plaintiff. The Court rejects the recommendation in so far as it conclusively limits sanctions to only fees and costs. The Plaintiff's Motion for Sanctions (ECF No. 43) is therefore **GRANTED** and Plaintiff's

---

[5] In pertinent part, 18 U.S.C. § 401 provides that:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as-
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>      . . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Objections (ECF No. 91) are **SUSTAINED**.  The parties are **ORDERED** to appear before the Court on **May 9, 2018, at 2:00 p.m.**, at which time Defendants must show cause as to why they should not be further sanctioned or held in contempt.  After such hearing, the Court will determine what, if any, further sanctions are warranted.

    **IT IS SO ORDERED.**


    _s/Algenon L. Marbley_
    **UNITED STATES DISTRICT JUDGE**

**March 22, 2018**