IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA HOGAN, et al.,

      Plaintiffs,

                                             Case No. 2:15-CV-2883

v.

                                             JUDGE ALGENON L. MARBLEY

CLEVELAND AVE RESTAURANT INC.
d/b/a SIRENS, et al.,

                                             Magistrate Judge Deavers

      Defendants.

## OPINION & ORDER

This matter comes before the Court on Defendants Buckeye Association of Club Executives and The Owners' Coalition's Motion to Dismiss (ECF No. 93). For the reasons set forth below, the Motion to Dismiss is **DENIED**.

## I. BACKGROUND

### A. Factual Background[1]

Defendant Cleveland Ave Restaurant, Inc., known as "Sirens" is an adult entertainment club in Columbus, Ohio. (ECF No. 74 at ¶ 2). Defendants F. Sharrak, M. Sharrak, Sullivan, Alkammo, and Nelson are all individuals associated with Sirens (collectively, with Sirens, the "Sirens Defendants"): F. Sharrak directed pay policies and made hiring and firing decisions, M. Sharrak is one of the owners, Sullivan was the General Manager, Alkammo was a part-owner or investor, and Nelson is the director of operations. (*Id.* at ¶¶ 13-27). The Sirens Defendants employed Plaintiff Jessica Hogan in various roles at different times, including as an exotic dancer, a bartender, a waitress, and a "friction monitor," which is a security/monitoring function.

---

[1] In adjudicating this motion to dismiss, the Court accepts as true all well-pleaded factual allegations from the second amended complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

(*Id.* at ¶¶ 29, 40). Ms. Hogan alleges that the Sirens Defendants employed a number of unlawful pay practices, including charging her fees when she performed exotic dances for customers, charging her 10% on all customer tips left on credit cards, and requiring her to pay tips to non-tipped employees. (*Id.* at ¶ 3).

Additionally, Sirens utilizes a "Tenant System" by which it requires dancers to sign a "Lease Agreement" purporting to establish the dancers as independent contractors or renters/lessees under a lease agreement. (*Id.* at ¶¶ 1, 45). Thus, Sirens does not pay the dancers any wages, and instead requires them to pay the club "rent" of $50 each night they perform. (*Id.* at ¶¶ 1, 48). The Lease Agreement also includes a "damages" provision, requiring the dancer to pay $50 for "each lease time" that the dancer misses. (*Id.* at ¶ 48). Under the agreement, the club owner establishes a "fixed fee for the price of specialty dances" such as private, champagne, and table dances. (*Id.*). The agreement notes that dancers "may be subjected to advances by customers, to depictions or portrayals of explicit fantasy sexual conduct, or to similar types of behavior," but purports to require the dancer to submit, "not be offended by such conduct," and to assume all associated risks. (*Id.*). Finally, the owner is entitled to "modify, delete or add to any of the conditions contained" in the Lease Agreement "without notice" to the dancer. (*Id.*).

Defendants Buckeye Association of Club Executives ("BACE") and the Owners' Coalition ("OC") are the two main Ohio entertainment club industry trade associations. (*Id.* at ¶ 5). According to the Amended Complaint, BACE and OC are responsible for the use of the Tenant System. (*Id.* at ¶¶ 5, 36). BACE and OC's member clubs, including Sirens, use the Tenant System pursuant to a mutual understanding and common plan that amounts to an "industry agreement" designed to deny exotic dancers their rightful minimum wages. (*Id.* at ¶¶ 36, 45).

2

## B. Procedural History

On October 6, 2015, Ms. Hogan filed this wage and hour lawsuit as a collective and class action against the Sirens Defendants[2] alleging that their policies and actions violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*,; Article II § 34(a) of the Ohio Constitution; and § 4113.15 of the Ohio Revised Code. (ECF No. 1 at 10-12). On May 19, 2017, Ms. Hogan filed an Amended Complaint, this time adding Defendants BACE and OC. (ECF No. 74). As with the initial Complaint, the Amended Complaint includes collective action and class action allegations against the Sirens Defendants.[3] In addition to the class and collective allegations against the Sirens Defendants, Ms. Hogan brings both statewide collective and statewide class allegations in the Amended Complaint. First, the "Statewide Class Action" is brought against a defendant class encompassing Sirens, BACE, OC, and the BACE[4]-member adult entertainment clubs throughout Ohio that have used and/or are using the Lease Agreement and/or the Tenant System. (*Id.* at ¶ 73). The "Statewide Plaintiff Class" is defined as:

> All persons who performed exotic dancing at any BACE-member adult entertainment club in Ohio within the past six years while subject to the Lease Agreement, the Tenant System, or any similar ruleset.

---

[2] The initial Complaint did not include Sirens Defendant Nelson, who was added in the Amended Complaint.

[3] The Sirens collective action is brought on behalf of: "All persons who worked for the Sirens Defendants from October 6, 2012 to the present, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked." (*Id.* at ¶ 61). For the class action allegations, the "Sirens Class" is defined as: "All persons who worked for the Sirens Defendants within the past six years, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked." (*Id.* at ¶ 66).

[4] The Amended Complaint uses "BACE" to refer to both BACE and OC because OC and BACE merged in 2015. (*Id.* at ¶ 3). Thus, "BACE-member" will refer to members of both BACE and OC throughout this Order, and any quote from the Amended Complaint that refers to "BACE" also includes OC.

(*Id.* at ¶ 75). The "Statewide Defendant Class" is defined as:

> All BACE-member adult entertainment clubs and employers in Ohio within the past six years that used and/or are using the Lease Agreement, the Tenant System, or any similar ruleset.

(*Id.* at ¶ 77). Second, a statewide collective action is brought against the same Statewide Defendant Class, on behalf of the "Statewide Collective," defined as:

> As persons who performed exotic dancing at any BACE-member adult entertainment club in Ohio from October 6, 2012 to the present, while subject to the Lease Agreement, the Tenant System, or any similar ruleset.

(*Id.* at ¶ 90).

Based on BACE and OC's inclusion in the Statewide Defendant Class, the Amended Complaint contains the following causes of action against BACE and OC:

- Tenth Count: Antritrust Violations (by the Sirens Class against the Sirens Defendants and by the Statewide Plaintiff Class against the Statewide Defendant Class); and

- Eleventh Count: Civil Conspiracy (by the Sirens Class against the Sirens Defendants and by the Statewide Plaintiff Class against the Statewide Defendant Class).

On June 15, 2017, Plaintiff Dehja Valentine filed a Notice of Consent to Join Action. (ECF No. 87). On June 23, 2017, Defendants BACE and OC filed the instant Motion to Dismiss Plaintiff's First Amended Class and Collective Action Complaint seeking to dismiss all counts against them. (ECF No. 93). The Motion is fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court

4

must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III. ANALYSIS

BACE and OC's primary argument in their Motion to Dismiss is that Plaintiffs cannot establish that BACE and OC are "employers" under the FLSA or Ohio wage and hour laws. (ECF No. 93 at 12-17). Plaintiffs respond that BACE and OC misinterpret the allegations against them—Plaintiffs only seek damages and injunctive relief against them under two causes of action: the Tenth Count for violations of federal and Ohio antitrust laws, and the Eleventh Count for civil conspiracy under Ohio Law. (ECF No. 106 at 3-4). The thrust of Plaintiffs' allegations are that BACE and OC *conspired* with their member clubs in carrying out the wage and hour violations, not that BACE and OC are "employers" that can be liable themselves under the statutes. Thus, it is irrelevant whether BACE and OC are "employers" under FLSA or Ohio wage and hour laws.

In response to Plaintiffs' concession that the FLSA and Ohio wage and hour counts are not brought against them, BACE and OC argue that because they are not the target of Counts 1

through 7, 9, 12 or 13, and instead are implicated by "*only two causes of action*" Plaintiffs' action against them is "a fishing expedition." (ECF No. 110 at 3-4) (emphasis in original). This argument is not well taken—Defendants cite no authority (and the Court is aware of none) for the proposition that the number of causes of action against a particular defendant is in any way relevant to the merits of the allegations. Thus, the only remaining issue is whether the Amended Complaint states a cause of action for conspiracy and anti-trust violations.[5]

### A. Anti-Trust

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1. To state a claim under §1 of the Sherman Act, a complaint must have "enough factual matter (taken as true) to suggest than an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* To plead an unlawful agreement to restrain trade in violation of the Sherman Act, "a plaintiff may allege either an explicit agreement to restrain trade, or sufficient circumstantial evidence tending to exclude the possibility of independent

---

[5] In considering these issues, the Court will not consider the documents Defendants attached to their motion. Defendants attached two declarations, copies of their organizations' mission statements, and copies of their organizations' state corporate documents. None of these materials are attached to Plaintiffs' complaint, nor discussed therein. The Court will thus not consider them at the motion to dismiss stage. *See Jackson v. Thompson*, No. 2:05-CV-00823, 2006 WL 1697631, at *3 (S.D. Ohio June 20, 2006) ("[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment.").

conduct. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (quotations omitted). The Ohio Valentine Act (R.C. § 1331.01, *et. seq.*) is patterned after the Sherman Act and Ohio courts consistently interpret the Valentine Act in accordance with federal judicial construction of the federal antitrust laws. *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 797 (Ohio 2005); *C. K. & J. K., Inc. v. Fairview Shopping Ctr. Corp.*, 407 N.E.2d 507, 509 (Ohio 1980).

Here, Plaintiffs have set forth sufficient allegations that, if taken as true, show an agreement among BACE and OC and BACE-member clubs to employ the Lease Agreement and/or Tenant System. Indeed, they allege an actual agreement to use the Lease Agreement, that Sirens itself characterized as an "industry agreement" under oath (ECF No. 74 at ¶ 45). Plaintiffs allege that there is an "industry agreement among BACE-member clubs to employ and not deviate from the Lease Agreement and the Tenant System." (*Id.* at ¶ 129). Plaintiffs contend that it would not be in the best interest of the clubs individually to adopt the Lease Agreement, and thus they all committed to adopting it. (*Id.*). In addition to the Lease Agreement, Plaintiff alleges that BACE-member clubs have a "blacklisting system" that allows them to "in effect boycott dancers" who "cause[] problems". (*Id.*). Plaintiffs allege that through "these unlawful and collusive practices, the Sirens Defendants, BACE, and BACE-member clubs throughout Ohio that compromise the Statewide Defendant Class and use the fraudulent Lease Agreement and/or Tenant System conspired to concoct and fix, and they did in fact fix, the price of the so-called 'rent' and 'damage' charged by such clubs." (*Id.* at ¶ 132). Plaintiffs allege that Defendants anti-competitive conduct "has restrained or eliminated price competition" resulting in Plaintiffs being paid less than they would have been in the absence of the agreement. (*Id.* at ¶ 134).

Defendants argue that the mere fact that they, as professional organizations, made the Lease Agreement forms available to their members does not constitute an "agreement" sufficient to state an anti-trust claim. (ECF No. 110 at 7). Regardless of whether merely making a form available is sufficient for liability, Defendants' argument misses the mark because Plaintiffs allege that BACE and OC did more than merely make the forms available. As detailed above, Plaintiffs allege that BACE and OC, acting in concert with BACE-members, conspired to agree to set the price of "rent" and "damage" resulting in Plaintiffs being paid less than they would have been in a competitive market. At this stage, Plaintiffs' allegations must be taken as true and they will be allowed discovery into the specific conduct of BACE and OC.

Defendants next argue that because the professional associations have no business, there can be no "parallel conduct." But Plaintiffs are not *required* to show parallel conduct; it is merely a vehicle (in combination with other "plus factors") that can be used to show circumstantial evidence of a conspiracy. *See Twombly*, 550 U.S. at 556-57; *Watson Carpet & Floor Covering, Inc.*, 648 F.3d at 457. Here, Plaintiffs have alleged a direct, explicit "industry agreement" to employ a price-fixing contract (a copy of which is already in the record), and a blacklisting system, and thus need not even show parallel conduct or plus factors.

Defendants cite no case for the proposition that a trade association cannot be liable for a conspiracy under federal or state anti-trust law. Instead, they first point to the cases cited by Plaintiff and state that those cases do not involve trade associations. (ECF No. 110 at 3). Merely because a case does not involve a particular type of defendant, however, does not mean that the law does not recognize a claim against such defendant. Indeed, if the cases did not involve trade associations to begin with they cannot support Defendants' assertion that such a claim cannot be brought, since the issue would not have been properly before the court in those cases. Further,

the Court notes it is Defendants responsibility at this stage as the movant to show that Plaintiffs have not alleged a set of facts that would entitle them to relief—Plaintiffs do not bear the burden of finding supporting case law, they must merely respond to Defendants' arguments. In any event, the Supreme Court has held that trade associations can be liable for anti-trust violations. *See Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 577–78 (1982) (holding trade association can be liable for anti-trust violations).

Next, Defendants contend that BACE and OC cannot be liable because "the very authorities the Plaintiff relies on to show the 'dancer lease agreement' business model has been around for decades nullifies" the argument that BACE and/or OC created the "'dancer lease agreement' business model." (ECF No. 110 at 8). In other words, Defendants argue that they cannot be liable because they were not the first group to ever conceive of the leasor/lessee model. But Plaintiffs' allegations do not depend on whether or not BACE and OC created the model—they need only show that they conspired with the clubs to come to an agreement to use the leases to fix-price and restrain competition. They sufficiently allege so in the Amended Complaint.

### B. Civil Conspiracy

Ohio's tort of civil conspiracy "has been defined as a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). An underlying unlawful act is required for a civil conspiracy claim and the acts of co-conspirators are attributable to each other. *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998); *see also* Prosser & Keeton on Torts (5 Ed.1984) 323, Section 46 ("All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or

9

further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable." [Footnotes omitted.] ).

Here, the underlying claims on which the civil conspiracy claims are based are the wage and hour violations, which Defendants do not argue did not occur. Instead, Defendants argue that the civil conspiracy claim "is clearly a cause of action under the FLSA, which involves the 'employer,' and not the associations any 'employer' may be associated with." (ECF No. 110 at 9). But Plaintiffs' civil conspiracy claim is not brought under the FLSA, it is brought under Ohio tort law. Defendants contend that FLSA claims and conspiracy claims—whether civil conspiracy or antitrust or otherwise—cannot coexist in a single complaint. (*Id.*). They argue that there is no conspiracy provision under the FLSA, like there is in other statues. (ECF No. 93 at 18). While it is undoubtedly true that the FLSA itself does not contain a conspiracy provision, as Plaintiffs admit, it does not follow that other types of conspiracy claims, including anti-trust claims and civil conspiracy claims, cannot be plead in the same complaint as an FLSA claim. *See Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1070 (D. Colo. 2016) (upholding antitrust conspiracy claims and FLSA claims brought in same complaint). Defendants contend *Beltran* is inapplicable because it does not involve trade associations. As mentioned, however, Defendants point to no legal authority for the proposition that trade associations cannot be liable in conspiracy claims premised on FLSA violations or antitrust violations, and the Supreme Court has held trade associations can be liable for antitrust violations, so their argument is not well taken. *See Am. Soc. of Mech. Engineers, Inc.*, 456 U.S. at 577–78.

## IV. CONCLUSION

For the reasons set forth above, BACE and OC's Motion to Dismiss Plaintiff's First Amended Class and Collective Action Complaint (ECF No. 93) is **DENIED**.

IT IS SO ORDERED.

DATED: March 26, 2018

_s/Algenon L. Marbley_
**UNITED STATES DISTRICT JUDGE**