IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA HOGAN, et al., | : |
| | : |
|       Plaintiffs, | : |
| | : Case No. 2:15-CV-2883 |
|     v. | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| CLEVELAND AVE RESTAURANT INC. | : |
| d/b/a SIRENS, et al., | : Magistrate Judge Deavers |
| | : |
|       Defendants. | : |

**OPINION & ORDER**

**I.        INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion to Enforce Settlement Agreement. (ECF No. 235) and expedite consideration of said motion (ECF No. 236). Defendants have responded, arguing that they have complied with the terms of the Settlement Agreement. (ECF No. 240). For the reasons stated below, this Court **GRANTS** the Plaintiffs' Motion to Enforce (ECF No. 235) and the Motion to Expedite Consideration of said motion (ECF No. 236).

**II.        BACKGROUND**

On December 10, 2019, this Court granted the Parties' respective motions for settlement of the claims between Defendants and two separate classes of Plaintiffs—the "Entertainer" and "Bartender" classes. (ECF No. 230). As part of the Settlement Agreement, Defendants were required to produce to Plaintiffs contact information for all entertainers eligible to opt in. On January 2, 2020, Defendants produced to Plaintiffs a spreadsheet containing the names of approximately 80 entertainers and referred Plaintiffs to their prior productions of entertainer contracts (referred to as Tenant Lease Agreements) as a means of satisfying their obligations

under the Settlement Agreement. (ECF No. 235 at 3-4). Plaintiffs argue that this is insufficient and that the terms of the Settlement Agreement indicate that Defendants were required to produce contact information for all entertainers in the form of one spreadsheet. *Id.* Defendants counter that they have satisfied their obligation by their prior production of documents. (ECF No. 240).

### III.  STANDARD OF REVIEW

Public policy favors settling cases without litigation, and thus settlement agreements should be upheld whenever it is equitable to do so. *Graley v. Yellow Freight Sys., Inc.*, No. 98-4166, 2000 WL 799779, at *4 (6th Cir. June 14, 2000) (internal citation omitted). Settlement agreements are a type of contract, so "the formation and enforceability of a purported settlement agreement are governed by state contract law." *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1191 (S.D. Ohio 2013) (citing *Smith v. ABN AMRO Mortg. Grp. Inc.,* 434 F. App'x 454,460 (6th Cir. 2011); *see also Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Here, the applicable law is Ohio contract law, since the parties are all Ohio residents and the Settlement Agreement was entered into in Ohio. *See Edwards v. Hocking Valley Cmty. Hosp.*, 87 F. App'x 542, 550–51 (6th Cir. 2004).

Before enforcing a settlement agreement, a court is required to conclude that agreement has been reached on all material terms. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001). Further, the essential terms of the settlement must be "reasonably certain and clear."  *Rulli v. Fan* Co., , 376 (1997).  Summary enforcement of an agreement, without holding a hearing, is appropriate where the parties "do not dispute material facts pertaining to the existence or terms of a settlement agreement." *Graley v. Yellow Freight Sys., Inc.*, 221 F.3d 1334 (6th Cir. 2000). When enforcing an agreement, a court is not permitted to alter the terms of the agreement,

2

but rather, must enforce the settlement as agreed to by the parties. *Heimberger v. Pritzker*, No. 2:12-CV-01064, 2015 WL 5582254, at *3 (S.D. Ohio Sept. 23, 2015).

### IV.     LAW & ANALYSIS

Neither Plaintiffs nor Defendants dispute that they came to an agreement on the material terms of the settlement. Instead, the sole point of contention between Defendants and Plaintiffs relates to whether the parties agreed that Defendants would provide Plaintiffs' counsel with a complete list, in the form of a spreadsheet, of all entertainers including their mailing and email addresses. (ECF No. 235 at 3; No. 240 at 2). Defendants argue that they have complied with the terms of the Settlement Agreement by providing a list of all of their more recent entertainers and through their prior production of "Tenant Lease Agreements"—20 page contracts that dancers signed upon hiring for their entertainers who worked for them in prior years. (ECF No. 235 at 5; No. 240 at 3). Plaintiffs argue that the prior production of Tenant Lease Agreements does not satisfy Defendant's obligation to produce a complete list of all entertainers and their contact information.

The Settlement Agreement does not specifically require a list or spreadsheet but does state in Section 5.B. that:

> Within 21 days of the Court's preliminary approval, Defendants will provide Plaintiffs with the most up-to-date contact information for each Entertainer, including mailing address and email address, if available to Defendants.

(ECF No. 223-1 at 5).

Defendants argue that the Agreement does not specify the method of production and that Defendants' prior production of the dancers' contracts satisfies their obligations under the Settlement Agreement because Plaintiffs "have been provided the exact same contact information in the exact same format, as that information is kept by Defendants." (ECF No. 240 at 3). Plaintiffs

3

argue that in the context of employment law class action settlements, the production of a consolidated list of all employees is an "unremarkable concept." (ECF No. 235 at 3). Plaintiffs add that even though the Agreement does not specify the exact manner of production, it does require an affirmative production, of all contact information for "each Entertainer" and a mere reference to prior document productions does not satisfy Defendants' obligation affirmatively to produce contact information for each entertainer. (ECF No. 246 at 2-3).

To enforce a contract summarily, a court is required to make a finding that there is a "meeting of the minds as to the essential terms of the contract." *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, 96 Ohio St. 3d 1, 3, 770 N.E.2d 58, 61. A dispute over the meaning of a particular provision in a contract does not "constitute an absence of a material term that could defeat the enforceability of the contract." *Santomauro v. Sumss Prop. Mgmt., LLC*, 2019-Ohio-4335, ¶ 33, 134 N.E.3d 1250, 1262–63 (internal citations omitted). Here, the parties do not dispute that there was a meeting of minds on all the essential terms (the payment of a sum to settle claims by two classes of plaintiffs), but do dispute the meaning of an ancillary provision in the Agreement.

A court's "primary objective" when analyzing a written agreement is "to ascertain and give effect to the intent of the parties by examining the language that they chose to employ." *Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 2015-Ohio-4879, ¶ 29. First, the court must determine whether the disputed language is "plain and unambiguous." *Id*. (internal citations omitted). Language is unambiguous when it is "clear, definite, and subject to only one interpretation." *Id*. Contract language is ambiguous if it is "unclear, indefinite, and reasonably subject to dual interpretations." *Id*. When a contract contains ambiguous language or "when the circumstances surrounding the agreement invest the language of the contract with a special

meaning," "the intent of the parties becomes a question of fact" and a court is permitted to examine extrinsic evidence "in an effort to give effect to the parties' intentions." *Id*. at ¶ 32.

Here, the language of Section 5.B. of the Settlement Agreement is ambiguous and subject to two reasonable interpretations. Plaintiffs' interpretation of the provision at issue is a reasonable one since a plain reading of it indicates that Defendants are required to provide the most up to date contact information for "each" dancer, and not only the most recently employed dancers. The provision also does not indicate that Defendants are exempt from reproducing information that they have already produced. Defendants' interpretation is also reasonable since the provision does not explicitly indicate that they are to produce the contact information in a spreadsheet.

Where an ambiguity exists in the terms of a contract, a court is permitted to examine extrinsic evidence to determine the intent of the parties. Permissible "extrinsic evidence may include: "(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave their agreement." *Schempp v. GC Acquisition, LCC*, 161 F. Supp. 3d 584, 591 (N.D. Ohio 2014), *aff'd. Schempp v. GC Acquisition, LLC*, 630 F. App'x 541 (6th Cir. 2015) (citing *U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201, 1208 (1998)).

Plaintiffs argue that their reading of the Settlement Agreement is supported by their Motion for Settlement, which requires that "Defendants provide Class Counsel with the final list of bartenders and entertainers and their contact information." (ECF No. 223 at 21). Defendants argue that Plaintiffs' motion is a unilateral motion and that they objected to Plaintiffs' proposed motion and filed their own. While Defendants are correct that Plaintiffs' motion was a unilateral one, Defendants' own separate Motion for Settlement noted that Defendants did not disagree with the

5

terms of the Settlement as set forth in Plaintiffs' motion. On the second page of Defendants' Motion for Settlement, Defendants wrote:

> Defendants now submit their own motion for preliminary approval. It is not intended to "oppose" Plaintiffs' motion, but is intended only to correct some of the factual representations – which do not affect the ultimate terms of the settlement between the parties – that appear in Plaintiffs' motion.

(ECF No. 228 at 2). Thus, Defendants' Motion for Settlement reflects the understanding that the ultimate terms of the settlement were accurately reflected in Plaintiffs' Motion.

Defendant argues that the Court cannot enforce Plaintiffs' statements made in its unilateral motion against it. (ECF No. 240 at 6). A party's "objective manifestation of intent," however, can be used to interpret the terms of an ambiguous provision in a contract. *See Grant v. JPMorgan Chase Bank, N.A.*, No. 1:16 CV 2475, 2017 WL 5613928, at *3 (N.D. Ohio Nov. 21, 2017) (granting plaintiff's motion to enforce contract and relying on defendant's email to the court sent prior to dispute which supported plaintiff's view of contract). Since Plaintiffs' Motion for Settlement makes clear that Defendants were to produce a "final list" of bartenders and entertainers and their contact information, and Defendants agreed with these terms in their submission to the Court, they cannot now claim that they were unaware of the intended meaning of Section 5.B. Accordingly, the disputed provision requires Defendants to produce a complete list, and not merely reference a prior document production.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motions (ECF No. 235; No.236) are **GRANTED**. Defendants are **ORDERED** to provide Plaintiffs with a complete and accurate list of all entertainers and bartenders and their contact information.

**IT IS SO ORDERED.**

                                                                                   /s/ _____

                                                                                   **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 14, 2020**