**In the United States District Court
for the Southern District of Ohio
Eastern Division**

_____

Jessica Hogan, *et al.*,

                 Plaintiffs,

      v.

Cleveland Ave Restaurant, Inc. (d/b/a
Sirens), *et al.*,

             Defendants.

Case No. 2:15-cv-2883

Judge Marbley

Magistrate Judge Deavers

Jury Demand Endorsed Hereon

_____

**Second Amended and Supplemented Class and Collective Action Complaint**
_____

## I.    Case Overview

1.    Adult entertainment clubs throughout Ohio, including Sirens,[1] Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West, as well as the ownership and management of those clubs, have conspired and colluded with defendants Greg Flaig, The Owners Coalition ("OC"), and Buckeye Association of Club Executives

---

[1] Throughout this complaint, allegations, paragraphs, or entire sections detailing the identity and conduct of, and the claims asserted against, the Sirens defendants have been left intact and marked "reserved" (or partially so) to indicate that they are being restated here in case either the Settlement reached with those defendants is not approved or the Sirens defendants do not fulfill their obligations under it.

("BACE") to deny exotic dancers their rightful minimum wages and to require such dancers to pay the club owners artificial and illegal fees just to work at their clubs. These fees include but are not limited to a charge for "rent" that dancers are forced to pay under the complete and utter fiction that they are "leasing space" from the clubs while dancing there. Greg Flaig of both OC and BACE is the hub of this conspiracy and architect of the unlawful practices and policies these clubs, club owners, and club managers utilize collusively, which he has dubbed the Entertainer Tenant System, also known simply as the Tenant System (hereinafter "the Tenant System"). Central to the Tenant System Flaig has devised are form documents used by clubs that have evolved since 2009, the principal component of which Flaig calls the "Entertainer Tenant Space Lease Agreement" (hereinafter "the Lease Agreement"). These clubs, their owners, and their managers use the Tenant System and the Lease Agreement to avoid paying their dancers *any* wages. Instead, they actually exact ***from their dancers***, for the privilege of working at their clubs, one-half or more of what the dancers earn from customers. This case seeks to end the unlawful and collusive practices comprising the Tenant System and the use of the Lease Agreement in Ohio and to restore to affected dancers both their rightful legal status and the charges illegally collected or diverted by these clubs and their co-conspirators.

## II.     The Parties

### A.     The Defendant Clubs, Club Owners, and Club Managers

2.     (*Reserved*) Sirens is an adult entertainment club in Columbus, Ohio owned by an entity formerly known as "Cleveland Ave Restaurant, Inc.," now known as "Cleveland

Avenue Café" (hereinafter "Sirens"), and operated by defendants Francis Sharrak, Michael Sharrak, Chad Sullivan, Jay Nelson, and Dominick Alkammo (collectively "the Sirens defendants"). The Sirens defendants employed plaintiffs Jessica Hogan and DeJha Valentine as exotic dancers, paid them less than minimum wages, and charged them various artificial and illegal fees to work at the club.

3. Cheeks is an adult entertainment club in Dayton, Ohio owned by defendant Lee Hale ("Hale") and managed and operated by Hale and defendant Eric Cochran ("Cochran") (collectively "the Cheeks defendants"). The Cheeks defendants similarly have employed exotic dancers, have paid them less than minimum wages, and have charged them various artificial and illegal fees to work at the club under the artifice known as the Tenant System.

4. Top Hat is an adult entertainment club in Mansfield, Ohio owned by defendant Foursome Entertainment and managed and operated by defendants Mark Potts, Jimmy Lee, and Tim Bobb (collectively "the Top Hat defendants"). The Top Hat defendants similarly have employed exotic dancers, have paid them less than minimum wages, and have charged them various artificial and illegal fees to work at the club under the artifice known as the Tenant System.

5. Private Dancer is an adult entertainment club in Columbus, Ohio owned, managed, and operated by defendant John "Dutch" Matthews (collectively "the Private Dancer defendants"). The Private Dancer defendants similarly have employed exotic

dancers, have paid them less than minimum wages, and have charged them various artificial and illegal fees to work at the club under the artifice known as the Tenant System.

6.      Centerfold is an adult entertainment club in Columbus, Ohio owned by defendant Nolan Enterprises, LLC and managed and operated by defendants Brenda Bonzo and Ray Algood (collectively "the Centerfold defendants"). The Centerfold defendants similarly have employed exotic dancers, have paid them less than minimum wages, and have charged them various artificial and illegal fees to work at the club under the artifice known as the Tenant System.

7.      House of Babes is an adult entertainment club in Columbus, Ohio that, on information and belief, is owned by defendant Jimmy Doe (last name, replaced with a pseudonym here, to be identified through further discovery) and operated and managed by defendant John Doe (full name, replaced with a pseudonym here, to be identified through further discovery) (collectively "the House of Babes defendants"). The House of Babes defendants similarly have employed exotic dancers, have paid them less than minimum wages, and have charged them various artificial and illegal fees to work at the club under the artifice known as the Tenant System.

8.      Fantasyland West is an adult entertainment club in Bucyrus, Ohio that, on information and belief, is owned, managed, and/or operated by defendant Potts. Fantasyland West and Potts (collectively "the Fantasyland West defendants") similarly have employed exotic dancers, have paid them less than minimum wages, and have charged them various artificial and illegal fees to work at the club under the artifice known as the Tenant System.

4

**B.** **The Role of Defendants Greg Flaig, BACE, and OC in the Conspiracy**

9.      Greg Flaig ("Flaig") is the hub of the unlawful conspiracy. He takes credit for creating the Tenant System. In collusion, collaboration, and conspiracy with the other defendants, he has spent much of the past decade promoting, propagating, and perpetuating the Tenant System in Ohio.

10.      Flaig is the owner and executive director of The Owners Coalition, a for-profit entity that promotes the interests of its member, subscriber, and/or affiliated clubs.

11.      Flaig also is the current executive director and former secretary of BACE, a not-for-profit trade association serving the interests of clubs that are members of or affiliated with it.

12.      Flaig, BACE, and OC claimed that BACE and OC merged in 2015. Even apart from that claim, Flaig, BACE, and OC have claimed that Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West are members of, affiliated with, or subscribers of BACE and/or OC.

13.      Under the guise of serving as "human resources consultant" to Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West, Flaig has enfolded and enmeshed them in the conspiracy to deny dancers their rightful wages and to exact illegal fees from them in violation of federal and Ohio law.

14.      Under the same guise, Flaig audits and monitors these clubs on a regular basis to ensure that each of them embraces and adheres to the Tenant System.

15.     So tightly bound together are Flaig, BACE, OC, and these clubs in this conspiracy that when plaintiffs' counsel issued party discovery and third-party subpoenas in this case to OC, BACE, Cheeks, Top Hat, Private Dancer, and Centerfold under Fed. R. Civ. P. 30(b)(6), *every one of them* designated Flaig as their representative and he so testified. At the Cheeks deposition, Flaig and Cheeks were represented by Anthony Cicero, Esq., who also is counsel of record for OC and BACE in this case. Mr. Cicero also appeared on behalf of OC and BACE when plaintiffs' counsel deposed Flaig as their representative under Rule 30(b)(6). It was at the BACE/OC Rule 30(b)(6) deposition that Flaig, on advice from Mr. Cicero, refused to disclose the members of BACE, a position Magistrate Judge Deavers later overruled. When plaintiffs' counsel subsequently issued subpoenas for documents to House of Babes and Fantasyland West and sought to enforce the subpoenas, including through show-cause motions, it was Flaig once again who purported to respond on the clubs' behalf. By acting on behalf of all of these defendants before and/or during this litigation, Flaig has projected a unified front among them and has attempted to manage, control, and manipulate the flow of information to plaintiffs' counsel, which served to underscore his role as the hub of the conspiracy.

16.     Various other persons, firms, and corporations not named as defendants have participated with defendants as co-conspirators and have performed acts and made statements in furtherance of the conspiracy. These defendants are jointly and severally liable for the acts of their co-conspirators, whether or not named as defendants in this complaint.

C.    **The Named Plaintiffs and Plaintiff Class/Collective Representatives**

1.    (*Reserved*) **Plaintiffs Hogan and Valentine versus the Sirens defendants**

17.    Plaintiff Jessica Hogan is an individual residing in Canal Winchester, Ohio.

18.    Plaintiff DeJha Valentine is an individual residing in Columbus, Ohio.

19.    Ms. Hogan and Ms. Valentine, on behalf of themselves and all similarly situated individuals, bring this action against the Sirens defendants. Ms. Hogan and Ms. Valentine, as plaintiffs and the representatives of the proposed Sirens Class, seek appropriate monetary, declaratory, and equitable relief based on the Sirens defendants' failure to compensate Ms. Hogan, Ms. Valentine, and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("§ 34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and O.R.C. § 4113.15.

20.    Ms. Hogan has given written consent to bring this action to collect unpaid wages. Her consent form was filed with the original Complaint.

21.    Ms. Valentine has given written consent to join this action "against Sirens and other clubs and organizations that use the lease agreement entertainer system, and related entities and individuals" to collect unpaid wages. Her consent form was filed on June 15, 2017. ECF 87.

22.    Defendant Sirens is a for-profit corporation registered to do business in Ohio. Sirens' principal place of business is 6190 Cleveland Avenue, Columbus, OH 43231.

23.     Defendant Francis Sharrak is an individual and is sued in his individual capacity. Francis Sharrak's parole terms did not allow him to have any involvement with Sirens. In spite of those terms, Francis Sharrak directed one or more of Sirens' pay and other policies, made hiring and firing decisions at Sirens, had the authority to ban or un-ban people from Sirens, and discussed employment issues with employees. Employees were generally aware that Francis Sharrak was not supposed to have an official role at the club but that he still had authority over the employees. Francis Sharrak acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

24.     Defendant Michael Sharrak was one of Sirens' owners. Michael Sharrak had ultimate hiring and firing and policy making authority. Michael Sharrak acted within the interest of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

25.     Defendant Chad Sullivan was Sirens' General Manager. Mr. Sullivan hired, fired, and disciplined employees and directed their work. Mr. Sullivan acted in furtherance of the interests of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

26.     Defendant Jay Nelson was and, on information and belief, still is director of operations at Sirens. In that role, Mr. Nelson claims to make "virtually all decisions related to the operations of the club." Mr. Nelson acted in furtherance of the interests of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

27.     Defendant Dominick Alkammo was represented to the employees as a part-owner or investor in Sirens. Mr. Alkammo hired, fired, and disciplined employees and directed their work. Mr. Alkammo acted in furtherance of the interests of Sirens and was an "employer" within the meaning of the term under the FLSA and Ohio wage law.

28.     The Sirens defendants employed Ms. Hogan as a bartender, server, and dancer at Sirens. The Sirens defendants employed Ms. Hogan from approximately August 2013 to June 10, 2015. During all relevant times, Ms. Hogan was the Sirens defendants' "employee" within the meaning of the FLSA and the OMFWSA. During all relevant times, the Sirens defendants were Ms. Hogan's "employers" within the meaning of the FLSA and the OMFWSA.

29.     The Sirens defendants employed Ms. Valentine as a dancer at Sirens from approximately 2014 to 2016. Ms. Valentine was the Sirens defendants' "employee" within the meaning of the FLSA and the OMFWSA, and the Sirens defendants were Ms. Valentine's "employers" within the meaning of the FLSA and the OMFWSA.

30.     The Sirens defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

31.     During all relevant times, the Sirens defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and the OMFWSA.

32.     The Sirens defendants' gross revenue exceeds $500,000 per year during the relevant time period.

### 2.    Ms. Hogan and Ms. Valentine versus all defendants

33.    Ms. Hogan and Ms. Valentine, on behalf of themselves and all similarly situated dancers comprising the alleged plaintiff classes and collectives in this case, bring suit against all of the defendant co-conspirators and all members of the alleged Statewide Defendant Class.

34.    As plaintiffs and class representatives, Ms. Hogan and Ms. Valentine seek appropriate injunctive, equitable, and declaratory relief against all defendants and all members of the alleged Statewide Defendant Class and monetary relief against same under federal and state antitrust laws, Ohio's tort law of civil conspiracy, and federal and state wage laws.

35.    As plaintiffs and class and collective action representatives, Ms. Hogan and Ms. Valentine seek monetary relief from all defendant clubs, club owners, and club managers and all members of the alleged Statewide Defendant Class, under the FLSA, § 34a, the OMFWSA, and R.C. § 4113.15.

### D.    The Named Defendants and Defendant Class Representatives

36.    This is the rare case that lends itself to certification of plaintiff and defendant classes, given the extent to which the defendant co-conspirators have acted and continue to act uniformly and in concert to violate the same rights of large numbers of Ohio dancers under the FLSA, § 34a, the OMFWSA, and R.C. § 4113.15, and the extent to which the defendant co-conspirators have acted and continue to act uniformly and in concert to violate federal and state antitrust laws in ways that affect, harm, and threaten to harm large numbers

of Ohio dancers. All of the defendants mentioned in this section are sued in their individual capacities and as representatives of the Statewide Defendant Class.

### 1. The Cheeks defendants

37. Cheeks is a for-profit entity doing business as an adult entertainment club in Ohio, with its principal place of business in Dayton. Defendants Hale and Cochran are individuals sued in their individual capacities, who directed and still direct one or more of Cheeks' pay and other policies, made and still make hiring and firing decisions at Cheeks, had and still have the authority to ban or un-ban people from Cheeks, and discussed and still discuss employment issues with employees. Hale and Cochran acted and still act within the interests of Cheeks and were and are "employers" within the meaning of the term under the FLSA and Ohio wage laws.

38. The Cheeks defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

39. During all relevant times, the Cheeks defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and OMFWSA.

40. On information and belief, the Cheeks defendants' gross revenue exceeds $500,000 per year during the relevant time period. Regardless whether they do or not, the Cheeks defendants engaged during the relevant time period in conspiracies to violate the FLSA, the OMFWSA, and federal and state antitrust laws, as alleged herein.

### 2. The Top Hat Defendants

41. Top Hat is a for-profit entity doing business as an adult entertainment club in Ohio, with its principal place of business in Mansfield, Ohio.

42. Defendants Potts, Lee, and Bobb are individuals sued in their individual capacities, who directed and still direct one or more of Top Hat's pay and other policies, made and still make hiring and firing decisions at Top Hat, had and still have the authority to ban or un-ban people from Top Hat, and discussed and still discuss employment issues with employees. The Top Hat defendants acted and still act within the interests of Top Hat and were and continue to be "employers" within the meaning of the term under the FLSA and Ohio wage laws.

43. During all relevant times, the Top Hat defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and the OMFWSA.

44. On information and belief, the Top Hat defendants' gross revenue exceeds $500,000 per year during the relevant time period. Regardless whether they do or not, the Top Hat defendants engaged during the relevant time period in conspiracies to violate the FLSA, the OMFWSA, and federal and state antitrust laws, as alleged herein.

### 3. The Private Dancer defendants

45. Private Dancer is a for-profit entity doing business as an adult entertainment club in Ohio, with its principal place of business in Columbus, Ohio.

12

46.     Defendant Matthews is an individual sued in his individual capacity, who directed and still directs one or more of Private Dancer's pay and other policies, made and still makes hiring and firing decisions at Private Dancer, had and still has the authority to ban or un-ban people from Private Dancer, and discussed and still discusses employment issues with employees. Matthews acted and still acts within the interests of Private Dancer and was and still is an "employer" within the meaning of the term under the FLSA and Ohio wage laws.

47.     The Private Dancer defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

48.     During all relevant times, the Private Dancer defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and the OMFWSA.

49.     On information and belief, the Private Dancer defendants' gross revenue exceeds $500,000 per year during the relevant time period. Regardless whether they do or not, the Private Dancer defendants engaged during the relevant time period in conspiracies to violate the FLSA, the OMFWSA, and federal and state antitrust laws, as alleged herein.

**4.     The Centerfold Defendants**

50.     Centerfold is a for-profit entity doing business as an adult entertainment club in Ohio, with its principal place of business in Columbus, Ohio.

51.     While Nolan Enterprises, LLC is sued as a corporate entity, defendants Bonzo and Algood are individuals sued in their individual capacities, who directed and still direct

13

one or more of Centerfold's pay and other policies, made and still make hiring and firing decisions at Centerfold, had and still have the authority to ban or un-ban people from Centerfold, and discussed and still discuss employment issues with employees. Bonzo and Algood acted and still act within the interests of Centerfold and were and still are "employers" within the meaning of the term under the FLSA and Ohio wage law.

52.     The Centerfold defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

53.     During all relevant times, the Centerfold defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and the OMFWSA.

54.     On information and belief, the Centerfold defendants' gross revenue exceeds $500,000 per year during the relevant time period. Regardless whether they do or not, the Centerfold defendants engaged during the relevant time period in conspiracies to violate the FLSA, the OMFWSA, and federal and state antitrust laws, as alleged herein.

### 5.     The House of Babes defendants

55.     House of Babes is a for-profit entity doing business as an adult entertainment club in Ohio, with its principal place of business in Columbus, Ohio.

56.     The House of Babes defendants have employed Ms. Valentine as a dancer at House of Babes, beginning in approximately 2014. Ms. Valentine was the House of Babes defendants' "employee" within the meaning of the FLSA and the OMFWSA, and the House

of Babes defendants were Ms. Valentine's "employers" within the meaning of the FLSA and the OMFWSA.

57.     The House of Babes defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

58.     During all relevant times, the House of Babes defendants were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and the OMFWSA.

59.     On information and belief, the House of Babes defendants' gross revenue exceeds $500,000 per year during the relevant time period. Regardless whether they do or not, the House of Babes defendants engaged during the relevant time period in conspiracies to violate the FLSA, the OMFWSA, and federal and state antitrust laws, as alleged herein.

### 6.     The Fantasyland West defendants

60.     Fantasyland West is a for-profit entity doing business as an adult entertainment club in Ohio, with its principal place of business in Bucyrus, Ohio.

61.     Defendant Potts is an individual sued in his individual capacity, who directed and still directs one or more of Fantasyland West's pay and other policies, made and still makes hiring and firing decisions at Fantasyland West, had and still has the authority to ban or un-ban people from Fantasyland West, and discussed and still discusses employment issues with employees. Potts acted and still acts within the interests of Fantasyland West and was and continues to be an "employer" within the meaning of the term under the FLSA and Ohio wage law.

62. During all relevant times, Potts and Fantasyland West were, and continue to be, an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and the OMFWSA.

63. On information and belief, Fantasyland West's and Potts's gross revenue exceeds $500,000 per year during the relevant time period. Regardless whether they do or not, Potts and Fantasyland West engaged during the relevant time period in conspiracies to violate the FLSA, the OMFWSA, and federal and state antitrust laws, as alleged herein.

### 7. BACE, OC, and Flaig

64. During the relevant time period, BACE and OC have functioned as the two main adult entertainment club industry trade associations in Ohio. Hale serves and has served as BACE's president. Flaig serves and has served as BACE's executive director, and formerly served as its secretary, along with owning and operating OC and serving as its executive director. They have been and are responsible for artifices known as the Tenant System, by which their member or affiliated clubs, including Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West, at least since 2010 have purported to deny exotic dancers their rightful minimum wages and have required such dancers to pay various artificial and illegal fees to club owners to work at their clubs, including a fee called "rent." Other named and unnamed co-conspirators participated in this conspiracy along with Flaig, OC, and BACE.

65. By promoting, implementing, and enforcing the use of the Tenant System in clubs throughout Ohio, OC and Flaig have acted within the interests of the co-conspirator

16

clubs, club owners, and club managers, including Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West, with respect to such clubs' employees and employment practices, have exercised authority to ban or un-ban dancers from such clubs, and have made themselves available to discuss employment issues with such employees. Accordingly, OC and Flaig have met and still meet the definition of "employers" under the FLSA and Ohio law.

66.     Under the FLSA and Ohio law, "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee; the term "employee" means any individual employed by an employer; and "Employ" includes to suffer or permit to work. *See* 29 U.S.C. § 203(d), (e), and (g); Ohio Const., Art. II, Sec. 34a; Ohio Revised Code § 4111.03. BACE and OC continue to exist as trade associations, and in that role, they engage both directly and indirectly with dancers at BACE-/OC-member and BACE-/OC-affiliated clubs. Flaig, BACE, OC, and their representatives have done so and continue to do so on behalf of and in the interests of BACE-/OC-member and BACE-/OC-affiliated clubs, in relation to the Lease Agreement and the Tenant System, which is used by such clubs and has been actively promoted by Flaig, BACE, OC, and their representatives.

67.     By promoting, implementing, and enforcing the use of the Tenant System in clubs throughout Ohio, BACE and Flaig acted within the interests of the co-conspirator clubs, club owners, and club managers, including Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes and Fantasyland West, with respect to the co-conspirator clubs'

employees and employment practices. Accordingly, BACE and Flaig have met and still meet the definition of "employers" under the FLSA and Ohio law.

### III. Jurisdiction and Venue

68. This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

69. This Court has jurisdiction over the federal antitrust claims, which seek to secure injunctive, declaratory, equitable, and monetary relief under the Sherman Act, 15 U.S.C. § 1, pursuant to 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

70. This Court has supplemental jurisdiction over the OMFWSA, Ohio Constitutional, state antitrust, civil conspiracy, and unjust enrichment claims pursuant to 28 U.S.C. § 1367.

71. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

### IV. (*Reserved*) **The Conduct of the Sirens Defendants**

72. Sirens is an adult entertainment club in Columbus, Ohio. As such, Sirens employs bartenders, servers, managers, DJs, exotic entertainers/dancers, and security personnel.

73. Many employees work in more than one capacity during their employment at Sirens.

74. For example, Ms. Hogan worked primarily as a bartender, but also performed duties as a dancer and a "friction monitor," which is a security/monitoring function.

75.     While Ms. Hogan worked as a bartender, customers often requested that Ms. Hogan perform a private dance for the customers. At the discretion of Ms. Hogan's manager and depending on whether Ms. Hogan could find someone else to watch the bar for her, she could dance for a customer. While Ms. Hogan (or any other bartender) danced for a customer, another employee would temporarily assume bartender duties.

76.     In addition, on more than one occasion, Ms. Hogan was called into work specifically as an exotic dancer. During these times, Ms. Hogan was subject to the same rules, fees, etc. to which the exotic dancers were subject. This included not being paid an hourly wage and having to pay artificial and illegal charges to work at the club, including the so-called "rent."

77.     Sirens generally categorized workers based on whether dancing was their primary function.

78.     Those who danced as a secondary job function, like Ms. Hogan, were categorized as "employees" and paid a wage, except during those times in which they were specifically called into perform exotic dancing duties. At those times, they were treated like workers whose primary function is dancing. Those who dance at Sirens as their primary or exclusive job function were and are categorized by Sirens as "independent contractors" and not paid any wage at all (with the exception of "guarantees," see below), although in fact and in law they were employees.

79.     BACE, Sirens, and other BACE-member clubs throughout Ohio, in malicious combination and pursuant to a mutual understanding and a common plan and scheme that

19

Sirens has characterized under oath as "an industry agreement," devised, promulgated, and/or used, and they continue to promulgate and/or use, an unconscionable adhesion contract entitled "Entertainer Tenant Space Lease Agreement" ("the Lease Agreement"), by which they systematically and uniformly have perpetrated the fraud that their exotic dancers are not employees but rather independent contractors who "lease space" from the clubs while performing.

80.     The purported "term" under the Lease Agreement is for one day, renewable every day, until either a year has passed or one of the parties—the club or the dancer—gives a one-day notice.

81.     The "conditions" under the Lease Agreement require the dancer to "pay all lease, rent, damage, and assistance fees before leaving the club" following a night of entertaining guests.

82.     Under the Sirens Lease Agreement:

  a)     The "damage" cost for "each lease time" that the dancer misses is $50—the same amount as the "rent" the dancer is charged for a night of dancing at Sirens and other BACE-member clubs.

  b)     The club owner establishes the "fixed" fee for the price of specialty dances (such as private, champagne and table dances) performed on the premises.

  c)     The club owner may "modify, delete or add to any of the conditions contained" in the Lease Agreement "without notice" to the dancer.

d) The dancer is forced to make all contributions "imposed or required by Unemployment … in connection with any money earned by" her.

e) While at the club, the dancer "may be subjected to advances by customers, to depictions or portrayals of explicit fantasy sexual conduct, or to similar types of behavior," but she is forced to submit to and "not be offended by such conduct, depictions, portrayals, and language" and is forced to assume "any and all risks associated with being subject to these matters."

83. It is now well-established that exotic dancers, like those at Sirens, whether dancing is their exclusive, primary or secondary job function, are not independent contractors and, instead, are "employees." As one court noted, "Nearly '[w]ithout exception, [ ] courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013), *reconsideration denied* (Nov. 18, 2013), *quoting Harrell v. Diamond A. Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997).

84. The result is the same whether someone signed a Lease Agreement or not; *i.e.*, dancers are "employees" under the FLSA and Ohio law, but defendants treat them as if they were "tenants" or "lessees."

85. Sirens knew or should have known of the substantial amount of case law that categorizes exotic dancers as employees of the club at which they dance.

86. Sirens exerted substantial control over the dancers, including:

21

a) controlling and setting the rates that dancers charged customers,

b) controlling and setting the fees that dancers paid to the club when dancing at the club,

c) mandating that dancers conform to a certain look, including having make-up, nails, and hair done, subject to the approval of Sirens' managers,

d) requiring that dancers work entire shifts at a time and, if the dancer did not, imposing fees or "fines" on the dancer,

e) providing dancers with orientation and training regarding Sirens' rules and operations,

f) explaining the dancers' role and rules regarding Sirens' "drink hustle,"

g) hiring, firing, and disciplining dancers,

h) instructing about and requiring participation in Sirens' "uptime" dance specials,

i) requiring dancers to tip out various Sirens' employees, and

j) providing "guaranteed" minimum payments to Sirens dancers if they met certain requirements (like fulfilling certain shifts or being the first to sign up for a shift).

87. Exotic dancers are an integral part of the Sirens defendants' business.

88. Regardless of whether someone was a dancer or non-dancer, they were still subject to the same set of pay policies and practices.

89. Those policies and practices resulted in Sirens paying employees less than the required minimum wage.

90. Sirens' unlawful practices included:

a) All dancers and non-dancers who earned or received credit card tips were required to relinquish 10% of credit card tips to the club. To the extent that the tips were shared or split with other employees, the sharing or splitting occurred *after* the 10% charge was taken. Accordingly, all employees who either received tips or shared in a percentage of another employee's tips were affected by this policy.

b) Dancers and non-dancers were required to pay money to the club if the employee performed a dance in a "champagne room."

c) Dancers and non-dancers were required to pay money to the club on a "per song" basis if the employee performed in the "executive suites" or "friction dance booths."

d) Depending on which position an employee was working in at a particular time, the employee may be required to "tip out" or share tips with non-tipped employees including disc jockeys or security personnel.

e) Dancers and non-dancers were required to purchase uniforms and outfits to perform their job. Typically, those uniforms were purchased through Sirens and paid for out of the employee's tip money.

23

f) Those employees (like Ms. Hogan) who had a cash drawer to count and deposit money into, were required to pay both overages and shortages out of their tips.

g) Defendants required employees to attend mandatory but unpaid meetings.

## V. Similar Conduct of the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West Defendants

91. Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West are adult entertainment clubs in Ohio that, like Sirens, employ various types of employees in addition to dancers, including, for example, managers, DJs, door personnel, security personnel, monitors, servers, and bartenders.

92. As was and is the case at Sirens, those who dance at Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and/or Fantasyland West as their primary or exclusive job function were and are categorized by it as "tenants" or "lessees" (whether or not they actually signed "lease agreements") and were not and are not paid any wages, although in fact and in law they were employees.

93. BACE, OC, Flaig, Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, Fantasyland West, and other clubs belonging to or affiliated with BACE or OC, in malicious combination and pursuant to a mutual understanding and a common plan and scheme that Sirens has characterized under oath as "an industry agreement," devised, promulgated, and/or used, and they continue to promulgate and/or use, the Tenant System,

24

including form documents comprising an unconscionable adhesion contract, the primary component of which is the Lease Agreement (formally entitled "Entertainer Tenant Space Lease Agreement"), or variations thereof, by which they systematically and uniformly have perpetrated the fraud that their dancers are not employees but rather independent contractors who "lease space" from the clubs while performing.

94.     As with the agreement used by Sirens, the purported "term" of the agreements used by these clubs is one day, renewable every day, until either a year has passed or one of the parties—the club or the dancer—gives a full one-day notice, making it impracticable for dancers to escape these agreements; the "conditions" of these agreements require the dancer to pay all lease, rent, damage, and assistance fees before leaving the club following a night of entertaining guests; dancers are assessed under these agreements a "damage" cost for any lease time that the dancer misses, which mirrors the "rent" the dancer is charged for a night of dancing at such clubs; under these agreements, the club owner establishes the "fixed" fee for the price of specialty dances (such as private, champagne and table dances) performed by the dancers on the premises; these agreements allow the club owner to "modify, delete or add to" any conditions contained in the agreement "without notice" to the dancer; the dancer is forced under these agreement to acknowledge she must make all contributions "imposed or required by Unemployment … in connection with any money earned by" her; the dancer cannot leave the club during a shift without permission and paying fees; and while at the club, the dancer "may be subjected to advances by customers, to depictions or portrayals of explicit fantasy sexual conduct, or to similar types of behavior," but she is forced to submit

to and "not be offended by such conduct, depictions, portrayals, and language" and is forced to assume "any and all risks associated with being subject to these matters."

95. It is now well-established that exotic dancers, like those at Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, Fantasyland West, and other BACE- or OC-member or -affiliated clubs, whether dancing is their exclusive, primary or secondary job function, are not true independent contractors, tenants, or lessees, but, instead, are "employees." As one court noted, "Nearly '[w]ithout exception, [ ] courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013), *reconsideration denied* (Nov. 18, 2013), *quoting Harrell v. Diamond A. Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997).

96. The result is the same whether a dancer signed a "Lease Agreement," a similar tenant agreement, or no agreement at all, *i.e.*, dancers are "employees" under the FLSA and Ohio law, but defendants treat them as if they were "tenants" or "lessees."

97. Like Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West knew or should have known of the substantial amount of case law that categorizes exotic dancers as employees of the club at which they dance.

98. As with dancers at Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West exerted substantial control over their dancers, including:

      a)       controlling and setting the rates that dancers charged customers,

    b)      controlling and setting the fees that dancers paid to the club when dancing at the club,

    c)      mandating that dancers conform to a certain look, including having make-up, nails, and hair done, subject to the approval of club managers,

    d)      requiring that dancers work entire shifts at a time and, if the dancer did not, imposing fees or "fines" on the dancer,

    e)      providing dancers with orientation and training regarding club rules and operations,

    f)      explaining the dancers' role and rules regarding clubs' "drink hustle,"

    g)      hiring, firing, and disciplining dancers,

    h)      instructing about and requiring participation in "uptime" dance specials, and

    i)      requiring dancers to tip out various club employees.

99.     Exotic dancers are an integral part of the businesses of the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants.

100.    The unlawful pay policies and practices of these clubs have resulted in paying employees less than the required minimum wage. Their unlawful pay policies and practices included:

    a)      Dancers were required to pay money to the club for performing a dance in a "champagne room."

b)     Dancers were required to pay money to the club on a "per song" basis if the employee performed in the "executive suites" or "friction dance booths."

c)     Dancers were required to "tip out" or share tips with non-tipped employees including disc jockeys or security personnel.

d)     Defendants required dancers to attend mandatory but unpaid meetings.

**VI.**    (*Reserved*) **Collective and Class Action Allegations As To Sirens**

    **A.**    (*Reserved*) **The Sirens Collective Action Allegations**

101.    Ms. Hogan brings this collective action on behalf of herself and all others similarly situated.

102.    Ms. Hogan and other collective action members were all Sirens' employees and were subject to the same uniform illegal pay practices and policies applicable to all of the Sirens defendants' employees.

103.    The Sirens defendants' illegal pay practices and policies are identified above and generally include failing to pay regular minimum wage for each hour worked, subjecting workers to an illegal tip pool policy, requiring workers to participate in an unlawful "kickback" scheme, charging money to employees for performing their essential job functions, charging money to employees for uniforms and outfits, requiring employees to work off-the-clock, and deducting 10% of employees' tip money that customers left on credit cards.

104.    The other collective action members are owed wages for the same reasons Ms. Hogan is.

105.    Application of the Sirens defendants' illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan, or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all members. Accordingly, Ms. Hogan seeks to represent the following persons in the Sirens collective action:

> All persons who worked for the Sirens Defendants from October 6, 2012 to the present, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked.

106.    The Sirens defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Hogan and the collective action members.

107.    The Sirens defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

108.    The Sirens defendants have acted willfully in failing to pay Ms. Hogan and the collective action members in accordance with the law.

**B.**    (*Reserved*) **The Sirens Class Action Allegations**

109.    Ms. Hogan sues on behalf of a class of persons under Rules 23(a), (b)(2) and (3) of the Federal Rules of Civil Procedure.

110. Pursuant to the Ohio Constitution, the OMFWSA, Ohio common law, and federal and state antitrust law, Ms. Hogan brings claims on behalf of all persons that the Sirens defendants employed at any time from three years prior to the filing of the Complaint in this action to the entry of judgment in this case (the "Sirens Class Period"). The Sirens Class is defined as follows:

> All persons who worked for the Sirens Defendants within the past six years, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked.

111. For purposes of the wage-related claims of the Sirens Class, Ms. Hogan brings claims on behalf of all non-exempt employees within the meaning of Article II, Section 34a of the Ohio Constitution and/or the OMFWSA who were not paid at least minimum wage for each hour worked.

112. The people identified in the Sirens Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and the facts on which that number can be ascertained are presently within the sole control of the Sirens Defendants. Upon information and belief, there are over three hundred members of the Sirens Class during the Sirens Class Period.

113. Ms. Hogan's claims are typical of the claims of the Sirens Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual

plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

114.    The Sirens defendants have acted or refused to act on grounds generally applicable to the Sirens Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Sirens Class as a whole.

115.    Ms. Hogan is committed to pursuing this action and has retained competent counsel experienced in wage and hour actions and class actions.

116.    Ms. Hogan has the same interests in this matter as the members of the Sirens Class, and her claims are typical of the Sirens Class's claims.

117.    There are questions of law and fact common to the Sirens Class, which predominate over any questions solely affecting the individual members of the Sirens Class. These questions include but are not limited to:

    a)    Whether the Sirens Defendants kept a portion of the Sirens Class members' credit card tips;

    b)    Whether that retention was unlawful;

    c)    Whether the Sirens Defendants required Sirens Class members to share tips with non-tipped workers;

    d)    Whether that requirement was unlawful;

    e)    Whether the Sirens Defendants required Sirens Class members to pay them to work at Sirens and/or required "kickbacks";

    f)    Whether the requirement or "kickback" was unlawful;

g)      Whether the Sirens Defendants failed to pay any wages to employees when those employees acted as "dancers";

h)      Whether such failure to pay wages was unlawful;

i)      Whether the Sirens Defendants conspired to violate federal and state antitrust laws by fixing or restraining payments to Sirens Class members;

j)      Whether such conspiracy was unlawful;

k)      Whether the Sirens Defendants' unlawful actions should be enjoined; and

l)      Whether the Sirens Defendants are liable for all damages claimed hereunder, including but not limited to, double damages, treble damages, costs, disbursements, and attorney's fees.

## VII.    Collective and Class Action Allegations as to the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West Defendants and Flaig, OC, and BACE

### A.    The Collective Action Allegations as to the House of Babes Defendants

118.    Ms. Valentine brings a collective action against House of Babes on behalf of herself and all others similarly situated.

119.    Ms. Valentine and other collective action members were all House of Babes employees and were subject to the same uniform illegal pay practices and policies applicable to all of the House of Babes employees.

120.     The House of Babes defendants' illegal pay practices and policies are identified above and generally include failing to pay regular minimum wages for each hour worked, subjecting dancers to an illegal tip pool policy, requiring dancers to participate in an unlawful "kickback" scheme, charging money to dancers for performing their essential job functions, requiring dancers to work off-the-clock, and making other deductions from dancers' tip money.

121.     The other House of Babes collective action members are owed wages for the same reasons Ms. Valentine is.

122.     Application of the House of Babes defendants' illegal pay practices does and did not depend on the personal circumstances of Ms. Valentine, or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all members. Accordingly, Ms. Valentine seeks to represent the following persons in the House of Babes collective action:

> All persons who worked for House of Babes from October 6, 2012 to the present, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked.

123.     The House of Babes defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Valentine and the collective action members.

124.     The House of Babes defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

125.    The House of Babes defendants have acted willfully in failing to pay Ms. Valentine and the collective action members in accordance with the law.

**B.     The Class Action Allegations as to the Claims of the Statewide Plaintiff Class Against the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West Defendants, Flaig, OC, BACE, and the Other Members of the Statewide Defendant Class**

126.    Ms. Hogan and Ms. Valentine also bring a class action on behalf of themselves and all others similarly situated against a defendant class encompassing the defendant clubs, club owners, and club managers and management personnel responsible for implementing and enforcing the Tenant System and/or the Lease Agreement, plus Flaig, OC, and BACE and all BACE-member, BACE-affiliated, OC-member, and OC-affiliated clubs, club owners, and club managers throughout Ohio that have used and/or are using the Lease Agreement and/or the Tenant System to deny exotic dancers their rightful minimum wages and to require such dancers to pay artificial and illegal fees to club owners to work at their clubs, including a fee called "rent," and that have in fact collected such "rent." This portion of the action will be referred to herein as the "Statewide Class Action." Those on whose behalf this action is asserted will be referred to herein as the "Statewide Plaintiff Class," and those against whom it is brought will be referred to herein as the "Statewide Defendant Class."

127.    Ms. Hogan, Ms. Valentine, and other Statewide Plaintiff Class members were all dancers subject to the same illegal pay practices and policies applicable to all of the Statewide Defendant Class's dancers. The other Statewide Plaintiff Class members are owed wages for the same reasons Ms. Hogan and Ms. Valentine are. Application of the Statewide

Defendant Class's illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan, Ms. Valentine, or any other member of the Statewide Plaintiff Class.

128.     Accordingly, Ms. Hogan and Ms. Valentine sue on behalf of, and seek to represent, the following class under Rule 23(a) and Rule 23(b)1)(A), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure:

> All persons (a) who worked for any of the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, or Fantasyland West defendants or any other club, club owner, or club manager or management personnel belonging to the Statewide Defendant Class within the past six years, (b) whose exclusive, primary or secondary job function was exotic dancing, and (c) who were not paid at least regular minimum wage for all hours worked.

129.     Ms. Hogan and Ms. Valentine bring claims on behalf of the above-defined Statewide Plaintiff Class against a Statewide Defendant Class that is defined as follows:

> BACE, OC, Flaig, and all BACE-member, BACE-affiliated, OC-member, and OC-affiliated adult entertainment clubs and employers in Ohio within the past six years that used and/or are using the Lease Agreement, the Tenant System, or any similar ruleset, including the owners of such clubs, as well as their operators, their managers, and all management personnel responsible for implementing and enforcing the Lease Agreement, the Tenant System, or any similar ruleset.

130.     For purposes of the wage-related claims of the Statewide Plaintiff Class, Ms. Hogan and Ms. Valentine bring claims on behalf of all non-exempt employees within the meaning of § 34a and/or the OMFWSA who were not paid at least minimum wage for each hour worked.

131.     The people identified in the Statewide Plaintiff Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and

the facts on which that number can be ascertained are presently within the sole control of the defendants and the Statewide Defendant Class. On information and belief, members of the Statewide Plaintiff Class probably number in the thousands.

132.    Ms. Hogan's and Ms. Valentine's claims are typical of the claims of the Statewide Plaintiff Class, and a class action is superior to other available methods of fair and adjudication of the controversy, particularly in the context of wage and hour and antitrust litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

133.    Ms. Hogan and Ms. Valentine are committed to pursuing this action, can adequately represent the Statewide Plaintiff Class, and have retained competent counsel experienced in wage and hour actions, antitrust actions, and class actions to do so.

134.    Ms. Hogan and Ms. Valentine have the same interests in this matter as the members of the Statewide Plaintiff Class.

135.    The Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants and other clubs, club owners, and club managers and management personnel belonging to the Statewide Defendant Class have acted or refused to act on grounds generally applicable to the Statewide Plaintiff Class, thereby making appropriate final injunctive relief, equitable relief, or corresponding declaratory relief with respect to the Statewide Plaintiff Class as a whole.

136.    The members of the Statewide Defendant Class also are so numerous that joinder of all members is impracticable. The precise number of such members is unknown,

36

and the facts on which that number can be ascertained are presently within the control of the Statewide Defendant Class members. On information and belief, the members of the Statewide Defendant Class exceed 25 and may amount to twice that number.

137. A class action is superior to other available methods of fair and efficient adjudication of the controversy between the Statewide Plaintiff Class and the Statewide Defendant Class, particularly in the context of wage and hour and antitrust litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit in federal court.

138. Based on discovery practice in this case, during which counsel for OC and BACE and other experienced club counsel represented the BACE-member, BACE-affiliated, OC-member, and OC-affiliated clubs that were subpoena targets and that are now being added as defendants, the proposed representative defendants also have competent counsel experienced in wage and hour, antitrust, and class actions, and can adequately represent the Statewide Defendant Class.

139. These defendant clubs, club owners, and club managers having used the Lease Agreement under an industry agreement, OC and Flaig having conceived and devised the Lease Agreement, and OC, Flaig, and BACE having promoted, propagated, and perpetuated the Lease Agreement and the Tenant System throughout Ohio, such defendants possess the same interests in this matter as the members of the Statewide Defendant Class, and the claims brought against these defendants are typical of the claims asserted against the Statewide Defendant Class as a whole.

140.     Separate actions prosecuted by individual members of the Statewide Plaintiff Class and/or against individual members of the Statewide Defendant Class would create a risk of inconsistent or varying adjudications with respect to individual members of each or either class that would establish incompatible standards of conduct for members of one or both of the classes.

141.     There are questions of law and fact common to the Statewide Plaintiff Class and the Statewide Defendant Class, which predominate over any questions solely affecting the individual members of the Statewide Plaintiff Class and the Statewide Defendant Class. These questions include but are not limited to:

a)     Whether the members of the Statewide Defendant Class used the Lease Agreement or the artifice known as the Tenant System to deny the members of the Statewide Plaintiff Class their rightful wages and to exact illegal payments, including the so-called "rent" from the members of the Statewide Plaintiff Class;

b)     Whether the Lease Agreement and the Tenant System are unlawful under Ohio and federal wage and hour laws, the Ohio Constitution, Ohio's common law of civil conspiracy, and Ohio's unjust enrichment and equitable restitution law;

c)     Whether in using the Lease Agreement and the Tenant System the Statewide Defendant Class conspired to violate and did and continue

38

to violate federal and state antitrust laws by fixing or restraining payments to members of the Statewide Plaintiff Class;

d) Whether such conspiracies were unlawful;

e) Whether the Statewide Defendant Class's unlawful actions should be enjoined; and

f) Whether the members of the Statewide Defendant Class are liable to the members of the Statewide Plaintiff Class for all damages claimed hereunder, including but not limited to, compensatory damages, double damages, treble damages, costs, disbursements, and attorney's fees.

**C.      The Statewide Collective Action Allegations**

142.    Ms. Hogan and Ms. Valentine also bring this collective action on behalf of themselves and all others similarly situated against the Statewide Defendant Class identified above. Those on whose behalf this action is asserted will be referred to herein as the "Statewide Collective."

143.    Ms. Hogan, Ms. Valentine, and other Statewide Collective members were all dancers subject to the same illegal pay practices and policies applicable to all of the Statewide Defendant Class's dancers. The other Statewide Collective members are owed wages for the same reasons Ms. Hogan and Ms. Valentine are.

144.    The Statewide Defendant Class's illegal pay practices and policies are identified above and generally include failing to pay regular minimum wage for each hour

worked, requiring workers to participate in an unlawful "kickback" scheme, and charging money to employees for performing their essential job functions.

145. Application of the Statewide Defendant Class's illegal pay practices does and did not depend on the personal circumstances of Ms. Hogan, Ms. Valentine, or other members of the Statewide Collective. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all members. Accordingly, Ms. Hogan and Ms. Valentine seek to represent the following Statewide Collective:

> All persons who performed exotic dancing at any BACE-member, BACE-affiliated, OC-member, or OC-affiliated adult entertainment club in Ohio from October 6, 2012 to the present, while subject to the Lease Agreement, the Tenant System, and/or any similar ruleset.

146. The Statewide Defendant Class members knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Hogan, Ms. Valentine, and the Statewide Collective members.

147. The Statewide Defendant Class members did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

148. The Statewide Defendant Class members have acted willfully in failing to pay Ms. Hogan, Ms. Valentine, and the Statewide Collective members in accordance with the law.

**D.      Class Allegations as to Ms. Valentine and the House of Babes Class**

149.    Ms. Valentine also brings claims against House of Babes on behalf of herself and all others similarly situated. The House of Babes Class she seeks to represent is defined as follows:

> All persons who worked for House of Babes from October 6, 2012 to the present, whose exclusive, primary or secondary job function was exotic dancing, and who were not paid at least regular minimum wage for all hours worked.

150.    Ms. Valentine and members of the House of Babes Class were employees and were subject to the same uniform illegal pay practices and policies applicable to all other House of Babes employees.

151.    The House of Babes defendants' illegal pay practices and policies are identified above and generally include failing to pay regular minimum wages for each hour worked, subjecting dancers to an illegal tip pool policy, requiring dancers to participate in an unlawful "kickback" scheme, charging money to dancers for performing their essential job functions, requiring dancers to work off-the-clock, and making other deductions from dancers' tip money.

152.    The members of the House of Babes Class are owed wages for the same reasons Ms. Valentine is.

153.    Application of the House of Babes defendants' illegal pay practices does and did not depend on the personal circumstances of Ms. Valentine or any other members of the

House of Babes Class. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all such members.

154. The House of Babes defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Ms. Valentine and the members of the House of Babes Class.

155. The House of Babes defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters, or (d) the Code of Federal Regulations.

156. The House of Babes defendants have acted willfully in failing to pay Ms. Valentine and the members of the House of Babes Class in accordance with the law.

157. The members of the House of Babes Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and the facts on which that number can be ascertained are presently within the sole control of House of Babes. On information and belief, members of the House of Babes Class probably number more than 200.

158. Ms. Valentine's claims are typical of the claims of the House of Babes Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

159.    Ms. Valentine is committed to pursuing this action, can adequately represent the House of Babes Class, and has retained competent counsel experienced in wage and hour actions, antitrust actions, and class actions to do so.

160.    Ms. Valentine has the same interests in this matter as the members of the House of Babes Class.

161.    The House of Babes defendants have acted or refused to act on grounds generally applicable to the House of Babes Class, thereby making appropriate final injunctive relief, equitable relief, or corresponding declaratory relief with respect to the House of Babes Class as a whole.

162.    Separate actions prosecuted by individual members of the House of Babes Class against the House of Babes defendants would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the House of Babes defendants.

163.    There are questions of law and fact common to the House of Babes Class, which predominate over any questions solely affecting the individual members of that class. These questions include but are not limited to:

a)    Whether the House of Babes defendants have denied members of the House of Babes Class their rightful wages and exacted illegal payments, including so-called "rent";

b)      Whether the Lease Agreement and the Tenant System used by House of Babes are unlawful under Ohio and federal wage and hour laws, the Ohio Constitution, and Ohio common law and equitable principles;

c)      Whether in using the Lease Agreement and the Tenant System the House of Babes defendants conspired to violate and did and continue to violate federal and state antitrust laws by fixing or restraining payments to members of the House of Babes Class;

d)      Whether the House of Babes defendants' use of the Lease Agreement and the Tenant System should be enjoined;

e)      Whether the House of Babes defendants are liable to the members of the House of Babes Class for all damages, restitution, costs, disbursements, and attorney's fees claimed hereunder.

## VIII.   Claims for Relief

(*Reserved*) **First Count: Ohio Constitution, Article II § 34(a)—Failure to Pay Tipped Minimum Wages (by the Sirens Class against the Sirens Defendants)**

164.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

165.    The Sirens Defendants did not pay Ms. Hogan and the Sirens Class Members at least regular minimum wage. Ms. Hogan and all Sirens Class Members earned tips.

166.    Tips are the property of the person who earns them.

167.    The Siren Defendants claimed a "tip credit" to meet their obligation to pay Ms. Hogan, and the Sirens Class Members their rightful minimum wages.

44

168. At the same time, the Sirens Defendants retained some of Ms. Hogan's and the Sirens Class Members' tips and/or shared those tips with non-tipped employees.

169. The Sirens Defendants were not entitled to use the "tip credit" to pay Ms. Hogan and the Sirens Class Members less than regular minimum wage because the Sirens Defendants did not use the tips as part of a valid tip pool.

170. Further, Ohio Constitution, Article II § 34(a) does not authorize any sort of mandatory tip pooling arrangement.

171. As a result, the Sirens Defendants have violated the Ohio Constitution, Article II § 34(a).

**(*Reserved*) Second Count: Fair Labor Standards Act (FLSA)—Failure to Pay Tipped Minimum Wages (by the Sirens Class against the Sirens Defendants)**

172. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

173. By not paying Ms. Hogan and the Sirens Class Members at least regular minimum wage for each hour worked, the Sirens Defendants have violated the FLSA.

**(*Reserved*) Third Count: Ohio Constitution, Article II § 34(a)—Unlawful Deductions and/or Kickbacks (by the Sirens Class against the Sirens Defendants)**

174. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

175. The Sirens Defendants' requirement that Ms. Hogan and the Sirens Class Members pay the Sirens Defendants when they performed dances results in reducing Ms. Hogan's and the Sirens Class Members' wages below minimum wage or tipped minimum wage.

176. By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated Ohio Constitution, Article II, Section 34a.

**(*Reserved*) Fourth Count: Fair Labor Standards Act: Unlawful Deductions and/or Kickbacks (by the Sirens Class against the Sirens Defendants)**

177. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

178. By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated the FLSA.

**(*Reserved*) Fifth Count: Ohio Constitution, Article II § 34(a)—Failure to Pay Minimum Wages (by the Sirens Class against the Sirens Defendants)**

179. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

180. When Ms. Hogan and the Sirens Class Members functioned as dancers for a particular shift, the Sirens Defendants did not pay them any wages and in fact exacted payment of "rent" from them.

181. By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated Ohio Constitution, Article II, Section 34a.

**(*Reserved*) Sixth Count: Fair Labor Standards Act (FLSA)—Failure to Pay Minimum Wages (by the Sirens Class against the Sirens Defendants)**

182. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

183. By paying Ms. Hogan and the Sirens Class Members less than minimum wage or tipped minimum wage, the Sirens Defendants violated the FLSA.

(*Reserved*) **Seventh Count: Failure to Tender Pay by Regular Payday under Ohio Law (by the Sirens Class against Defendant Sirens only)**

184.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

185.    At all relevant times, Defendant Sirens failed and continues to fail to make wage payments to Ms. Hogan and the Sirens Class Members, as outlined above, within 30 days of when such payments were due.

186.    By failing to make the wage payments within 30 days of when such payments were due, Defendant Sirens violated O.R.C. § 4113.15.

187.    Further, by retaining Ms. Hogan's and the Sirens Class Members' tips without agreement from such persons, Defendant Sirens violated O.R.C. § 4113.15.

(*Reserved*) **Eighth Count: Spoliation of Evidence (by the Sirens Class against Defendants Sirens and Jay Nelson only)**

188.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

189.    While this litigation was pending and with full knowledge of it on their part, Sirens and Mr. Nelson willfully destroyed the evidence needed by Plaintiff and the Sirens Class to establish the identities and the work and pay records of Sirens employees who have danced at Sirens during the pendency of this lawsuit, including records known at Sirens as "bubble sheets" and "penthouse sheets," which Mr. Nelson claims to have destroyed daily, and signed "Lease Agreements," which he claims to have destroyed monthly—all during the pendency of this action.

190.    Sirens and Mr. Nelson destroyed this evidence to disrupt Plaintiff's and the Sirens Class's case.

191.    The destruction of this evidence disrupted Plaintiff's and the Sirens Class's case and proximately caused harm to Plaintiff and the members of the Sirens Class.

192.    The willful destruction of this evidence entitles Plaintiff and the Sirens Class to compensatory and punitive damages.

(*Reserved*) **Ninth Count: Ohio Constitution, Article II § 34(a)—Failure to Keep Wage and Hour Records (by the Sirens Class against the Sirens Defendants)**

193.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

194.    The Sirens Defendants failed to keep records all of Sirens Class members' wages earned, hours worked, contact information, and other information that Article II, Section 34a of the Ohio Constitution mandates employers keep.

195.    Moreover, the Sirens Defendants actively destroyed these records for Sirens Class members after having received notice of this lawsuit.

196.    The willful destruction of this evidence entitles Plaintiff and the Sirens Class to unpaid wages, treble damages, and equitable relief.

(*Reserved only to the extent of Ms. Hogan's and the Sirens Class's claims the Sirens Defendants; extant as to all plaintiffs and members of the Statewide Plaintiff Class against the newly added defendants and the Statewide Defendant Class, excluding the Sirens defendants, and as to the House of Babes Class against House of Babes*) **Tenth Count: Antitrust Violations (by the Sirens Class against the Sirens Defendants and by the named plaintiffs, the Statewide Plaintiff Class, and the House of Babes Class against the named defendants and the Statewide Defendant Class)**

197.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

198.    The Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, BACE, OC, Flaig, and other BACE-member, BACE-affiliated,

OC-member, and OC-affiliated adult entertainment clubs throughout Ohio comprising the Statewide Defendant Class have conspired and colluded to deny exotic dancers, including Ms. Hogan, Ms. Valentine, the members of the Sirens Class, the members of the Statewide Plaintiff Class, and the House of Babes Class their rightful minimum wages and to require such dancers to pay artificial and illegal fees to club owners to work at their clubs, including a fee called "rent," and they have in fact collected such "rent."

199.   It would not be in the best interests of those clubs individually to adopt the Tenant System or the Lease Agreement, unless other BACE-member, BACE-affiliated, OC-member, and OC-affiliated clubs committed to doing likewise. There is evidence of an "industry agreement" among such clubs to employ and not deviate from the Lease Agreement and the Tenant System. There also is evidence of a blacklisting system among such clubs that allows them to report, "compartmentalize," and in effect boycott dancers like Ms. Hogan and others for causing "problems" such as initiating suits or communicating with lawyers.

200.   The conspiracy was formed knowingly, voluntarily, and intentionally and existed throughout the entire time period covered by this complaint, and the Sirens, Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, Flaig, OC, BACE, and the members of the Statewide Defendant Class knowingly, voluntarily, and intentionally joined in the conspiracy.

201.   The conspiracy substantially affected interstate commerce and/or occurred within the flow of interstate commerce.

202. By these unlawful and collusive practices, the Sirens defendants, and the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, Flaig, OC, BACE, and the members of the Statewide Defendant Class that use the fraudulent Lease Agreement and/or Tenant System conspired to concoct and fix, and they did in fact fix, the price of the so-called "rent" and "damage" charged by such clubs and assessed against dancers.

203. They in fact have exacted such charges from dancers working at their clubs.

204. BACE, OC, and Greg Flaig have played a central role in depressing dancers' earnings through anticompetitive conduct. They have long promoted and coerced use of the Tenant System among their member and affiliated clubs as a way to restrict dancers' ability to fight for higher earnings, including but not limited to those due them under federal and state laws. While the Lease Agreement and its related materials contain notations indicating they were created by Flaig and OC, BACE has actively promoted their use by BACE-member or BACE-affiliated clubs. According to what Sirens admitted under oath is "an industry agreement," the Lease Agreement has been and is being used by BACE-/OC-member and BACE-/OC-affiliated clubs across Ohio to deny dancers their legally guaranteed wages by perpetuating the fiction that they are "tenants" or "lessees" of the clubs where they dance, rather than employees. Sirens General Manager Jay Nelson testified that strip clubs in Ohio made the "policy decision" to use the Lease Agreement to run their businesses. He also testified that Sirens, which Mr. Nelson runs, has used and continues to use the Lease

Agreement without questioning it in order to go along with the rest of the Ohio strip club industry.

205.   There is active, ongoing collusion among BACE, OC, Flaig, and their member or affiliated clubs to use the Lease Agreement and Tenant System to deprive dancers throughout Ohio of their rightful wages under state and federal law; and BACE, OC, Flaig, and their member and affiliated clubs have chosen to participate in and abide by this industry-wide collusion. On behalf of BACE and OC, Flaig has conducted regulars—usually weekly—audits of their member clubs in part to ensure their compliance with, inter alia, the Tenant System and the Lease Agreement. BACE has demanded its member clubs adopt the Tenant System. Clubs using uniform versions of the standard Lease Agreement include competitors such as Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West.

206.   The relevant market for antitrust purposes is the provision of exotic dance services within the strip club industry (the product market) in the State of Ohio (the geographic market).

207.   Flaig, OC, and BACE have jointly propagated, disseminated, and coerced and promoted the use of, the Tenant System, which includes the standard Lease Agreement (*see* Exhibit A, previously filed as ECF 195-1) and all of its "parts." *See also* Exhibits B & C hereto. The standard Lease Agreement imposes price and earnings restrictions on dancers in numerous direct and indirect anticompetitive ways, including:   by confining them to mythical "tenant" status, which defendants maintain entitles them to no wages and precludes

them from employee status that would otherwise entitle them to hourly wages under federal and state laws; by setting up an automatic renewal mechanism that effectively precludes dancers from escaping the Lease Agreement for an entire year; and by dictating the manner of setting prices in many ways that depress prices dancers can exact for their services., *e.g.*, the dancer must "pay rent" to the club and must charge "fixed fee" established by club "for the use of space for private, champagne and table dances"; "Dance Performance Fees" cannot be characterized as "tips" or "gratuities" but rather as "services charges to the customer for the purchase of a personal private room dance performances with the Entertainer Tenants"; the club owner is "permitted to require the Entertainer Tenant to share a portion of her tips with other tipped employees as assistance fee's"; if a court or government agency "determines that the relationship between the parties is something other than that or Landlord/"Entertainer Tenant" and that the "Entertainer Tenant" is then entitled to the payment of money from" the club owner, "the Entertainer Tenant shall surrender, reimburse and pay to [the club owner], all Net Dance Performance Fees (which are defined as Dance Performance Fees remaining after the payment of lease time rent, additional rent, and contract damages) earned by the Entertainer Tenant at any time while performing on the Premise …."; if the dancer "fails to pay any applicable tax and [the club owner] is later held accountable by any court, tribunal, or government agency for the payment of taxes on income generated by the Entertainer Tenant while performing on the Premises," the dancer must pay club owner "a portion of Net Dance Performance Fees earned by the Entertainer Tenant equal to the amount of taxes, interest, and penalties that [the club owner] is required to pay"; a

dancer merely claiming her relationship with the club is "other than that of a Landlord and the Entertainer Tenant" constitutes "a material breach" of the agreement, entitling the club owner to payment by the dancer "equal to all Net Dance Performance Fees earned by the Entertainer Tenant pursuant to this Lease ….").

208. Materials constituting standard lease forms include those which Flaig falsely claims to be outdated and no longer in use, including agreements and packets produced by adult entertainment clubs such as Top Hat and Private Dancer in response to plaintiffs' subpoenas.

209. Flaig, OC, and BACE have arrogated to themselves the power to dictate which dancers who had signed lease agreements would be allowed to work at their member or affiliated clubs, using this power to blacklist dancers who object to the stringent requirements of the Tenant System and who have attempted to organize dancers to fight against it, which constitutes an unlawful group boycott.

210. The anticompetitive conduct of the Sirens defendants, and of the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, Flaig, OC, BACE, and the members of the Statewide Defendant Class has restrained or eliminated price competition with respect to Ms. Hogan, Ms. Valentine, the Sirens Class members, the Statewide Plaintiff Class members, and the House of Babes Class members, causing antitrust injury and the further threat of such injury. By reason of the alleged violations of the antitrust laws, Ms. Hogan, Ms. Valentine, the Sirens Class members, the Statewide Plaintiff Class members, and the House of Babes Class members have sustained injury to their business or

property, having been paid less than they would have in the absence of the illegal contract, combination or conspiracy of the defendants, and as a result have suffered damages. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

211. Defendants' continued adherence to this illegal contract, combination, and conspiracy threatens plaintiffs and the members of the Statewide Plaintiff Class with further injury of the type the antitrust laws were meant to punish and prevent.

212. The conspiracy of the Sirens defendants, and of the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, Flaig, OC, BACE, and the members of the Statewide Defendant Class and the acts in furtherance thereof constitute illegal price-fixing in violation of Section 1 of the Sherman Act (15 U.S.C. §1) and the Ohio Valentine Act (R.C. 1331.01 et seq.).

213. By virtue of the alleged conduct, Ms. Hogan, Ms. Valentine, and the members of the Sirens Class, the Statewide Plaintiff Class, and the House of Babes Class are entitled to, and do, seek: treble damages; injunctive relief barring Sirens, BACE, all BACE-member and BACE-affiliated clubs, OC, all OC-member and OC-affiliated clubs, Flaig, the other defendants, the members of the Statewide Defendant Class, and all persons or entities in active concert or participation with either of them from using, promoting, promulgating, and/or enforcing the unlawful Lease Agreement and Tenant System, and from exacting the illegal "rent" and "damage" charges thereunder; and equitable relief in the form of full restitution of "rent" and "damage" charges unlawfully collected.

214.   When dancing at BACE-/OC-member and BACE-/OC-affiliated clubs that adopted the Tenant System propagated and promoted  by BACE, OC, and Flaig, dancers including Ms. Hogan and Ms. Valentine were injured by being subjected, and as dancers in the industry remain under threat of being subjected, to the same unlawful price-fixing scheme contained and reflected in the Tenant System, regardless of whether or not they signed any standard Lease Agreement.

215.   By virtue of the alleged conduct, Ms. Hogan, Ms. Valentine, and the members of Statewide Plaintiff Class are entitled to, and do, seek: treble damages; injunctive relief barring the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, Flaig, OC, BACE, and the members of the Statewide Defendant Class in active concert or participation with any of them from using, promoting, promulgating, and/or enforcing the unlawful Lease Agreement and Tenant System, and from exacting the illegal "rent" and "damage" charges thereunder; and equitable relief in the form of full restitution of "rent" and "damage" charges unlawfully collected.

(*Reserved only to the extent of Ms. Hogan's and the Sirens Class's claims the Sirens Defendants; extant as to all plaintiffs and members of the Statewide Plaintiff Class against the newly added defendants and the Statewide Defendant Class, excluding the Sirens defendants, and as to the House of Babes Class against House of Babes*) **Eleventh Count: Civil Conspiracy (by the Sirens Class against the Sirens Defendants and by the named plaintiffs, the Statewide Plaintiff Class, and the House of Babes Class against the named defendants and the Statewide Defendant Class)**

216.   All paragraphs of this Complaint are fully re-alleged and incorporated herein.

217.   The Sirens defendants, and the Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, and Fantasyland West defendants, Flaig, OC, BACE, and the members of the

Statewide Defendant Class have engaged in a malicious combination to violate Ohio statutes and common law and federal statutes, damaging Ms. Hogan, Ms. Valentine, the members of the Sirens Class, the members of the Statewide Plaintiff Class, and the members of the House of Babes Class.

218. The underlying unlawful acts on which this civil conspiracy claim is based are violations of federal and state wage and hour and antitrust laws, namely 29 U.S.C. §§ 201 et seq., § 34a, Ohio Revised Code § 4113.15, 15 U.S.C. § 1, Ohio Revised Code § 1331.01 et seq., and equitable restitution based on unjust enrichment.

219. Ms. Hogan, Ms. Valentine, the members of the Sirens Class, the members of the Statewide Plaintiff Class, and the members of the House of Babes Class are entitled to compensatory damages, punitive damages, equitable restitution of all unlawfully collected "rent," "damage," fees, and other charges, and appropriate injunctive and declaratory relief.

(*Reserved only to the extent of Ms. Hogan's and the Sirens Class's claims the Sirens Defendants; extant as to all plaintiffs and members of the Statewide Plaintiff Class against the newly added defendants and the Statewide Defendant Class, excluding the Sirens defendants, and the House of Babes Class against House of Babes*) **Twelfth Count: Unjust Enrichment Justifying Equitable Restitution (by the Sirens Class against the Sirens Defendants and by the named plaintiffs, the Statewide Plaintiff Class, and the House of Babes Class against the named defendants and the Statewide Defendant Class)**

220. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

221. By virtue of the "rent," "damage," fees, tip shares, and other charges illegally collected, deducted, and/or withheld by the Sirens Defendants, Ms. Hogan and the members of the Sirens Class conferred substantial benefits on the Sirens Defendants, all with such Defendants' knowledge.

222. Retention of these benefits by the Sirens Defendants would be unjust under the circumstances.

223. Ms. Hogan and the Members of the Sirens Class are entitled to equitable restitution of all unlawfully collected, deducted, and/or withheld "rent," "damage," tip shares, fees, and other charges.

224. Likewise, by virtue of the "rent," "damage," fees, tip shares, and other charges illegally collected, deducted, and/or withheld by the defendant clubs, club owner, and club managers and the members of the Statewide Defendant Class, Ms. Hogan, Ms. Valentine, the members of the Statewide Plaintiff Class, and the members of the House of Babes Class conferred substantial benefits on such defendants and the members of the Statewide Defendant Class, all with such defendants' and defendant class members' knowledge.

225. Retention of these benefits by these defendants and the Statewide Defendant Class would be unjust under the circumstances.

226. Ms. Hogan, Ms. Valentine, the members of the Statewide Plaintiff Class, and the members of the House of Babes Class are entitled to equitable restitution of all unlawfully collected, deducted, and/or withheld "rent," "damage," tip shares, fees, and other charges.

*(Reserved to the extent of Ms. Hogan's and the Sirens Class's claims the Sirens Defendants; extant as to all plaintiffs and members of the Statewide Plaintiff Class against the newly added defendants and the Statewide Defendant Class, excluding the Sirens defendants)* **Thirteenth Count: Ohio Constitution, Article II § 34(a), FLSA, and O.R.C. § 4113.15—Failure to Pay Minimum Wage or Tipped Minimum Wage, Failure to Make Wage Payments Within 30 Days, and Unlawful Retention of Tips (by the Statewide Plaintiff Class against the Statewide Defendant Class)**

227. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

228. The members of the Statewide Defendant Class have used the Lease Agreement and the Tenant System to deny the Statewide Plaintiff Class and Statewide Collective members regular minimum wage or tipped minimum wage for each hour worked. As a result, the Statewide Defendant Class has violated the Ohio Constitution, Article II § 34(a), and the FLSA.

229. The members of the Statewide Defendant Class failed and continue to fail to make wage payments to the Statewide Plaintiff Class and Statewide Collective members within 30 days of when such payments were due and retained and continue to retain tips without lawful agreement from such persons, in violation of O.R.C. § 4113.15.

230. Ms. Hogan, Ms. Valentine, and the Statewide Class and Statewide Collective members are entitled to unpaid wages, liquidated damages, additional damages, interest, fees and costs.

### Fourteenth Count: Ohio Constitution, Article II § 34(a)—Failure to Pay Tipped Minimum Wages (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)

231. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

232. The House of Babes defendants did not pay Ms. Valentine and the House of Babes Class members at least regular minimum wage. Ms. Valentine and all House of Babes Class members earned tips.

233. Tips are the property of the person who earns them.

234. The House of Babes defendants claimed a "tip credit" to meet their obligation to pay Ms. Valentine and the House of Babes Class members their rightful minimum wages.

58

235.    At the same time, the House of Babes defendants retained some of Ms. Valentine's and the House of Babes Class members' tips and/or shared those tips with non-tipped employees.

236.    The House of Babes defendants were not entitled to use the "tip credit" to pay Ms. Valentine and the House of Babes Class members less than regular minimum wage because the House of Babes defendants did not use the tips as part of a valid tip pool.

237.    Further, Ohio Constitution, Article II § 34(a) does not authorize any sort of mandatory tip pooling arrangement.

238.    As a result, the House of Babes defendants have violated the Ohio Constitution, Article II § 34(a).

**Fifteenth Second Count: Fair Labor Standards Act (FLSA)—Failure to Pay Tipped Minimum Wages (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)**

239.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

240.    By not paying Ms. Valentine and the House of Babes Class members at least regular minimum wage for each hour worked, the House of Babes defendants have violated the FLSA.

**Sixteenth Count: Ohio Constitution, Article II § 34(a)—Unlawful Deductions and/or Kickbacks (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)**

241.    All paragraphs of this Complaint are fully re-alleged and incorporated herein.

242.    The House of Babes defendants' requirement that Ms. Valentine and the House of Babes Class members pay the House of Babes defendants when they performed dances

results in reducing Ms. Valentine's and the House of Babes Class members' wages below minimum wage or tipped minimum wage.

243. By paying Ms. Valentine and the House of Babes Class members less than minimum wage or tipped minimum wage, the House of Babes defendants violated Ohio Constitution, Article II, Section 34a.

**Seventeenth Count: Fair Labor Standards Act: Unlawful Deductions and/or Kickbacks (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)**

244. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

245. By paying Ms. Valentine and the House of Babes Class members less than minimum wage or tipped minimum wage, the House of Babes defendants violated the FLSA.

**Eighteenth Count: Ohio Constitution, Article II § 34(a)—Failure to Pay Minimum Wages (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)**

246. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

247. When Ms. Valentine and the House of Babes Class members functioned as dancers for a particular shift, the House of Babes defendants did not pay them any wages and in fact exacted payment of "rent" from them.

248. By paying Ms. Valentine and the House of Babes Class members less than minimum wage or tipped minimum wage, the House of Babes defendants violated Ohio Constitution, Article II, Section 34a.

**Nineteenth Count: Fair Labor Standards Act (FLSA)—Failure to Pay Minimum Wages (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)**

249. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

250. By paying Ms. Valentine and the House of Babes Class members less than minimum wage or tipped minimum wage, the House of Babes defendants violated the FLSA.

**Twentieth Count: Failure to Tender Pay by Regular Payday under Ohio Law (by plaintiff Valentine and the House of Babes Class against the House of Babes defendants)**

251. All paragraphs of this Complaint are fully re-alleged and incorporated herein.

252. At all relevant times, the House of Babes defendants failed to make wage payments to Ms. Valentine and the House of Babes Class members, as outlined above, within 30 days of when such payments were due.

253. By failing to make the wage payments within 30 days of when such payments were due, the House of Babes defendants violated O.R.C. § 4113.15.

254. Further, by retaining Ms. Valentine's and the House of Babes Class members' tips without agreement from such persons, the House of Babes defendants violated O.R.C. § 4113.15.

## IX. Prayer for Relief

Wherefore, plaintiffs pray for the following relief:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(2), and/or (b)(3) on behalf of the members of the alleged Classes and appointment of plaintiffs and plaintiffs' counsel to represent the plaintiff Classes and counsel for Flaig, BACE, and OC to represent the Statewide Defendant Class;

B.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of plaintiffs and plaintiffs' counsel to represent the collective action members;

C.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, Ohio Constitution, Article II § 34(a), and the OMFWSA;

D.     An award of unpaid wages due under the FLSA, Ohio Constitution, Article II § 34(a), the OMFWSA and R.C. § 4113.15;

E.     An award of liquidated damages as a result of defendants' failures to pay minimum wages pursuant to 29 U.S.C. § 216;

F.     An award of treble damages, based on defendants' and the Statewide Defendant Class's failure to pay minimum wages, pursuant to the Ohio Constitution, Article II § 34(a);

G.     An award of treble damages under the Sherman Act and Valentine Act;

H.     Injunctive relief barring the club defendants, Flaig, BACE, OC, and all BACE-member, BACE-affiliated, OC-member, and OC-affiliated clubs who are in the Statewide Defendant Class and are in active concert or participation with any of them from using, promulgating, and enforcing the unlawful Lease Agreement and Tenant System, from exacting the illegal "rent," "damage," tip shares, fees, and other charges thereunder, and from engaging in further anticompetitive conspiracies;

I. Equitable relief in the form of full restitution of all unlawfully collected, deducted, and/or withheld "rent," "damage," tip shares, fees, and other charges;

J. Liquidated damages under O.R.C. § 4113.15;

K. An award of pre-judgment and post-judgment interest;

L. An award of compensatory damages;

M. An award of costs and expenses of this action together with reasonable attorney's fees and expert fees;

N. Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

/s/ Andrew Biller
Andrew Biller (0081452)
Andrew Kimble (0093172)
Philip Krzeski (0095713)
BILLER & KIMBLE LLC
Easton Town Center
4200 Regent Street, Suite 200
Columbus, OH 43219
Tel: (614) 604-8759
Fax: (614) 583-8107
abiller@billerkimble.com
akimble@billerkimble.com
pkrzeski@billerkimble.com

/s/ Paul M. De Marco
Paul M. De Marco (0041153)
W.B. Markovits (0018514)
MARKOVITS, STOCK & DE MARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Tel: (513) 651-3700
Fax: (513) 904-6005
pdemarco@msdlegal.com

bmarkovits@msdlegal.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs request a trial by a jury of 12 persons.

/s/ Paul M. De Marco
Paul M. De Marco

# EXHIBIT

# B

# TOP HAT
## PART 1: PRELIMINARY LEASE INFORMATION
## AGREEMENT TO LEASE SPACE AS AN ENTERTAINER TENANT
## AND NOT BE AN EMPLOYEE

Please read the following information and at the end of this page; check if you wish to still lease space here or not.

1. You will be protected so no one can come into the club without a warrant or legal cause of action and ask for your personal information. You have 100% Entertainer Tenant-privacy rights.
2. If anyone comes to our club to take pictures, invade your privacy or cause emotional stress, we will use your Entertainer Tenant Space Lease to keep them at least 500 feet from the club premises.
3. Should another Entertainer Tenant do something illegal, it will help us protect you as an individual both in court and with the authorities.
4. The Club Management is known as a Property Manager, the Owner, as a Property Owner and you are an Entertainer Tenant.
5. You will not be hired or fired. You only lease space on an available basis, therefore, we have space or we do not have space available.
6. This document insures you will not be labeled as an employee, as you are not. You lease our space to perform artistic and fantasy dance entertainment as an Entertainer Tenant.
7. You understand that you are bringing artistic and fantasy dance entertainment experience with you, as we do not have a training program and we will lease you space based on the trade experience you possess..
8. You will obey basic rules of safety, all State and Federal Laws while respecting and not damaging the very premises that you lease.
9. We will be happy to allow you to review this paperwork in your file at any time with proper notice, or with anyone if you wish.
10. This lease does not obligate you to lease space only at this club. You may lease space where ever you want as you are not an employee. You are not in a contractual relationship to only entertain here.
11. You may wear any costume that meets with the legal requirements of this state and the safety policies of leasing space in this club.
12. During the time I Lease Space here, should there be any disputes or issues, I agree to resolve or litigate them individually with the club and settle with binding arbitration without seeking class treatment or consolidate my issues with others. This paragraph (12) survives termination of my space lease.

I wish to:

☐    Lease Space Here and Not Be An Employee.

☐    Because I am not nor will be an Employee in this club, I do not wish to Lease Space Here Based on Points 1-12. **(Review Part 5 if unsure)**

THANK-YOU FOR YOUR COOPERATION!

## ONLY SIGN BELOW IF YOU WISH TO NOT BE AN EMPLOYEE!

_____    _____    _____
Sign Real Name                Print Real Name                     Date

Part 2: Lease Agreement to Lease Space as Entertainer Tenant...NOT Employee
Supplied by The Owners Coalition

Reproduced without the written permission of Greg Flaig is illegal.

# TOP HAT
## PART: 2   ENTERTAINER TENANT SPACE LEASE AGREEMENT

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN THIS UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS. BY SIGNING THIS DOCUMENT, YOU ARE REPRESENTING THAT YOU UNDERSTAND THE CONTENTS OF THIS ENTERTAINER TENANT SPACE LEASE AGREEMENT AND THAT YOU AGREE TO ABIDE BY ALL OF ITS TERMS.**

_____ **(ENTERTAINER TENANT INITIAL HERE)**

This Lease (referred to as "Lease") is entered into this _____ day of_____ 20 _____,

by and between **TOP HAT** (Referred to as "Owner"/"Property Manger") whose address is

_____ (Referred to as the leased

"Premises"), and _____ (referred to as "The **Entertainer**

**Tenant**"), whose address is _____ and is as

follows:

### PURPOSE OF LEASE

Owner operates an alcohol business establishment with artistic entertainment on the **Premises,** where dance entertainment is presented to the adult public while customers enjoy the main focus of our business, which is alcohol consumption, social interaction, food when available, TV and music videos.

Owner desires to lease space to the **Entertainer Tenant,** on a non-exclusive basis, together with other similar Entertainer Tenant's, giving the right to jointly use certain areas of the **Premises** for activities related to presenting live dance entertainment to the adult public; and the **Entertainer Tenant** desires to lease space within the **Premises** on the terms of this **Lease,** for the purpose of performing live semi-nude artistic and fantasy dance entertainment and associated activities for patrons.

### TERMS OF LEASE

Property Owner and the Entertainer Tenant agrees as follows:

1. **Leasing Space on the Premises:** The Entertainer Tenant leases space and time from Property Owner with the non-exclusive right during normal business hours to use the stage areas and certain other portions of the **Premises** designated by Property Owner for the performing of live artistic and fantasy dance entertainment, for the engagement of related entertainment activities, and for the preparation of entertaining, upon the terms and conditions contained in this **Space Lease.**

2. **Term of Agreement:** This **Lease** is for an initial term of one (1) day from today's date, and shall automatically renew every day for a period of up to one (1) year unless:

   A. A party desiring not to renew the space lease gives notice to the other party of the intent not to renew at one (1) day prior to the expiration of the initial term or any renewal term; or

   B. This **Lease** is not otherwise terminated as provided for in paragraph 11 or 12.

Initial_____

C. A **Entertainer Tenant** can lease space up to one year at a time if there is space available, and the **Entertainer Tenant** or the Property Owner can end this at any time based on space availability or desire to stop leasing space by the **Entertainer Tenant**.

3. **Requesting Space :** The **Entertainer Tenant** shall choose and lease space time on which she desires to lease the Premises; all such days for any given week are to be selected at least one week in advance. Each day your leased space shall consist of a minimum of ( 4 ) consecutive hours during which the **Entertainer Tenant** shall provide artistic fantasy entertainment consistent with this **Space Lease**. The **Entertainer Tenant** acknowledges that there are other the **Entertainer Tenants** leasing the **Premises**, and agrees to lease her stage sets in cooperation with the leasing desires of the space lease. The Property Owner shall make the Premises available to the **Entertainer Tenant** during the dates and times selected by the Entertainer Tenant, and for those days during which the **Entertainer Tenant** desires to lease the Premises. Once space is leased, neither the **Entertainer Tenant** nor Property Owner shall have the right to cancel or change any lease space sets except upon material breach by the other party as defined in Paragraph 11 of this **Space Lease,** or as may be agreed to by the **Entertainer Tenant and** Property Owner. Should **the Entertainer Tenant** desire not to perform on the Premises all during any given day, this **Entertainer Tenant** shall give Property Owner notice of this at least one (1) day in advance that she has declined to not fulfill her space lease request for that future day. The **Entertainer Tenant** may be permitted to lease space on the Premises on days when she has not requested space for herself to perform, subject to space availability.

If the Entertainer Tenant misses an entire leased time, the Entertainer Tenant shall pay to Property Owner as contract damages for each day or night of leased time which was missed. The "damage" cost will be $_____ for each day or night lease time is missed. Such contract damages are to be paid by the **Entertainer Tenant** to Property Owner no later than by the end of the next space lease time, if at all. All contract damages stated in this **Space Lease** are established in view of the fact that it would be difficult to fix or determine the exact actual damages incurred by Property Owner as a result of breaches by the **Entertainer Tenant** of the terms of this **Space Lease** since other **Entertainer Tenants** may not have been able to lease space.

4. **Space Lease Time:** The **Entertainer Tenant** agrees to pay rent to **Property Owner** in an amount set for on the Lease Addendum (referred to as Lease **Space Time Rent).** All Leased Time and space costs shall be paid to **Property Owner** immediately, upon request.

5. **Use of Premises:** The Entertainer Tenant agrees to:

A. Perform artistic and fantasy dance entertainment at the Premises (which is permitted by the law) during the hours of each leased time for which she has leased the **Premises.** In consultation with the Entertainer Tenants who lease space on the Premises, Property Owner shall establish a fixed fee for the use of space for private, champagne and table dances) performed on the **Premises** (referred to as "Private Room Space Rent"), and the **Entertainer Tenant** agrees to keep the rest of the money she charges as it is her money and for the artistic and fantasy dance performance. Nothing contained in this Lease, however, shall limit the **Entertainer Tenant** from seeking and/or obtaining "personal tips" and/or gratuities over-and-above the established lease space rent for such entertainment time. **The parties specifically acknowledge and agree that Dance Performance Fees are neither tips nor gratuities, but are, rather, service charges to the customer for the purchase of a personal private room dance performance with the Entertainer Tenants.** The space rental goes to the Property Manager, the remainder is kept by the Entertainer Tenant.

minimum usage an hour as long as the tips of the employee bring the hourly income of the individual up to at least the full minimum wage rate). Under such an employment arrangement, the Entertainer Tenant would further be entitled to retain "tips" and/or gratuities -- *but not* Dance Performance Fees -which she may collect while performing on the Premises, although Property Owner is permitted to require the Entertainer Tenant to share a portion of her tips with other tipped employees as assistance fee's.

The parties specifically acknowledge that the Entertainer Tenant right to obtain and retain Dance Performance Fees pursuant to this Lease is specifically contingent and conditioned upon the acknowledged business relationship of the parties as being that of Landlord and the Entertainer Tenant as is stated in subparagraph 7A.

The parties additionally acknowledge that if there were the relationship between them to be that of employer and employee, the Entertainer Tenant could be terminated at any time without cause at will and without prior notice or warning, and that Property Owner would be entitled to control the Entertainer Tenant Leased Space schedule and the hours of work, job responsibilities, physical presentation (make-up, hairstyle, etc); costumes and other wearing apparel, music, work habits, the selection of her customers, the nature, content, character, manner and means of her performances, and her ability to perform at other locations and for other businesses. The Entertainer Tenant hereby represents that she desires to be able to make all of these choices herself and without the control of the Property Owner. The Property Owner and the Entertainer Tenant agree by the terms of this Space Lease that all such decisions are exclusively reserved to the control of the Entertainer Tenant.

AN ENTERTAINER TENANT FURTHER SPECIFICALLY REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE OWNER SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS SUBPARAGRAPH 7B, BUT, RATHER, DESIRES TO PERFORM AS A ENTERTAINER TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS LEASE.

C. If any court, tribunal, or governmental agency determines that the relationship between the parties is something other than that of Landlord / Entertainer Tenant and that the Entertainer Tenant is then entitled to the payment of monies from Property Owner, all of the following shall apply:

    I. In order to assure that Property Owner is not unjustly harmed and that the Entertainer Tenant is not unjustly enriched by the parties having financially operated pursuant to the terms of this Lease, Property Owner and the Entertainer Tenant agrees that the Entertainer Tenant shall surrender, reimburse and pay to Property Owner, all Net Dance Performance Fees (which are defined as Dance Performance Fees remaining after the payment of lease time rent, additional rent, and contract damages) earned by the Entertainer Tenant at any time while performing on the Premise; all of which would otherwise have been received and kept by Property Owner had they not been retained by the Entertainer Tenant under the terms of this Lease;

    ii. Any payment deemed owed by Property Owner to the Entertainer Tenant shall be determined based upon the pay arrangement set forth in subparagraph 7B.

    iii. The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in subparagraph 7B.

8. **Taxes:** The Entertainer Tenant shall be exclusively responsible for, and shall pay,

Initial_____

all federal, state, local taxes and contributions imposed upon any income earned by the **Entertainer Tenant** while performing on the Premises (including, but not limited to income taxes and social security withholding). If the **Entertainer Tenant** fails to pay any applicable income taxes and **Property Owner** is later held accountable by any court, tribunal, or governmental agency for the payment of taxes on income generated by the **Entertainer Tenant** while performing on the **Premises**, **Entertainer Tenant** shall pay to **Property Owner** as damages for the breach of this obligation a portion of **Net Dance Performance Fees** earned by the **Entertainer Tenant** equal to the amount of taxes, interest, and penalties that **Property Owner** is required to pay.

9. **Costumes:** The **Entertainer Tenant** shall supply all of her own costumes and wearing apparel of any kind or nature. **Property Owner** shall not be responsible for such decisions, or control in any way the choice of costumes and wearing apparel selected by the **Entertainer Tenant.** All costumes and wearing apparel selected by the **Entertainer Tenant** must, however, comply with all applicable laws and governmental regulations.

10. **Nature of Performance:** **Property Owner** shall have no right to direct or control the nature, content, character, manner or means of **the Entertainer Tenant** entertainment services or her performances. The **Entertainer Tenant** agrees, however, to perform live artistic & fantasy entertainment while leasing the **Premises** (which is permitted by law)

11. **Material Breach**: **Property Owner** materially breaches this **Lease** by failing to provide to the **Entertainer Tenant** the leased portion of the **Premises** on any day or night as leased by the **Entertainer Tenant.** Any        of the following conduct by the **Entertainer Tenant** shall constitute a material breach of this **Lease:**

    A. Failing to maintain any and all required licenses and/or permits;

    B. Violating any federal, state, or local law or regulation while on the **Premises.**

    C. Failing to comply with **Usage of Space Lease Conditions** & obligations.

    D. Failing to pay any **Space Lease Fee's / Damages** and/or additional rent's when due;

    E. Engaging in disruptive or unlawful behavior while on the **Premises.**

    F. Failing to pay in a timely way any assessed lease contract damages;

    G. Claiming the business relationship with **Property Owner** as being other than that of a Landlord and the Entertainer Tenant, contrary to Paragraph 7A of this **Lease;** or

    H. Violating any public health or safety rules or concerns.

12. **Termination of the Space Lease:** Either party may terminate this **Space Lease**, without cause. Upon material breach, the non-breaching party may terminate this **Lease** immediately with zero notice to the other party, or as otherwise provided by law. Nothing in this paragraph, however, shall allow the **Entertainer Tenant** to perform on the **Premises** without a valid license, with picture, or to continue to engage in conduct in violations of any laws, regulations, or public health or safety rules or concerns.

In lieu of terminating this **Space Lease** upon the material breach by the **Entertainer Tenant** of the provisions set forth in subparagraph 11E, **Property Owner** may, at its option, assess as contract damages for that material breach, an amount not to exceed the contract damage amount set forth in Paragraph (3) for a missed **Lease Time.** In lieu of or in addition to cancelling this **Lease** upon the material breach by the **Entertainer Tenant** of the provisions as set forth in subparagraph 11G, **Property Owner** may, at its option and in addition to any other remedies that may be available to **Property Owner** by law or    as are contained in this **Lease**, do either or both of the following:

Initial _____

Reproduction without the written permission of Greg Flaig is illegal

all federal, state, local taxes and contributions imposed upon any income earned by the **Entertainer Tenant** while **performing** on the **Premises** (including, but not limited to income taxes and social security withholding). If the **Entertainer Tenant** fails to pay any applicable income taxes and **Property Owner** is later held accountable by any court, tribunal, or governmental agency for the payment of taxes on income generated by the **Entertainer Tenant** while performing on the **Premises, Entertainer Tenant** shall pay to **Property Owner** as damages for the breach of this obligation a portion of **Net Dance Performance Fees** earned by the **Entertainer Tenant** equal to the amount of taxes, interest, and penalties that **Property Owner** is required to pay.

9. **Costumes:** The **Entertainer Tenant** shall supply all of her own costumes and wearing apparel of any kind or nature. **Property Owner** shall not be responsible for such decisions, or control in any way the choice of costumes and wearing apparel selected by the **Entertainer Tenant.** All costumes and wearing apparel selected by the **Entertainer Tenant** must, however, comply with all applicable laws and governmental regulations.

10. **Nature of Performance: Property Owner** shall have no right to direct or control the nature, content, character, manner or means of **the Entertainer Tenant** entertainment services or her performances. The **Entertainer Tenant** agrees, however, to perform live artistic & fantasy entertainment while leasing the **Premises** (which is permitted by law)

11. **Material Breach: Property Owner** materially breaches this **Lease** by failing to provide to the **Entertainer Tenant** the leased portion of the **Premises** on any day or night as leased by the **Entertainer Tenant.** Any     of the following conduct by the **Entertainer Tenant** shall constitute a material breach of this **Lease:**

    A. Failing to maintain any and all required licenses and/or permits;

    B. Violating any federal, state, or local law or regulation while on the **Premises.**

    C. Failing to comply with **Usage of Space Lease Conditions** & obligations.

    D. Failing to pay any **Space Lease Fee's / Damages** and/or additional rent's when due;

    E. Engaging in disruptive or unlawful behavior while on the **Premises.**

    F. Failing to pay in a timely way any assessed lease contract damages;

    G. Claiming the business relationship with **Property Owner** as being other than that of a Landlord and the Entertainer Tenant, contrary to Paragraph 7A of this **Lease;** or

    H. Violating any public health or safety rules or concerns.

12. **Termination of the Space Lease:** Either party may terminate this **Space Lease,** without cause. Upon material breach, the non-breaching party may terminate this **Lease** immediately with zero notice to the other party, or as otherwise provided by law. Nothing in this paragraph, however, shall allow the **Entertainer Tenant** to perform on the **Premises** without a valid license, with picture, or to continue to engage in conduct in violations of any laws, regulations, or public health or safety rules or concerns.

In lieu of terminating this **Space Lease** upon the material breach by the **Entertainer Tenant** of the provisions set forth in subparagraph 11E, **Property Owner** may, at its option, assess as contract damages for that material breach, an amount not to exceed the contract damage amount set forth in Paragraph (3) for a missed **Lease Time.** In lieu of or in addition to cancelling this **Lease** upon the material breach by the **Entertainer Tenant** of the provisions as set forth in subparagraph 11G, **Property Owner** may, at its option and in addition to any other remedies that may be available to **Property Owner** by law or     as are contained in this **Lease,** do either or both of the following:

Initial _____

Reproduction without the written permission of Greg Flaig is illegal

A. Assess contract damages against the **Entertainer Tenant** equal to all **Net Dance Performance Fees** earned by the **Entertainer Tenant** pursuant to this **Lease;**

B. Alter the relationship between the parties to that of an employment arrangement as it is described in subparagraph 7B of this **Lease.**

**13. Assignment/Non-Exclusivity.** This **Space Lease** is acknowledged to be personal in nature. This means that the **Entertainer Tenant** has no right to sublease her rights to the use of the **Premises,** or to assign this **Space Lease** or any rights or obligations contained in it, to any other person without the express written consent of **Property Owner.** However if the **Entertainer Tenant** is unable to fulfill her contractual obligations during any scheduled **Lease Time,** the **Entertainer Tenant** shall have the right to substitute the services of any licensed (if legally required) **the Entertainer Tenant** who has also enter into the **Entertainer Tenant Performance Lease** with the **Property Owner.** Any such substitution shall not, however, relieve the **Entertainer Tenant** of the rent, additional rent, and lease contract damage obligations as contained in this **Lease,** if a substitute the **Entertainer Tenant** fails to pay any **Lease Time Rent,** additional rent, and/or contract damages that are due to **Property Owner** as a result of the substitute's lease obligations.

The **Entertainer Tenant** obligations under this **Space Lease** are non-exclusive; meaning that the **Entertainer Tenant** is free to perform her entertainment activities at businesses or locations other than at **Property Owner's Premises.**

**14. Property Owner's Additional Obligations.** In addition to leasing the **Premises, Property Owner** shall:

A. Provide to the **Entertainer Tenant,** at **Property Owner's** expense, music for use on the **Premises,** lighting, and dressing room facilities.(for getting ready, using restroom, make-up, hair touch-up and changing costumes, etc.)

B. Pay any and all copyright fees due relative to the music used on the **Premises;** and

C. Advertise the business in a commercially reasonable manner for the benefit of both the **Entertainer Tenant** and **Property Owner.** This does not, however, prohibit the **Entertainer Tenant** from advertising her services in any manner or fashion as she so desires. The club actually recommends the Entertainer Tenant control individual branding as an **Entertainer Tenant.**

**15. Nature of Business.** The **Entertainer Tenant** acknowledges that she understands:

1). The nature of the business operated at the **Premises** is that of an alcohol premises that offers forms of entertainment, music, food, TV's, performances, entertainment, and fantasy discussions with patrons.

2). **Entertainer Tenants** may be subjected to explicit language.

3). **Entertainer Tenant** may be subjected to advances by customers, to depictions or portrayals of explicit fantasy sexual conduct, or to similar types of behavior. The **Premises** frown on this type of behavior and will reject then offenders.

The **Entertainer Tenant** states and represents that she is not and will not be offended by such conduct, depictions, portrayals, and language, and that she assumes any and all risks associated with being subject to these matters.

**16. Privacy.** The **Entertainer Tenant** and **Property Owner** acknowledge that privacy and personal safety are material concerns to the **Entertainer Tenant.**

Accordingly, **Property Owner** shall not disclose to any persons who are not associated with the **Property Owner,** or to any governmental entity, department, or

| Initial |
|---------|

agency, the legal name of the **Entertainer Tenant,** or her address, or her telephone number, without prior written authorization of the **Entertainer Tenant,** or as may be required by law.

17. **Severability.** In the event that any term, paragraph, subparagraph, or portion of this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease;** it being the intent of the parties that any illegal or unenforceable portion of this **Lease,** to the extent possible, be severable from this **Lease** as a whole. This paragraph shall not apply, however, to the circumstance of a judicial or administrative determination that the business relationship between the **Entertainer Tenant** and **Property Owner** is something other than that of Landlord and the Entertainer Tenant, which shall be controlled by the provisions of subparagraph 7C in this **Lease.**

18. **Miscellaneous:**

   A. This **Lease** shall be interpreted pursuant to the laws of the State in which the **Property Owner** is located.

   B. In the event that **Property Owner** commences legal action against the **Entertainer Tenant** to enforce any of the provisions of this **Lease,** or is required to defend against claims in any court or administrative proceeding which have been made by the **Entertainer Tenant** against **Property Owner** arising either out of the terms of this **Lease** or the business relationship between the parties, if **Property Owner** is the prevailing party in that legal action or proceeding, **Property Owner** shall be entitled to reimbursement from the **Entertainer Tenant** for any and all costs and expenses which **Property Owner** has incurred in conjunction with such legal action or proceeding, including actual reasonable attorney fees.

19. **Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Cost:**

   A. Binding Arbitration. Any and all claims and/or controversies between the **Entertainer Tenant** and the **Club** (and any other persons or entities associated the **Club,** including but not limited to related corporations, parent corporations, subsidiaries, affiliates, officers, directors, shareholders, members, managers, employees, and/or agents), including any and all claims that arises from conduct that predates this Agreement or which arises thereafter, and regardless of whether such claims sound in statute, a local regulation or arise from any other source, (except for an administrative charge before an administrative agency) shall be exclusively decided by binding arbitration held pursuant to and in accordance with the Federal Arbitration Act ("FAA") and shall be decided by a single neutral arbitrator agreed upon by the parties, who shall be permitted to award, subject only to the restrictions contained in this Paragraph 19 and in accordance with the severability provisions of Paragraph 19, any relief available in a court. **All parties waive any right to litigate such controversies, disputes, or claims in a court of law, and waive the right to trial by jury.**

The arbitrator shall only have the authority to hear a claim brought on behalf of a single individual against the Club, and has no authority to hear a claim brought by multiple individuals, or a class, or to consolidate the claims of multiple individuals into a single proceeding, except with the signed consent of all parties to the proceeding. In the event an action is brought in arbitration on behalf of multiple individuals or on behalf of a class that is signed by all parties, the arbitrator shall have only the authority to divide the action into individual proceedings, each then to be heard by a separate individual arbitrator.

In the event that the parties are unable to mutually agree upon an arbitrator, either party may apply to the American Arbitration Association ("AAA") for the selection of an arbitrator. Any arbitration shall be conducted consistent with the rules of the

Initial_____

Reproduction without the written permission of Greg Flaig is illegal

AAA, except as expressly or implicitly modified by this agreement. In the event that the dispute relates to an "Employment Related Claim" (i.e. on arising under an actual or asserted employment law, statute, or regulation, and/or one which would otherwise be administered by AAA under its Employment Rules) then the AAA Employment Rules shall apply. All other disputes shall be governed by the AAA Commercial Rules.

In arbitration, all parties shall have the right to be represented by legal counsel; the arbitrator shall permit _only_ that minimal discovery which is necessary to prosecute/defend the actual claim then pending before the arbitrator and all discovery, including responses and documents produced shall be deemed confidential and shall only be used and/or disclosed in relationship to the then pending proceeding. The parties shall have the right to subpoena witnesses in order to compel their attendance at hearing and to cross examine witnesses, the proceedings shall be conducted in accordance with the requirements of rudimentary due process required of arbitrations, and the arbitrator's decision shall be in writing and shall contain findings of fat and conclusions of law. The arbitrator's decision shall be final, subject only to review under standards set forth in the FAA. For any claims based upon an employment related statute, such as the Fair Labor Standards At or other similar federal or state statute, the **Club** shall pay all fee's that the Entertainer Tenant <u>would not</u> have had to pay in a court proceedings.

**All arbitrations will be paid for by 50% of the Plaintiff & 50% by the Defendant until the arbitration process is settled.**

The arbitrator shall have the exclusive authority to resolve any and all disputes over the validity of any part of this agreement and any award by the arbitrator may be entered as a judgment in any court having jurisdiction.

B. <u>Cost and Fees:</u>  Any judgment, order, or ruling arising out of a dispute between the parties shall, to the extent permitted by applicable law, award costs incurred for the proceedings and reasonable attorney fees to the prevailing party. This provision shall not, however, apply to an Employment Related Claim prosecuted under a federal or state statute that provides for the award of fees and costs to a prevailing party. In such circumstances, the federal or state statue shall govern the award of fees and costs related to any non-statutory claims. Notwithstanding the forgoing, nothing shall restrict the Arbitrator from awarding the **Club** costs and/or attorney fees in the event that the Arbitrator determines that a claim is frivolous, pursued in bad faith, and/or conducted in a manner that multipliers the proceedings unreasonably and/or veraciously.

In the event that a party files a claim in Court in contravention of this agreement to arbitrate, the Court shall award a party its costs and reasonable attorney fees incurred by it in successfully moving to compel arbitration.

C. **Class and Collection Action Waiver: Entertainer Tenant** agrees that all claims or disputes between the **Entertainer Tenant** and the **Club** (and any other persons or entities associated with the **Club**, including but not limited to related corporations, parent corporations, subsidiaries, and affiliates, officers, directors, shareholders, members, managers, employees, and/or agents) will be brought individually; that he/she <u>will not</u> consolidate his/her claims with the claims of any other individual; that he/she <u>will not</u> seek class or collective action treatment for any claim that he/she may have; the he/she <u>will not</u> participate in any class or collective action against the **Club** or against any persons or

Initial _____

entities associated with the **Club**. If at any time **Entertainer Tenant** is made a member of a class in any proceedings, he/she will "opt out" at the first opportunity, and should any third party pursue any claims on his/her behalf, **Entertainer Tenant** shall waive his/her rights to any monetary recovery from such action. <u>In other words the **Entertainer Tenant** expressively waives his/her right to prosecute, participate in, or pursue a class or collective action and/or other joint proceedings against the club and any other persons or entities associated with the Club, including but not limited to related corporations, parent corporations, subsidiaries, and affiliates, officers, directors, shareholders, members, managers, employees and/or agents).</u>

This paragraph 19(c) shall survive any judicial determination that the arbitration agreement contained herein is unenforceable for any reason.

**D. Survival:** All provisions and subparagraphs of this paragraph 19 shall survive termination of this agreement

IT IS THE POLICY OF TOP HAT NOT TO ENTER INTO A SPACE LEASE WITH AN ENTERTAINER TENANT WHO IS UNDER THE AGE OF EIGHTEEN (18), AND THIS SPACE LEASE IS NULL AND VOID IF THE ENTERTAINER TENANT IS NOT OF SUCH AGE. ENTERTAINER TENANT SPECIFICALLY REPRESENTS AND GUARANTEES THAT SHE IS EIGHTEEN (18) YEARS OF AGE OR OLDER, THAT SHE HAS PROVIDED--OR WILL PROVIDE UPON REQUEST APPROPRIATE IDENTIFICATION VERIFYING HER AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.

(THE ENTERTAINER TENANT'S INITIALS) _____

THIS "SPACE LEASE CONDITIONS OF SPACE USAGE" ARE NOT INTENDED TO BE AN EMPLOYMENT CONTRACT OR PART OF A JOB CONTRACTUAL AGREEMENT BETWEEN THE ENTERTAINER TENANT AND THE CLUB. THE CLUB RESERVES THE RIGHT TO MODIFY, DELETE, OR ADD TO ANY OF THE CONDITIONS CONTAINED HEREIN WITHOUT NOTICE, AND RESERVES THE RIGHT TO CANCEL ENTERTAINER TENANT SPACE LEASE AT ANY TIME, WITH OR WITHOUT NOTICE OR CAUSE UPON BREECH OF THIS SPACE LEASE AGREEMENT OR SPACE LEASE USAGE TERMS.

I understand the statements and requirements expected of me under this Space Lease.

_____          _____
Entertainer Tenant Stage Name                                    Date

_____          _____
Sign Real Name                                                   Date of Birth

_____
Print Name

_____          _____
Management                                                       Date

**\*Put in file**

Reproduction without the written permission of Great Flag is illegal

# TOP HAT
## Part 3: ENTERTAINER TENANT SPACE LEASE AGREEMENT WAIVER

I understand that the relationship between myself and **TOP HAT** is that I am Leasing Space and Time. I understand that I am not an employee of **TOP HAT** and that **TOP HAT** has no duty to withhold any taxes on my behalf or for my benefit.

I have provided my legal name, address, social security number and driver's license number to **TOP HAT** to meet State & Federal I.D. regulations. I consent and allow **TOP HAT** to disclose this information to the State Department of Revenue and/or The Internal Revenue Service, upon request.

I hereby waive and hold harmless **TOP HAT** , and its employees, from the responsibility of reporting, withholding, and disclosure of any income earned or received by me.

I understand, because I am not an employee, I am not eligible for workers compensation or state unemployment while leasing space here or after I leave respectively.

I understand the **Property Owner** may use my pictures to promote the club once I have lease space here. I give the **Property Owners** the right to use my pictures to promote the club for me and his usage of these pictures will bring me income which will suffice a payout for my picture usage.

I also understand that I am responsible to disclose and report my income earned while working in this Space Lease and Time arrangement within **TOP HAT** to the Department of Revenue and/or The Internal Revenue Service.

_____     _____
Signature                                            Printed Name

_____
Date of Signature

\*\*1 copy to signee and original goes in file.

## TOP HAT
## Part 4: ENTERTAINER TENANT SPACE LEASE AGREEMENT
## FOR USE OF PREMISES

**(ANSWER YES OR NO)**

_____ I HAVE BEEN CONVICTED FOR FELONY POSSESSION OR SALE OF DRUGS.

_____ I HAVE BEEN CONVICTED OF PROSTITUTION OR SOLICITATION.

_____ I HAVE HAD A ENTERTAINER TENANT LEASE OR CLUB POSITION TERMINATED BECAUSE OF MY USE OF DRUGS OR PROMOTING PROSTITUTION.

_____ I UNDERSTAND THAT I AM A ENTERTAINER TENANT AND THE OWNERS OF THE PREMISES ARE NOT RESPONSIBLE FOR UNLAWFUL ACTS CONSTITUTED ON MY PART.

_____ I AGREE TO BE EXCLUSIVELY RESPONSIBLE FOR FEDERAL, STATE, LOCAL TAXES AND CONTRIBUTIONS IMPOSED OR REQUIRED AT ANY TIME BY UNEMPLOYMENT, WORKERS COMPENSATION, SOCIAL SECURITY, MEDICARE OR INCOME TAX LAWS, OR ANY OTHER APPLICABLE LAWS, RULES OR REGULATIONS IN CONNECTION WITH ANY MONEY EARNED BY ME AT THE PREMISES.

_____ AS AN ENTERTAINER TENANT, I WILL CARRY MY OWN PERSONAL LIABILITY INSURANCE. I AGREE THE LEASER IS NOT LIABLE FOR ANY INJURIES SUSTAINED BY ME ON THE PREMISES OR PROPERTY AT ANY TIME.

_____ I UNDERSTAND THAT GIVING FALSE INFORMATION ON MY SPACE LEASE APPLICATION WILL BE REASON FOR THE IMMEDIATE CANCELLATION OF MY ENTERTAINER TENANT SPACE LEASE.

_____          _____
Entertainer Tenant Stage Name                                         Date

_____          _____
Legal Name (print)                                                          Date of Birth

**1 copy to Entertainer Tenant and <u>original in the file.</u>

Reproduction without the written permission of Greg Flaig is illegal

## TOP HAT
## Part 5. I CHOOSE TO BE A ENTERTAINER TENANT
## AND NOT AN EMPLOYEE.

| If I Choose To Be An ENTERTAINER TENANT | vs. | If I Choose To Be An EMPLOYEE |
|---|---|---|
| 1. As an Entertainer Tenant, all of my earnings will come from my customers. The harder I apply my trade, the more money I can make. I will charge my customers for my ET performances; the money that I receive from them will be my money. I will be able to take home money at the end of the day; and I will be solely responsible for taking care of and paying all of the taxes I owe on this income. I will pay a spaces lease fee to the Club for the ability to perform here. I will pay assistance fees as stated in my Entertainer Tenant Agreement and any mandatory damages I cause. I will pay "Lease Space Time & Rental" for Champaign Private Rooms. As stated in my "Entertainer Tenant Lease" I can review a copy of my "Entertainer Tenant Lease" to see the currently established amount of those lease space fees and rental costs. | | 1. As an Employee, I would be paid on an hourly basis at a rate equal to the applicable minimum wage, reduced by any maximum "tip credit" as may be allowed by law, and I will also be paid a commission fee equal to 50% of the price of all non-specialty dances that I perform over 10 dances. Regarding this "tip credit," the laws in certain states permit an employer to reduce minimum wage payments down to as low as $4.08 per hour as long as the tips of the employee bring the hourly income of the individual up to at least the full minimum wage rate of $8.15 an hour. If I have any questions as to whether a tip credited minimum wage is permitted in this state, I will ask the Property Manager. |
| 2. As an Entertainer Tenant, the dance fees I charge my customers, minus "Entertainer Tenant Lease" payouts, **are mine to keep**. | | 2. As an Employee, the dance fees I charge customers, **100% belongs to the Club**. I will have to turn them over to Management before the end of my shift. |
| 3. As an Entertainer Tenant, I keep track of my own income. I do not report my dance fees or income to the Club. I can take tax deductions for travel, advertising, make-up, costumes, props, tanning, health clubs, cosmetic surgery, etc., as allowed by law. | | 3. As an Employee, I must, by law, report all of my tip income to the Club. I cannot deduct from my taxes the incidental expenses of my employment. In addition, by law the club will be required to pay the IRS, out of the wages due to me, taxes owed on my tip income. If I make a substantial amount in tips, this could result in me receiving a "zero" pay check. If I have questions about this, I know to consult my accountant. |
| 4. As an Entertainer Tenant, I am not required to "tip out" any Club employee. Set space lease and support costs exist, which I agree to pay as part of overhead for my business. | | 4. As an Employee, I will be required to pay 25% of my daily tip income into a "tip pool," which will be distributed to other non-dancer regularly tipped Club Employees. |
| 5. As an Entertainer Tenant, I will lease space as I wish, where I wish. | | 5. As an Employee, the Club will select my schedule (both days and times). |
| 6. As an Entertainer Tenant, I can perform for whoever I choose, and can reject any customers I want. | | 6. As an Employee, I will be required to perform for all customers. |
| 7. As an Entertainer Tenant, I will never be required to engage in any Club promotions or advertising. | | 7. As an Employee, I will be required to participate in various Club promotions and advertising. |
| 8. As an Entertainer Tenant, I will never be required by the Club to give "free" dances to anyone. | | 8. As an Employee, I will be required to give "free" dances, at the discretion of Management. |
| 9. As an Entertainer Tenant, I will have the flexibility to choose my own costumes. | | 9. As an Employee, I will be required to wear the costumes selected by the Club. I will be provided one costume per month by the Club, which the club will pay for. |

Reproduction without the written permission of Greg Flaig is illegal

Reproduction without the written permission of Craig Flato is illegal

| | |
|---|---|
| 10. As an Entertainer Tenant, I will determine my own appearance. | 10. As an Employee, my appearance must comply with Club standards. Management will tell me how to wear my hair and how my make-up should look. |
| 11. As an Entertainer Tenant, I can work for as many Clubs as I choose. | 11. As an Employee, I will be required to perform as an Entertainer at this Club, ONLY. |
| 12. As an Entertainer Tenant, I will never be required to fill in for other Club jobs. | 12. As an Employee, I will be required to fill in for other Employees, such as Bartenders, Waitresses, or Door persons, as needed. |
| 13. As an Entertainer Tenant, I will not be given any training. I will be expected to come to the Club with the necessary skills to be an Entertainer Tenant. I may perform in any lawful manner of my own choosing and I will not have to meet any type of "performance standards" set by the Club. | 13. As an Employee, I will be required to undergo Entertainer Tenant training, and I must perform consistent with the standards set in that training to maintain my job. |
| 14. As an Entertainer Tenant, I will lease space daily. The Club will not be able to cancel my "Entertainer Tenant Lease" during that period except upon the specific reasons listed in the "Entertainer Tenant Agreement." | 14. As an Employee, my employment will be "at will," which means I know I can be fired at any time, without cause and without prior notice. |
| 15. As an Entertainer Tenant, if I am injured at the Club, I will not be covered by Worker's Compensation Insurance. But I can sue the Club, if it is at fault and my only limits of recovery are those that may be imposed by state law or contractual obligations already agreed to by me. | 15. As an Employee, if I am hurt at work, my sole recourse against the Club will be for "Worker's Compensation" benefits. I would not have to prove the Club was at fault, but I will be subject to the limits of that coverage. |
| 16. As an Entertainer Tenant, I will not be entitled to unemployment compensation benefits either if my space lease expires, of if the Club cancels it for any of the reasons listed in the "Entertainer Tenant Agreement." | 16. As an Employee, if I was fired, I may be entitled, if I have worked a sufficient period of time and satisfy other legal requirements, to unemployment compensation benefits. These benefits are for a fixed period of time and are set by law. They are based on my claimed income. |
| 17. As an Entertainer Tenant, the amount of "vacation" time I can take is unlimited, but I know I will not get paid for it by the Club. | 17. As an Employee, I would be entitled to a paid vacation after one year of employment. However, the time of my vacations must be approved by Management in advance. |
| 18. As an Entertainer Tenant, I will be acknowledging that I am not entitled to benefits under the Fair Labor Standards Act, Equal Employment Opportunity laws, or other laws that protect Employees. | 18. As an Employee, I would be entitled to certain legal protections under the Fair Labor Standards Act, the Equal Employment Opportunity laws, and other laws that protect Employees. |

(____) I wish to be an Entertainer Tenant & lease space

**( ) I want to be an Employee and be paid hourly as a Bartender, Hostess, Waitress or Shot Girl.**

Print Real Name _____

Entertainer Tenant Name _____

Date _____

```
**  If you choose this
    option, stop
    completing the
    paperwork now and
    speak to the Property
    Manager.
```

Part 5: I Choose To Be An Entertainer Tenant and NOT an Employee

2

# TOP HAT
## Part 6: REQUIREMENTS FOR U.S. CITIZENSHIP OR AUTHORIZATION FORM

**Entertainer Tenants must have one form of I.D. U.S. citizenship or U.S. authorization form!!**

Please read instructions carefully before completing this form. The instructions must be available during completion of this form.

ANTI-DISCRIMINATION NOTICE: It is illegal to discriminate against work eligible individuals. Leasors CANNOT specify which document(s) they will accept from an Entertainer Tenant. The refusal to lease space to an individual because the documents have a future expiration date may also constitute illegal discrimination.

**Section 1.** Entertainer Tenant and Verification. To be completed and signed by the Entertainer Tenant at the time employment begins.

| Print Name | Last | First | Middle Initial | Maiden Name |
|---|---|---|---|---|
| Address | | | | Date of Birth |
| City | State | | Zip Code | Social Security # |

| I am aware that federal law provides imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form. | I attest, under penalty of perjury, that I am (check one of the following): <br> ☐ A citizen or national of the United States <br> ☐ A lawful permanent resident (Alien #) _____ <br> ☐ Alien, authorized to work until _____ <br> (Alien # or Admission #) _____ |
|---|---|

| Entertainer Tenant Signature | Date |
|---|---|

Certification: I attest, under penalty of perjury, that I have examined the document(s) presented by the above named Entertainer Tenant, that the above listed document(s) appear to be genuine and to relate to the Entertainer Tenant named, that the Entertainer Tenant began the Lease Space Agreement on *(month/day/year)* _____ and that to the best of my knowledge the Entertainer Tenant is eligible to work in the United States.

| Signature of Manager or Authorized Company Representative | Date |
|---|---|

## LIST OF ACCEPTABLE DOCUMENTS
### Just need one, preferably with a picture.

| LIST A <br> Documents that establish both identity and Entertainer Tenant lease eligibility | LIST B <br><br> Documents that establish identity | LIST C <br> Documents that establish employment eligibility |
|---|---|---|
| 1. U.S. Passport (unexpired or expired) | 1. Driver's license or ID card issued by a state or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color and address | 1. U.S. Social Security card issued by the Social Security Administration (other than a card stating it is not valid for employment) |
| 2. Permanent Resident Card or Alien Registration Receipt Card (Form I-551) | 2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or in | 2. Certification of Birth Abroad issued by the Department of State *(Form FS-545 or Form DS-1350)* |
| | 3. School ID card with photograph | 3. Original or certified copy of a birth certificate issued by a state, county, municipal authority or outlying possession of the United States bearing an official seal |

**\*\*ENTERTAINER TENANT FILE ONLY**

Part 6: Requirement for U.S. Citizenship or Authorization
Supplied by The Owners Coalition

Reproduction is about the written permission of Grey Flag is illegal

# TOP HAT
## Part 7: ENTERTAINER TENANT DRUG POLICY AGREEMENT

I, _____ UNDERSTAND AND AGREE THAT **TOP HAT** IS AND MUST REMAIN A DRUG FREE ESTABLISHMENT. WHILE I UNDERSTAND THAT I CANNOT BE RESPONSIBLE FOR ALL OF THE PATRONS OF **TOP HAT** . I DO HAVE AN OBLIGATION TO REPORT TO MANAGEMENT ANYTIME A CUSTOMER OFFERS ME NARCOTICS OR ASKS ME ABOUT GETTING NARCOTICS FOR THEM. I ALSO AGREE TO NOTIFY MANAGEMENT IF I SEE ANYONE IN THE ESTABLISHMENT WITH NARCOTICS.

I FURTHER UNDERSTAND THAT THE POSSESSION OF ANY NARCOTICS IS ILLEGAL IN THIS STATE TO POSSESS. I AGREE THAT WHILE I AM WORKING AT **TOP HAT** I WILL NOT USE OR POSSESS ANY ILLEGAL DRUG OR SUBSTANCE AT THE ESTABLISHMENT UNLESS IT IS A PRESCRIPTION DRUG IN THE ORIGINAL CONTAINER PRESCRIBED FOR ME BY A LICENSED PHYSICIAN.

I KNOW AND AGREE THAT WHILE I AM WORKING AT **TOP HAT** I AM SUBJECT TO RANDOM SEARCHES BY MANAGEMENT AND IN-HOUSE SECURITY. I REALIZE THAT AT ANY TIME THE LOCKER I PUT ITEMS IN, DRESSING AREA OR ANY PERSONAL BELONGINGS I BRING INTO THE ESTABLISHMENT IS SUBJECT TO BEING SEARCHED FOR CONTROLLED SUBSTANCES.

I AGREE TO THIS POLICY AND AGREE THAT I WILL NOT CONSUME OR POSSESS ANY ILLEGAL SUBSTANCES OR HAVE ANY DRUGS PARAPHERNALIA WHILE I AM AT THIS ESTABLISHMENT.

I UNDERSTAND THE STATEMENTS AND REQUIREMENTS EXPECTED OF ME UNDER THIS JOB DESCRIPTION.

_____        _____        _____
Sign Name                        Print Real Name                  Date

* 1 copy to Entertainer Tenant and **original in the file**
** All Entertainer Tenant positions

Part 7: Entertainer Tenant Drug Policy Agreement
Supplied by The Owners Coalition

Reproduction without the written permission of Greg Flaig is illegal

# TOP HAT
## Part 8: SEXUAL HARASSMENT POLICY

**TOP HAT** believes that I should be afforded the opportunity to lease space in an environment free of sexual harassment. Sexual harassment is a form of misconduct that undermines our relationship of all involved. No person, either male or female, should be subjected physically to unsolicited or unwelcomed sexual overtures or conduct.

Sexual harassment refers to behavior that is not welcome, that is personally offensive, and that hurts morale and, therefore, interferes with your effectiveness.

Behavior that amounts to sexual harassment may result in disciplinary action, up to and including dismissal to any Employee doing this to an Entertainer Tenant. Should a Entertainer Tenant be guilty of this type of infraction, their Entertainer Tenant Space Lease will be immediately cancelled.

### DEFINITION:

The EEOC defines sexual harassment as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:

- Submission to such conduct is made either explicitly or implicitly a term or condition leasing space.
- Submission to or rejection of such conduct by you is used as the basis for space lease decisions affecting you.
- Such conduct has the purpose or effect of unreasonably interfering with your lease space performance or creating an intimidating, hostile or offensive space lease environment.

**TOP HAT** wants you to have a space lease environment that is free of sexual harassment by Property Management personnel, by employees and by others with whom you must interact in the course of my space lease; Sexual harassment is specifically prohibited as unlawful and as a violation of **TOP HAT** policy. **TOP HAT** is committed to preventing sexual harassment in the workplace, for taking immediate corrective action to stop sexual harassment in your lease space and for promptly investigating any allegation of lease-related sexual harassment.

### OUR COMMITMENT:

**TOP HAT** wants you to have a lease space environment free of sexual harassment by Property Management personnel, by Employees and by others with whom you must interact with in the course of your leasing space. Sexual harassment is specifically prohibited as unlawful and as a violation of **TOP HAT** policy. **TOP HAT** is committed to preventing sexual harassment in the workplace, for taking immediate corrective action to stop sexual harassment on our property and for promptly investigating any allegations of sexual harassment while on our property.

Reproduction without the written permission of Greg Flaig is illegal.

## COMPLAINT PROCEDURE:

I have been told that If I experience or witness sexual harassment in your lease space to report it immediately to the Property Manager. I may also report harassment to any other member of **TOP HAT** 's Ownership. All allegations of sexual harassment will be quickly investigated confidentiality for myself and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, I will be informed of the outcome of that investigation.

## RETALIATION IS PROHIBITED:

**TOP HAT** will permit no retaliation against anyone who brings a complaint of sexual harassment or who speaks as a witness in the investigation of a complaint of sexual harassment.

## PENALTIES:

Sexual harassment will not be tolerated at **TOP HAT** . **TOP HAT** reserves the right to cancel a space lease or terminate the employment of anyone that allows their social or professional interaction with workers to disrupt the workplace or impedes another person's ability to perform their space leases. If an investigation of any allegation of sexual harassment shows that harassing behavior has taken place, the harasser will be subject to disciplinary action, up to and including cancellations of their space leases and or termination of their employment.

## ENTIRETY OF POLICY:

If any part of this policy is found to be unlawful or invalid such part or parts shall be severable and shall not affect the enforceability of any other part.

I have read and understand the above statements. I understand that my "Lease Space Agreement" with **TOP HAT** may be terminated immediately in the event that I am found to have violated **TOP HAT** Sexual Harassment Policy.

_____

Sign Name        Print Real Name        Date

*Put in file

Part 8: Sexual Harassment Policy
Supplied by The Owners Coalition

2

Reproduction without the written permission of Greg Flaig is illegal

Reproduction without the written permission of Green Flag is illegal.

# TOP HAT
## Part 9: UNDERAGE DRINKING POLICY

Should any Employee, Bartender, Waitress, Shot person, D.J. or Management person serve an underage Entertainer Tenant or customer with the knowledge that the Entertainer Tenant or customer is underage, the person serving the underage person as well as the Entertainer Tenants Space Lease will be terminated and will be held liable for any financial or legal damages to our business.

Our club obeys all State Liquor Laws and by leasing space here, you agree to follow them and obey them without exception.

_____        _____
Entertainer Tenant                                                         Date

# **YOU MUST COMPLETE THE STARED AREAS!**

| ENTERTAINER TENANT INFORMATION | |
|---|---|
| **Name: | |
| **Stage Name: | |
| Face Book: | |
| **Cell Phone Number: | |
| E-mail Address: | |
| Twitter: | |
| Alternate Phone Number: | |

**TOP HAT**

## Part 10: NO SMOKING POLICY AGREEMENT
### (If applicable)

We believe in a person's right to smoke. **HOWEVER**, it is illegal to smoke inside our building or by an open doorway on our premises, per the State & its non-smoking Law.

Should you be caught smoking by enforcement personnel, you will be asked to pay the fine.

Our club follows state law and we expect our Employees, Entertainer Tenants & , Management, Vendors, Independent Contractors and Patrons to do so also.

*Note: **NEVER** light a cigarette for anyone in any area of our club / bar premises that is not officially designated for smoking

That being said, should anyone be cited for smoking in our club / bar, they will be asked to leave. There is no smoking In or around our bar / club. Smoking is permitted in the designated area only.

_____          _____          _____
Sign Name                                          Print Name                                                Date

## Part 11: ENTERTAINER TENANTS STATE LIQUOR LAWS SIGN OFF

The club has made the Entertainer Tenant aware of its support to the State Liquor Laws. The law is designed to limit issues in venues with liquor licenses.

The club will not lease space to any Entertainer Tenant who intentionally breaks a State Liquor Law, at any time, in our club while leasing space.,

The club will cancel the lease of any Entertainer Tenant that is caught sexually touching a customer's lips, penis, or anus while on our premises.

... a customer to leave the club that is observed touching any Entertainer Tenants breasts, vagina or anus.

As an Entertainer Tenant, you agree to follow all State Liquor Laws and understand if you do not, the club will have no other choice but to cancel you're "Entertainer Tenant Space Lease."

_____          _____          _____
Sign Name                                          Print Name                                                Date

Part 10 & 11: No Smoking Policy & Entertainer Tenant State Liquor Law Sign Off
Supplied by The Owners Coalition

Legal Name (print) _____ Date _____

## Part 12: CONDITIONS OF SPACE LEASE USAGE:

- YOU MUST BE 18 OR OVER TO LEASE SPACE AND MUST HAVE VALID ID.
- YOU MUST ARRIVE WITH TIME TO BE READY FOR YOUR LEASED TIME.
- CHECK IN WITH DJ OR PROPERTY MANAGER WHEN READY TO BEGIN YOUR LEASED SPACE TIME.
- NEVER MISS YOUR LEASED SPACE TURN ON STAGE, AS YOU LEASED THE SPACE TO BE THERE.
- NO UNDERAGE DRINKING OF ALCOHOL IS EVER ALLOWED.
- YOU MUST ENTERTAIN WHILE ON STAGE, AS YOU ARE LEASING SPACE TO ENTERTAIN. THIS WILL ALLOW THE CUSTOMER TO REVIEW YOUR TALENT.
- PAY LEASED SPACE RENT AND ASSISTANCE FEE'S AS AGREEMENT LEASE STATES FOR CLUB AND PRIVATE ROOMS.
- GO TO DRESSING ROOM IMMEDIATELY WHEN CALLED BY DJ OR MANAGER AS IT COULD BE INFORMATION ABOUT YOUR LEASE.
- NO DRUGS OF ANY KIND ARE ALLOWED IN THE CLUB, AS THAT IS AGAINST STATE LAW.
- NEVER MAKE A DATE WITH A CUSTOMER / NEVER LEAVE WITH A CUSTOMER AS IT IS ILLEGAL.
- FIGHTING WILL NOT BE TOLERATED AND WILL BRING IMMEDIATE LEASE CANCELLATION FOR SAFETY REASONS.
- MUST PARTICIPATE IN ALL LEASE SPACE STAGE SHOWS AS YOUR LEASE SPACE DICTATES. THIS INCREASES CUSTOMER ABILITY TO REVIEW YOUR TALENTS.
- PAY ALL LEASE, RENT, DAMAGE, AND ASSISTANCE FEE'S BEFORE LEAVING.
- MUST HAVE MANAGER'S APPROVAL BEFORE LEAVING TO INSURE ALL CONDITIONS OF YOUR LEASE SPACE AGREEMENT WERE MET.

**THE "SPACE LEASE CONDITIONS OF SPACE USAGE" IS NOT INTENDED TO BE AN EMPLOYMENT CONTRACT OR PART OF A CONTRACTUAL AGREEMENT BETWEEN THE ENTERTAINER TENANT AND THE CLUB. THE CLUB RESERVES** DELETE, OR ADD TO ANY PART. , AND RESERVES THE RIGHT TO CANCEL THE ENTERTAINER TENANT **SPACE LEASE AT ANY TIME, WITH OR WITHOUT NOTICE, AS DESCRIBED IN YOUR SPACE LEASE AGREEMENT, WITH BREACH OF THIS AGREEMENT.**

I understand the statements and requirements expected of me under the conditions of my space lease.

_____          _____
Entertainer Tenant Stage Name                      Management

**\*\*THIS PAGE GOES IN THE ENTERTAINER TENANT FILE KEPT ON PREMISE.**

# TOP HAT
## Part 13: ASSISTANCE FEE'S AGREEMENT

### I RECOGNIZE THAT BEING AN ENTERTAINER TENANT MEANS I WILL PERFORM IN THE LEASE SPACE I LEASE.

During the time of my leasing space to perform here, I know and agree that I will use certain assistance services from numerous individuals who work here, or are independent contractors.

These people, include but are not limited to Floor Men, Security, Djs, House Moms or other types of assistance people who can be compensated by me voluntarily so I may have the assistance from them to perform at a level I desire.

I will do this voluntarily and with the belief that I am free not to lease space here if I am unwilling to use some of my own funds from my business to "Pay Assistance Fee's " to individuals to assist me in my success.

I understand "Pay Assistance Fee's " is a normal way of life. I "tip" my hairdressers that does my hair, I "tip" a cab driver who may bring me here, and I "tip" waitresses to bring me food. These people who also may assist me in helping me inside and outside my profession.

At no time does **Top Hat** demand I pay "assistance fee's", as it is an individual choice for me to use assistance or not.

If I ever feel I should not pay assistance fees, I will bring this to the attention of my Property Manager of the lease space. At no time does Top Hat demand I pay "assistance fee's," as it is an individual choice for me to use the assistance or not.

If I have any questions regarding this agreement, I am aware I can approach my Property Manager of the lease space at any time.

_____

Entertainer Tenant Stage Name

_____

Entertainer Tenant Real Name

_____

Date

# TOP HAT
## Part 14: ENTERTAINER TENANT BREATHALYZER AGREEMENT

During the time that I lease space here, I may be asked from time to time to take a breathalyzer test if I am driving & wish to leave. I agree to take the test when asked and follow the instructions given to me by the Property Manager on duty.

I realize if I do not follow the direction of the Property Manager on duty and walk out the door, my lease will be terminated and I will no longer be able to lease space at this club.

Should I take the test and I fail to meet the standards of sobriety dictated by state law, I agree not to drive a vehicle away from the club or to go to any destination after the club, by driving a car myself.

Should I drive a vehicle away from the club without permission, I know I will have my lease space terminated and no longer be able to lease space here.

Your safety will always be a major concern to us!


_____

Sign your real name


_____

Sign your Entertainer Tenant name


_____

Print your real name


_____

Date

Reproduction without the written permission is illegal

## TOP HAT
## PART 15: ENTERTAINER TENANT EARNINGS AGREEMENT

I understand I am "Leasing Space" here and I rent space and pay lease agreement assistance fees as needed or stated in my Lease or payouts for space use, lease damages etc.

I know that every time period I lease space, the Leaser has no idea how much I make, as I do not wish for anyone but myself to know.

I realize on certain days I may make way over minimum wage and some days I will make below that amount. I know what my average earnings are at the club weekly. I will always earn over minimum wage from my stage performances, private room entertainment, tips and offered drink comissions that will come from the club patrons.

I agree that I will average above the minimum wage at all times on a weekly basis.

If at any time I do not average the minimum

club has no positions for dancer employees, I will leave the property immediately.

I have chosen not to be an employee, with no pressure to do so.

If I do not do well in my profession for any reason, I will hold the lessor harmless of any damage, pay differential or responsibility for my lack of success unless the leaser does not meet the obligations set forth in my Entertainer Tenant Lease Agreement.

come upon TOP HAT I lease space from.

_____

**Entertainer Tenant**                              **Date** _____


_____

**Property Manager**                                **Date** _____

# EXHIBIT

# C

## RELEASE OF LIABILITY FOR SPACE LEASE ENTERTAINER TENANT APPLICATION OR DEMONSTRATION CONTEST PARTICIPANT

### EXPRESS ASSUMPTION OF RISK ASSOCIATED WITH ENTERTAINING AND RELATED ENTERTAINMENT ACTIVITIES AGREEMENT

I _____, on_____ do by hereby affirm and acknowledge that I have been fully informed of the inherent hazards and risks associated with performing in the amateur contest or demonstrating my trade for consideration to be able to Lease Space here.

I fully understand that these risks can lead to severe injury and even loss of life. Nevertheless, I choose to proceed even in the absence of competent medical assistance. I freely accept and expressly assume all risk, dangers and hazards that may arise from performing in the amateur contest and or audition, which could result in personal injury, loss of life and property damage to me.

RELEASE OF LIABILITY, WAIVER OF CLAIMS AND INDEMNITY AGREEMENT:

In consideration of being allowed to participate in the Amateur Contest activities as well as the use of an y of the facilities and the use of the stage equipment and poles. I hereby agree as follows:

1. TO WAIVE AND RELEASE ANY AND ALL CLAIMS based upon negligence, active or passive with the exception of intentional, wanton or willful misconduct that I may have in the future against any of the following named persons or entities (hereafter referred to as Releases): and, its representatives, Management or assignees.
2. To release the releases, their officers, directors, employees, representatives, agents and volunteers, from liability and responsibility, whatsoever, for any claims or causes of action that I, my estate, heirs executives or assigns may have for personal injury, property damage or wrongful death arising from performing, entertaining and dancing activities whether caused by active or passive negligence of the releases or otherwise with the exception of gross negligence. By executing this document, I agree to hold the releases harmless for any injury or loss of life which may occur to me during the above mentioned activities and/or instructions.
3. By entering into this agreement, I am not relying on any oral or written representation or statements made by the releases, other than what is set forth in this agreement. I further agree that this Agreement shall be governed by and interpreted in accordance with the laws of this State, in the United States of America.
4. I state I am older than 18 years old.
5. If any provision of this release is found to be unenforceable or invalid, that provision shall be severed from this contract. The remainder of this contract will then be construed as though the unenforceable provision had never been contained in this document.
6. **This agreement is not a statement of employment and makes no promise of future space lease opportunity.**

I hereby declare that I am of legal age and am competent to sign this Agreement.

**I HAVE READ THIS AGREEMENT; I UNDERSTAND IT AND I AGREE TO BE BOUND BY IT.**

_____
Signature of Participant / Leasee

_____
Date

_____
Management

_____
Date

Release Of Liability For Space Lease Entertainer Tenant Application
Supplied by The Owners Coalition

## ENTERTAINER TENANT SPACE LEASE REQUEST FORM

### ENTERTAINER TENANT INFORMATION

STAGE NAME

REAL NAME

WEEK OF

I WISH TO LEASE SPACE ON THE FOLLOWING DAYS:

|  | DAY | NIGHT |
|---|---|---|
| MONDAY |  |  |
| TUESDAY |  |  |
| WEDNESDAY |  |  |
| THURSDAY |  |  |
| FRIDAY |  |  |
| SATURDAY |  |  |
| SUNDAY |  |  |

### AVAILABLE SHIFTS

| | DAYS | TIME IN | TIME OUT |
|---|---|---|---|
| AVAILABILITY | MON-FRI | 11:30 AM | 7:00 PM |
| | SAT & SUN | 11:30 AM | 7PM |
| | DAYS | TIME IN | TIME OUT |
| AVAILABILITY | MON-FRI | 7:00 PM | 2:30 AM |
| | SAT & SUN | 7:00 PM | 2:30 AM |

CAN LEASE SPACE FOR (1) DAY TO ONE YEAR, DEPENDING ON WHAT IS AVAILALBLE TO LEASE.

## ENTERTAINER TENANT SPACE LEASE REQUEST FORM

### ENTERTAINER TENANT INFORMATION

STAGE NAME

REAL NAME

WEEK OF

I WISH TO LEASE SPACE ON THE FOLLOWING DAYS:

|  | DAY | NIGHT |
|---|---|---|
| MONDAY |  |  |
| TUESDAY |  |  |
| WEDNESDAY |  |  |
| THURSDAY |  |  |
| FRIDAY |  |  |
| SATURDAY |  |  |
| SUNDAY |  |  |

### AVAILABLE SHIFTS

| | DAYS | TIME IN | TIME OUT |
|---|---|---|---|
| AVAILABILITY | MON-FRI | 11:30 AM | 7:00 PM |
| | SAT & SUN | 11:30 AM | 7PM |
| | DAYS | TIME IN | TIME OUT |
| AVAILABILITY | MON-FRI | 7:00 PM | 2:30 AM |
| | SAT & SUN | 7:00 PM | 2:30 AM |

CAN LEASE SPACE FOR (1) DAY TO ONE YEAR, DEPENDING ON WHAT IS AVAILALBLE TO LEASE.

## ENTERTAINER TENANT SPACE LEASE REQUEST FORM

### ENTERTAINER TENANT INFORMATION

STAGE NAME

REAL NAME

WEEK OF

I WISH TO LEASE SPACE ON THE FOLLOWING DAYS:

|  | DAY | NIGHT |
|---|---|---|
| MONDAY |  |  |
| TUESDAY |  |  |
| WEDNESDAY |  |  |
| THURSDAY |  |  |
| FRIDAY |  |  |
| SATURDAY |  |  |
| SUNDAY |  |  |

### AVAILABLE SHIFTS

| | DAYS | TIME IN | TIME OUT |
|---|---|---|---|
| AVAILABILITY | MON-FRI | 11:30 AM | 7:00 PM |
| | SAT & SUN | 11:30 AM | 7PM |
| | DAYS | TIME IN | TIME OUT |
| AVAILABILITY | MON-FRI | 7:00 PM | 2:30 AM |
| | SAT & SUN | 7:00 PM | 2:30 AM |

CAN LEASE SPACE FOR (1) DAY TO ONE YEAR, DEPENDING ON WHAT IS AVAILALBLE TO LEASE.

## PRIVATE DANCER
## PART 1: PRELIMINARY LEASE INFORMATION
## AGREEMENT TO LEASE SPACE AS AN ENTERTAINER TENANT
## AND NOT BE AN EMPLOYEE

Please read the following information and at the end of this page; check if you wish to still lease space here or not.

1. You will be protected so no one can come into the club without a warrant or legal cause of action and ask for your personal information. You have 100% Entertainer Tenant-privacy rights.
2. If anyone comes to our club to take pictures, invade your privacy or cause emotional stress, we will use your Entertainer Tenant Space Lease to keep them at least 500 feet from the club premises.
3. Should another Entertainer Tenant do something illegal, it will help us protect you as an individual both in court and with the authorities.
4. The Club Management is known as a Property Manager, the Owner, as a Property Owner and you are an Entertainer Tenant.
5. You will not be hired or fired. You only lease space on an available basis, therefore, we have space or we do not have space available.
6. This document insures you will not be labeled as an employee, as you are not. You lease our space to perform artistic and fantasy dance entertainment as an Entertainer Tenant.
7. You understand that you are bringing artistic and fantasy dance entertainment experience with you, as we do not have a training program and we will lease you space based on the trade experience you possess..
8. You will obey basic rules of safety, all State and Federal Laws while respecting and not damaging the very premises that you lease.
9. We will be happy to allow you to review this paperwork in your file at any time with proper notice, or with anyone if you wish.
10. This lease does not obligate you to lease space only at this club. You may lease space where ever you want as you are not an employee. You are not in a contractual relationship to only entertain here.
11. You may wear any costume that meets with the legal requirements of this state and the safety policies of leasing space in this club.
12. During the time I Lease Space here, should there be any disputes or issues, I agree to resolve or litigate them individually with the club and settle with binding arbitration without seeking class treatment or consolidate my issues with others. This paragraph (12) survives termination of my space lease.

I wish to:

☒ ☐ Lease Space Here and Not Be An Employee.

☒ ☐ Because I am not nor will be an Employee in this club, I do not wish to Lease Space Here Based on Points 1-12. **(Review Part 5 if unsure)**

THANK-YOU FOR YOUR COOPERATION!

## ONLY SIGN BELOW IF YOU WISH TO NOT BE AN EMPLOYEE!

_____     _____     _____
Sign Real Name                        Print Real Name                           Date

## PRIVATE DANCER
## PART: 2   ENTERTAINER TENANT SPACE LEASE AGREEMENT

**NOTICE:  THIS IS A LEGAL CONTRACT.  DO NOT SIGN THIS UNLESS YOU FULLY UNDERSTAND ALL OF ITS TERMS.  BY SIGNING THIS DOCUMENT, YOU ARE REPRESENTING THAT YOU UNDERSTAND THE CONTENTS OF THIS ENTERTAINER TENANT SPACE LEASE AGREEMENT AND THAT YOU AGREE TO ABIDE BY ALL OF ITS TERMS.**

✗ _____ (ENTERTAINER TENANT INITIAL HERE)

This Lease (referred to as "Lease") is entered into this _____ day of _____ 20 _____, by and between **PRIVATE DANCER**  (Referred to as "Owner"/"Property Manger") whose address is ✗ 3609 Agave Rd  Columbus OH 43228 (Referred to as the leased "Premises"), and _____ (referred to as "The **Entertainer Tenant**"), whose address is _____ and is as follows:

### PURPOSE OF LEASE

Owner operates an alcohol business establishment with artistic entertainment on the **Premises,** where dance entertainment is presented to the adult public while customers enjoy the main focus of our business, which is alcohol consumption,  social interaction, food when available, TV and music videos.

Owner desires to lease space to the **Entertainer Tenant,** on a non-exclusive basis, together with other similar Entertainer Tenant's, giving the right to jointly use certain areas of the **Premises** for activities related to presenting live dance entertainment to the adult public; and the **Entertainer Tenant** desires to lease space within the **Premises** on the terms of this **Lease,** for the purpose of performing live semi-nude artistic and fantasy dance entertainment and associated activities for patrons.

### TERMS OF LEASE

**Property Owner and the Entertainer Tenant** agrees as follows:

1.  **Leasing Space on the Premises:**  The **Entertainer Tenant** leases space and time from **Property Owner** with the non-exclusive right during normal business hours to use the stage areas and certain other portions of the **Premises** designated by **Property Owner** for the performing of live artistic and fantasy dance entertainment, for the engagement of related entertainment activities, and for the preparation of entertaining, upon the terms and conditions contained in this **Space Lease.**

2.  **Term of Agreement:**  This **Lease** is for an initial term of one (1) day from today's date, and shall automatically renew every day for a period of up to one (1) year unless:

   A.  A party desiring not to renew the space lease gives notice to the other party of the intent not to renew at one (1) day prior to the expiration of the initial term or any renewal term; or

   B.  This **Lease** is not otherwise terminated as provided for in paragraph 11 or 12.

✗ Initial_____

C. A **Entertainer Tenant** can lease space up to one year at a time if there is space available, and the **Entertainer Tenant** or the **Property Owner** can end this at any time based on space availability or desire to stop leasing space by the **Entertainer Tenant.**

3. **Requesting Space :** The **Entertainer Tenant** shall choose and lease space time on which she desires to lease the **Premises; all** such days for any given week are to be selected at least one week in advance. Each day your leased space shall consist of a minimum of (_4_) consecutive hours during which the **Entertainer Tenant** shall provide artistic fantasy entertainment consistent with this **Space Lease.** The **Entertainer Tenant** acknowledges that there are other the **Entertainer Tenants** leasing the **Premises,** and agrees to lease her stage sets in cooperation with the leasing desires of the space lease. The **Property Owner** shall make the **Premises available** to the **Entertainer Tenant** during the dates and times selected by the **Entertainer Tenant,** and for those days during which the **Entertainer Tenant** desires to lease the **Premises.** Once space is leased, neither the **Entertainer Tenant** nor **Property Owner** shall have the right to cancel or change any lease space sets except upon material breach by the other party as defined in Paragraph 11 of this **Space Lease,** or as may be agreed to by the **Entertainer Tenant and Property Owner.** Should the **Entertainer Tenant** desire not to perform on the **Premises** all during any given day, this **Entertainer Tenant** shall give **Property Owner** notice of this at least one (1) day in advance that she has declined to not fulfill her space lease request for that future day. The **Entertainer Tenant** may be permitted to lease space on the **Premises** on days when she has not requested space for herself to perform, subject to space availability.

If the **Entertainer Tenant** misses an entire leased time, the **Entertainer Tenant** shall pay to **Property Owner** as contract damages for each day or night of leased time which was missed. The "damage" cost will be $_____ for each day or night lease time is missed. Such contract damages are to be paid by the **Entertainer Tenant** to **Property Owner** no later than by the end of the next space lease time, if at all. All contract damages stated in this **Space Lease** are established in view of the fact that it would be difficult to fix or determine the exact actual damages incurred by **Property Owner** as a result of breaches by the **Entertainer Tenant** of the terms of this **Space Lease** since other **Entertainer Tenants** may not have been able to lease space.

4. **Space Lease Time:** The **Entertainer Tenant** agrees to pay rent to **Property Owner** in an amount set for on the Lease Addendum (referred to as **Lease Space Time Rent).** All Leased Time and space costs shall be paid to **Property Owner** immediately, upon request.

5. **Use of Premises:** The Entertainer Tenant agrees to:

A. Perform artistic and fantasy dance entertainment at the **Premises** (which is permitted by the law) during the hours of each leased time for which she has leased the **Premises. In** consultation with the Entertainer Tenants who lease space on the **Premises, Property Owner** shall establish a fixed fee for the use of space for private, champagne and table dances) performed on the **Premises** (referred to as **"Private Room Space Rent"),** and the **Entertainer Tenant** agrees to keep the rest of the money she charges as it is her money and for the artistic and fantasy dance performance. Nothing contained in this **Lease,** however, shall limit the **Entertainer Tenant** from seeking and/or obtaining "personal tips" and/or gratuities over-and-above the established lease space rent for such entertainment time. **The parties specifically acknowledge and agree that Dance Performance Fees are neither tips nor gratuities, but are, rather, service charges to the customer for the purchase of a personal private room dance performance with the Entertainer Tenants.** The space rental goes to the Property Manager, the remainder is kept by the Entertainer Tenant.

B. Apply for, obtain and maintain in full force and effect, any and all required licenses and/or permits. 

C. Comply with and not violate any federal, state, or local laws or governmental regulations. The **Entertainer Tenant** acknowledges, understands and agrees that any conduct by her that is in violation of any such law or regulation is beyond the scope of her authority pursuant to this **Lease,** and constitutes a breach of the terms of this **Lease.** The **Entertainer Tenant** would personally be responsible for any criminal act.

D. Record and maintain accurate, personal daily records of all income earned while performing on the **Premises**, in accordance with all federal, state, and local taxation laws for her own records, not the clubs.

E. Be knowledgeable of all federal, state and local laws and governmental regulations that apply to **Entertainer Tenant's** conduct while on the **Premises.**

6. **Conditions & Compliance of Space Usage:** **Property Owner** shall have the right to impose such conditions upon the use of the **Premises** by the **Entertainer Tenant** as **Property Owner,** in its sole and absolute discretion, deems necessary in order to ensure that:

A. No damage to the **Premises** occurs;

B. The property is used in a safe fashion for the benefit of all entertainers, patrons, and others.

C. No violations of the applicable laws and governmental regulations occur.

D. Basic internal systems are followed to insure maximum return on lease investment by **Entertainer Tenant.**

The **Entertainer Tenant** agrees to comply with all such conditions. The **Entertainer Tenant** also agrees to be responsible for any damages caused to the **Premises,** and/or to any of **Property Owner's** personal property, furniture, fixtures, inventory, stock or equipment, and shall reimburse **Property Owner,** **Property Owner** as additional rent the actual costs incurred to repair such damages or to replace such damaged personal property, furniture, fixtures, inventory, stock or equipment caused directly by the **Entertainer Tenant.**

7. **Business Relationship of Parties:**

A. The parties acknowledge that the business relationship created between **Property Owner** and the **Entertainer Tenant** is that of a Landlord and the Entertainer Tenant of the joint and non-exclusive leasing of the **Premises,** and that this relationship is a material (meaning important) part of this **Lease.** **THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and** agree that this **Lease** shall not be interpreted as creating an employer/employee relationship.

B. **Property Owner** and the **Entertainer Tenant** acknowledge that if the relationship between them was that of employee and employee, **Property Owner** would be entitled to collect and retain all **Dance Performance Fees** paid by customers to the Entertainer Tenant. The **Entertainer Tenant** specifically acknowledges here that in the circumstance of an employer/employee relationship, these fees would be the sole and exclusive property of the **Property Owner** – and that the **Entertainer Tenant** would be paid on an hourly basis at a rate equal to the applicable minimum wage, reduced by any maximum "tip credit", as may be allowed by law (regarding this "tip credit", under the law in states where it is permitted, an employer is currently allowed to reduce minimum wage payments down to ½ the

minimum usage an hour as long as the tips of the employee bring the hourly income of the individual up to at least the full minimum wage rate). Under such an employment arrangement, the Entertainer Tenant would further be entitled to retain "tips" and/or gratuities -- *but not* **Dance Performance Fees** -which she may collect while performing on the **Premises,** although **Property Owner** is permitted to require the **Entertainer Tenant** to share a portion of her tips with other tipped employees as assistance fee's.

The parties specifically acknowledge that the **Entertainer Tenant** right to obtain and retain **Dance Performance Fees** pursuant to this **Lease** is specifically contingent and conditioned upon the acknowledged business relationship of the parties as being that of Landlord and the Entertainer Tenant as is stated in subparagraph 7A.

The parties additionally acknowledge that if there were the relationship between them to be that of employer and employee, the Entertainer Tenant could be terminated at any time without cause at will and without prior notice or warning, and that **Property Owner** would be entitled to control the **Entertainer Tenant** Leased Space schedule and the hours of work, job responsibilities, physical presentation (make-up, hairstyle, etc); costumes and other wearing apparel, music, work habits, the selection of her customers, the nature, content, character, manner and means of her performances, and her ability to perform at other locations and for other businesses. The **Entertainer Tenant** hereby represents that she desires to be able to make all of these choices herself and without the control of the **Property Owner.** The **Property Owner** and the **Entertainer Tenant** agree by the terms of this **Space Lease** that all such decisions are exclusively reserved to the control of the **Entertainer Tenant.**

**AN ENTERTAINER TENANT FURTHER SPECIFICALLY REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE OWNER SUBJECT TO THE EMPLOYMENT TERMS AND CONDITIONS OUTLINED IN THIS SUBPARAGRAPH 7B, BUT, RATHER, DESIRES TO PERFORM AS A ENTERTAINER TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS LEASE.**

C. If any court, tribunal, or governmental agency determines that the relationship between the parties is something other than that of Landlord / Entertainer Tenant and that **the Entertainer Tenant** is then entitled to the payment of monies from **Property Owner,** all of the following shall apply:

I. In order to assure that **Property Owner** is not unjustly harmed and that the **Entertainer Tenant** is not unjustly enriched by the parties having financially operated pursuant to the terms of this **Lease,** **Property Owner** and the **Entertainer Tenant** agrees that the **Entertainer Tenant** shall surrender, reimburse and pay to **Property Owner,** all **Net Dance Performance Fees** (which are defined as **Dance Performance Fees** remaining after the payment of **lease time rent,** additional rent, and contract damages) earned by the **Entertainer Tenant** at any time while performing on the **Premise**; all of which would otherwise have been received and kept by **Property Owner** had they not been retained by the **Entertainer Tenant** under the terms of this **Lease;**

ii. Any payment deemed owed by **Property Owner** to the **Entertainer Tenant** shall be determined based upon the pay arrangement set forth in subparagraph 7B.

iii. The relationship of the parties shall immediately convert to an arrangement of employer and employee upon the terms as set forth in subparagraph 7B.

8. **Taxes:** The **Entertainer Tenant** shall be exclusively responsible for, and shall pay,



Initial_____

all federal, state, local taxes and contributions imposed upon any income earned by the **Entertainer Tenant** while **performing** on the **Premises** (including, but not limited to income taxes and social security withholding). If the **Entertainer Tenant** fails to pay any applicable income taxes and **Property Owner** is later held accountable by any court, tribunal, or governmental agency for the payment of taxes on income generated by the **Entertainer Tenant** while performing on the **Premises**, **Entertainer Tenant** shall pay to **Property Owner** as damages for the breach of this obligation a portion of **Net Dance Performance Fees** earned by the **Entertainer Tenant** equal to the amount of taxes, interest, and penalties that **Property Owner** is required to pay.

9. **Costumes:** The **Entertainer Tenant** shall supply all of her own costumes and wearing apparel of any kind or nature. **Property Owner** shall not be responsible for such decisions, or control in any way the choice of costumes and wearing apparel selected by the **Entertainer Tenant.** All costumes and wearing apparel selected by the **Entertainer Tenant** must, however, comply with all applicable laws and governmental regulations.

10. **Nature of Performance: Property Owner** shall have no right to direct or control the nature, content, character, manner or means of **the Entertainer Tenant** entertainment services or her performances. The **Entertainer Tenant** agrees, however, to perform live artistic & fantasy entertainment while leasing the **Premises** (which is permitted by law)

11. **Material Breach**: **Property Owner** materially breaches this **Lease** by failing to provide to the **Entertainer Tenant** the leased portion of the **Premises** on any day or night as leased by the **Entertainer Tenant.** Any      of the following conduct by the **Entertainer Tenant** shall constitute a material breach of this **Lease:**

   A. Failing to maintain any and all required licenses and/or permits;

   B. Violating any federal, state, or local law or regulation while on the **Premises.**

   C. Failing to comply with **Usage of Space Lease Conditions** & obligations.

   D. Failing to pay any **Space Lease Fee's / Damages** and/or additional rent's when due;

   E. Engaging in disruptive or unlawful behavior while on the **Premises.**

   F. Failing to pay in a timely way any assessed lease contract damages;

   G. Claiming the business relationship with **Property Owner** as being other than that of a Landlord and the Entertainer Tenant, contrary to Paragraph 7A of this **Lease;** or

   H. Violating any public health or safety rules or concerns.

12. **Termination of the Space Lease:** Either party may terminate this **Space Lease,** without cause. Upon material breach, the non-breaching party may terminate this **Lease** immediately with zero notice to the other party, or as otherwise provided by law. Nothing in this paragraph, however, shall allow the **Entertainer Tenant** to perform on the **Premises** without a valid license, with picture, or to continue to engage in conduct in violations of any laws, regulations, or public health or safety rules or concerns.

In lieu of terminating this **Space Lease** upon the material breach by the **Entertainer Tenant** of the provisions set forth in subparagraph 11E, **Property Owner** may, at its option, assess as contract damages for that material breach, an amount not to exceed the contract damage amount set forth in Paragraph (3) for a missed **Lease Time**. In lieu of or in addition to cancelling this **Lease** upon the material breach by the **Entertainer Tenant** of the provisions as set forth in subparagraph 11G, **Property Owner** may, at its option and in addition to any other remedies that may be available to **Property Owner** by law or    as are contained in this **Lease,** do either or both of the following:

Initial_____ ✗

A. Assess contract damages against the **Entertainer Tenant** equal to all **Net Dance Performance Fees** earned by the **Entertainer Tenant** pursuant to this **Lease**;

B. Alter the relationship between the parties to that of an employment arrangement as it is described in subparagraph 7B of this **Lease**.

13. **Assignment/Non-Exclusivity.** This **Space Lease** is acknowledged to be personal in nature. This means that the **Entertainer Tenant** has no right to sublease her rights to the use of the **Premises**, or to assign this **Space Lease** or any rights or obligations contained in it, to any other person without the express written consent of **Property Owner.** However if the **Entertainer Tenant** is unable to fulfill her contractual obligations during any scheduled **Lease Time**, the **Entertainer Tenant** shall have the right to substitute the services of any licensed (if legally required) the **Entertainer Tenant** who has also enter into the **Entertainer Tenant Performance Lease** with the **Property Owner.** Any such substitution shall not, however, relieve the **Entertainer Tenant** of the rent, additional rent, and lease contract damage obligations as contained in this **Lease,** if a substitute the **Entertainer Tenant** fails to pay any **Lease Time Rent,** additional rent, and/or contract damages that are due to **Property Owner** as a result of the substitute's lease obligations.

The **Entertainer Tenant** obligations under this **Space Lease** are non-exclusive; meaning that the **Entertainer Tenant** is free to perform her entertainment activities at businesses or locations other than at **Property Owner's Premises.**

14. **Property Owner's Additional Obligations.** In addition to leasing the **Premises, Property Owner** shall:

A. Provide to the **Entertainer Tenant,** at **Property Owner's** expense, music for use on the **Premises,** lighting, and dressing room facilities.(for getting ready, using restroom, make-up, hair touch-up and changing costumes, etc.)

B. Pay any and all copyright fees due relative to the music used on the **Premises;** and

C. Advertise the business in a commercially reasonable manner for the benefit of both the **Entertainer Tenant** and **Property Owner.** This does not, however, prohibit the **Entertainer Tenant** from advertising her services in any manner or fashion as she so desires. The club actually recommends the Entertainer Tenant control individual branding as an **Entertainer Tenant.**

15. **Nature of Business.** The **Entertainer Tenant** acknowledges that she understands:

1). The nature of the business operated at the **Premises** is that of an alcohol premises that offers forms of entertainment, music, food, TV's, performances, entertainment, and fantasy discussions with patrons.

2). **Entertainer Tenants** may be subjected to explicit language.

3). **Entertainer Tenant** may be subjected to advances by customers, to depictions or portrayals of explicit fantasy sexual conduct, or to similar types of behavior. The **Premises** frown on this type of behavior and will reject then offenders.

The **Entertainer Tenant** states and represents that she is not and will not be offended by such conduct, depictions, portrayals, and language, and that she assumes any and all risks associated with being subject to these matters.

16. **Privacy.** The **Entertainer Tenant** and **Property Owner** acknowledge that privacy and personal safety are material concerns to the **Entertainer Tenant.**

Accordingly, **Property Owner** shall not disclose to any persons who are not associated with the **Property Owner,** or to any governmental entity, department, or



agency, the legal name of the **Entertainer Tenant,** or her address, or her telephone number, without prior written authorization of the **Entertainer Tenant,** or as may be required by law.

17. **Severability.** In the event that any term, paragraph, subparagraph, or portion of this Lease is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the parties that any illegal or unenforceable portion of this **Lease,** to the extent possible, be severable from this **Lease** as a whole. This paragraph shall not apply, however, to the circumstance of a judicial or administrative determination that the business relationship between the **Entertainer Tenant** and **Property Owner** is something other than that of Landlord and the Entertainer Tenant, which shall be controlled by the provisions of subparagraph 7C in this **Lease.**

18. **Miscellaneous:**

   A. This **Lease** shall be interpreted pursuant to the laws of the State in which the **Property Owner** is located.

   B. In the event that **Property Owner** commences legal action against the **Entertainer Tenant** to enforce any of the provisions of this **Lease,** or is required to defend against claims in any court or administrative proceeding which have been made by the **Entertainer Tenant** against **Property Owner** arising either out of the terms of this **Lease** or the business relationship between the parties, if **Property Owner** is the prevailing party in that legal action or proceeding, **Property Owner** shall be entitled to reimbursement from the **Entertainer Tenant** for any and all costs and expenses which **Property Owner** has incurred in conjunction with such legal action or proceeding, including actual reasonable attorney fees.

19. **Arbitration/Waiver of Class and Collective Actions/Attorney Fees and Cost:**

   A. Binding Arbitration. Any and all claims and/or controversies between the **Entertainer Tenant** and the **Club** (and any other persons or entities associated the **Club,** including but not limited to related corporations, parent corporations, subsidiaries, affiliates, officers, directors, shareholders, members, managers, employees, and/or agents), including any and all claims that arises from conduct that predates this Agreement or which arises thereafter, and regardless of whether such claims sound in statute, a local regulation or arise from any other source, (except for an administrative charge before an administrative agency) shall be exclusively decided by binding arbitration held pursuant to and in accordance with the Federal Arbitration Act ("FAA") and shall be decided by a single neutral arbitrator agreed upon by the parties, who shall be permitted to award, subject only to the restrictions contained in this Paragraph 19 and in accordance with the severability provisions of Paragraph 19, any relief available in a court. **All parties waive any right to litigate such controversies, disputes, or claims in a court of a law, and waive the right to trial by jury.**

   The arbitrator shall only have the authority to hear a claim brought on behalf of a single individual against the Club; and has no authority to hear a claim brought by multiple individuals, or a class, or to consolidate the claims of multiple individuals into a single proceeding, except with the signed consent of all parties to the proceeding. In the event an action is brought in arbitration on behalf of multiple individuals or on behalf of a class that is signed by all parties, the arbitrator shall have only the authority to divide the action into individual proceedings, each then to be heard by a separate individual arbitrator.

   In the event that the parties are unable to mutually agree upon an arbitrator, either party may apply to the American Arbitration Association ("AAA") for the selection of an arbitrator. Any arbitration shall be conducted consistent with the rules of the

Initial _____

AAA, except as expressly or implicitly modified by this agreement.  In the event that the dispute relates to an "Employment Related Claim" (i.e. on arising under an actual or asserted employment law, statute, or regulation, and/or one which would  otherwise be administered by AAA under its Employment Rules) then the AAA Employment Rules  shall apply.  All other disputes shall be governed by the AAA Commercial Rules.

In arbitration, all parties shall have the right to be represented by legal counsel; the arbitrator shall permit _only_ that minimal discovery which is necessary to prosecute/defend the actual claim then pending before the arbitrator and all discovery, including responses and documents produced shall be deemed confidential and shall only be used and/or disclosed in relationship to the then pending proceeding.  The parties shall have the right to subpoena witnesses in order to compel their attendance at hearing and to cross examine witnesses, the proceedings shall be conducted in accordance with the requirements of rudimentary due process required of arbitrations, and the arbitrator's decision shall be in writing and shall contain findings of fat and conclusions of law.  The arbitrator's decision shall be final, subject only to review under standards set forth in the FAA.  For any claims based upon an employment related statute, such as the Fair Labor Standards At or other similar federal or state statute, the **Club** shall pay all fee's that the Entertainer Tenant <u>would not</u> have had to pay in a court proceedings.

**All arbitrations will be paid for by 50% of the Plaintiff & 50% by the Defendant until the arbitration process is settled.**

The arbitrator shall have the exclusive authority to resolve any and all disputes over the validity of any part of this agreement and any award by the arbitrator may be entered as a judgment in any court having jurisdiction.

B. <u>Cost and Fees:</u>   Any judgment, order, or ruling arising out of a dispute between the parties shall, to the extent permitted by applicable law, award costs incurred for the proceedings and reasonable attorney fees to the prevailing party.  This provision shall not, however, apply to an Employment Related Claim prosecuted under a federal or state statute that provides for the award of fees and costs to a prevailing party.  In such circumstances, the federal or state statue shall govern the award of fees and costs related to any non-statutory claims. Notwithstanding the forgoing, nothing shall restrict the Arbitrator from awarding the **Club** costs and/or attorney fees in the event that the Arbitrator determines that a claim is frivolous, pursued in bad faith, and/or conducted in a manner that multipliers the proceedings unreasonably and/or veraciously.

In the event that a party files a claim in Court in contravention of this agreement to arbitrate, the Court shall award a party its costs and reasonable attorney fees incurred by it in successfully moving to compel arbitration.

C. **Class and Collection Action Waiver:  Entertainer Tenant** agrees that all claims or disputes between the **Entertainer Tenant** and the **Club** (and any other persons or entities associated with the **Club**, including but not limited to related corporations, parent corporations, subsidiaries, and affiliates, officers, directors, shareholders, members, managers, employees, and/or agents) will be brought individually; that he/she <u>will not</u> consolidate his/her claims with the claims of any other individual; that he/she <u>will not</u> seek class or collective action treatment for any claim that he/she may have; the he/she <u>will not</u> participate in any class or collective action against the **Club** or against any persons or

Initial_____

entities associated with the **Club**.  If at any time **Entertainer Tenant** is made a member of a class in any proceedings, he/she will "opt out" at the first opportunity, and should any third party pursue any claims on his/her behalf, **Entertainer Tenant** shall waive his/her rights to any monetary recovery from such action.  <u>**In other words the Entertainer Tenant expressively waives his/her right to prosecute, participate in, or pursue a class or collective action and/or other joint proceedings against the club and any other persons or entities associated with the Club, including but not limited to related corporations, parent corporations, subsidiaries, and affiliates, officers, directors, shareholders, members, managers, employees and/or agents).**</u>

This paragraph 19(c) shall survive any judicial determination that the arbitration agreement contained herein is unenforceable for any reason.

    **D.  Survival:**    All provisions and subparagraphs of this paragraph 19 shall survive termination of this agreement

**IT IS THE POLICY OF PRIVATE DANCER  NOT TO ENTER INTO A SPACE LEASE WITH AN ENTERTAINER TENANT WHO IS UNDER THE AGE OF EIGHTEEN (18), AND THIS SPACE LEASE IS NULL AND VOID IF THE ENTERTAINER TENANT IS NOT OF SUCH AGE. ENTERTAINER TENANT SPECIFICALLY REPRESENTS AND GUARANTEES THAT SHE IS EIGHTEEN (18) YEARS OF AGE OR OLDER, THAT SHE HAS PROVIDED--OR WILL PROVIDE UPON REQUEST APPROPRIATE IDENTIFICATION VERIFYING HER AGE, AND THAT SUCH IDENTIFICATION IS VALID AND AUTHENTIC.**

**(THE ENTERTAINER TENANT'S INITIALS) _____**

THIS "SPACE LEASE CONDITIONS OF SPACE USAGE" ARE NOT INTENDED TO BE AN EMPLOYMENT CONTRACT OR PART OF A JOB CONTRACTUAL AGREEMENT BETWEEN THE ENTERTAINER TENANT AND THE CLUB.  THE CLUB RESERVES THE RIGHT TO MODIFY, DELETE, OR ADD TO ANY OF THE CONDITIONS CONTAINED HEREIN WITHOUT NOTICE, AND RESERVES THE RIGHT TO CANCEL ENTERTAINER TENANT SPACE LEASE AT ANY TIME, WITH OR WITHOUT NOTICE OR CAUSE UPON BREECH OF THIS SPACE LEASE AGREEMENT OR SPACE LEASE USAGE TERMS.

I understand the statements and requirements expected of me under this Space Lease.

_____

Entertainer Tenant Stage Name          Date

_____

Sign Real Name          Date of Birth

_____

Print Name

        _____

Management          Date

**\*Put in file**

Initial_____

# PRIVATE DANCER
## Part 3:  ENTERTAINER TENANT SPACE LEASE AGREEMENT WAIVER

I understand that the relationship between myself and **PRIVATE DANCER** is that I am Leasing Space and Time.  I understand that I am not an employee of **PRIVATE DANCER** and that **PRIVATE DANCER** has no duty to withhold any taxes on my behalf or for my benefit.

I have provided my legal name, address, social security number and driver's license number to **PRIVATE DANCER** to meet State & Federal I.D. regulations.  I consent and allow **PRIVATE DANCER** to disclose this information to the State Department of Revenue and/or The Internal Revenue Service, upon request.

I hereby waive and hold harmless **PRIVATE DANCER** , and its employees, from the responsibility of reporting, withholding, and disclosure of any income earned or received by me.

I understand, because I am not an employee, I am not eligible for workers compensation or state unemployment while leasing space here or after I leave respectively.

I understand the **Property Owner** may use my pictures to promote the club once I have lease space here.  I give the **Property Owners** the right to use my pictures to promote the club for me and his usage of these pictures will bring me income which will suffice a payout for my picture usage.

I also understand that I am responsible to disclose and report my income earned while working in this Space Lease and Time arrangement within **PRIVATE DANCER** to the Department of Revenue and/or The Internal Revenue Service.

X _____   X _____
Signature                                               Printed Name

X _____
Date of Signature

**1 copy to signee and original goes in file.

## PRIVATE DANCER
## Part 4: ENTERTAINER TENANT SPACE LEASE AGREEMENT FOR USE OF PREMISES

**(ANSWER YES OR NO)**

\_\_\_\_ I HAVE BEEN CONVICTED FOR FELONY POSSESSION OR SALE OF DRUGS.

\_\_\_\_ I HAVE BEEN CONVICTED OF PROSTITUTION OR SOLICITATION.

\_\_\_\_ I HAVE HAD A ENTERTAINER TENANT LEASE OR CLUB POSITION TERMINATED BECAUSE OF MY USE OF DRUGS OR PROMOTING PROSTITUTION.

\_\_\_\_ I UNDERSTAND THAT I AM A ENTERTAINER TENANT AND THE OWNERS OF THE PREMISES ARE NOT RESPONSIBLE FOR UNLAWFUL ACTS CONSTITUTED ON MY PART.

\_\_\_\_ I AGREE TO BE EXCLUSIVELY RESPONSIBLE FOR FEDERAL, STATE, LOCAL TAXES AND CONTRIBUTIONS IMPOSED OR REQUIRED AT ANY TIME BY UNEMPLOYMENT, WORKERS COMPENSATION, SOCIAL SECURITY, MEDICARE OR INCOME TAX LAWS, OR ANY OTHER APPLICABLE LAWS, RULES OR REGULATIONS IN CONNECTION WITH ANY MONEY EARNED BY ME AT THE PREMISES.

\_\_\_\_ AS AN ENTERTAINER TENANT, I WILL CARRY MY OWN PERSONAL LIABILITY INSURANCE.  I AGREE THE LEASER IS NOT LIABLE FOR ANY INJURIES SUSTAINED BY ME ON THE PREMISES OR PROPERTY AT ANY TIME.

\_\_\_\_ I UNDERSTAND THAT GIVING FALSE INFORMATION ON MY SPACE LEASE APPLICATION WILL BE REASON FOR THE IMMEDIATE CANCELLATION OF MY ENTERTAINER TENANT SPACE LEASE.

_____

Entertainer Tenant Stage Name                    Date

_____

Legal Name (print)                               Date of Birth

**1 copy to Entertainer Tenant and underlined in the file.

## PRIVATE DANCER
## Part 5. I CHOOSE TO BE A ENTERTAINER TENANT
## AND NOT AN EMPLOYEE.

| If I Choose To Be An ENTERTAINER TENANT | vs. | If I Choose To Be An EMPLOYEE |
|---|---|---|
| 1. As an Entertainer Tenant, all of my earnings will come from my customers. The harder I apply my trade, the more money I can make. I will charge my customers for my ET performances; the money that I receive from them will be my money. I will be able to take home money at the end of the day; and I will be solely responsible for taking care of and paying all of the taxes I owe on this income. I will pay a spaces lease fee to the Club for the ability to perform here. I will pay assistance fees as stated in my Entertainer Tenant Agreement and any mandatory damages I cause. I will pay "Lease Space Time & Rental" for Champaign Private Rooms. As stated in my "Entertainer Tenant Lease" I can review a copy of my "Entertainer Tenant Lease" to see the currently established amount of those lease space fees and rental costs. | | 1. As an Employee, I would be paid on an hourly basis at a rate equal to the applicable minimum wage, reduced by any maximum "tip credit" as may be allowed by law, and I will also be paid a commission fee equal to 50% of the price of all non-specialty dances that I perform over 10 dances. Regarding this "tip credit," the laws in certain states permit an employer to reduce minimum wage payments down to as low as $4.08 per hour as long as the tips of the employee bring the hourly income of the individual up to at least the full minimum wage rate of $8.15 an hour. If I have any questions as to whether a tip credited minimum wage is permitted in this state, I will ask the Property Manager. |
| 2. As an Entertainer Tenant, the dance fees I charge my customers, minus "Entertainer Tenant Lease" payouts, **are mine to keep.** | | 2. As an Employee, the dance fees I charge customers, **100% belongs to the Club.** I will have to turn them over to Management before the end of my shift. |
| 3. As an Entertainer Tenant, I keep track of my own income. I do not report my dance fees or income to the Club. I can take tax deductions for travel, advertising, make-up, costumes, props, tanning, health clubs, cosmetic surgery, etc., as allowed by law. | | 3. As an Employee, I must, by law, report all of my tip income to the Club. I cannot deduct from my taxes the incidental expenses of my employment. In addition, by law the club will be required to pay the IRS, out of the wages due to me, taxes owed on my tip income. If I make a substantial amount in tips, this could result in me receiving a "zero" pay check. If I have questions about this, I know to consult my accountant. |
| 4. As an Entertainer Tenant, I am not required to "tip out" any Club employee. Set space lease and support costs exist, which I agree to pay as part of overhead for my business. | | 4. As an Employee, I will be required to pay 25% of my daily tip income into a "tip pool," which will be distributed to other non-dancer regularly tipped Club Employees. |
| 5. As an Entertainer Tenant, I will lease space as I wish, where I wish. | | 5. As an Employee, the Club will select my schedule (both days and times). |
| 6. As an Entertainer Tenant, I can perform for whoever I choose, and can reject any customers I want. | | 6. As an Employee, I will be required to perform for all customers. |
| 7. As an Entertainer Tenant, I will never be required to engage in any Club promotions or advertising. | | 7. As an Employee, I will be required to participate in various Club promotions and advertising. |
| 8. As an Entertainer Tenant, I will never be required by the Club to give "free" dances to anyone. | | 8. As an Employee, I will be required to give "free" dances, at the discretion of Management. |
| 9. As an Entertainer Tenant, I will have the flexibility to choose my own costumes. | | 9. As an Employee, I will be required to wear the costumes selected by the Club. I will be provided one costume per month by the Club, which the club will pay for. |

| | |
|---|---|
| 10. As an Entertainer Tenant, I will determine my own appearance. | 10. As an Employee, my appearance must comply with Club standards. Management will tell me how to wear my hair and how my make-up should look. |
| 11. As an Entertainer Tenant, I can work for as many Clubs as I choose. | 11. As an Employee, I will be required to perform as an Entertainer at this Club, ONLY. |
| 12. As an Entertainer Tenant, I will never be required to fill in for other Club jobs. | 12. As an Employee, I will be required to fill in for other Employees, such as Bartenders, Waitresses, or Door persons, as needed. |
| 13. As an Entertainer Tenant, I will not be given any training. I will be expected to come to the Club with the necessary skills to be an Entertainer Tenant. I may perform in any lawful manner of my own choosing and I will not have to meet any type of "performance standards" set by the Club. | 13. As an Employee, I will be required to undergo Entertainer Tenant training, and I must perform consistent with the standards set in that training to maintain my job. |
| 14. As an Entertainer Tenant, I will lease space daily. The Club will not be able to cancel my "Entertainer Tenant Lease" during that period except upon the specific reasons listed in the "Entertainer Tenant Agreement." | 14. As an Employee, my employment will be "at will," which means I know I can be fired at any time, without cause and without prior notice. |
| 15. As an Entertainer Tenant, if I am injured at the Club, I will not be covered by Worker's Compensation Insurance. But I can sue the Club, if it is at fault and my only limits of recovery are those that may be imposed by state law or contractual obligations already agreed to by me. | 15. As an Employee, if I am hurt at work, my sole recourse against the Club will be for "Worker's Compensation" benefits. I would not have to prove the Club was at fault, but I will be subject to the limits of that coverage. |
| 16. As an Entertainer Tenant, I will not be entitled to unemployment compensation benefits either if my space lease expires, of if the Club cancels it for any of the reasons listed in the "Entertainer Tenant Agreement." | 16. As an Employee, if I was fired, I may be entitled, if I have worked a sufficient period of time and satisfy other legal requirements, to unemployment compensation benefits. These benefits are for a fixed period of time and are set by law. They are based on my claimed income. |
| 17. As an Entertainer Tenant, the amount of "vacation" time I can take is unlimited, but I know I will not get paid for it by the Club. | 17. As an Employee, I would be entitled to a paid vacation after one year of employment. However, the time of my vacations must be approved by Management in advance. |
| 18. As an Entertainer Tenant, I will be acknowledging that I am not entitled to benefits under the Fair Labor Standards Act, Equal Employment Opportunity laws, or other laws that protect Employees. | 18. As an Employee, I would be entitled to certain legal protections under the Fair Labor Standards Act, the Equal Employment Opportunity laws, and other laws that protect Employees. |

(   )  I wish to be an Entertainer Tenant & lease space

**( ) I want to be an Employee and be paid hourly as a Bartender, Hostess, Waitress or Shot Girl.**

Print Real Name

Entertainer Tenant Name

Date

| |
|---|
| ** **If you choose this option, stop completing the paperwork now and speak to the Property Manager.** |

# PRIVATE DANCER
## Part 6: REQUIREMENTS FOR U.S. CITIZENSHIP OR AUTHORIZATION FORM

**Entertainer Tenants must have one form of I.D. U.S. citizenship or U.S. authorization form!!**

Please read instructions carefully before completing this form. The instructions must be available during completion of this form.

ANTI-DISCRIMINATION NOTICE: It is illegal to discriminate against work eligible individuals. Leasors CANNOT specify which document(s) they will accept from an Entertainer Tenant. The refusal to lease space to an individual because the documents have a future expiration date may also constitute illegal discrimination.

**Section 1.** Entertainer Tenant and Verification. To be completed and signed by the Entertainer Tenant at the time employment begins.

| Print Name | Last | First | Middle Initial | Maiden Name |
|---|---|---|---|---|
| Address | | | | Date of Birth |
| City | State | | Zip Code | Social Security # |

| I am aware that federal law provides imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form. | I attest, under penalty of perjury, that I am (check one of the following): ☐ A citizen or national of the United States ☐ A lawful permanent resident (Alien #) _____ ☐ Alien, authorized to work until _____ (Alien # or Admission #) _____ |
|---|---|

| Entertainer Tenant Signature | Date |
|---|---|

Certification: I attest, under penalty of perjury, that I have examined the document(s) presented by the above named Entertainer Tenant, that the above listed document(s) appear to be genuine and to relate to the Entertainer Tenant named, that the Entertainer Tenant began the Lease Space Agreement on *(month/day/year)* _____ and that to the best of my knowledge the Entertainer Tenant is eligible to work in the United States.

| Signature of Manager or Authorized Company Representative | Date |
|---|---|

## LIST OF ACCEPTABLE DOCUMENTS
### Just need one, preferably with a picture.

| LIST A<br>Documents that establish both identity and Entertainer Tenant lease eligibility | LIST B<br>Documents that establish identity | LIST C<br>Documents that establish employment eligibility |
|---|---|---|
| 1. U.S. Passport (unexpired or expired) | 1. Driver's license or ID card issued by a state or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color and address | 1. U.S. Social Security card issued by the Social Security Administration (other than a card stating it is not valid for employment) |
| 2. Permanent Resident Card or Alien Registration Receipt Card (Form I-551) | 2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or in | 2. Certification of Birth Abroad issued by the Department of State *(Form FS-545 or Form DS-1350)* |
| | 3. School ID card with photograph | 3. Original or certified copy of a birth certificate issued by a state, county, municipal authority or outlying possession of the United States bearing an official seal |

**\*\*ENTERTAINER TENANT FILE ONLY**

## PRIVATE DANCER
## Part 7: ENTERTAINER TENANT DRUG POLICY AGREEMENT

I, _____ UNDERSTAND AND AGREE THAT **PRIVATE DANCER** IS AND MUST REMAIN A DRUG FREE ESTABLISHMENT. WHILE I UNDERSTAND THAT I CANNOT BE RESPONSIBLE FOR ALL OF THE PATRONS OF **PRIVATE DANCER** . I DO HAVE AN OBLIGATION TO REPORT TO MANAGEMENT ANYTIME A CUSTOMER OFFERS ME NARCOTICS OR ASKS ME ABOUT GETTING NARCOTICS FOR THEM. I ALSO AGREE TO NOTIFY MANAGEMENT IF I SEE ANYONE IN THE ESTABLISHMENT WITH NARCOTICS.

I FURTHER UNDERSTAND THAT THE POSSESSION OF ANY NARCOTICS IS ILLEGAL IN THIS STATE TO POSSESS. I AGREE THAT WHILE I AM WORKING AT **PRIVATE DANCER** I WILL NOT USE OR POSSESS ANY ILLEGAL DRUG OR SUBSTANCE AT THE ESTABLISHMENT UNLESS IT IS A PRESCRIPTION DRUG IN THE ORIGINAL CONTAINER PRESCRIBED FOR ME BY A LICENSED PHYSICIAN.

I KNOW AND AGREE THAT WHILE I AM WORKING AT **PRIVATE DANCER** I AM SUBJECT TO RANDOM SEARCHES BY MANAGEMENT AND IN-HOUSE SECURITY. I REALIZE THAT AT ANY TIME THE LOCKER I PUT ITEMS IN, DRESSING AREA OR ANY PERSONAL BELONGINGS I BRING INTO THE ESTABLISHMENT IS SUBJECT TO BEING SEARCHED FOR CONTROLLED SUBSTANCES.

I AGREE TO THIS POLICY AND AGREE THAT I WILL NOT CONSUME OR POSSESS ANY ILLEGAL SUBSTANCES OR HAVE ANY DRUGS PARAPHERNALIA WHILE I AM AT THIS ESTABLISHMENT.

I UNDERSTAND THE STATEMENTS AND REQUIREMENTS EXPECTED OF ME UNDER THIS JOB DESCRIPTION.


_____

Sign Name                    Print Real Name                    Date


* 1 copy to Entertainer Tenant and **original in the file**.

** All Entertainer Tenant positions

## PRIVATE DANCER
## Part 8:  SEXUAL HARASSMENT POLICY

**PRIVATE DANCER** believes that I should be afforded the opportunity to lease space in an environment free of sexual harassment.  Sexual harassment is a form of misconduct that undermines our relationship of all involved.  No person, either male or female, should be subjected physically to unsolicited or unwelcomed sexual overtures or conduct.

Sexual harassment refers to behavior that is not welcome, that is personally offensive, and that hurts morale and, therefore, interferes with your effectiveness.

Behavior that amounts to sexual harassment may result in disciplinary action, up to and including dismissal  to any Employee doing this to an Entertainer Tenant.  Should a Entertainer Tenant be guilty of this type of infraction, their Entertainer Tenant Space Lease will be immediately cancelled.

<u>DEFINITION:</u>

The EEOC defines sexual harassment as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:

- Submission to such conduct is made either explicitly or implicitly a term or condition leasing space.
- Submission to or rejection of such conduct by you is used as the basis for space lease decisions affecting you.
- Such conduct has the purpose or effect of unreasonably interfering with your lease space performance or creating an intimidating, hostile or offensive space lease environment.

**PRIVATE DANCER** wants you to have a space lease environment that is free of sexual harassment by Property Management personnel, by employees and by others with whom you must interact in the course of my space lease; Sexual harassment is specifically prohibited as unlawful and as a violation of **PRIVATE DANCER**  policy.  **PRIVATE DANCER**  is committed to preventing sexual harassment in the workplace,   for taking immediate corrective action to stop sexual harassment in your lease space and for promptly investigating any allegation of lease-related sexual harassment.

<u>OUR COMMITMENT:</u>

**PRIVATE DANCER**  wants you to have a lease space environment free of sexual harassment by Property Management personnel, by Employees and by others with whom you must interact with in the course of your leasing space.  Sexual harassment is specifically prohibited as unlawful and as a violation of **PRIVATE DANCER**  policy.  **PRIVATE DANCER**  is committed to preventing sexual harassment in the workplace, for taking immediate corrective action to stop sexual harassment on our property and for promptly investigating any allegations of sexual harassment while on our property.

<u>COMPLAINT PROCEDURE:</u>

I have been told that If I experience or witness sexual harassment in your lease space to report it immediately to the Property Manager. I may also report harassment to any other member of **PRIVATE DANCER** 's Ownership. All allegations of sexual harassment will be quickly investigated confidentiality for myself and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, I will be informed of the outcome of that investigation.

<u>RETALIATION IS PROHIBITED:</u>

**PRIVATE DANCER** will permit no retaliation against anyone who brings a complaint of sexual harassment or who speaks as a witness in the investigation of a complaint of sexual harassment.

<u>PENALTIES:</u>

Sexual harassment will not be tolerated at **PRIVATE DANCER** . **PRIVATE DANCER** reserves the right to cancel a space lease or terminate the employment of anyone that allows their social or professional interaction with workers to disrupt the workplace or impedes another person's ability to perform their space leases. If an investigation of any allegation of sexual harassment shows that harassing behavior has taken place, the harasser will be subject to disciplinary action, up to and including cancellations of their space leases and or termination of their employment.

<u>ENTIRETY OF POLICY:</u>

If any part of this policy is found to be unlawful or invalid such part or parts shall be severable and shall not affect the enforceability of any other part.

I have read and understand the above statements. I understand that my "Lease Space Agreement" with **PRIVATE DANCER** may be terminated immediately in the event that I am found to have violated **PRIVATE DANCER** Sexual Harassment Policy.

_____

Sign Name                          Print Real Name                          Date

*Put in file

Part 8: Sexual Harassment Policy
Supplied by The Owners Coalition                                                                    2

## PRIVATE DANCER
## Part 9: UNDERAGE DRINKING POLICY

Should any Employee, Bartender, Waitress, Shot person, D.J. or Management person serve an underage Entertainer Tenant or customer with the knowledge that the Entertainer Tenant or customer is underage, the person serving the underage person as well as the Entertainer Tenants Space Lease will be terminated and will be held liable for any financial or legal damages to our business.

Our club obeys all State Liquor Laws and by leasing space here, you agree to follow them and obey them without exception.

_____

Entertainer Tenant                                    Date

# **YOU MUST COMPLETE THE STARED AREAS!**

| ENTERTAINER TENANT INFORMATION | |
|---|---|
| **Name: | |
| **Stage Name: | |
| Face Book: | |
| **Cell Phone Number: | |
| E-mail Address: | |
| Twitter: | |
| Alternate Phone Number: | |

## PRIVATE DANCER
## Part 10: NO SMOKING POLICY AGREEMENT
## (If applicable)

We believe in a person's right to smoke. **HOWEVER**, it is illegal to smoke inside our building or by an open doorway on our premises, per the State & its non-smoking Law.

Should you be caught smoking by enforcement personnel, you will be asked to pay the fine.

Our club follows state law and we expect our Employees, Entertainer Tenants & , Management, Vendors, Independent Contractors and Patrons to do so also.

*Note: **NEVER** light a cigarette for anyone in any area of our club / bar premises that is not officially designated for smoking

That being said, should anyone be cited for smoking in our club / bar, they will be asked to leave. There is no smoking In or around our bar / club. Smoking is permitted in the designated area only.

_____
Sign Name                          Print Name                          Date

## Part 11: ENTERTAINER TENANTS STATE LIQUOR LAWS SIGN OFF

The club has made the Entertainer Tenant aware of its support to the State Liquor Laws. The law is designed to limit issues in venues with liquor licenses.

The club will not lease space to any Entertainer Tenant who intentionally breaks a State Liquor Law, at any time, in our club while leasing space.,

The club will cancel the lease of any Entertainer Tenant that is caught sexually touching a customer's lips, penis, or anus while on our premises.

The club will immediately ask a customer to leave the club that is observed touching any Entertainer Tenants breasts, vagina or anus.

As an Entertainer Tenant, you agree to follow all State Liquor Laws and understand if you do not, the club will have no other choice but to cancel you're "Entertainer Tenant Space Lease."

_____
Sign Name                          Print Name                          Date

## Part 12: CONDITIONS OF SPACE LEASE USAGE:

- YOU MUST BE 18 OR OVER TO LEASE SPACE AND MUST HAVE VALID ID.
- YOU MUST ARRIVE WITH TIME TO BE READY FOR YOUR LEASED TIME.
- CHECK IN WITH DJ OR PROPERTY MANAGER WHEN READY TO BEGIN YOUR LEASED SPACE TIME.
- NEVER MISS YOUR LEASED SPACE TURN ON STAGE, AS YOU LEASED THE SPACE TO BE THERE.
- NO UNDERAGE DRINKING OF ALCOHOL IS EVER ALLOWED.
- YOU MUST ENTERTAIN WHILE ON STAGE, AS YOU ARE LEASING SPACE TO ENTERTAIN. THIS WILL ALLOW THE CUSTOMER TO REVIEW YOUR TALENT.
- PAY LEASED SPACE RENT AND ASSISTANCE FEE'S AS AGREEMENT LEASE STATES FOR CLUB AND PRIVATE ROOMS.
- GO TO DRESSING ROOM IMMEDIATELY WHEN CALLED BY DJ OR MANAGER AS IT COULD BE INFORMATION ABOUT YOUR LEASE.
- NO DRUGS OF ANY KIND ARE ALLOWED IN THE CLUB, AS THAT IS AGAINST STATE LAW.
- NEVER MAKE A DATE WITH A CUSTOMER / NEVER LEAVE WITH A CUSTOMER AS IT IS ILLEGAL.
- FIGHTING WILL NOT BE TOLERATED AND WILL BRING IMMEDIATE LEASE CANCELLATION FOR SAFETY REASONS.
- MUST PARTICIPATE IN ALL LEASE SPACE STAGE SHOWS AS YOUR LEASE SPACE DICTATES. THIS INCREASES CUSTOMER ABILITY TO REVIEW YOUR TALENTS.
- PAY ALL LEASE, RENT, DAMAGE, AND ASSISTANCE FEE'S BEFORE LEAVING.
- MUST HAVE MANAGER'S APPROVAL BEFORE LEAVING TO INSURE ALL CONDITIONS OF YOUR LEASE SPACE AGREEMENT WERE MET.

**THE "SPACE LEASE CONDITIONS OF SPACE USAGE" IS NOT INTENDED TO BE AN EMPLOYMENT CONTRACT OR PART OF A CONTRACTUAL AGREEMENT BETWEEN THE ENTERTAINER TENANT AND THE CLUB. THE CLUB RESERVES THE RIGHT TO MODIFY, DELETE, OR ADD TO ANY OF THE CONDITIONS OF SPACE RENT CONTAINED HEREIN WITHOUT NOTICE, AND RESERVES THE RIGHT TO CANCEL THE ENTERTAINER TENANT SPACE LEASE AT ANY TIME, WITH OR WITHOUT NOTICE, AS DESCRIBED IN YOUR SPACE LEASE AGREEMENT, WITH BREACH OF THIS AGREEMENT.**

I understand the statements and requirements expected of me under the conditions of my space lease.

_____

Entertainer Tenant Stage Name          Management

_____

Legal Name (print)          Date


**\*\*THIS PAGE GOES IN THE ENTERTAINER TENANT FILE KEPT ON PREMISE.**

# PRIVATE DANCER
## Part 13: ASSISTANCE FEE'S AGREEMENT

### I RECOGNIZE THAT BEING AN ENTERTAINER TENANT MEANS I WILL PERFORM IN THE LEASE SPACE I LEASE.

During the time of my leasing space to perform here, I know and agree that I will use certain assistance services from numerous individuals who work here, or are independent contractors.

These people, include but are not limited to Floor Men, Security, Djs, House Moms or other types of assistance people who can be compensated by me voluntarily so I may have the assistance from them to perform at a level I desire.

I will do this voluntarily and with the belief that I am free not to lease space here if I am unwilling to use some of my own funds from my business to "Pay Assistance Fee's " to individuals to assist me in my success.

I understand "Pay Assistance Fee's " is a normal way of life.  I "tip" my hairdressers that does my hair, I "tip" a cab driver who may bring me here, and I "tip" waitresses to bring me food. These people who also may assist me in helping me inside and outside my profession.

At no time does **Private Dancer**  demand I pay "assistance fee's", as it is an individual choice for me to use assistance or not.

If I ever feel I should not pay assistance fees, I will bring this to the attention of my Property Manager of the lease space.   At no time does Private Dancer  demand I pay "assistance fee's," as it is an individual choice for me to use the assistance or not.

If I have any questions regarding this agreement, I am aware I can approach my Property Manager of the lease space at any time.

X_____
Entertainer Tenant Stage Name

X_____
Entertainer Tenant Real Name

_____
Date

Part 13:  Assistance Fee's Agreement.
Supplied by The Owners Coalition

1

## PRIVATE DANCER
## Part 14:  ENTERTAINER TENANT BREATHALYZER AGREEMENT

During the time that I lease space here, I may be asked from time to time to take a breathalyzer test if I am driving & wish to leave.  I agree to take the test when asked and follow the instructions given to me by the Property Manager on duty.

I realize if I do not follow the direction of the Property Manager on duty and walk out the door, my lease will be terminated and I will no longer be able to lease space at this club.

Should I take the test and I fail to meet the standards of sobriety dictated by state law, I agree not to drive a vehicle away from the club or to go to any destination after the club, by driving a car myself.

Should I drive a vehicle away from the club without permission, I know I will have my lease space terminated and no longer be able to lease space here.

Your safety will always be a major concern to us!

X _____
Sign your real name

X _____
Sign your Entertainer Tenant name

X _____
Print your real name

_____
Date

## PRIVATE DANCER
## PART 15: ENTERTAINER TENANT EARNINGS AGREEMENT

I understand I am "Leasing Space" here and I rent space and pay lease agreement assistance fees as needed or stated in my Lease or payouts for space use, lease damages etc.

I know that every time period I lease space, the Leaser has no idea how much I make, as I do not wish for anyone but myself to know.

I realize on certain days I may make way over minimum wage and some days I will make below that amount. I know what my average earnings are at the club weekly. I will always earn over minimum wage from my stage performances, private room entertainment, tips and offered drink comissions that will come from the club patrons.

I agree that I will average above the minimum wage at all times on a weekly basis.

If at any time I do not average the minimum wage, I will immediately approach my lessor and explain I cannot lease space here anymore, as I do not want to be an employee and since the club has no positions for dancer employees, I will leave the property immediately.

I have chosen not to be an employee, with no pressure to do so.

If I do not do well in my profession for any reason, I will hold the lessor harmless of any damage, pay differential or responsibility for my lack of success unless the leaser does not meet the obligations set forth in my Entertainer Tenant Lease Agreement.

Should I stop leasing space here, I will not cause any legal action or join in any class action to come upon PRIVATE DANCER I lease space from.


X_____

Entertainer Tenant                              _____
                                                Date


_____
Property Manager                                _____
                                                Date

## *PHOTO RELEASE*

For good and valuable consideration, the receipt of which is hereby acknowledged, I,
_____, hereby grant Private Dancer Club permission to use my likeness in a
photograph in any and all of its publications, including but not limited to all of Private Dancer
Club's printed and digital publications. I understand and agree that any photograph using my
likeness will become property of Private Dancer Club and will not be returned.

I acknowledge that since my participation with Private Dancer Club is voluntary, I will receive no
financial compensation.

I hereby irrevocably authorize Private Dancer Club to edit, alter, copy, exhibit, publish or
distribute this photo for purposes of publicizing Private Dancer Club's programs or for any other
related, lawful purpose. In addition, I waive the right to inspect or approve the finished product,
including written or electronic copy, wherein my likeness appears. Additionally, I waive any right
to royalties or other compensation arising or related to the use of the photograph.

I hereby hold harmless and release and forever discharge Private Dancer Club from all claims,
demands, and causes of action which I, my heirs, representatives, executors, administrators, or any
other persons acting on my behalf or on behalf of my estate have or may have by reason of this
authorization.

Printed Name: _____  Date: _____

Signature: _____

Signature: _____
 *Signature of guardian if under 18 years of age*