**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jessica Hogan, *et al.*, | : | |
|     **On behalf of herself and those** | : | |
|     **similarly situated** | : | |
| | : | **Case No. 15-cv-2883** |
|        **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
|   **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| Cleveland Ave Restaurant, Inc. | : | |
|     (dba Sirens), *et al.*, | : | |
| | : | |
|       **Defendant(s).** | : | |

**<u>OPINION & ORDER</u>**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion to Enforce Settlement Agreement. (ECF No. 315). Defendants have not responded to Plaintiffs' Motion. For the reasons stated below, this Court **GRANTS** Plaintiffs' Motion to Enforce. (*Id.*).

**II.    BACKGROUND**

On December 10, 2019, this Court granted the Parties' respective motions for settlement of the claims between Defendants and two separate classes of Plaintiffs—the "Entertainer" and "Bartender" classes. (ECF No. 230). As part of the Settlement Agreement, Defendants were required to produce to Plaintiffs contact information for all entertainers eligible to opt in.

On January 2, 2020, Defendants produced to Plaintiffs a spreadsheet containing the names of approximately 80 entertainers and referred Plaintiffs to their prior productions of entertainer contracts (referred to as Tenant Lease Agreements) as a means of satisfying their obligations under the Settlement Agreement. (ECF No. 235 at 3-4). Plaintiffs argued that this is insufficient and that

the terms of the Settlement Agreement indicate that Defendants were required to produce contact information for all entertainers in the form of one spreadsheet. (*Id.*). Defendants countered that they have satisfied their obligation by their prior production of documents. (ECF No. 240). On May 14, 2020, this Court granted Plaintiffs' Motion to Enforce Settlement Agreement and expedite consideration of said motion. After holding a fairness hearing on July 31, 2020, the Court granted Plaintiffs' Motion for Approval of Bartender's Collective Action Settlement. (ECF No. 303).

Of relevance here, the parties had agreed to a total settlement of $600,000. Given Defendants' finances, however, the parties also agreed to payments over a lengthy period of time. Specifically, Defendants would pay the bartenders' settlement amount fourteen days after final approval. Following that, Defendants would start making $8,000 monthly payments to the dancer class after final approval of that portion of the settlement. There are several important details about this system.

First, the bartender settlement amount was likely to be around $75,000. The actual amount was approximately $83,000. (ECF No. 278 at 2906).

Second, there would be a lag between the time the parties signed the MOU (February 21, 2019) and the time that the bartender settlement would receive final approval because of the preliminary approval, notice, and final approval process. This lag would give Defendants sufficient time to save funds to pay the bartender settlement amount.

Third, there would be an even greater lag between the time the parties signed the MOU and when Defendants would have to start making the $8,000 monthly payments to the dancers because of the anticipated yearlong notice process for the dancer class. This date came and went with no payment. Plaintiffs' counsel followed up several times and received no answer as to the status of payment.

Finally, according to Plaintiffs, Defendants' counsel, Christina Corl, responded that Defendants would not be making the first settlement payment. Ms. Corl alleged that her clients had been unable to operate since March 2020 due to the COVID-19 pandemic and, as a result, had no business revenue. Plaintiffs retort that no explanation was given as to why Defendants had not used the entire year from between February 21, 2019 and February 2020 to save money to fund the settlement.

## A. Settlement Fund

Plaintiffs argue Defendants have failed to make even the first payment due under the Settlement Agreement. A review of the Settlement Agreement indicates that the due date for the first Fund Payment to the Bartender Settlement Subclass was August 14, 2020:

> Within 14 days of the Court's final approval of this Agreement as it relates to Bartenders, Defendants will pay each bartender that submitted a valid claim form 1.5 times the difference between full Ohio minimum wage and the tipped minimum wage they were paid for each hour worked from October 6, 2012 until December 3, 2015, less any prorated portion of fees, expenses, and service awards.

(ECF No. 278-1 at 5) ("Fund for Payment of Claims of the Bartender Settlement Subclass."). The parties agreed that Defendant would the Bartenders Settlement Subclass within fourteen days of the Court's final settlement approval. This Court approved the Settlement Agreement on July 31, 2020, making August 14 the due date for the first Fund Payment. (ECF No. 31).

The Settlement Agreement also provides the following for payment of funds to the entertainer settlement subclass:

> iv. Second, starting one month after the Effective Date and for every month thereafter until a total of $600,000 (minus all amounts from the Settlement Fund already paid) has been deposited, Defendants will deposit $8,000 in an escrow account to cover remaining payments to Entertainers, attorney fees, and litigation expenses, if any, awarded by the Court. Class Counsel will have the ability to monitor the escrow account to ensure payments are being made to and from the account.

v. Every six months, the Entertainer Claims Administrator will distribute payments to Entertainers based on each Entertainer's Percentage. The Entertainer Claims Administrator shall pay Entertainers by two separate checks to account for unpaid wages and additional statutory damages. One[-]third of each payment will be for wages, subject to normal employer withholdings. Two-thirds of the payment will be for damages, for which Defendants will issue a Form 1099.

vi. At the same time that the Entertainer Claims Administrator distributes payments to Entertainers, the Entertainer Claims Administrator will distribute a payment to Class Counsel for attorney fees and litigation expenses, if any, as ordered by the Court.

vii. Defendants will continue to make monthly deposits and the Entertainer Claims Administrator will continue to make biannual payments to Entertainers until the entire Settlement Fund is exhausted.

M. Defendants Sirens, F. Sharrak, M. Sharrak, and Nelson will be jointly and severally personally liable for the full amount. Defendants Sullivan and Alkammo will not be personally liable for payments from the Settlement Fund.

(*Id.* at 8) ("Fund for Payment of Claims of the Entertainer Settlement Subclass.").

## B. Enforcement Procedure

The Settlement Agreement provides for an enforcement procedure upon default. (ECF No. 223-1). Under the terms of the Agreement, the Court can appoint a Special Master to ensure Defendants make payments, as follows:

A. If Defendants Sirens, Francis Sharrak and/or Michael Sharrak miss a payment outlined above (including the monthly escrow payments or the biannual class payments), any plaintiff, class member, or Class Counsel may notify Defendants of the breach. Defendants will have up to 30 days to cure the breach.

B. If any of the following occurs: (1) Defendants Sirens, Francis Sharrak and/or Michael Sharrak fail to cure a breach within 30 days, (2) Defendants Sirens, Francis Sharrak and/or Michael Sharrak are late in making payments in two consecutive months, or (3) Class Counsel has notified Defendants of a breach three ties, and Defendants Sirens, Francis Sharrak and/or Michael Sharrak miss or are late making a fourth payment; then Class Counsel may request that the Court appoint a special master ("Special Master"), as described below.

For any one of the causes described above, Class Counsel may move the Court to appoint a Special Master to ensure Defendants Sirens, Francis Sharrak and/or Michael Sharrak make all of their required payments under this Agreement. The Special master will have

wide discretion to oversee Defendants Sirens, Francis Sharrak and/or Michael Sharrak's income and assets to ensure the required payments are met. The Court may empower the Special Master with any authority that the Court deems fit to accomplish the goal of ensuring Defendants Sirens Francis Sharrak and/or Michael Sharrak make all required payments under this Agreement. The Parties may each suggest up to three candidates to serve as a Special Master, but the Court has discretion to pick any person that the Court deems fit to serve. Defendants will be responsible for the costs associated with the Special Master, to be paid separately and in addition to the Settlement Fund.

(ECF No. 315 at 6). Plaintiffs contend that Defendants' non-payment has triggered the enforcement prong of the Settlement Agreement. Plaintiffs thus ask the Court to enforce the Agreement according to its terms and allow for the appointment of a Special Master.

## II.     STANDARD OF REVIEW

Public policy favors settling cases without litigation, and thus settlement agreements should be upheld whenever it is equitable to do so. *Graley v. Yellow Freight Sys., Inc.*, No. 98-4166, 2000 WL 799779, at *4 (6th Cir. June 14, 2000) (internal citation omitted). Settlement agreements are a type of contract, so "the formation and enforceability of a purported settlement agreement are governed by state contract law." *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1191 (S.D. Ohio 2013) (citing *Smith v. ABN AMRO Mortg. Grp. Inc.,* 434 F. App'x 454,460 (6th Cir. 2011)); *see also Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Here, the applicable law is Ohio contract law, since the parties are all Ohio residents and the Settlement Agreement was entered into in Ohio. *See Edwards v. Hocking Valley Cmty. Hosp.*, 87 F. App'x 542, 550-51 (6th Cir. 2004).

Before enforcing a settlement agreement, a court is required to conclude that agreement has been reached on all material terms. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001). Further, the essential terms of the settlement must be "reasonably certain and clear." *Rulli v. Fan* Co., 376 (1997). Summary enforcement of an agreement, without holding a hearing, is appropriate where the parties "do not dispute material facts pertaining to the existence

or terms of a settlement agreement." *Graley v. Yellow Freight Sys., Inc.*, 221 F.3d 1334 (6th Cir. 2000). When enforcing an agreement, a court is not permitted to alter the terms of the agreement, but rather, must enforce the settlement as agreed to by the parties. *Heimberger v. Pritzker*, No. 2:12-CV-01064, 2015 WL 5582254, at *3 (S.D. Ohio Sept. 23, 2015).

### III. LAW & ANALYSIS

### A. The Settlement Contract

To enforce a contract summarily, a court is required to make a finding that there is a "meeting of the minds as to the essential terms of the contract." *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, 96 Ohio St. 3d 1, 3, 770 N.E.2d 58, 61. A dispute over the meaning of a particular provision in a contract does not "constitute an absence of a material term that could defeat the enforceability of the contract." *Santomauro v. Sumss Prop. Mgmt., LLC*, 2019-Ohio-4335, ¶ 33, 134 N.E.3d 1250, 1262-63 (internal citations omitted). Here, the parties do not dispute that there was a meeting of minds on all the essential terms: (1) the payment of a sum to settle claims by two classes of plaintiffs; and (2) the existence of enforcement mechanisms upon default.

A court's "primary objective" when analyzing a written agreement is "to ascertain and give effect to the intent of the parties by examining the language that they chose to employ." *Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 2015-Ohio-4879, ¶ 29. First, the court must determine whether the disputed language is "plain and unambiguous." *Id.* (internal citations omitted). Language is unambiguous when it is "clear, definite, and subject to only one interpretation." *Id.* Contract language is ambiguous if it is "unclear, indefinite, and reasonably subject to dual interpretations." *Id.* When a contract contains ambiguous language or "when the circumstances surrounding the agreement invest the language of the contract with a special

meaning," "the intent of the parties becomes a question of fact" and a court is permitted to examine extrinsic evidence "in an effort to give effect to the parties' intentions." *Id.* at ¶ 32.

No one disputes that the parties came to an agreement on the material terms of the settlement. The sole issue is Defendants' apparent failure to comply with the Settlement Agreement. There is nothing that could be conceived as ambiguous in the above-excerpted portions of the Settlement Agreement. The only non-specified portion of the Agreement was the "effective date," which was contingent upon this Court's approval of the settlement. It is, of course, undisputed that this Court approved the Settlement Agreement on July 31, 2020.

The parties negotiated a settlement that was the result of a brokered compromise. The terms of the Settlement Agreement were memorialized in formal documents. Thus, the Settlement Agreement is non-ambiguous, binding, and enforceable.

### B. Special Master Appointment

This Court turns now to the requested appointment of a Special Master. Plaintiffs request that this Court appoint a Special Master, as provided in the Settlement Agreement, to ensure that Defendants make the required settlement payment. Plaintiffs also ask the Court to include a schedule for the parties to nominate a Special Master, pursuant to Fed. R. Civ. P. Rule 53. The purpose of a special master is "to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause." *La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957). Here, the appointment of a Special Master is appropriate for two reasons.

First, the requested appointment of a Special Master falls squarely within Rule 53's ambit. Rule 53 (a)(1)(A) allows courts to appoint a Special Matter to "perform duties consented to by the parties." Here, the parties consented to the appointment of a Special Master upon the happening of certain contractual breaches, such as missed payments. The Court has reviewed legal authority

addressing the duties of a Special Master permitted under the Federal Rules. *See Reed v. Cleveland Bd. Of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979) (explaining the district court's authority to appoint "expert advisors or consultants" derives from either Rule 53 or the inherent power of the court). Consonant with this legal authority and the parties' broad consent, the Court finds it appropriate to appoint a Special Master. The scope of the appointment will be consistent with the Settlement Terms, namely, "The Special master will have wide discretion to oversee Defendants Sirens, Francis Sharrak and/or Michael Sharrak's income and assets to ensure the required payments are met." (ECF No. 315 at 6-7).

Second, this case has been pending since 2015. It has involved extensive discovery and motions, culminating in the June 2020 Settlement Agreement and the instant Motion to Enforce the Settlement Agreement. (ECF Nos. 278, 315). This record shows the parties' inability to efficiently execute the Settlement Agreement absent intervention, which further indicates the propriety of appointing a Special Master.

It is therefore **ORDERED** that: The Parties shall meet and confer no later than **seven days** after this Order to discuss the nomination of a Special Master. Consistent with the Settlement Agreement, each party may suggest up to three candidates to serve as Special Master. No later than **fourteen** days after this Order, the parties shall, together or separately, submit a proposed candidate list for the Special Master appointment.

## IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS** Plaintiffs' Motion to Enforce. (ECF No. 315), and **ORDERS** the parties confer regarding the nomination of a Special Counsel.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**DATED:  November 23, 2020**          **CHIEF UNITED STATES DISTRICT JUDGE**

8