IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA HOGAN, *et al.*,

    Plaintiffs,

vs.

CLEVELAND AVE RESTAURANT,
INC., *et al.*,

    Defendants.

    Case No. 2:15-cv-2883
    Chief Judge Algenon L. Marbley
    Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion to Compel and for Sanctions Against the Cheeks Defendants, the Private Dancer Defendants, the Fantasyland West Defendants, the House of Babes Defendants, and Defendant Greg Flaig (ECF No. 371 (the "Motion to Compel")), the Motion for Protective Order Regarding Personally Identifiable Information with Incorporated Memorandum in Support (ECF No. 373 (the "Motion for Protective Order")), and the Motion to Permit Filing in Excess of Page Limits (ECF No. 379). For the reasons stated herein, the Motion to Compel (ECF No. 371) is **GRANTED IN PART AND DENIED IN PART**, the Motion for Protective Order (ECF No. 373) is **DENIED WITHOUT PREJUDICE**, and the Motion to Permit Filing in Excess of Page Limits (ECF No. 379) is **GRANTED**.

**I.**

On June 13, 2022 – nearly seven years after initiating this action – Plaintiffs filed the Motion to Compel, asking the Court to compel the production of (i) complete and unredacted copies of all signed Lease Agreements that were executed by any dancer who performed at

Cheeks, Private Dancer, Fantasyland West, and House of Babes from May 20, 20214 to the present; and (ii) complete and unredacted copies of "end-of-night sheets," which are sheets, slips, or other documents on which were recorded the identities of the dancers who performed at these clubs from May 20, 2014 to the present, and other related information. (ECF No. 371 at PAGEID ## 3810-3811.) Plaintiffs also seek entry onto the Cheeks, House of Babes, and Private Dancer properties for inspection. (*Id.* at PAGEID # 3811.) Plaintiffs also move for various sanctions, including attorney fees associated with the subject Motion and an entry of default against any Defendants who have destroyed evidence. (*Id.* at PAGEID ## 3811-3812.)

On July 1, 2022, the Cheeks Defendants, Fantasyland West Defendants, House of Babes Defendants, and Top Hat Defendants filed the subject Motion for Protective Order, asking the Court to enter a protective order[1] to protect the Personally Identifiable Information ("PII") of the entertainers who have worked at Defendants' clubs. (*See* ECF No. 373.) Defendants submit that they have offered to produce the documents which are at the heart of Plaintiffs' Motion to Compel, but that because the documents contain PII, Defendants asked Plaintiff "for either a proposed agreed protective order as to *use* of this information, or in the alternative, to redact the most highly sensitive and confidential PII to prevent Plaintiffs from using it unfairly and to the likely detriment of the Entertainers." (*Id.* at PAGEID # 4157 (emphasis in original).) Plaintiffs refused Defendants' offer, and the subject briefing ensued.

First, on July 14, 2022, the Cheeks Defendants, the Fantasyland West Defendants, the House of Babes Defendants, and Defendant Greg Flaig filed a Response in Opposition to

---

[1] As set forth in the Motion for Protective Order, although only certain Defendants move for a protective order, the Moving Defendants "respectfully submit[] . . . that the [proposed] Protective Order should apply to all club Defendants." (ECF No. 373 at PAGEID # 4156 n.1.)

2

Plaintiffs' Motion to Compel and for Sanctions. (ECF No. 380 (the "Cheeks Opposition").)[2] On July 18, 2022, Defendants LL Entertainment, LLC and John Mathews filed the Responses of Defendants LL Entertainment, LLC d/b/a Private Dancer, and John Mathews to Plaintiffs' Motion to Compel and for Sanctions. (ECF No. 382 (the "Private Dancer Opposition").) Then, on July 28, 2022, Plaintiffs filed separate Reply briefs to the Cheeks Opposition and the Private Dancer Opposition. (ECF Nos. 390, 391.)

Meanwhile, with regard to the Motion for Protective Order, on July 22, 2022, Plaintiffs filed their Memorandum in Opposition to Motion for Protective Order Filed by the Cheeks Defendants, the Fantasyland West Defendants, the House of Babes Defendants, and the Top Hat Defendants. (ECF No. 386.) Then, on August 5, 2022, the Moving Defendants filed a Reply brief in further support of the Motion for Protective Order. (ECF No. 393.) Accordingly, both the Motion to Compel and the Motion for Protective Order are fully briefed and ripe for judicial review.

**II.**

Plaintiffs move to compel discovery under Federal Rule of Civil Procedure 37, which permits a party to file such a motion if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith,

---

[2] On July 14, 2022, the Cheeks Defendants also filed a Motion to Permit Filing in Excess of Page Limits, seeking to file the Cheeks Opposition in excess of the Court's twenty-page preference. (ECF No. 379.) This request is well taken, and the Motion is **GRANTED**. Accordingly, the Court's analysis herein considers all twenty-five (25) pages of the Cheeks Opposition, ECF No. 380. Given the Cheeks Defendants' briefing in excess of the Court's twenty-page preference, the Court will also consider all forty-seven (47) pages of Plaintiffs' Memorandum in Opposition to Motion for Protective Order Filed by the Cheeks Defendants, the Fantasyland West Defendants, the House of Babes Defendants, and the Top Hat Defendants, ECF No. 386. The Court notes, however, that Plaintiffs did *not* file a similar motion seeking leave before filing their response brief – notwithstanding the fact that their response brief was more than double the Court's twenty-page preference.

3

conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). Here, the Court is satisfied that this prerequisite has been satisfied, as Plaintiffs spent seventeen (17) out of twenty-one (21) pages in the subject Motion to Compel detailing the history of this case, the discovery requests at issue, and the parties' efforts to resolve the discovery disputes in lieu of the subject briefing. (*See* ECF No. 371 at PAGEID ## 3793-3810.)

The Moving Defendants move for a protective order under Federal Rule of Civil Procedure 26(c)(1), which provides in pertinent part: "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The burden of establishing good cause for a protective order rests with the movant. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)). To establish good cause, the movant must articulate "specific facts" showing the risk of a "clearly defined and serious injury." *Id.* (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)). Mere speculation or unsubstantiated fears of prejudice are insufficient to justify the imposition of a protective order burdening a party's trial preparation. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004). The decision to issue a protective order is left to "the broad discretion of the district court in managing the case." *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 903–04 (6th Cir. 2009) (quoting *Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212, 218 (6th Cir. 1989)). "To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required . . . . The trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (citation omitted). Unless the court orders otherwise, the scope of discovery is that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court can, and indeed must, limit the frequency or extent of discovery "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Planned Parenthood Sw. Ohio Region v. Hodges*, No. 1:15-CV-00568, 2019 WL 13044827, at *2 (S.D. Ohio Mar. 31, 2019) (citing Fed. R. Civ. P. 26(b)(2)(C)). The Court also has discretion to limit the scope of discovery by issuing protective orders, for good cause shown, forbidding the requested discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal

5

relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'restoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 575 F.3d at 305) (emphasis in original).

### III.

Against that background, the Court will analyze the Motion to Compel and the Motion for Protective Order together, as both motions address Plaintiffs' pending request for two types of documents: first, the "signed Lease Agreements that were executed by any dancer who performed at Cheeks, Private Dancer, Fantasyland West, and House of Babes from May 20, 2014 to the present," and second, what Plaintiffs refer to as "end-of-night sheets," which are "the sheets, slips, or other documents on which were recorded the identities of the dancers who

6

performed at these clubs from May 20, 2014 to the present, the dates and hours when these dancers performed, the work performed by these dancers on such dates, the amounts paid by these dancers on such dates, and the respective amounts received by the clubs and by these dancers on such dates." (ECF No. 371 at PAGEID ## 3810-3811.) Plaintiffs also seek entry, for purposes of inspection, into the Cheeks, House of Babes, and Private Dancer properties. (*Id.* at PAGEID # 3811.) The Court will discuss the requests separately.

A.     **Plaintiffs' Document Requests.**

Despite the competing nature of the Motion to Compel and the Motion for Protective Order, Defendants submit that they already have offered to produce the subject documents, so long as the parties agreed to (or the Court entered) an appropriate protective order to protect personally identifiable information ("PII") which Defendants believe the requested documents contain. (ECF No. 373 at PAGEID ## 4156-4157.) Accordingly, Defendants appear to concede that the requested documents are relevant,[3] and instead merely insist that the PII must be protected under Federal Rule of Civil Procedure 21.

Specifically, Defendants seek to protect the following information from the requested Lease Agreements and end-of-night sheets: "names, addresses, phone numbers, social security numbers, imaged driver's licenses, I9 immigration documents, and any other information allowing identification, location, contact, and solicitation of" the individuals who have worked at Defendants' clubs. (ECF No. 373 at PAGEID # 4160.) Plaintiffs seek this information, however, because they believe it is necessary to allow Plaintiffs to "communicat[e] with any dancer mentioned in any such [document]," and they reject Defendants' proposed protective order because they believe it would "mak[e] it impossible for plaintiffs to communicate with the

---

[3] *See* Footnote 4, *infra*.

7

very [] dancers *whom plaintiffs seek to represent*." (ECF No. 371 at PAGEID ## 3798-3799 (emphasis added).) In response, the Moving Defendants generally argue that the proposed protective order does not "deny Plaintiffs' counsel access to the PII, but only . . . ensure[s] that it is used properly." (ECF No. 393 at PAGEID # 4696.) Defendants further argue that Plaintiffs have failed to develop their own case, and that it would be inappropriate to permit Plaintiffs to use discovery to seek PII for the purposes of soliciting new clients before certification takes place. (*Id.* at PAGEID ## 4699-4707.)

Defendants' arguments are well taken. As a preliminary matter, the Court cannot ignore the fact that this case has been pending for nearly seven-and-a-half years. Yet it is against this background that Plaintiffs now seek to use discovery to communicate with potentially hundreds of individuals "whom plaintiffs seek to represent," notwithstanding that they have had the past several years to identify such individuals. (ECF No. 371 at PAGEID ## 3798-3799.) In making this request, Plaintiffs do not challenge Defendants' representation that preserving the PII "is essential to [the individuals'] jobs, economic security, professional autonomy, and personal lives." (ECF No. 380 at PAGEID ## 4224-4225.) Instead, Plaintiffs merely argue that they are entitled to unfettered access to the PII because they believe Defendants failed to timely object to their request and because they believe Defendants' belated document production remains incomplete. (*See* ECF No. 390.)

But the Court will not countenance Plaintiffs' attempt to strictly impose discovery rules on Defendants to the significant expense of so many non-parties. To be clear, Plaintiffs would not necessarily be entitled to the documents they seek even if the Court agreed that Defendants had failed to timely object to the subject document requests. While Plaintiffs are generally correct that failure to timely object results in waiver, "this is not a bright-line rule" and "courts

will examine the circumstances of each case, including the reason for tardy compliance, prejudice to the opposing party, and the facial propriety of the discovery requests, to determine whether enforcement of the waiver is equitable." *Palombaro v. Emery Fed. Credit Union*, No. 1:15-CV-792, 2017 WL 213071, at *3 (S.D. Ohio Jan. 17, 2017) (citing *Napier v. Cnty. of Washtenaw*, No. 11-CV-13057, 2013 WL 1395870, at *4 (E.D. Mich. Apr. 5, 2013) (quoting *Carfagno v. Jackson Nat'l Life Ins. Co.*, No. 99-118, 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001))).

Here, the Court exercises its discretion and disregards any potential untimeliness regarding Defendants' objections given the clear prejudice to Defendants (and potentially hundreds of non-parties), the facial impropriety of Plaintiffs' requests, and the sheer inadequacy of Plaintiff's Motion to Compel. To this end, the Court must note that in their twenty-one (21) page Motion to Compel, Plaintiffs failed to provide *any* legal support for the propriety of their document requests. (ECF No. 371.) Instead, after a seventeen (17) page discussion of the timeline of communications between the parties, Plaintiffs included a conclusory three (3) page argument which only set forth that Plaintiffs are asking the Court to compel production of the requested documents under Rule 37. (*Id.* at PAGEID ## 3810-3812.) This is wholly insufficient.[4]

---

[4] Despite having the affirmative burden of showing that the information sought is relevant, Plaintiffs are silent to this end. *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) ("In a motion to compel, the movant bears the initial burden of showing that the information is sought is relevant.") (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). This is a low bar, but Plaintiffs must still meet it and under other circumstances the Court would have the authority to deny Plaintiffs' Motion to Compel on this basis alone. *See Smigelski v. Cluley*, No. 2:20-CV-4812, 2022 WL 1158457, at *1 (S.D. Ohio Mar. 17, 2022) ("Showing relevance is a low bar, but Plaintiff's discovery requests must still meet it."). That said, given the overlapping nature of the subject Motions and Defendants' apparent concession that the requested documents are relevant, the Court declines to exercise its discretion to deny Plaintiffs' Motion on this basis alone.

Defendants, on the other hand, filled their Motion for a Protective Order with legal authority which persuades the Court that Plaintiffs' requests are inappropriate. Specifically, Plaintiffs' concession that they primarily intend to use the requested PII to identify (and then contact) hundreds of presently-unknown potential class members is impermissible because "Plaintiffs' counsel cannot use the Federal Rules of Civil Procedure as a device to force a defendant to assist them in finding a plaintiff and establishing subject matter jurisdiction so they can sue defendant." *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 160 (6th Cir. 2010); *see also In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 2:14-MN-00001-DCN, 2014 WL 12622421, at *2 (D.S.C. Nov. 20, 2014) ("[C]ourts often refuse to allow discovery of class members' identities at the pre-certification stage for exactly this reason—out of concern that plaintiffs' attorneys may be seeking such information to *identify* potential clients, rather than to establish the appropriateness of certification.") (emphasis added) (citing cases); *Flanigan v. Am. Fin. Sys. Of Ga., Inc.*, 72 F.R.D. 563 (M.D. Ga. 1976) ("Rule 23 should not be used as a device to enable client solicitation.") (internal citation omitted); *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 283 (S.D.N.Y. 1967) ("The purpose of the pre-trial discovery rules . . . is to enable the parties to prepare for trial with respect to their own bona fide existing claims, ***not to determine whether third parties may have similar claims***.") (emphasis added).

Instead of addressing this case law[5] -- which Defendants provided to Plaintiffs prior to the subject briefing – Plaintiffs rely on authority to support the principle that "courts afford plaintiffs' counsel in FLSA cases even greater latitude to communicate with potential class members or opt-ins at the pre-certification stage." (ECF No. 386 at PAGEID ## 4456-4460.)

---

[5] Plaintiffs do not acknowledge *Gawry*, or attempt to distinguish it.

But this misses the point. Indeed, Defendants have no problem with Plaintiffs' counsel *communicating* with potential clients. (*See* ECF No. 380 at PAGEID # 4219 (Conceding that "Defendants[] have no power to limit, let alone make it impossible for plaintiffs to *communicate* with anyone whom plaintiffs seek to represent.") (emphasis added; internal quotation marks and citation omitted).) For this reason, Plaintiffs' repeated framing of Defendants' protective order as a "communications ban" is improper, as it misconstrues the nature of Defendants' request. Rather than seeking to limit Plaintiffs' ability to communicate with potential clients, Defendants' primary concern is with Plaintiffs' counsel using the discovery process to *find* potential clients. (*See id.* at PAGEID # 4233 ("Plaintiffs have already plainly stated . . . that they *will* misuse dancers' PII . . . to identify potential new clients, rather than to establish the appropriateness of certification.") (emphasis in original; internal quotation marks omitted); *see also* ECF No. 373 at PAGEID # 4167 ("[Plaintiffs] have more than created a record that they will do exactly what the Sixth Circuit and other courts proscribe. The very fact that Plaintiffs have rejected Defendants' offer to give Plaintiffs all the signed, unredacted [Lease Agreements] they seek reveals Plaintiffs' intent and gives up the game.").)

Indeed, what sets this case apart from Plaintiffs' relied-upon authority is the fact that Plaintiffs aren't merely asking to communicate with potential clients: they are asking Defendants to find potential clients for them. But as Defendants note, courts routinely decline to order defendants to identify potential clients for plaintiff's counsel. *See Gawry*, 395 F. App's at 160; *see also Mejias v. Goya Foods, Inc.*, No. 20CV12365BRMJRA, 2022 WL 2666948, at *3 (D.N.J. July 11, 2022) ("[T]he Court declines to impose a burden of production on Goya to allow Plaintiffs to identify potential new clients.") (citing *Dziennik v. Sealift, Inc.*, Civ. A. No. 05-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to

11

allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.")); *see also* 2 McLaughlin on Class Actions § 11:1 (19th ed.) ("In order to avoid converting the class action mechanism into a tool to identify potential new clients, courts ordinarily will not permit putative class counsel to obtain discovery of class members' identities at the precertification stage.") (citations omitted).  This Court will do so again in this instance.

The privacy interests underlying Plaintiffs' request only solidify the Court's decision. First, as Defendants establish in the Motion for Protective Order, Plaintiffs' request seeks PII that is recognized by state and federal law as warranting protection.  (ECF No. 373 at PAGEID ## 4160-4162.)  Defendants also have demonstrated that the subject Lease Agreements contain numerous protections against the disclosure of such PII.  (*See id.* at PAGEID # 4164 n.6; ECF No. 380 at PAGEID ## 4224-4225.)  And even beyond these somewhat standard privacy concerns, Defendants correctly note that this case also implicates unique, heightened privacy interests for those individuals whom Plaintiffs seek to solicit as putative class members:

> Plaintiffs' desired actions pose a clear and present danger of jeopardizing many aspects of [the potential class members'] lives by disrupting relationships with boyfriends, spouses, parents, family, friends, other employers, universities, and the clubs where they work, whom they trusted to have their backs by protecting their privacy and autonomy as enshrined in their contracts and federal and state law. And, **it is not trivial to point out the real personal safety concerns that women have in the digital age with hackers, harassers, stalkers and the like, seeking to exploit weaknesses. Plaintiffs' proposed Court-ordered course of action increases risks of harm from all of these.**
>
> \*\*\*
>
> It is easy to understand the many reasons dancers seek to avoid having their private information compromised, as Plaintiffs wish to do by using their contractually and statutorily-protected personal information to contact and solicit them, without their prior consent, and seeking to add them to a public federal class action lawsuit. **It increases the risk of disruption of their lives from the irrational stigma that**

> **still almost universally follows any unwanted disclosure to husbands, siblings, parents, friends, vast social media communities, other employers, future employers, colleges and universities, and would-be [harassers] and stalkers, to name just a few.**

(ECF No. 373 at PAGEID # 4164 (emphasis added); ECF No. 380 at PAGEID # 4225 (emphasis added).)  Indeed, the Court cannot ignore that it is likely any combination of these potential risks which very well may have kept many of the potential class members from reaching out to participate in this lawsuit for the past seven-plus years in the first place.

And yet Plaintiffs – who purport to represent the individuals whose PII is at stake – overlook these serious privacy risks, curtly dismissing them as "merely a convenient argument that defendants are using to try and keep plaintiffs' counsel and the Court out of their business." (ECF No. 386 at PAGEID # 4467.)  With this response, Plaintiffs' position is clear:  they do not dispute that the information they seek is subject to protection under federal and state law, that the subject Lease Agreements also expressly entitle the information to protection, nor that the disclosure of the requested PII implicates serious personal, professional, and security concerns for the individuals at issue.  Instead, Plaintiffs simply maintain that the PII should be disclosed because the individuals at issue "underst[ood] that [their] personal information would be subject to surrender through legal process."  (*Id.* at PAGEID ## 4438-4439.)

In making this argument, however, Plaintiffs not only misconstrue the language of the Lease Agreements at issue, but they also appear to assume that they are entitled to the PII simply because the request arises during the pendency of a legal action.  Plaintiffs disregard that the legal process requires them to demonstrate why they are entitled to the information they seek; the fact that they seek the information is not enough – especially given the serious privacy issues at issue in this instance.  While Plaintiffs have demonstrated why they *want* the PII, and why they

believe Defendants' proposed protective order is unreasonable, they have not met their threshold burden of demonstrating why they are entitled to the PII in the first place.

Because Plaintiffs have failed to establish not only that the PII is relevant, but also that they are entitled to it, the Court will not compel the production of the PII. But reaching this conclusion does not also require the Court to grant Defendants' request for a protection order. To this end, it is the Court's understanding that Plaintiff's already have all of the information from the subject Lease Agreements and end-of-night sheets that is not PII. (*See* ECF No. 380 at PAGEID # 4217 ("Plaintiffs have in fact received complete copies of the applicable Agreements without the entertainers' PII.").) Accordingly, the Court need not issue any additional protective order regarding outstanding discovery as it relates to the subject Lease Agreements and end-of-night sheets.[6]

Instead, notwithstanding the Court's disapproval of Plaintiffs' characterization of the proposed Protective Order as a "communications ban," the Court believes that the best course of action is to maintain the status quo given Plaintiffs' concern. As it stands, Plaintiffs have all of the non-PII information that the Lease Agreements and end-of-night sheets contain, and Plaintiffs are still free to communicate with any potential class member without having to worry about violating any protective order. On the other side, Defendants are not presently obligated to turn over any Lease Agreements or end-of-night sheets, so it is not clear to the Court that a protective order is needed.

Accordingly, Defendants' Motion for Protective Order is **DENIED WITHOUT PREJUDICE**. The parties are **ADVISED** that they may, of course, enter into a stipulated

---

[6] If the Court's understanding is not accurate, the parties are **DIRECTED** to meet and confer to discuss the production of the requested documents in a redacted format consistent with this Opinion and Order.

protective order if Plaintiffs still desire the PII within the subject Lease Agreements and end-of-night sheets. But the Court cannot allow Plaintiffs to use the discovery process as a device to force Defendants to assist them in finding any putative class members, whom Plaintiffs have had over seven years to identify and contact on their own. *Gawry*, 395 F. App'x at 160.

**B.      Property Inspection Requests.**

The Court must also resolve Plaintiffs' requests to enter, for purposes of inspection, the Cheeks, House of Babes, and Private Dancer properties. As a preliminary matter, it appears to the Court that Plaintiffs' request to enter the Private Dancer property for purposes of inspection has been resolved. Specifically, in response to the Motion to Compel, the Private Dancer Defendants state that they "have not and do not object to Plaintiff[s'] entering into the property of Private Dancer so long as it occurs during non-business hours so as to not interrupt business." (ECF No. 382 at PAGEID # 4368.) Accordingly, in the absence of any opposition, the Motion to Compel is **GRANTED IN PART** insofar as Plaintiffs shall be provided access to the Private Dancer property under terms agreed to by the Private Dancer Defendants.

As for the Cheeks and House of Babes properties, in the absence of any agreement between the parties Plaintiffs' request is similarly deficient, as Plaintiffs have provided no legal basis for their inspection request. Indeed, Plaintiffs' *entire* "legal argument" in support of this request reads as follows: "Plaintiffs ask the Court to order these defendants to permit plaintiffs entry under Rules 34 and 37(a)(3)(B), pursuant to plaintiffs' November 1 requests." (ECF No. 371 at PAGEID # 3811.) This is a demand, not a legal argument. In the absence of any substantive analysis or legal authority to support the demand, Plaintiffs have failed to meet their burden. Accordingly, the Motion to Compel is **DENIED** as to Plaintiffs' requests to enter the Cheeks and House of Babes properties.

**C.**     **Sanctions.**

In their Motion to Compel, Plaintiffs also suggest the potential for sanctions.  (*See* ECF No. 371 at PAGEID ## 3811-3812.)  Plaintiffs once again fail, however, to provide any legal argument in support of this request.  (*Id.*)  Accordingly, Plaintiffs' request for sanctions is **DENIED WITHOUT PREJUDICE**.  Plaintiffs are **ADVISED** that should they seek sanctions in the future, any such request must be properly supported.

## IV.

Accordingly, for the reasons set forth above, Plaintiffs' Motion to Compel (ECF No. 371) is **GRANTED IN PART AND DENIED IN PART** and Defendants' Motion for Protective Order (ECF No. 373) is **DENIED WITHOUT PREJUDICE**.  Additionally, the Motion to Permit Filing in Excess of Page Limits (ECF No. 379) is **GRANTED**.

**IT IS SO ORDERED.**

**Date: March 20, 2023**            */s/ Elizabeth A. Preston Deavers*            
                            **ELIZABETH A. PRESTON DEAVERS**
                            **UNITED STATES MAGISTRATE JUDGE**