IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jessica Hogan, et al

      Plaintiffs

Vs.

Cleveland Ave Restaurant, Inc., et al

      Defendants

Case No. 2:15-cv-2883

Hon. Judge  Algenon L Marbley

Magistrate Judge Elizabeth P. Deavers

**DEFENDANTS CLEVELAND AVE RESTAURANT, INC. AND LAME SHARRAK'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND
RE-ENGAGE THE SERVICES OF THE SPECIAL MASTER**

NOW COME Defendants, Cleveland Ave Restaurant Inc. and Lame Michael Sharrak (collectively, "Defendants"), by and through the undersigned counsel, and state as follows in response to Plaintiff's Motion to Enforce the Settlement Agreement and Re-Engage the Services of the Special Master.

In the present matter, the Settlement Agreement at issue was entered into on or about August 20, 2019.[1]  At the time the Defendants entered into the Settlement Agreement, Cleveland Ave Restaurant, Inc. was operating as "Sirens" and generating income sufficient to cover the cost of the Eight Thousand Dollar ($8,000.00) monthly settlement payments.  However, shortly thereafter, the entire world was turned upside

---

[1] See Defendants' Exhibit A – August 20, 2019 Settlement Agreement.

down by the Covid-19 pandemic in March 2020.  At that time, unprecedented actions were taken by State, Federal and local governments to try to protect citizens from Covid-19, including a mandatory shutdown of operations of all adult entertainment establishments such as Sirens.  Unfortunately, Defendants have never recovered from the devastating impact Covid-19 had upon them and their business.

Following the mandatory shutdown in March 2020, Sirens has never resumed operations.  Defendants have worked diligently to reopen Sirens (or its successor) and anticipate doing so in November 2023.  When operations resume, Defendants will be able to make the required Eight Thousand Dollar ($8,000.00) monthly settlement payments without issue or delay.  As such, Defendants' current cashflow issues causing untimely settlement payments are a short term issue and unworthy of the hassle and expense incurred to reappoint the Special Master.

In the interim, Defendant has borrowed substantial sums of money to try to keep current on the monthly settlement payments.  To date, Defendants have paid approximately Two Hundred Sixty Four Thousand Dollars ($264.000.00) toward the Six Hundred Thousand Dollar ($600,000.00) settlement.  When Defendants fell behind on the settlement payments, funds were borrowed in an attempt to bring the account current, sometimes at interest rates that bordered on usury.  In fact, Defendants even instructed the undersigned counsel to inquire about making payments to the Claims Administrator via credit cards.  Unfortunately, that attempted payment was unsuccessful because the Claims Administrator does not accept credit card payments.[2]

---

[2] See Defendant's Exhibit B – August 29, 2023 email between Joshua J. Nolan and Jeffrey Johnson, CAC Services Group.

The actions outlined above make it clear that Defendants have not thumbed their proverbial nose at this Court or its Orders. Defendants have not willfully disregarded their obligations or intentionally disrespected this Court or the parties to this litigation. Instead, Defendants have incurred even more debt, including taking an additional mortgage on Mr. Sharrak's home, and paid outrageous interest rates in an attempt to get and remain current on the monthly settlement payments. Nonetheless, Defendants have continued to operate in good faith, paying Forty Two Thousand Dollars ($42,000.00) toward the settlement on August 8, 2023.[3]

Defendants have attempted to resolve this matter with Plaintiffs' counsel by offering to bring the account current, pay some portion of Plaintiffs' attorney fees related to the Motion to Enforce Settlement, and entering into a Consent Judgment Entry reappointing the Special Master in the event of any further breach of the payment obligations that Plaintiffs' counsel would have the right to file in the event of such a breach. Plaintiffs' counsel has declined that proposal.[4] However, despite Plaintiffs' counsel's reluctance, Defendants would prefer that their limited financial resources be used to pay settlement funds to Plaintiffs rather than be applied toward attorney fees to defend them and/or fees to the Special Master.

Defendants reluctantly consent to the re-appointment of John Camillus as Special Master herein. Because Mr. Camillus is already familiar with the case, Defendants believe that he would be able to complete his tasks herein in a more cost effective manner than any other potential Special Master.

---

[3] See Defendant's Exhibit C – August 8, 2023 email from Nancy Johnson, CAC Services Group.
[4] See Defendant's Exhibit D – August 18, 2023 email from Joshua J. Nolan to Paul DeMarco and August 22, 2023 response from Paul Demarco.

WHEREFORE, while Defendants reluctantly consent to the reappointment of Mr. Camillus as Special Master, Defendants respectfully request that this honorable Court delay the appointment of Mr. Camillus until at least September 20, 2023 to allow Defendants to bring their settlement payments current, and as such, render moot Plaintiff's Motion to Enforce the Settlement Agreement and Re-Engage the Services of the Special Master.

Respectfully submitted,

/s/ Joshua J. Nolan
Joshua J. Nolan                    (#0078348)
NOLAN LAW, LLC
405 Madison Ave., Suite 1000
Toledo, OH 43604
Telephone:    (419) 242-1400
Facsimile:    (877) 431-0724
Email:        jnolan@nolanlawllc.com
*Attorney for Defendants, Lame Michael Sharrak and Cleveland Ave Restaurant, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this Notice of Appearance / Memorandum was filed electronically on August 30, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Joshua J. Nolan
Joshua J. Nolan



In the United States District Court
for the Southern District of Ohio
Eastern Division

Jessica Hogan, *et al.*,

    *On behalf of herself and those
    similarly situated*,

        Plaintiff,

    v.

Cleveland Ave Restaurant, Inc. (d/b/a
Sirens), *et al.*,

        Defendants.

Case No. 2:15-cv-2883

Judge Algenon Marbley

Magistrate Judge Elizabeth Preston
Deavers

---

## Settlement Agreement

---

This Settlement Agreement (the "Agreement") is entered into by and between Plaintiff Jessica Hogan and DeJha Valentine, on behalf of themselves and all similarly situated individuals identified in Section 1(B) below ("Plaintiffs"), and, on the other hand, Defendants Cleveland Ave Restaurant, Inc. d/b/a Sirens, Cleveland Avenue Café, Inc., d/b/a Sirens, and their successors and assigns (collectively "Sirens")[1]; Chad Sullivan ("Sullivan"); Francis Sharrak ("F. Sharrak"); Michael Sharrak ("M. Sharrak"); Dominick Alkammo ("Alkammo"); and Jay Nelson ("Nelson") (all collectively "Defendants"). Defendants and Plaintiffs will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

    A. On October 6, 2015, Plaintiff initiated *Hogan v. Cleveland Ave Restaurant, Inc. et al.* (the "Lawsuit"), currently pending in the United States District Court, Southern District of Ohio (Eastern Division), case number 2:15-cv-2883.

    B. The parties seek to resolve all claims in the Lawsuit. For purposes of this Agreement, the Parties have agreed to the following two settlement subclasses for purposes of separately compensating individuals belonging to these subclasses:

---

[1] Sirens is an exotic Entertainer club that does business on 6190 Cleveland Ave., Columbus, OH 43231.

All Entertainers who worked for Defendants from October 6, 2012 to February 21, 2019, and who were not paid at least minimum wage for all hours worked (the "Entertainers" or the "Entertainer Subclass").

All bartenders who worked for Defendants from October 6, 2012 to December 3, 2015 (the "Bartenders" or the "Bartender Subclass").

An individual may be a member of both the Entertainer Subclass and the Bartender Subclass.

The parties further agree that the members of the Entertainer Subclass and the Bartender Subclass, (together, the "Class," and all qualified members therein, the "Class Members") are too numerous for joinder to be practicable; that there is commonality among the claims of the Class; that the claims asserted by Plaintiffs Hogan and Valentine are typical of those of other class members; that Plaintiffs Hogan and Valentine can adequately represent the other members of the Class and thus should be appointed to serve as Class Representatives; that counsel for Plaintiffs Hogan and Valentine, Biller and Kimble, LLC, Markovits, Stock & DeMarco, LLC, and Law Offices of Rachel Bloomekatz, LLC ("Class Counsel") can adequately represent the interests of the Class and thus should be appointed to serve as Class Counsel; and that this case qualifies for class certification under Fed.R.Civ.P. 23(b)(1)(A), 23(b)(2), and/or 23(b)(3).

C. The purpose of this Agreement is to conclusively and finally resolve all of the Plaintiffs' and the Class Members' claims against Defendants that were raised, as part of the Lawsuit and occurred between October 6, 2012 and February 21, 2019 (the "Entertainers only Class Period") and between October 6, 2012 and December 3, 2015 (the "Bartenders only Class Period."). This Agreement also finally resolves all outstanding sanction awards, costs, attorneys' fees, and fines that have been raised or awarded in the Lawsuit.

D. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void.

E. In entering into this Agreement, Defendants do not admit liability for any of the claims raised in the Lawsuit. Nonetheless, without admitting or conceding liability, wrongdoing or damages, Defendants have agreed to settle the Lawsuit, on terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the litigation.

2. **Opportunity to Negotiate, Consider, and Consult with Counsel**

2

A. The terms of this Agreement are the product of a lengthy, arms-length negotiation between the Parties. These negotiations included three separate full-day mediations with the Honorable Magistrate Judge Kimberly A. Jolson.

B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not received or been made any promises, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

3.  **Settlement Fund**

A. Defendants Sirens, F. Sharrak, M. Sharrak, and Nelson agree to pay a total of $600,000 (the "Settlement Fund") to resolve Plaintiffs' and the Class Members' claims against Defendants that were raised as part of the Lawsuit and occurred during the Class Periods.

B. The Settlement Fund is inclusive of any and all awards for attorney fees for Class Counsel, costs, expenses, fines, and sanctions.

C. To the extent that the Court awards attorney fees, litigation expense reimbursement, and service awards, the amounts allocated to Class Members will be reduced by a prorated amount based on each Class Members' awards.

D. Because of the shorter opt-in period for the Bartenders' Class, the Parties agree that the Court may approve this Agreement as it relates to Bartenders separately from any provisions relating to Entertainers and vice versa. The failure of the Court to approve one aspect of the Agreement (i.e., the Bartender settlement or the Entertainer settlement) will not cause the remaining section to fail or be unenforceable.

4.  **Fund for Payment of Claims of the Bartender Settlement Subclass**

A. As part of a motion to preliminarily approve the settlement outlined herein (the "Settlement"), the Parties will jointly move for certification of an opt-in collective action subclass of Bartenders who worked at Sirens at any time from October 6, 2012 until December 3, 2015.

B. Within 21 days of the Court's preliminary approval of this Settlement, Defendants will provide Plaintiffs with the most up-to-date contact information for each Bartender, including mailing address and email address, if available.

C. Within 10 days of receiving the contact information, Class Counsel will transmit to the Bartender Subclass members a notice and claim form in the form attached as

Exhibit 1. Class Counsel will transmit the notice and claim form by both regular mail, and, if available, email. The email will be in the form of Exhibit 2 and contain a link to an electronic version of the notice and claim form that may be electronically signed.

D. Bartenders will have 90 days to sign and return the claim form. This period will be referred to as the "Bartender Opt-in Period."

E. Within 30 days of the conclusion of the Bartender Opt-in Period, Class Counsel will provide to Defendants a list of all bartenders who have filed claim forms.

F. Within 45 days of the conclusion of the Bartender Opt-in Period, Class Counsel will, if they deem it to be appropriate and warranted, move for final approval of the Settlement Agreement as it relates to Bartenders. Class Counsel, at their option, may also move for attorney fees, reimbursement of litigation expenses, and service awards from the Bartender Subclass's portion of the Settlement Agreement.

G. Within 14 days of the Court's final approval of this Agreement as it relates to Bartenders, Defendants will pay each bartender that submitted a valid claim form 1.5 times the difference between full Ohio minimum wage and the tipped minimum wage they were paid for each hour worked from October 6, 2012 until December 3, 2015, less any prorated portion of fees, expenses, and service awards.

H. Defendants will pay Bartenders by two separate checks to account for unpaid wages and additional statutory damages. One-third of the payment will be for wages, subject to normal employer withholdings. Two-thirds of the payment will be for damages, for which Defendants will issue a Form 1099.

5. **Fund for Payment of Claims of the Entertainer Settlement Subclass**

A. As part of a motion to preliminarily approve the Settlement, the Parties will jointly move for certification of an opt-in collective action subclass of Entertainers who worked at Sirens at any time from October 6, 2012 until February 21, 2019.

B. Within 21 days of the Court's preliminary approval, Defendants will provide Plaintiffs with the most up-to-date contact information for each Entertainer, including mailing address and email address, if available to Defendants.

C. Within 45 days of receiving the contact information, Class Counsel will provide Notice and Claim Forms to the Entertainers in the following manners:

i. First, to those Entertainers for whom Defendants have mailing addresses or email addresses, Class Counsel will transmit a Notice and Claim Form in the form attached as Exhibit 3. Appended to the Notice shall be an Entertainer Claim Form in a form agreed to by the parties or, in the absence of their agreement, in a form approved by the Court, which in either event shall

4

incorporate measures to protect Class Members' privacy and foster their participation in the Settlement. Class Counsel will transmit the Notice and Claim Form by both regular mail, and, if available, email. The email shall be in the form of Exhibit 4 and contain a link to an electronic version of the Notice that may be electronically signed.

ii. Second, Class Counsel will establish a website www.sirenssettlement.com. This website will include a copy of the Notice and Claim Form. Class members will be able to complete the claim form by electronic signature. Class Counsel may provide links to this website on their own webpages, blogs, and/or social media pages.

iii. Third, Class Counsel will create a Facebook page that contains links to the Notice and Claim Form. Class Counsel will "promote" either the page or a post on the page to individuals in Ohio who have expressed an interest in Sirens. Class Counsel will set the ad spend to be $3 per day for the duration of the Entertainer Opt-in Period (defined below).

D. Payment for all of the above forms of notice, shall be made from the Settlement Fund, and shall not serve to increase the maximum amount, or be separate from, the Settlement Fund. Defendants will pay for the above forms of notice as those expenses are incurred.

E. Upon mailing the above notices, publishing the website, and establishing the Facebook page, Entertainer Subclass members will have 365 days in which to file a claim (the "Entertainer Opt-in Period").

F. Entertainers who wish to object to this Agreement must file a written objection with the Court and serve copies of the filing on Class Counsel and Defendants' counsel no later than the end of the Entertainer Opt-in Period. Objections will be deemed timely if they are postmarked on or before that date. The objection must include the objecting party's full name, address, and telephone number. The objection will state the objection to the settlement, the basis for the objection, and all documents that support the objection. Entertainer Class members who fail to make objections in the manner specified above will be deemed to have waived their ability to object to the Agreement and, therefore, will be foreclosed from making any objection (whether by subsequent objection, intervention, appeal, or otherwise) to the Agreement. Entertainer Class members who have not filed and served timely written objections may not speak at the Final Approval Hearing unless the Court otherwise orders. If Class Counsel receives objections, Class Counsel will promptly provide Defendants' counsel with notice of any such objections received.

G. The Parties agree to and will submit to the Court for its approval a protective order in the form of Exhibit 5, which will prohibit Defendants' disclosure of Entertainer Class Members' identities for any purpose other than this lawsuit.

H. Class Counsel will provide Defendants with a list of Entertainer Subclass members who have filed claim forms.

I. Defendants will have 30 days from each such submission of Entertainer Subclass members to object to the inclusion of any particular Entertainer, if Defendants believe that the Entertainer never worked at Sirens or did not work there for more than one week. The Parties will work together to resolve any objections, but, if they are unable to do so, they will submit the issue to the Court for a determination. The Court may decide these issues on briefs or conduct a hearing, at the Court's discretion.

J. Within 30 days of the conclusion of the Entertainer Opt-in Period, Class Counsel will provide to Defendants a list of all Entertainers who have filed claim forms and their alleged weeks worked.

K. Within 45 days of the conclusion of the Entertainer Opt-in Period, Class Counsel will, if they deem it to be appropriate and warranted, move for final approval of the Settlement Agreement as it relates to Entertainers. Class Counsel, at their option, may also move for their attorney fees, reimbursement of litigation expenses, and service awards for the Class Representatives from the Entertainer portion of the Settlement Agreement.

L. Each Entertainer who files a valid claim form will be entitled to a portion of the remaining Settlement Fund after payment of attorney fees, litigation expenses, incentive awards, and the Bartender settlement portion. Each Entertainer's portion will be calculated as a prorated amount based on her alleged weeks worked, however no Entertainer will be entitled to less than $85. The percentage of the remaining Settlement Fund that each Entertainer is due will be referred to as the "Entertainer's Percentage." Payments will be disbursed as follows to the Entertainers who have filed valid claim forms:

    i. Defendants shall delegate to the Entertainer Claims Administrator, whose appointment and compensation shall be approved by the Court, the responsibility for screening and making payments to members of the Entertainer subclass. Subject to approval by the Court, up to $15,000 from the Settlement Fund may be used to pay the Entertainer Claims Administrator.

    ii. Once a Entertainer submits a claim form and either (1) Defendants have not objected to the Entertainer's inclusion, (2) the parties agree that the Entertainer should be included, or (3) the Court determines that the Entertainer should be included, within 10 days of the determination, the Entertainer Claims Administrator will mail a check to the Entertainer for $85 (the "Submission Payment"), along with a letter in the form of Exhibit 6 informing the Entertainer that the Submission Payment is an advance on the Entertainer's award and not a substitute for it and that to receive future

payments it is necessary for the Entertainer to maintain a current address with the Entertainer Claims Administrator.

iii. Within 30 days of the Effective Date,[2] the Entertainer Claims Administrator will distribute $75,000 (minus all amounts from the Settlement Fund already paid) among the Entertainers who have made valid claims based on each Entertainer's Percentage.

iv. Second, starting one month after the Effective Date and for every month thereafter until a total of $600,000 (minus all amounts from the Settlement Fund already paid) has been deposited, Defendants will deposit $8,000 in an escrow account to cover remaining payments to Entertainers, attorney fees, and litigation expenses, if any, awarded by the Court. Class Counsel will have the ability to monitor the escrow account to ensure payments are being made to and from the account.

v. Every six months, the Entertainer Claims Administrator will distribute payments to Entertainers based on each Entertainer's Percentage. The Entertainer Claims Administrator shall pay Entertainers by two separate checks to account for unpaid wages and additional statutory damages. One-third of each payment will be for wages, subject to normal employer withholdings. Two-thirds of the payment will be for damages, for which Defendants will issue a Form 1099.

vi. At the same time that the Entertainer Claims Administrator distributes payments to Entertainers, the Entertainer Claims Administrator will distribute a payment to Class Counsel for attorney fees and litigation expenses, if any, as ordered by the Court.

vii. Defendants will continue to make monthly deposits and the Entertainer Claims Administrator will continue to make biannual payments to Entertainers until the entire Settlement Fund is exhausted.

M. Defendants Sirens, F. Sharrak, M. Sharrak, and Nelson will be jointly and severally personally liable for the full amount. Defendants Sullivan and Alkammo will not be personally liable for payments from the Settlement Fund.

N. No portion of the Settlement Fund will revert to Defendants.

O. There shall be no penalty for early payments.

P. The Court shall have ultimate discretion over the schedule and amount of the payments distributed hereunder.

---

[2] The Effective Date is the date of final approval of this Agreement by the Court provided that there is no appeal. If there is an appeal, the Effective Date is the date Court approval of this Agreement is affirmed.

7

6. **Specific Payments to the Named Plaintiffs**

   A. Defendants will pay to Plaintiff Hogan $15,000 as a service and incentive award, subject to Court approval. This amount will come from the Settlement Fund and will count toward the maximum amount of the Settlement. This service award will be payable by separate check and will considered as Form 1099 income.

   B. In addition, Defendants will pay to Plaintiff Valentine $10,000 as a service and incentive award, subject to Court approval. This amount will come from the Settlement Fund and will count toward the maximum amount of the Settlement. The service award will be payable by separate check and will considered as Form 1099 income.

7. **Attorneys' Fees and Expenses**

   A. Defendants agree not to object to Class Counsel's application for an attorneys' fee award equal to one-third the Settlement Fund.

   B. In addition to the fees above, Defendants agree to pay reasonable expenses from the Settlement Fund, if any, which are ordered by the Court. Any such fees and/or expenses will not increase the maximum amount of the Settlement Fund.

   C. This Agreement is not contingent on the Court approving the amount of attorneys' fees and expenses noted above. In the event that the Court does not approve the above amount of attorneys' fees and expenses or reduces that amount, that finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Class Counsel retain their right to appeal any decision by the Court regarding the attorneys' fees and expenses and such appeal will not be deemed an appeal of this Agreement or the Settlement. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Class Counsel's application for attorneys' fees and expenses.

8. **Release**

   A. All Class Members who file a Claim Form will be bound by the following release:

   I hereby release and discharge Defendants and their insurers, agents, servants, parents, subsidiaries, affiliates, divisions, members, trustees, partners, officers, directors, employees, attorneys, successors, predecessors, administrators, and employee benefit plans, both individually and in their business capacities, from any and all claims, demands, rights, liabilities, and causes of action, whether known or unknown, that were asserted in the Lawsuit regarding claims under the Fair Labor Standards Act ("FLSA"), any state wage and hour laws, and the tort of spoliation of

8

evidence or that could have been asserted in the Lawsuit based upon the same factual allegations.

B. All Class Members who wish to receive funds from the Settlement Fund under this Agreement must execute and submit a Claim Form in the form of attached Exhibit 1 or attached Exhibit 3 (recognizing that some may execute both). Also, by executing and submitting such Claim Form(s), each Class Member submits to the jurisdiction of the United States District Court, Southern District of Ohio for purposes of this litigation and enforcement of the Agreement.

## 9.    Classwide Non-Monetary Relief

A. Beginning 14 days after preliminary approval of the settlement, Defendants will allow Entertainers at Sirens to choose their classification as employees or independent contractors or Defendants may choose to classify all Entertainers as employees. If a Entertainer chooses to be classified as an employee at Sirens, Defendants will comply with all state and federal employee wage and hour laws, including payment of minimum wage, overtime, and relevant taxes. Defendants will not attempt to persuade Entertainers to choose to be an independent contractor rather than an employee.

B. Sirens will distribute to Entertainers a letter describing the change, which letter shall be in the form of Exhibit 7. Defendants will make copies of the letter available upon request and in an area where they will be seen by and can be taken by Entertainers.

C. In addition, in the event any of the Class Counsel in this case is granted an injunction against another Ohio Sexually Oriented Business, as that term is defined in O.R.C. Section 2907.40, regarding the use or promotion of the "entertainer tenant system," or in the event any of the Class Counsel obtain comparable, non-monetary relief via a settlement with another Ohio exotic dance club, Defendants Sirens, Nelson, F. Sharrak, and M. Sharrak will be required to comply with the terms of such injunction or settlement beginning no more than 24 months after that injunction is issued or that settlement is effective.

D. Defendants agree that nothing in this Agreement authorizes them to classify Entertainers as employees, tenants, independent contractors, or anything other than employees, and, if Defendants choose to do so, Defendants do so at their own legal peril and risk.

E. Upon preliminary approval, to the extent that either Sullivan or Alkammo possess any ownership interest in Sexually Oriented Business, as that term is defined in O.R.C. Section 2907.40, they are subject to an injunction that prohibits the following for the next 12 months:

9

i.   Using the entertainer tenant system, a lease agreement, or any variant thereof under which entertainers are classified as lessees, tenants, licensees, or anything other than employees;

ii.  Disseminate, promote, or encourage clubs' use of the entertainer tenant system, the lease agreement or any variant thereof under which entertainers are classified as lessees, tenants, or anything other than employees;

iii. Collude with one another or with other Sexually Oriented Businesses, the Sexually Oriented Business' agents or the Sexually Oriented Business' employees to classify entertainers as other than employees or to deprive entertainers of their rightful wages under the FLSA and equivalent state law protections; and

iv.  "Blacklist," retaliate against, or attempt to intimidate, or advocate "blacklisting," retaliating against, or intimidating any entertainer for joining this case or for otherwise asserting his or her right to fair wages.

## 10. Enforcement

A. If Defendants Sirens, Francis Sharrak and/or Michael Sharrak miss a payment outlined above (including the monthly escrow payments or the biannual class payments), any plaintiff, class member, or Class Counsel may notify Defendants of the breach. Defendants will have up to 30 days to cure the breach.

B. If any of the following occurs: (1) Defendants Sirens, Francis Sharrak and/or Michael Sharrak fail to cure a breach within 30 days, (2) Defendants Sirens, Francis Sharrak and/or Michael Sharrak are late in making payments in two consecutive months, or (3) Class Counsel has notified Defendants of a breach three times, and Defendants Sirens, Francis Sharrak and/or Michael Sharrak miss or are late making a fourth payment; then Class Counsel may request that the Court appoint a special master ("Special Master"), as described below.

For any one of the causes described above, Class Counsel may move the Court to appoint a Special Master to ensure Defendants Sirens, Francis Sharrak and/or Michael Sharrak make all of their required payments under this Agreement. The Special Master will have wide discretion to oversee Defendants Sirens, Francis Sharrak and/or Michael Sharrak's income and assets to ensure the required payments are met. The Court may empower the Special Master with any authority that the Court deems fit to accomplish the goal of ensuring Defendants Sirens, Francis Sharrak and/or Michael Sharrak make all required payments under this Agreement. The Parties may each suggest up to three candidates to serve as a Special Master, but the Court has discretion to pick any person that the Court deems fit to serve. Defendants will be responsible for the costs associated with the Special Master, to be paid separately and in addition to the Settlement Fund.

10

11. **Additional Terms**

A. By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiffs Hogan or Valentine or to the Classes, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action treatment, other than for purposes of settlement.

B. Neither Defendants nor their legal counsel shall discuss with any Class Member any of the terms of this Settlement or any Class Member's participation in it. Defendants shall refer any inquiry regarding this Settlement from any Entertainer to the Entertainer Claims Administrator and from any Bartender to the Class Counsel.

C. No modifications or amendments to any of the Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties.

D. This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable, the provision(s) will be treated as though it (they) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance.

E. The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

F. The Parties agree to a separate protocol for confirming Entertainers' claims in the form of Exhibit 8. The parties will jointly move to file the protocol under seal.

G. The Court will have continuing jurisdiction over this case until Defendants have made all payments outlined above.

H. Ohio law governs this Agreement's validity, construction, and enforceability. This Court shall retain jurisdiction to enforce the terms of this Agreement.

I. The Agreement may be executed by facsimile in multiple counterparts, each of which will be deemed to be an original, but all of which together constitute one instrument.

J. The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including, but not limited to motions to the Court for approval of

11

the Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

K. If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

**12.  Dismissal of Lawsuit with Prejudice**

A. Upon conclusion of the Court's final approval of the Settlement and completion of the settlement procedure outlined herein, the Parties stipulate that the claims against Defendant will be dismissed with prejudice.

The undersigned hereby acknowledge and agree to all terms, conditions, and provisions of the above Settlement Agreement.

_____
Jessica Hogan

_____
Date

_____
DeJha Valentine

_____
Date

On behalf of
Cleveland Ave Inc. d/b/a Sirens

_____
Date

Michael Sharrak

8/20/19
Date

Francis Sharrak

8/20/19
Date

Jay Nelson

8-20-19
Date

12

Dominic Alkammo

8-20-19
Date

Chad Sullivan

8-20-19
Date

## Re: Hogan v Sirens -- correction to agreement

**DEFENDANT'S EXHIBIT**

B

Nancy Johnson <njohnson@cacservicesgroup.com>

To:Paul De Marco <demarcoworld@yahoo.com>;Joshua Nolan <jnolan@nolanlawllc.com>
Cc:Jeff Johnson <jjohnson@cacservicesgroup.com>;Courtney Johnson
<cjohnson@cacservicesgroup.com>;Andy Biller <abiller@billerkimble.com>;Andrew Kimble
<akimble@billerkimble.com>;Jess Long <jlong@billerkimble.com>;Ashley Paver
<apaver@msdlegal.com>

Hi Everyone,

This afternoon I received the $42,000.00 wire transfer into the Hogan v Sirens QSF.

Thanks,
Nancy

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

## RE: Hogan v Sirens -- correction to agreement



Jeff Johnson <jjohnson@cacservicesgroup.com>

To:Joshua Nolan <jnolan@nolanlawllc.com>

Hi Josh,

Unfortunately, we do not have a way to receive the payment via credit card.  I checked with the bank to see if they could accommodate the request, but they cannot.

Best Regards,

Jeffrey D. Johnson |

Office (952) 224-2199 | jjohnson@cacservicesgroup.com

6420 Flying Cloud Dr Ste 101 | Eden Prairie, MN  55344



**From:** Joshua Nolan <jnolan@nolanlawllc.com>
**Sent:** Tuesday, August 29, 2023 11:49 AM
**To:** Jeff Johnson <jjohnson@cacservicesgroup.com>
**Subject:** Re: Hogan v Sirens -- correction to agreement

Mr. Johnson,

My client wants to pay the $38,000 that is due on this matter.  However, they want to know if they can make that payment via credit card.  I understand that there will be processing fees involved, which my client agrees to pay as well.

Please advise ASAP as I am required to file a response with the Court by tomorrow.

Joshua J. Nolan

NOLAN LAW, LLC

405 Madison Ave., Suite 1000

Toledo, OH 43604

Telephone:  (419) 242-1400

Facsimile:  (877) 431-0724

Email:  jnolan@nolanlawllc.com

Re: Hogan v. Sirens - Settlement Proposal

Paul De Marco <demarcoworld@yahoo.com>



To:Joshua Nolan <jnolan@nolanlawllc.com>

Hi Josh,

Respectfully, my clients must decline your clients' proposal as outlined in your August 18 email. We believe your clients' record of untimeliness in making settlement payments has made the Special Master's ongoing involvement necessary, which is why that provision was included in our settlement in the first place. We also do not believe a belated payment at this point would obviate the need for the Special Master's involvement given that the established pattern of untimeliness certainly makes the current violation one that is capable of repetition.

Thanks for your cooperation, Josh. Please let me know if you need additional time to file your response to our motion. We would be happy to accommodate you as a courtesy.

Paul

On Friday, August 18, 2023 at 11:29:01 AM EDT, Joshua Nolan <jnolan@nolanlawllc.com> wrote:

Paul,

As we discussed, my clients would like to avoid the expense associated with the Special Master. They would prefer that those funds be applied toward the settlement, which I believe is now more than 50% paid off. If you are willing to withdraw your Motion to Enforce Settlement, my clients are borrowing money to bring the account current and will pay $38,000 by August 25, 2023. They would also be willing to pay some amount toward your attorney fees for the time spent drafting your Motion to Enforce Settlement.

As further enticement and showing their good faith, my client will sign a Consent Judgment Entry allowing the reappointment of the Special Master if my client fails to make the remaining payments in a timely manner. You will retain possession of that Consent Judgment Entry and will have the right to file it if they fail to make the remaining settlement payments as required.

My response to your Motion to Enforce Settlement is due on Wednesday, 8/23/23. Please advise if this proposal is acceptable prior to that date.

Joshua J. Nolan

NOLAN LAW, LLC