IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA HOGAN, *et al.*,                      :
                                              :
          Plaintiffs,                         :     Case No. 2:15-cv-2883
                                              :
      v.                                      :     Chief Judge Algenon L. Marbley
                                              :
CLEVELAND AVE RESTAURANT, INC.                :     Magistrate Judge Elizabeth P. Deavers
d/b/a SIRENS, *et al.*,                       :
                                              :
          Defendants.                         :

## OPINION & ORDER

This matter is before the Court on Plaintiffs' Motion to Certify as a Collective Action, a Rule 23 Class Action, and to Send Notice. (ECF No. 396). This case involves a labor dispute between two individuals (and others similarly situated) who formerly worked as exotic dancers and a set of adult entertainment clubs and associated organizations and individuals. Plaintiffs' Motion seeks an order from this Court approving the dissemination of court-facilitated notice under the Fair Labor Standards Act ("FLSA") and certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure and Article II, Section 34a of the Ohio Constitution. For the following reasons, Plaintiffs' Motion is **GRANTED**.

### I.      BACKGROUND

#### A.  Factual Background

Plaintiffs in this matter are Jessica Hogan and Dejha Valentine, who were employed as exotic dancers for various Ohio adult entertainment clubs. Defendants are comprised of six Ohio-based adult entertainment clubs, their owners and managers (collectively, the "club Defendants"), two strip club trade associations, and Greg Flaig. (ECF No. 271 ¶ 1). Specifically, the adult

1

entertainment clubs are the following: Cheeks, Top Hat, Private Dancer, Centerfold, House of Babes, Sirens, and Fantasyland West. (*Id*.).[1]

Plaintiffs allege the following. From August 2013 to June 10, 2015, Plaintiff Hogan was employed at Sirens as a bartender, server, and exotic dancer. (*Id*. ¶ 28). From "approximately" 2014 to 2016, Plaintiff Valentine was employed as a dancer at Sirens. (*Id*. ¶ 29). Plaintiff Valentine was also employed at some point at House of Babes. (*Id*. ¶ 119).

The club Defendants, as well as the ownership and management of those clubs, "conspired and colluded" with Defendants Greg Flaig, the Owners Coalition ("OC"), and Buckeye Association of Club Executives ("BACE") illegally to require exotic dancers to *pay* rent to the clubs for dancing there instead of being *paid* the minimum wage to which they were entitled. (*Id*. ¶ 29). The clubs are members of, affiliated with, or subscribers of BACE and/or OC. (*Id*. ¶ 12). During the relevant time period, BACE and OC have functioned as the two primary adult entertainment club industry trade associations in Ohio. (*Id*. ¶ 64).

Plaintiffs allege that Greg Flaig, the acting director of both BACE and OC, created an unlawful system by which the clubs avoided compensating their dancers. (*Id*. ¶ 1). This system, referred to as the "Tenant System," is an alleged scheme used collusively by Defendants in which dancers are charged fees to work at clubs instead of being paid their "rightful" minimum wage. (*Id*. ¶ 2). These fees "include but are not limited to a charge for 'rent' that dancers are forced to pay under the complete and utter fiction that they are 'leasing space' from the clubs while dancing there." (*Id*.). Pursuant to this system, Defendants memorialized the "Tenant System" in a contract given to their exotic dancers entitled "Entertainer Tenant Space Lease Agreement" (the "Lease

---

[1] Plaintiffs' operative Second Amended Complaint (ECF No. 271) also names another club, Sirens, as a defendant. Because Sirens has been dismissed from this action pursuant to a settlement agreement, this Court's recitation of Plaintiffs' allegations omit those allegations which concern Defendant Sirens except those which remain relevant post-settlement. (ECF No. 350; ECF No. 397 at 1).

Agreement"). (*Id*. ¶ 79). The Lease Agreement reflected the clubs' position that their exotic dancers were not employees (who are owed a wage) but instead independent contractors who lease space from the clubs while performing (who are not owed a wage). (*Id*.). Under the guise of serving as "human resources consultant" to the clubs, Defendant Flaig instituted the Tenant System in these clubs and has continued auditing and monitoring the clubs to ensure their continued adherence. (*Id*. ¶ 13). BACE, OC, and Defendant Flaig are responsible for ensuring that the Tenant System is used by the defendant clubs in coordinated fashion. (*Id*. ¶ 64).

Defendants treated their dancers like tenants and lessees whether a given dancer signed a formal "Lease Agreement," a similar tenant agreement, or no agreement at all. (*Id*. ¶ 96). Defendants exerted substantial control over the dancers through actions including: controlling and setting the rates that dangers charged customers; setting the fees that dancers were required to pay to the club when dancing; hiring, firing, and disciplining dancers; mandating that dancers share tips with non-tipped personnel; and requiring that dancers work their entire shifts or face a fine. (*Id*. ¶ 98). BACE and OC's member clubs—the club Defendants—used the Tenant System pursuant to a mutual understanding and common plan designed to deny exotic dancers their rightful minimum wages. (*Id*. ¶¶ 126–27). Thus, Plaintiffs allege that all club Defendants maintained the same or similar illegal pay practices and that the dancers employed at those clubs are similarly situated. (*Id*.).

### B. Procedural Background

On October 6, 2015, Plaintiff Hogan filed this wage and hour lawsuit as a collective and class action against Defendants alleging that their policies and actions violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; Article II § 34(a) of the Ohio Constitution; and § 4113.15 of the Ohio Revised Code. (ECF No. 1 at 10–12; ECF No. 125 at 3). On May 19,

3

2017, Plaintiff Hogan filed an Amended Complaint, this time adding BACE and OC as defendants. (ECF No. 74).[2] On May 14, 2020, Plaintiff Hogan joined with new Plaintiff Dejha Valentine to file their Second Amended Class and Collective Action Complaint. (ECF No. 271). This is the operative Complaint in this case. As Plaintiffs represented in their Motion for Leave to File the Second Amended Complaint, the Second Amended Complaint added claims against the following:

- Six strip clubs that were part of the previously alleged Statewide Defendant Class based on their membership in BACE and/or OC, i.e., Cheeks, House of Babes, Top Hat, Private Dancer, Centerfold, and Fantasyland West;
- The president of BACE and the owner of Cheeks, Lee Hale, and that club's manager, Eric Cochran;
- The owner of Top Hat, Foursome Entertainment, and its operators and managers, Mark Potts, Jimmy Lee, and Tim Bobb;
- Potts as the owner and operator of Fantasyland West;
- The owner, manager, and operator of Private Dancer, John "Dutch" Matthews;
- The owner of Centerfold, Nolan Enterprises, LLC, and its managers and operators, Brenda Bonzo and Ray Algood;
- The owner/operator of House of Babes, Jimmy Doe (last name a pseudonym), and its manager, John Doe (full name a pseudonym); and
- Greg Flaig, the executive director of BACE and OC, and the owner of the latter.

(ECF No. 260 at 2–3).

Plaintiffs represented that the Second Amended Complaint also adds details about relevant events since the filing of the prior complaint. (*Id*. at 3). Of the twenty counts contained in the Second Amended Complaint, the final ten apply to the remaining Defendants in this case:

- Count X: Antitrust Violations;
- Count XI: Civil Conspiracy to violate federal and state wage and hour and antitrust laws;
- Count XII: Unjust Enrichment;
- Count XIII: Ohio Constitution, Article II § 34(a), FLSA, and O.R.C. § 4113.15—Failure to Pay Minimum Wage or Tipped Minimum Wage, Failure to Make Wage Payments Within 30 Days, and Unlawful Retention of Tips;
- Count XIV and XV: Ohio Constitution, Article II § 34(a) and FLSA—Failure to Pay Tipped Minimum Wages (specific to Plaintiff Valentine and the "House of Babes Class" against the House of Babes Defendants);

---

[2] The Second Amended Complaint uses "BACE" to refer to both BACE and OC because they merged in 2015. (ECF No. 271 ¶ 12). Thus, any quote from the Amended Complaint that refers to "BACE" also includes OC.

- Count XVI: Ohio Constitution, Article II § 34(a)—Unlawful Deductions and/or Kickbacks (specific to Plaintiff Valentine and the "House of Babes Class" against the House of Babes Defendants);
- Count XVII: FLSA—Unlawful Deductions and/or Kickbacks (specific to Plaintiff Valentine and the "House of Babes Class" against the House of Babes Defendants);
- Count XVIII: Ohio Constitution, Article II § 34(a)—Failure to Pay Minimum Wages (specific to Plaintiff Valentine and the "House of Babes Class" against the House of Babes Defendants);
- Count XIX: FLSA—Failure to Pay Minimum Wages (specific to Plaintiff Valentine and the "House of Babes Class" against the House of Babes Defendants); and
- Count XX: Failure to Tender Pay by Regular Payday under Ohio Law (specific to Plaintiff Valentine and the "House of Babes Class" against the House of Babes Defendants).

(ECF No. 271 at 44–61).

Plaintiffs request various forms of relief comprising a declaratory judgment and injunctive and monetary relief (including liquidated damages, equitable relief, compensatory damages, and pre- and post-judgment interest). (*Id*. at 62–63).

On May 17, 2021, this Court approved Plaintiffs' settlement with Defendant Sirens, resolving Plaintiffs' claims as to that party. (ECF No. 350). On September 26, 2022, Plaintiffs filed their Motion to Certify Class. (ECF No. 396). In their Motion, Plaintiffs seek an order from this Court to allow the case to proceed as a collective action (pursuant to 29 U.S.C. § 216(b) and Article II, Section 34a of the Ohio Constitution) and as a class action (pursuant to Rule 23 of the Federal Rules of Civil Procedure and Article II, Section 34a of the Ohio Constitution). With respect to the class action request, Plaintiffs argue that this case satisfies the requirements of Rule 23(a) and should be certified under Rules 23(b)(3), 23(b)(2), and 23(b)(1)(A). Plaintiffs request the following class definition:

> All non-owner, non-employer exotic dancers who worked at any of defendants' strip clubs at any time from May 14, 2014 to the present
> (1) while such club
> a. has used the Entertainer Tenant System created and disseminated by Defendant Greg Flaig, or

> b. has required its dancers to sign and abide by the
> Entertainer Tenant Space Lease Agreement created and
> disseminated by Defendant Greg Flaig, or
> c. has otherwise formally regarded its dancers as leasing
> space at such club as entertainers and required them to
> acknowledge the same, and
> (2) while such club did not pay any wages to its dancers.

(ECF No. 396 at 2).

Plaintiffs' Motion is ripe for this Court's consideration.

## II.     STANDARD OF REVIEW

### A.  FLSA Court-Facilitated Notice

Plaintiffs seek to proceed in this matter as a collective under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., as amended ("FLSA"). Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the action arose "out of a willful violation," in which case the lawsuit must be initiated within three years after accrual. 29 U.S.C. § 255(a). The FLSA provides that a court may approve court-facilitated notice in an action brought "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees "are permitted to opt into" the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The plaintiffs bear the burden to show that the proposed class members are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). The FLSA does not define "similarly situated." *Id.*

District courts conduct a two-phase inquiry to determine whether plaintiffs are similarly situated: previously referred to as "conditional certification" and "final certification". *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). The Sixth Circuit has recently explained that the process whereby the Court determines whether to enable a proposed collective

6

to issue a notice to other employees should not be characterized "as a 'certification,' conditional or otherwise." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023). This Court thus refers to the FLSA notice determination as "court-facilitated notice."

In *Clark*, the Sixth Circuit maintained the two-step process for FLSA collective actions but altered the calculus. At step one, for there to be court-facilitated notice to potential plaintiffs, the named plaintiffs must show a "strong likelihood" that other employees of the defendant(s) are "similarly situated" to them. *McCall v. Soft-Lite L.L.C.*, No. 5:22-CV-816, 2023 WL 4904023, at *5 (N.D. Ohio Aug. 1, 2023) (citing *Clark*, 68 F.4th at 1011). Before *Clark*, plaintiffs at step one needed only produce enough evidence to support a "modest factual finding" that they were similarly situated to potential plaintiffs. *Clark*, 68 F.4th at 1011. *Clark*'s new, "strong likelihood" standard is borrowed from the test applied when implementing preliminary injunctions and "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*. If the court permits court-facilitated notice at the first phase, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015).

At step two, and after the close of discovery, the court makes a conclusive determination as to whether the named plaintiffs are "in fact similarly situated" to opt-in plaintiffs, which must be demonstrated by a preponderance of the evidence. *Clark*, 68 F.4th at 1009–10. At that point, the opt-ins become parties to the suit and can proceed to trial collectively. *Id.* at 1010.

The Sixth Circuit has explained that whether particular employees are "similarly situated" is a fact-specific inquiry. *Id*. Recognizing that the factual record is not yet fully developed at the point in the litigation wherein the court must determine whether to facilitate notice in a FLSA suit,

the Sixth Circuit has explained that the movant merely must "demonstrate to a certain degree of probability" that she will prove that the employees are "similarly situated" when the court issues its final decision. *Id*. at 1011. Some considerations that may guide the court in this inquiry include "whether [the other employees] performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id*. at 1010. Whether other employees "are subject to individualized defenses" may affect whether they are similarly situated. *Id*. The evidence presented "may include affidavits of potential plaintiffs or evidence of a widespread policy or plan." *Petty v. Russell Cellular, Inc.*, No. 2:13-cv-1110, 2014 WL 1308692, at *2 (S.D. Ohio Mar. 28, 2014). Further, whether the employees' claims are subject to arbitration should be considered in this analysis. *Clark*, 68 F.4th at 1010.

This Court finds it important to note that no single factor is determinative, given the following:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

> *Id*. at 1012 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

### B. Class Certification

Plaintiffs also seek certification of the putative class under Rule 23(a) and either Rules 23(b)(3), 23(b)(2), or 23(b)(1)(A) of the Federal Rules of Civil Procedure. A plaintiff seeking class certification bears the burden of establishing compliance with all four requirements of Rule 23(a), referred to by the shorthand of "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy." Fed. R. Civ. P. 23(a); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003). Additionally, even though Rule 23 has no express ascertainability requirement, the Sixth Circuit has held that it is implicitly required for class certification. *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).

Ascertainability is met where the "class description [is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id*. (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)).

In ruling on a motion for class certification, a district court should not consider the merits of the plaintiffs' claims but may consider evidence outside of the pleadings to determine whether the prerequisites of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). That said, on occasion, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," *see Gen. Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982), and "rigorous analysis" may involve some overlap between the proof necessary for class certification and the proof required to establish the merits of the plaintiffs' underlying claims." *Wal-Mart Store, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). A court, however, should not conduct free-ranging merits inquiries at this stage, but may consider the merits only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

### 1. *Rule 23(b)(3)*

In addition, under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (referred to by the shorthand of "predominance and superiority").

### 2. *Rule 23(b)(2)*

As this Court has previously noted, neither the Supreme Court nor the Sixth Circuit has addressed directly whether parties seeking class certification for damages and declaratory relief

must plead both Rule 23(b)(2) and (b)(3). *J&R Passmore, LLC v. Rice Drilling D, LLC*, No. 2:18-CV-01587, 2023 WL 2667749, at *25 (S.D. Ohio Mar. 28, 2023) (Marbley, J.). Class actions for both can be certified under Rule 23(b)(2), but only where the monetary damages are incidental to the equitable remedy sought. Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1784.1 (3d ed.). Generally, incidental damages are those that concomitantly flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief—meaning those to which class members automatically would be entitled once liability to the class as a whole is established. *See Allison v. Citgo Petroleum Corp.*, 151 F. 3d 402, 415 (5th Cir. 1998). If it is determined that damage relief is not incidental, the Seventh Circuit suggests that the district court should consider three alternatives: (1) certifying the class under Rule 23(b)(3) for all proceedings; (2) certifying a Rule 23(b)(3) class for the portion of the case addressing damages and a Rule 23(b)(2) class for the portion of the case addressing equitable relief; or (3) certifying a class under Rule 23(b)(2) for both monetary and equitable remedies but exercise its plenary authority under Rule 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out. *Lemon v. Int'l Union of Operating Engineers*, Local No. 139 AFL-CIO, 216 F.3d 577, 581–82 (7th Cir. 2000).

### 3. Rule 23(b)(1)(A)

As explained by a fellow court in this district, the purpose of Rule 23(b)(1)(A) is to prevent defendants from being legally subject to contradictory court rulings. *Doster v. Kendall*, 342 F.R.D. 117, 127 (S.D. Ohio 2022). In other words, this provision applies in instances wherein the court is concerned that "different judicial outcomes would impose conflicting obligations on the same defendant or group of defendants." *Id*. at 127.

### III.     LAW AND ANALYSIS

### A.  FLSA COURT-FACILIATED NOTICE

In their Motion, Plaintiffs argue that their proposed collective definition satisfies the proper burden justifying this Court's approval of court-facilitated notice pursuant to the FLSA.

As an initial point, Plaintiffs argue that their proposed collective definition is not impacted by any applicable statute of limitations even if FLSA suits must be brought within two or three years of the alleged violation. This is because, Plaintiffs contend, a six-year limitations period applies to Plaintiffs' claim for unjust enrichment under Ohio law, and the proposed class definition is properly predicated on the longest possible limitations period.

Plaintiffs next argue that all the relevant considerations for demonstrating they are "similarly situated" to the putative collective members—including employment settings, individual defendants, and the fairness and procedural impact of certification—weigh in favor of approving court-facilitated notice. Plaintiffs first argue that Defendants' alleged coordination in using the unlawful Tenant System against dancers at each member club constitutes the type of widespread misclassification found by courts to justify approving court-facilitated notice. Plaintiffs contend that, if this Court finds that they produce insufficient evidence on the "similarly situated" prong, this Court should note that Defendant Sirens earned sanctions in this case for destroying relevant employee records. Plaintiffs also argue that this Court may consider all the evidence in the record in its determination whether to approve court-facilitated notice, which includes: a copy of Plaintiff Valentine's House of Babes Lease Agreement; a copy of a Private Dancer Lease Agreement that Defendant Flaig allegedly devised; sworn testimony from Defendant Flaig and various club owners/managers; and Defendants' own documents including Defendants' lease agreements and internal memoranda.

Plaintiffs dismiss many of Defendants' arguments as merits-based arguments that are improper for this Court to consider at this stage, including: that the FLSA claims are time-barred; that the Lease Agreements contain enforceable arbitration clauses preventing the putative collective members from joining a collective or class action; and that Plaintiffs are not qualifying "employees" within the meaning or the protections of the FLSA. Plaintiffs also dismiss Defendants' contention that Plaintiff Hogan is not similarly situated to the putative collective members because she never signed a Lease Agreement. According to Plaintiffs, even without signing an agreement, Hogan was subject to the same policies as the other dancers. Plaintiffs contend that the fact that the named Plaintiffs never worked at several of the clubs is irrelevant because all collective members were subject to the same common policy or plan. Plaintiffs last point out that this Court's May 17, 2021 order approving the Sirens settlement (ECF No. 350) noted that 29 entertainers filed claims. According to Plaintiffs, many of those same dancers also danced at the non-Sirens defendant clubs and are thus eligible to join this lawsuit.

As an initial argument, Defendants respond that the Lease Agreements contain mandatory arbitration and class action waiver agreements that should dispose of Plaintiffs' claims in their entirety. Defendants acknowledge that the named Plaintiffs did not sign any agreement that waived their ability to maintain a class or collective action lawsuit but argue that this shows that Plaintiffs are not similarly situated to the putative collective members. Defendants also note that the Lease Agreements provided dancers the option not to agree to arbitration.

The crux of Defendants' argument is that Plaintiffs and putative class members are independent contractors whose agreements are enforceable; that Plaintiffs' lawsuit is merely a grievance against a legal business model; and that the Lease Agreements vary significantly across the clubs. Defendants argue that Plaintiffs fail to show the following necessary for this Court to

approve court-facilitated notice: "(1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; (3) whether evidence of a widespread discriminatory plan was submitted; and (4) whether a manageable class exists as a matter of 'sound class management.'" (ECF No. 401 at 45) (quoting *Combs v. Twin Grp., Inc.*, No. 3:16-cv-295-TMR, 2016 WL 7230854, *2 (S.D. Ohio Dec. 14, 2016)).

Defendants contend that even the named Plaintiffs are not similarly situated: Plaintiff Hogan worked for Sirens (which is no longer a party to this case) and never signed the very agreement upon which Plaintiffs' claims are predicated. Defendants also reason that Plaintiffs cannot show that a single, FLSA-violating policy operates across all the clubs given that the dancers are compensated differently at each club. Finally, Defendants contend, Plaintiffs fail to identify any potential putative collective members and have not produced any affidavits from potential putative class members supporting the approval of court-facilitated notice.

For court-facilitated notice to be approved, Plaintiffs' burden is merely to "show only that his position is similar, not identical to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011); *Comer,* 454 F.3d at 546–47 (internal quotation marks and citation omitted). Judge Helene White explained that the Sixth Circuit's ruling in *Clark* "addresses how much a plaintiff must show to satisfy a district court that other employees exist who . . . [are] similarly situated to the plaintiff," but "does not address the underlying threshold for FLSA similarity, which remains the same." *Clark*, 68 F.4th at 1020–21 (White, J., concurring in part and dissenting in part).

Showing a "unified policy" of violations is not required. *O'Brien*, 575 F.3d at 584. Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the

plaintiffs." *Id.* at 585. In determining whether to approve court-facilitated notice, courts have considered factors "such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted." *Castillo v. Morales*, 302 F.R.D. 480, 486 (S.D. Ohio 2014) (Marbley, J.) (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)).

Affidavits from plaintiffs are properly considered in this inquiry where they "allege facts sufficient to support an inference that [they have] actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *Foley v. Wildcat Invs., LLC*, No. 2:21-CV-5234, 2023 WL 4485571, at *3 (S.D. Ohio July 12, 2023) (Morrison, J.) (citing *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013) (Dlott, C.J.)). Facts "such as first-hand observations or observations with co-workers—will typically be enough to show that a similarly situated class of employees exists." *O'Neal*, 2013 WL 4013167, at *8. But the allegations cannot be based on hearsay. *Foley*, 2023 WL 4485571, at *3 (citing *Lansberg v. Acton Enters.*, No. 2:05-cv-500, 2006 WL 3742221, at *3 (S.D. Ohio 2006) (Sargus, J.) (two affidavits based on hearsay provide no "colorable basis" for issuing notice to other employees)).

Importantly, "at the conditional certification stage, the Court does not consider the merits of the claims, resolve factual disputes, or decide substantive issues." *Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 733–34 (S.D. Ohio 2016). This Court finds that Plaintiffs have adequately demonstrated a "strong likelihood," *Clark*, 68 F.4th at 1011, that they are similarly situated to the putative collective members.

First, Plaintiffs present sufficient evidence that the practices to which Defendants allegedly subjected them were widespread practices that impacted the putative class members. Plaintiffs'

allegations that Defendants collusively employed the Tenant System, thereby failing to pay dancers who were rightfully owed minimum wage, points to a coordinated and widespread plan violative of the FLSA. Plaintiffs Hogan and Valentine submitted declarations that they worked as dancers for at least one of the clubs in this case and were forced to pay "rent" like the other dancers. (ECF No. 397 at 11) (citing ECF No. 194-3 ¶¶ 15–16; ECF No. 195-4 ¶¶ 3–5; ECF No. 195-1).

Attached to their Motion, Plaintiffs submit testimony from the following Defendants acknowledging that the Tenant System was used in their establishments: Greg Flaig, confirming the Lease Agreement's use at Centerfold (Flaig Deposition, ECF No. 397-3 at 15:6–15:11, 15:25–16:4); Greg Flaig, confirming the Lease Agreement's use at Top Hat (*Id.* at 55:5–55:8); James Deascentis confirming the Lease Agreement's use at House of Babes (Deascentis Deposition, ECF No. 397-4 at 55:9–55:18); Elbert Lee Hale confirming the Lease Agreement's use at Cheeks (Hales Deposition, ECF No. 397-5 at 78:2–78:14); and Mark Potts confirming the Lease Agreement's use at Fantasyland West (ECF No. 397-6 at 41:15–42:13). Sirens General Manager Jay Nelson also testified that multiple strip club owners who are members of BACE and OC have used the Lease Agreement to run their businesses. (ECF No. 262-3 at 169:6–169:24). Plaintiffs represent that the Centerfold Lease Agreement attached to their Motion is representative of the agreements used by the other clubs. (*See* ECF No. 397-1 at 13–21).

Whether a given individual signed a Lease Agreement appears immaterial. After all, Plaintiffs allege that Defendants colluded to force the dancers to pay rent instead of being paid as employees—whether they signed a Lease Agreement or not. According to Plaintiffs, the putative collective members all have the same basic roles and are subject to the same alleged illegal payment practices. Plaintiffs must demonstrate only that they qualified as employees and that the Defendants acted in conformity with the Tenant System policy to establish collective-wide

liability. Defendants do not dispute Plaintiffs' allegations that they did not pay the putative collective members.

In sum, Plaintiffs submit evidence of the existence of the Tenant System; that Flaig instituted the plan in all the clubs; and that each club had hundreds of dancers per year. Given that each club allegedly belonged to the same organization and used as a "consultant" the same person who devised the Tenant System, there is sufficient evidence of "unlawful pay practices at each of the . . . locations identified in the Complaint, at about the same time and place, in generally the same manner, which affected Plaintiff and the putative class members in the same way." *Castillo*, 302 F.R.D. at 486.

Second, Plaintiffs submit sufficient evidence that the putative collective members indeed exist. Attached to Plaintiffs' Motion for Leave to File Proofs of Joinder Under Seal were declarations from several individuals who joined the Sirens settlement stating that they danced for clubs that are still named as defendants. (*See* ECF No. 404). These individuals attested that none of the club Defendants for which they danced paid them any wages for dancing, instead charging them rent for the privilege of dancing there. (*Id.*). Plaintiffs represent that several of the 29 entertainers who filed claims to the Sirens settlement also have claims against at least one of the remaining club Defendants. (ECF No. 405 at 28–29). The General Manager of Sirens disclosed that "hundreds" ("probably" in excess of 300) of dancers signed copies of the Lease Agreement at Sirens alone during his tenure as director of operations. (ECF No. 262-4 at 108:8–108:18). Given that approval of court-facilitated notice may be appropriate even if a plaintiff's declaration does not explicitly identify members of the putative class, *Morrison v. Columbus Fam. Health Care LLC*, No. 2:22-CV-3460, 2023 WL 3266785, at *6 (S.D. Ohio May 5, 2023) (collecting cases), Plaintiffs' evidence satisfies their burden.

This Court considers in turn Defendants' defenses, summarized as the following: (1) Plaintiffs are not "employees," but independent contractors; (2) putative collective members with FLSA claims which arose more than two years ago are time-barred; (3) several putative collective members are barred from joining a FLSA collective action because they signed contracts preventing them from joining a FLSA or Rule 23 class action, instead subjecting their claims to mandatory arbitration; and (4) Defendant Private Dancer and associated parties should not be included in this case because Plaintiffs never alleged that they have any personal knowledge of Private Dancers' policies nor of a relationship between Private Dancer and BACE/OC.

First, whether Plaintiffs are employees under the FLSA is a merits-based inquiry. As a fellow court in this district observed, whether Plaintiffs and others are similarly situated as exempt employees under the FLSA "is a merits determination that will be considered at the second phase of certification, not this initial conditional inquiry." *Morrison*, 2023 WL 3266785, at *5.

Second, the parties' debate concerning whether the FLSA statute of limitations should be two years or three years requires a merits-based determination that is inappropriate at this stage of the case. *See, e.g., Weisgarber v. N. Am. Dental Grp*., LLC, No. 4:18CV2860, 2020 WL 1322843, at *5 (N.D. Ohio Mar. 20, 2020) (determining that "Defendants' argument that the statute-of-limitations should be two years as opposed to three years requires a merit-based determination that should be made in the next stage of the certification process."); *Kinder v. MAC Manufacturing Inc.*, 318 F. Supp. 3d 1041, 1048 (N.D. Ohio 2018) (explaining that "[b]ecause [the] [d]efendants' statute of limitations argument requires an evaluation on the merits of [the] [p]laintiff's claim, it is inappropriate for resolution at this early stage of litigation."). This is because whether Defendants' alleged violations of the FLSA were "willful" or not is a factual determination concerning whether Defendants "either knew its conduct violated the FLSA or showed reckless

disregard about the matter." *Hempfling*, 2018 WL 5465870, at *7. This Court thus rejects this argument while noting that Defendants retain the ability to raise it once more at a later stage in the litigation.

Third, this Court considers Defendants' defense that several putative collective members are barred from entering into a FLSA collective because they are subject to mandatory arbitration. The Sixth Circuit recently acknowledged that a court may consider the defense of mandatory arbitration at this stage of the litigation. *Clark*, 68 F.4th at 1012. In support of their argument, Defendants note that the Lease Agreements at issue all contained a mandatory arbitration provision. Defendants reason that Plaintiff Valentine is an inadequate representative because she signed the provision of the Lease Agreement which waived her ability to participate in a "class and common action." (ECF No. 401 at 60). Defendants then state that Plaintiff Hogan is an inadequate representative if she did not sign a Lease Agreement because all other putative collective members did, per their allegations. (*Id*.). This is incorrect because the Lease Agreement typified by the Centerfold version of the agreement attached to Plaintiffs' Motion shows it allowed dancers the option of whether to agree to submit their potential claims to arbitration. (*See* ECF No. 397-1 at 34–36). "Allowed" is the operative word. Defendants would have a stronger case if they could argue that *every* dancer who signed the Lease Agreement also had to agree to arbitration. Defendants' case would be stronger still if they could argue that *every* person who danced had to sign a Lease Agreement. Defendants can do neither.

Defendants essentially ask this Court to determine that mandatory arbitration bars the claims of putative collective members who are not yet before this Court and who lack the opportunity to defend against arbitration. This Court will not do so. *See Masco Corp. v. Zurich Am. Ins. Co*., 382 F.3d 624, 627 (6th Cir. 2004) (explaining that, before compelling arbitration, a

court must find that "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."). Neither this Court nor Defendants know the exact identities of the putative collective members. Neither this Court nor Defendants, then, know the particulars of those individuals' agreements. They could have danced without signing an agreement, like Plaintiff Hogan. They could have signed the agreement but elected not to submit their claims to arbitration. They could have submitted their claims to arbitration via contract but have a viable claim that the arbitration clause is voidable. Defendants thus cannot rely on this blanket defense to defeat Plaintiffs' request for court-facilitated notice.

Fourth, this Court considers Defendant Private Dancer's argument that Plaintiffs lack any personal knowledge of its policies or its relationship with BACE/OC. Plaintiffs summarized testimony from Defendant Flaig indicating that he acted as Private Dancer's human resources consultant and that Private Dancer used two versions of his Lease Agreement between "approximately 2014 until at least March 6, 2020[.]" (ECF No. 390 at 11–13). Plaintiffs submitted a copy of a Private Dancer Lease Agreement containing the same provisions that Plaintiffs allege to be unlawful in the Lease Agreements used by the other club Defendants. (ECF No. 262-3). Contrary to Defendant Private Dancer's contention that Plaintiffs merely "assume" that Private Dancer uses the same policies as the other clubs are alleged to use, Plaintiffs have submitted evidence of its practices. Whether Plaintiffs' evidence conclusively proves Defendant Private Dancer's liability is undoubtedly a merits-based question unsuitable for this stage in the litigation. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (explaining that district courts most only consider at the class certification stage "those matters relevant to deciding if the prerequisites of Rule 23 are satisfied."); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.) (explaining that, at the FLSA

"conditional-certification" stage, "a court 'does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility[.]'").

For these reasons, this Court **GRANTS** court-facilitated notice under the FLSA.

### B. NOTICE ISSUES

Plaintiffs submit their proposed notice documents to their Motion. (ECF No. 397-7). Plaintiffs also request the following with respect to the notice documents: (1) that this Court authorize them to be sent to potential collective members using regular U.S. mail and email; (2) that this Court permit the notice to be posted at the location of each defendant club; (3) that this Court require the defendant clubs to produce a computer-readable list of all their dancers' actual names, last-known addresses, last-known email addresses, and dates of employment since May 14, 2014; (4) that this Court require Defendants to pay for Plaintiffs' use of text messages, website postings, and publication notices to notify dancers from the recently-added clubs on the basis that those clubs likely discarded the dancers' Lease Agreements; (5) that this Court bar Defendants "or anyone acting on their behalf" from retaliating against dancers who choose to join this lawsuit; and (6) that this Court authorize a 180-day opt-in/out period with tolling as of December 1, 2021, on the basis that Defendants have "destroyed or discarded the best contact information (the completed Lease Agreements) for large swaths of the class."

Defendants do not produce arguments responsive to Plaintiffs' requests concerning the notice documents. The only argument that appears answerable to Plaintiffs' request is Defendants' objection to Plaintiffs' attempt to blame the discovery gaps on them. (ECF No. 401 at 63). Defendants argue that Plaintiffs have no right to the dancers' personal information for the purposes of soliciting those dancers to join a putative class action before a conditional certification has been approved.

*1. Modes of Notice Dissemination*

Plaintiffs' first, second, third, and fourth requests with respect to the notice documents concern the methods by which notice may be sent. Put together, Plaintiffs request the following: (1) to be permitted to disseminate the notice documents via U.S. mail and e-mail; (2) to be permitted to post the notice documents at Defendants' club locations; (3) to receive a court order requiring Defendants to produce a computer-readable list of their dancers' contact information; and (4) to be permitted to disseminate the notice documents through text message, website posting, and publication notices at Defendants' cost.

Courts are afforded broad discretion in determining how notice and consent forms are to be disseminated and returned. *Wells v. Cmty. Health Sys., Inc.*, No. 3:21-CV-00865, 2022 WL 4377116, at *6 (M.D. Tenn. Sept. 22, 2022) (quoting *Honaker v. Wright Bros. Pizza, Inc.*, No. 2:18-cv-1528, 2020 WL 134137, at *3 (S.D. Ohio Jan. 13, 2020)). Typically, courts "approve only a single method for notification unless there is a reason to believe that method is ineffective." *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017). This Court, following the trend in the Southern District of Ohio, tends to allow both mail and email notices to be sent to putative class members. *Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-CV-1110, 2019 WL 101905, at *4 (S.D. Ohio Jan. 4, 2019) (Marbley, J.) (quoting *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899–900 (S.D. Ohio 2018)). Some courts have also permitted "conspicuous posting at a defendant's office location" and "directed defendants to provide electronic files with contact information for putative class members." *Wells*, 2022 WL 4377116, at *6 (collecting cases). They have also approved the online execution of consent forms. *Id*. Courts have tended, however, to reject requests to send notice by text message unless Plaintiffs can show that notice by postal and electronic mail has been unsuccessful. *Id*.

Allowing Plaintiffs to reach putative collective members by both email and first-class mail would: "likely obviate the need to resend notice if an employee's home address is inaccurate," *Hall*, 299 F.Supp.3d at 899; sure to be a concern given Plaintiffs' representations concerning the industry; and Defendants' inadequate record-keeping practices. In this case, the combination of poor record-keeping and the high turnover inherent to the exotic dancing industry makes the use of U.S mail and email alone likely insufficient to effectively spread information about this lawsuit. At the same time, this Court is sensitive to the putative class members' heightened need for privacy. This Court must thus balance Plaintiffs' need to communicate notice of this lawsuit with the putative collective members' heightened privacy interests given the nature of the exotic dancing industry.

Having considered Plaintiffs' requests, this Court permits the following: Plaintiffs may send notice by U.S. mail and email; Plaintiffs may post (or cause to be posted) notice at all club Defendants' sites in a conspicuous location (*i.e.*, the lobby or performer dressing rooms); Defendants must provide an electronic file (within 14 days) containing the putative class members' legal first names, last-known e-mail addresses, and dates of employment since September 26, 2019; and Plaintiffs may create a website and develop publication notices for dissemination, subject to this Court's approval of the contents therein. Given the privacy interests at issue in this case, however, this Court will not permit Plaintiffs to communicate notice via text message. Further, this Court rejects Plaintiffs' request for Defendants to cover the costs of disseminating notice. Such a request is more appropriately suited for a motion for attorneys' fees and costs to be filed at the conclusion of this case.

*2. Retaliation Notice*

Plaintiffs next request an order from this Court barring Defendants from retaliating against putative class members for joining this suit. It goes without saying, however, that it is illegal to retaliate against an employee for joining a FLSA lawsuit. *See Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 529 (6th Cir. 2011) (explaining that the FLSA prohibits retaliation against an employee because he or she "filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act."). If the putative class member suffers retaliation as the result of joining this lawsuit, he or she may seek court-provided relief. Further, Plaintiffs expressly include in their proposed notice documents the following language:

> The law strictly forbids any employer from retaliating against an employee for filing or joining a lawsuit. This includes a prohibition against firing you, docking your pay, changing your hours, etc. If you experience retaliation, report it immediately to the plaintiffs' attorneys.

(ECF No. 397-7 at 4).

This Court does not find any reason to issue an order reminding Defendants not to violate the law; it is evident that Defendants risk liability for doing so. As such, this request is denied.

*3. Opt-In Period and Equitable Tolling*

Plaintiffs last request that this Court authorize a 180-day opt-in/out period with tolling as of December 1, 2021, on the basis that Defendants have "destroyed or discarded the best contact information (the completed Lease Agreements) for large swaths of the class." (ECF No. 397 at 57). As fellow courts in this district have acknowledged, "[t]here is no hard and fast rule controlling the length of FLSA notice periods." *Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2021 WL 2659955, at *7 (S.D. Ohio June 29, 2021) (quoting *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016)). This Court has repeatedly noted that 90 days is a standard notice period and granted it accordingly. *See, e.g., Pender v. Wings*, No.

2:21-CV-4292, 2023 WL 2472035, at *8 (S.D. Ohio Mar. 13, 2023) (Marbley, J.); *Smith v. Generations Healthcare Servs. LLC,* No. 2:16-CV-807, 2017 WL 2957741, at *7 (S.D. Ohio July 11, 2017) (Marbley, J.); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017) (Marbley, J.).

In a collective action, a named plaintiff's claim is considered to be filed on the date the complaint is filed and he or she files a written consent to join the collective action. *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *7 (S.D. Ohio Feb. 26, 2015). But as this Court has previously noted, "the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in." *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 845 (S.D. Ohio 2013) (Marbley, J.). The doctrine of equitable tolling "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Id*. (quoting *Baden–Winterwood v. Life Time Fitness*, 484 F.Supp.2d 822, 826 (S.D. Ohio 2007)). Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id*. (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000)). It is the plaintiff's burden to demonstrate why he or she is entitled to toll equitably the statute of limitations in a given case. *Id*. The Sixth Circuit has articulated five factors to be considered in determining whether equitable tolling should apply to a given case: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)

This Court has readily granted a 90-day notice period where, as here, Plaintiffs credibly anticipate difficulties in locating all potential class members. *See Pender*, 2023 WL 2472035, at *8. This Court has not, at least in recent history, granted an opt-in period of the significant length that Plaintiffs request. This Court also notes that Plaintiffs have had nearly eight years to identify potential collective members.

With respect to Plaintiffs' claim for equitable tolling, this Court finds that their request is premature. Despite their burden of demonstrating why equitable tolling is warranted in this case, Plaintiffs' argument scantily points to Defendants' record-keeping practices as justification. Given the rarity with which equitable tolling is to be permitted, *see Andrews*, 851 F.2d at 151, this Court finds Plaintiffs' threadbare arguments to be insufficient. Like several other courts in this district, this Court declines to grant equitable tolling where it is "not prepared to cast an extraordinary net extending the rights of putative plaintiffs when there [was] little to no specific information" about the circumstances of the potential opt-in FLSA plaintiffs. *Richert v. LaBelle HomeHealth Care Serv. LLC*, No. 2:16-CV-437, 2017 WL 4349084, at *6 (S.D. Ohio Sept. 29, 2017) (collecting cases). In this instance, the application of the *Andrews* test "to a group of potential opt-in plaintiffs, who have not yet received notice of the collective action and are not yet parties to the lawsuit, is convoluted at best." *Atkinson*, 2015 WL 853234, at *9.

However, it is possible that many potential opt-in plaintiffs will have colorable claims for equitable tolling. It is also possible that Plaintiffs will be able to demonstrate that Defendants "willfully" violated the FLSA such that the three-year statute of limitations applies (as opposed to the two-year limitation that would otherwise apply). 29 U.S.C. § 255(a). It is thus appropriate for the notice form to state the earliest date at which equitable tolling would be considered. Tolling for purposes of the notice form gives opt-in plaintiffs a chance to argue for equitable tolling.

25

Different courts have used various points in the litigation from which to toll the statute of limitations: some have used the date of the issuance of the order permitting court-facilitated notice, others have used the date of the filing of the complaint, and still others have used the date of the filing of the motion for court-facilitated notice. *See Weisgarber*, 2020 WL 1322843, at *5. Based on the record, the opt-in notice period should be measured from the filing of the motion for court-facilitated notice. *See* ECF No. 396 (motion for court-facilitated notice filed on September 26, 2022). This approach considers the dispute between the parties concerning various employment records (*See, e.g.,* ECF Nos. 410, 412) and the extent to which this Court's ruling on Plaintiffs' Motion was accordingly delayed. This Court, therefore, will grant tolling for purposes of the notice forms for the period between September 26, 2019, and the close of the notice period. When the notice forms are distributed to potential opt-in plaintiffs, they shall state a cutoff date of September 26, 2019.

In so ruling, the Court is not deciding that all opt-in plaintiffs with otherwise time-barred claims will remain in the collective action. Because a ruling on individual or group-wide tolling would be premature at this junction, this Court will reserve a final decision on tolling until all consent forms are received. Presently, the Court is deciding only that the notice form should not preclude any individuals with potentially viable claims from appearing before the Court.

With these considerations in mind, this Court rejects Plaintiffs' requests for a 180-day opt-in/out period and for equitable tolling. Plaintiffs will be permitted a 90-day notice period. Once the notice has been sent and the opt-in period is closed, the opt-in plaintiffs may file motions for a decision from this Court on whether equitable tolling is appropriate in their individual circumstances.

#### 4. *Content of the Notice Documents*

Defendants do not produce any argument objecting to the content of the notice documents. Plaintiffs' notice documents are **APPROVED** with the following alterations to the document entitled "Notice of Opportunity to Join Unpaid Wage Lawsuit" (ECF No. 397-7):

1. The notice documents shall state a cutoff date of September 26, 2019, and shall be distributed to all current and former employees since that date who otherwise meet the class definition;

2. The documents must be updated to reflect that the opt-in period is *90* days; and

3. The section entitled "Any 'Lease Agreement' or Other Contract that You May Have Signed Does Not Affect Your Rights" must clarify in each sentence containing a factual allegation that the facts are *alleged*. It must also clarify that it is Plaintiffs' *position* that the Lease Agreements and other similar agreements do not impact the rights of the putative collective members. Every sentence that contains a legal conclusion, in fact, must clarify that the legal assertions are Plaintiffs' *position* or *belief*. The third sentence in the second paragraph shall be changed to read "Ultimately, the Court in this lawsuit will determine the validity of that provision of the Lease Agreement."

Plaintiffs are **ORDERED** to produce to this Court for approval a revised set of proposed notice documents consistent with these instructions within **FOURTEEN (14) DAYS** of this Opinion and Order. These documents shall also include a copy of the proposed draft email, as well as a document outlining the language to be used in any website or other publication notice. Defendants are **ORDERED** to provide to Plaintiffs, within **FOURTEEN (14) DAYS** of this

Opinion and Order, an electronic file containing the putative class members' legal first names, last-known e-mail addresses, and dates of employment since September 26, 2019.

### C. CLASS CERTIFICATION

Plaintiffs also move for class certification under Federal Rules of Civil Procedure 23(a) and either 23(b)(3), 23(b)(2), or 23(b)(1)(A).

#### 1. *Class Certification – Rule 23(a)*

A plaintiff seeking class certification bears the burden of establishing compliance with all four requirements of Rule 23(a): "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy." Fed. R. Civ. P. 23(a). This Court considers whether Plaintiffs satisfy each requirement in turn.

##### a. *Numerosity*

Plaintiffs argue that the putative class is sufficiently numerous to establish that joinder would be impracticable. Plaintiffs contend that this Court should overlook any perceived lack of direct evidence of numerosity because Defendants have discarded many of the putative class members' Lease Agreements upon which Plaintiffs would have relied. Nonetheless, Plaintiffs contend, various depositions from Defendants indicate that the number of dancers in the proposed class who were subjected to the Tenant System is enough to satisfy numerosity. For example, Plaintiffs argue, Defendant Erick Cochran testified that Defendant Cheeks alone has "250 to 300" dancers perform at the venue in a typical year. (ECF No. 397 at 6) (citing ECF No. 371-2).

Defendants respond that the deposition testimony in the record is insufficient to demonstrate that there are enough dancers who were subjected to the Tenant System to satisfy numerosity. According to Defendants, Plaintiffs' complaints of lacking access to the unredacted copies of the Lease Agreements support the notion that they cannot demonstrate this prong.

28

Federal Rule of Civil Procedure 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy numerosity, "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir.2005). The Sixth Circuit has found even classes of 35 to be sufficient to meet this requirement. *Young*, 693 F.3d at 542 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996)).

This Court finds that numerosity is satisfied here. This Court noted the following earlier in this Order germane to this prong:

> Of the 29 entertainers who filed claims to the Sirens settlement, Plaintiffs represent that several of them have claims against at least one of the remaining clubs in this action. (ECF No. 405 at 28–29). The General Manager of Sirens disclosed that "hundreds," "probably" in excess of 300, Sirens dancers entered into the Lease Agreement at that club alone during his time as director of operations. (ECF No. 262-4 at 108:8–108:18).

*Supra* Section III.A.

Considering Plaintiffs' submitted evidence, this Court finds that Plaintiffs' assertion that numerosity is met in this case is non-speculative. Given the sheer number of dancers who have danced at just one of the clubs implicated in this case (*See* ECF No. 262-4 at 108:8–108:18) alongside evidence appearing to show that several dancers tended to dance at multiple clubs (ECF No. 405 at 28–29), this Court thus finds that numerosity is met.

### b. *Commonality and Typicality*

Plaintiffs argue that commonality and typicality are both met because the proposed class definition includes dancers who, like Plaintiffs, were treated and harmed in the same way by a common system. Specifically, Plaintiffs contend that their common allegations are that all members of the putative class were misclassified by Defendants as non-employee "entertainer tenants" pursuant to a common scheme devised by Defendants Flaig; promoted by Defendants

Flaig, OC, and BACE; and adhered to by each of the club Defendants. Plaintiffs argue that a finding of commonality usually results in a finding of typicality. Plaintiffs contend that the facts that Plaintiff Hogan did not sign a Lease Agreement or dance on a full-time basis does not defeat a finding of typicality given that she was still subjected to the Tenant System and that the Sirens Lease Agreement was nonetheless raised as a defense against her.

Defendants respond that neither typicality nor commonality is met because Plaintiffs and the putative class members worked at different clubs at different times, with different policies and procedures, with different compensation, and under different agreements. Given this, Defendants argue, many individuals in the putative class will have unique defenses or no claim at all to the requested relief. According to Defendants, this means that a class member could prove her own claim in this case without proving the claims of other class members. Defendants thus argue Plaintiffs must and cannot prove with evidence that all putative class members suffered the same injury and have claims to any relief.

Rule 23(a)(2) "requires plaintiffs to prove that there are questions of fact or law common to the class, and Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young*, 693 F.3d at 542. To demonstrate commonality, Plaintiffs' "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. With respect to typicality, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.

Both typicality and commonality are satisfied in this case. Plaintiffs claim that Defendants conspired to use the Tenant System—a scheme which Plaintiffs allege caused dancers employed by the club Defendants to be denied the wages to which they were legally entitled. The resolution of such questions as whether Plaintiffs were "employees" within the meaning of the FLSA or whether the Tenant System resulted in the underpayment of Plaintiffs would advance the interests of the entire class. The claims brought by Plaintiffs and by the putative class members are predicated on the same course of conduct in which Defendants are alleged to have engaged. Because the same factual and legal theories underline both the claims of the named Plaintiffs and the putative class members, this Court is satisfied as to the presence of commonality and typicality.

### c.  Adequacy

Plaintiffs next argue that adequacy is demonstrated in this case. In so doing, Plaintiffs contend that they have common interests with the unnamed members of the proposed class and that they have vigorously prosecuted the interests of the class through qualified counsel. On the first prong, Plaintiffs argue that they are challenging the same unlawful conduct (the Tenant System) and seeking the same relief as the rest of the putative class. On the second prong, Plaintiffs argue that their counsel are qualified and that both named Plaintiffs have demonstrated their commitment to this litigation. Plaintiffs represent that Plaintiff Hogan declined an informal settlement offer from Sirens while Plaintiff Valentine persisted in the litigation despite being blacklisted by Defendant House of Babes for doing so.

Defendants argue that Plaintiff Valentine is an inadequate representative because her signing of the Lease Agreement subjects her claims to mandatory, binding arbitration. Plaintiff Hogan, Defendants contend, is inadequate because she did not sign the Lease Agreement that the other putative class members signed.

To establish adequacy, Plaintiffs must show that they, as "the representative parties[,] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "calls for a two-pronged inquiry: (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart v. Fifth Third* Bank, 288 F.R.D. 177, 185–86 (S.D. Ohio 2012) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). With respect to the first prong, the Court must be satisfied that "the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). With respect to the second prong, the Court must be satisfied that "class counsel are qualified, experienced and generally able to conduct the litigation." *Id.*

This Court finds that the first prong is satisfied for the same reason that Plaintiffs demonstrated commonality and typicality: Plaintiffs allege that they have suffered and seek redress for the same injuries caused by the same alleged conduct as the putative class members. *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (explaining that "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."). As this Court explained when discussing commonality and typicality, *see supra* Section III.C.1.b, Plaintiffs allege that they were injured by Defendants' collusive adoption of a system which resulted in their failure to pay them or the potential class members. Plaintiffs importantly argue that the Tenant System was enforced against Plaintiff Hogan although she never signed the Lease Agreement. Whether Plaintiff Hogan signed a Lease Agreement is thus immaterial to the question of whether she suffered the same injuries as the putative class members. Whether Plaintiff Valentine's claims are subject to arbitration requires the resolution of a factual dispute that is immaterial to this

analysis. Further, this Court has explained that it lacks presently the ability to determine whether arbitration is compelled at this time. *See supra* Section III.A. Besides, Plaintiff Valentine raises the defense that Defendants may have waived the issue of arbitration by failing to invoke it earlier in the litigation. It is also likely that several other potential class members will similarly face the defense that their agreements compel their claims to mandatory arbitration. The first prong is thus satisfied.

This Court next considers the second prong. The named Plaintiffs have remained involved in this case. Further, Plaintiffs' counsel have demonstrated their ability to prosecute this matter. Although this Court has occasionally criticized Plaintiffs' counsel for failing to justify certain discovery-related requests (*See, e.g.,* ECF No. 410), this Court also notes that Plaintiffs' counsel have vigorously litigated this matter for nearly eight years. Plaintiffs' counsel have successfully negotiated a settlement with Sirens (*See* ECF No. 350) and have filed and responded to a litany of motions in this matter. This Court thus finds "Plaintiffs' counsel [] sufficiently qualified and experienced and thus capable of serving as class counsel." *Young*, 693 F.3d at 544.

### d. Ascertainability

While Rule 23(a) does not contain an express requirement of ascertainability, the Sixth Circuit has held it to be an "implicit requirement" of class certification. *Cole*, 839 F.3d at 541. The determination that a class is ascertainable "requires only the existence of objective criteria upon which class membership is based." *McNamee v. Nationstar Mortg., LLC*, No. 2:14-CV-1948, 2018 WL 1557244, at *4 (S.D. Ohio Mar. 30, 2018) (citing *Young,* 693 F.3d at 538–39). A previous ruling by this Court provides an instructive example:

> To illustrate the difference between ascertainability and susceptibility to individualized inquiry, consider, for example, a class defined as "all people in the State of Ohio who currently have a pint of mint chocolate chip ice cream in the

freezer." Such a class is certainly ascertainable: every Ohioan either is a class member, or she is not. The inquiry is an objective one.

*Id*. In essence, the ascertainability requirement necessitates "a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Cole*, 839 F.3d at 541.

Defendants argue that the proposed class is not ascertainable because the class definition includes members who have not suffered an injury, including putative members whose claims are barred by the applicable statutes of limitations. According to Defendants, the applicable statutes of limitations for Plaintiffs' claims range from one to six years. Further, Defendants contend, Plaintiffs cannot demonstrate that ascertaining class members would be reliable and administratively feasible given that they do not have the relevant employment records. Plaintiffs respond that limitations arguments are merits-based and are thus not germane to the issue of class certification. Concerning whether ascertaining class members would be reliable and administratively feasible, Plaintiffs argue that Defendants have wrongfully withheld or destroyed the records from which class membership could be ascertained.

Given the record, this Court is satisfied that Plaintiffs' defined class is sufficiently definite. Plaintiffs' class comprises all individuals who danced at the clubs named as Defendants in this case, "from May 14, 2014 to the present," while those clubs "formally regarded [their] dancers as leasing space at such club[s] as entertainers and required them to acknowledge the same," and "while such club[s] did not pay any wages to [their] dancers." (ECF No. 396 at 2).

Contrary to Defendants' argument, this Court finds simple the relevant inquiry for determining whether a putative class member is covered by the class definition. The first question is whether the putative class member worked for a club Defendant while dancers were allegedly required to lease space. The second question is whether said club failed to pay wages to the dancer

at any point during her employment. If the putative class member's answer to both questions is "yes," she is covered by the class definition (if she worked for the club during the dates covered by the class definition). Although the parties mutually acknowledge Plaintiffs' limited access to employment records, Defendants do not dispute Plaintiffs' allegations that they failed to pay the potential class members—they merely argue that they had the legal capability not to pay them.

This Court next considers Defendants' argument that Plaintiffs' class definition includes potential class members whose claims would be time-barred. In *American Pipe & Construction Company v. Utah*, the Supreme Court found that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 555 (1974). This decision stands for the proposition that, "[w]hen a class is certified, the class members' claims are deemed to relate back to the filing of the class action complaint." *Clark*, 2023 WL 3559657, at *6 (Bush, J., concurring). The Ohio Supreme Court applied the holding in *American Pipe* to "the filing of a class action, whether in Ohio or the federal court system[.]" *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 382–83, 763 N.E.2d 160, 163 (2002). Here, Plaintiffs' original class action complaint was filed on October 6, 2015. (ECF No. 1). Plaintiffs' proposed class definition covers only individuals who commenced work on or after May 14, 2014. (ECF No. 396 at 2). Given that the putative class members would be able to proceed on at least most of the claims brought by the named Plaintiffs, Defendants' statute of limitations defense fails.

This Court thus finds that the ascertainability prong is met.

### 2. *Class Certification—Rule 23(b)(3)*

Because Plaintiffs seek to certify this class under Rule 23(b)(3), this Court must analyze whether: (1) questions of law or fact common to members of the class predominate over questions

affecting individual members; and (2) the class action is a superior method to others for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

a. <em>Predominance</em>

To obtain class certification, Plaintiffs must show that common questions of fact or law predominate over individual questions. Fed. R. Civ. P. 23(b)(3).

Plaintiffs argue that predominance is met in this case because Defendants' liability turns on whether, under the Tenant System and/or the Lease Agreement, the dancers are considered "employees" and are thus entitled to minimum wage protections.

Defendants respond that individualized issues in this case are so numerable as to make trial in this matter unmanageable. Specifically, Defendants contend, determining whether a given performer earned compensation below minimum wage is difficult because dancers' compensation levels varied. According to Defendants, determining damages would depend on such individualized issues as whether a dancer signed the contract, which statutes of limitations apply, and what the dancer's compensation was.

The Sixth Circuit has observed that, "[t]o satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124–25 (6th Cir. 2016) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). "A class may be certified based on a predominant common issue 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020).

There are two major considerations in this case with respect to damages: (1) whether, and to what extent, the putative class members were entitled to being paid as employees; and (2) what amount is owed to the putative class members in back wages and other compensation. As this Court has already determined, whether the putative class members signed the Lease Agreement or any other contract is immaterial. This Court has already considered the impact of the applicable statutes of limitations upon this matter. *See supra* Section III.C.1.d. At any rate, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young*, 693 F.3d at 544. Although true that this case presents some individualized damage issues, it is also true that liability can be determined on a class-wide basis." *Beatty*, 511 F.3d at 564 (providing that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); *Weinberg v. Insituform Techs., Inc.*, No. 93-2742 G/BRO, 1995 WL 368002, at *7 (W.D. Tenn. Apr. 7, 1995) (explaining that "[p]redominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones.").

This Court thus finds that predominance is met in this case.

### b. *Superiority*

This Court's consideration of superiority concerns whether a class action is the superior means of adjudication. Fed. R. Civ. P. 23(b)(3); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 488 (S.D. Ohio 2004) (Marbley, J.).

Plaintiffs argue that the small relative size of each individual claim makes this case the only way for the potential class members realistically to recover their unpaid pages. Additionally, Plaintiffs contend, efficiency militates in favor of concentrating the claims here because there is

no record of similar litigation in Ohio. According to Plaintiffs, this litigation should be concentrated in this forum because this case concerns pay policies affecting a large number of employees, and a final resolution here would avoid competing decisions on the issues presented herein. Finally, Plaintiffs contend, this case will not present management difficulties because the proposed class is a defined size.

Defendants argue that the issues presented in this case are too individualized to warrant the conclusion that a class action is the best way to resolve Plaintiffs' claims.

The superiority requirement "aims to achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 415 (6th Cir. 2018) (internal quotations omitted). Rule 23(b)(3) lists four factors to be considered in determining the superiority of proceeding as a class action compared to other methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3); *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2018 WL 4932087, at *9 (S.D. Ohio Sept. 10, 2018).

This Court finds that a class action is the superior method of litigating this matter. The very fact that this case has been ongoing for nearly eight years, combined with the relatively small size that each individual claim will be worth, demonstrates that individuals would have minimal incentives to prosecute this matter alone. That there is no competing litigation concerning Plaintiffs' claims militates in favor of concentrating the claims here and providing a final

adjudication of Defendants' liability resulting from Plaintiffs' claims. Further, Defendants are centralized within the geographical reach of this district. The alleged misdeeds also took place within the jurisdiction of this district. Finally, this Court does not note any evidence indicating that a class action would present management difficulties to Plaintiffs. The alleged misdeeds also took place within the jurisdiction of this district. For these reasons, the superiority factors weigh in favor of class certification.

Because "certification of a class is appropriate if it qualifies under at least one of the subdivisions of Rule 23(b)," this Court does not consider whether certification is appropriate under the other two subdivisions. *Thrope v. State of Ohio*, 173 F.R.D. 483, 490 (S.D. Ohio 1997) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079). It is sufficient for class certification purposes that Plaintiffs have satisfied Rule 23(b)(3).

### IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Plaintiffs' Motion to Certify as a Collective Action, a Rule 23 Class Action, and to Send Notice. (ECF No. 396). This Court's ruling certifies the class under subsection 23(b)(3) of the Federal Rules of Civil Procedure. This Court's ruling also grants Plaintiffs' request for FLSA court-facilitated notice, subject to the conditions of this Opinion and Order.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 6, 2023**