**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JESSICA HOGAN,** *et al.*, *individually and on behalf of others similarly situated,* | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:15-cv-2883** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **CLEVELAND AVE REST., INC.,** *et al.*, | : | **Magistrate Judge S. Courter Shimeall** |
| | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

This matter is before this Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement (ECF No. 490) and Plaintiffs' Motion for an Order to Show Cause (ECF No. 492). As the Court stated on the record at the March 27, 2026 hearing, these Motions are **GRANTED**. The Court provides its reasoning below.

### I.    BACKGROUND

This case is a labor dispute about exotic dancing, and what is owed to those dancers. Plaintiffs Jessica Hogan and Dejha Valentine were employed as exotic dancers for various Ohio-based adult entertainment clubs. They sued a group of club owners, managers, and clubs themselves, along with a strip club trade association executive and two strip club trade associations, arguing that these Defendants conspired and illegally colluded to require exotic dancers to pay rent to the clubs at which they danced, rather than paying them the minimum wage that employers owe employees. (*E.g.*, ECF No. 271 ¶¶ 1, 13, 29, 78–79).

One group of Defendants associated with a strip club called Sirens (the "Sirens Defendants"), settled after this Court certified a class of bartenders and exotic dancers for wage

1

and hour violations.  *See Hogan v. Cleveland Ave Rest., Inc.*, 2021 WL 12152696, at \*1 (S.D. Ohio May 17, 2021) (Marbley, J.).  Plaintiffs' case continued against the other Defendants.

On September 6, 2023, this Court certified a class pursuant to Fed. R. Civ. P. 23 consisting of all individuals who danced at the Defendant clubs in this case from May 14, 2014 to the present, while those clubs formally regarded their dancers as leasing their space and required them to acknowledge the same, and while some of those clubs did not pay any wages to their dancers. *Hogan v. Cleveland Ave Rest., Inc.*, 690 F. Supp. 3d 759, 787 (S.D. Ohio Sept. 6, 2023) (Marbley, J.).  Plaintiffs' counsel was appointed Class Counsel.  *Id.* at 786.  Plaintiffs ultimately did not distribute notice to the class, however, due to difficulties in obtaining a complete class list—in part because many Defendants lacked records for their exotic dancers, including records establishing identities, work time, dates of work, and contact information.  (ECF No. 490 at 5).

One year later, in October 2024, Plaintiffs and most of the remaining Defendants jointly requested a stay in the proceedings so that they could negotiate a resolution.  (ECF No. 473 at 1). This Court promptly granted that request.  (ECF No. 474 at 1).  These parties met with a mediator in January and February of 2025 and negotiated terms of a final settlement through May.  Now, Plaintiffs and this group of the remaining Defendants (the "Settling Defendants")[1] have resolved their dispute.  On July 21, 2025, Plaintiffs filed the Motion for Preliminary Approval of Proposed Settlement for the class.  In that Motion, they also requested preliminary approval of their Proposed Notice Plan (ECF No. 490 at 25–26; *see* ECF Nos. 490-3; 490-4; 490-5) and Proposed Claim Form (ECF No. 490-2), and seek the appointment of Atticus Administration LLC as Claims

---

[1] The Settling Defendants are Cheeks, House of Babes, Top Hat Gentlemen's Club, Fantasyland West, Private Dancer, LL Entertainment LLC, The Owners Coalition, Buckeye Association of Club Executives, Inc., Greg Flaig, the Estate of Elbert Lee Hale, WCI Inc., Erick Cockran, James Deascentis, Larry Fugate, Mark Potts, Jimmy Lee, Timothy Young, Foursome Entertainment, Inc., Threesome Entertainment, Inc., and John Mathews.  (*See* ECF No. 489).  Defendants Centerfold, Brenda Bonzo, and Ray Allgood have thus failed to respond in this action.  (*See* ECF No. 411).

Administrator.  (ECF No. 490 at 27; *see generally id.* at 5–10).  The key terms of the Proposed Settlement are summarized below.

### A.  Proposed Settlement

The Proposed Settlement (ECF No. 490-1) would provide both monetary and non-monetary relief for members of the class that this Court certified for the period beginning March 14, 2014 and ending June 16, 2025.  The total monetary settlement would be $800,000.  Of that amount, $700,000 would come from the Defendants associated with Cheeks, House of Babes, Top Hat Gentlemen's Club, and Fantasyland West, while $100,000 would come from the Defendants associated with Private Dancer.  One-third of the settlement fund, or $266,640.00, would be allocated for attorneys' fees, "plus advanced litigation costs" repaid to Class Counsel totaling $15,293.49.  (ECF Nos. 490-1 §§ 3(C)(i), 5(A)–(B); 490 at 2).  The two named Plaintiffs would each receive $5,000.00 as service awards for being class representatives, and presumably the Claims Administrator would receive the $10,000.00 allocated for it.  (ECF No. 490 at 2, 27).  This would leave $498,066.51 left to be designated as the Net Settlement Fund, which would be divided into three Subfunds and dispersed out to eligible class members who submitted electronic or mail-in forms seeking Subfund shares.  (*See id.* at 2; ECF No. 490-1 § 3(C)(ii)).

The three Subfunds divide the Net Settlement Fund across three sets of claims.  First, 32% of the Net Settlement Fund would be allocated to Subfund One, which would compensate the antitrust claims of dancers conditionally certified as a collective action who entertained at the settling Defendants' clubs since September 16, 2019.  (ECF No. 490-1 §§ 3(C)(ii), 1(C)); *Hogan*, 690 F. Supp. 3d at 783.  Second, 60% would be allocated to Subfund Two, which would compensate all other released claims of the dancers who entertained at the Settling Defendants'

clubs, *except* for Private Dancer.  (ECF No. 490-1 §§ 3(C)(ii), 6).  Third, the remaining 8% would compensate all other released claims of the dancers who entertained at Private Dancer.  (*Id.*).

Plaintiffs explain that the Subfunds are separated because they allege all antitrust class members were harmed equally by the alleged antitrust conspiracy, whereas the wage-related claims derive from alleged employer-employee relationships.  (ECF No. 490 at 8–9).  Each Subfund would be distributed evenly among eligible class members[2] with a share in that Subfund. (*Id.* at 9–10).  Plaintiffs posit that their claims-submission approach is necessary for the wage-related claims due to the lack of records providing identifiable information about the dancers who worked at Defendant strip-clubs.  (*Id.* at 14–17, 18–19).

Finally, the Proposed Settlement would offer non-monetary relief.  The Defendants would "permanently cease" use and dissemination of their "Tenant System" requiring strip-club dancers to pay "rent" to perform at the club, and would either classify their dancers as employees, or allow their dancers to choose to be classified as employees or independent contractors.  (ECF No. 490-1 § 4).

### B.  Motion for Order to Show Cause

On September 26, 2025, shortly after requesting preliminary approval for their Proposed Settlement with the Settling Defendants, Plaintiffs moved for a show cause order against the Sirens Defendants who had previously settled.  In that Motion, Plaintiffs noted that the Sirens Defendants had missed their September 2025 payment of $8,000 and suggested that they may have failed to provide the Special Master with a required proposal for curing their arrears, which were in excess of $182,000.  (ECF Nos. 492 at 3–4; 492-1 at 1).  This Court had previously cautioned the Sirens

---

[2] Since the dancers who worked at Sirens resolved their wage-related claims against the Settling Defendants, they would be unable to claim shares in Subfund Two, but could claim shares in Subfund One.  (*Id.* at 9 n.4).

4

Defendants in February of 2025 that should they "fail to honor their future obligations in accordance with the Settlement Agreement, they will be ordered to show cause why they should not be held in contempt or be subject to other sanctions." (ECF No. 480 at 4).

Of the Sirens Defendants, Defendants Cleveland Ave Restaurant, Inc. and Michael Sharrak quickly responded, first representing that they had been granted an extension by the Special Master for a proposal to cure their arrearage and that they had submitted their proposal on September 5th. (ECF No. 493 at 1). Second, they explained that they had made their September settlement payment of $8,000 on September 29th, because the mother of Sirens Defendants Michael and Francis Sharrak had been admitted to intensive care in a Michigan hospital on August 27. Thus, the Sharrak brothers had traveled to Michigan "to be by her side, where they remained nearly 24 hours per day for several weeks." (*Id.* at 1–2). They did concede that Francis Sharrak "returned to Columbus on September 18, 2025" and thereafter "began to address business issues that piled up in his absence." (*Id.* at 2). Francis Sharrak, who was without counsel, did not respond.

In reply, Plaintiffs argue that the issue is "not just one missed installment payment," but a series of missed payments, such that by early October 2025, the Sirens Defendants had only made 7 timely payments out of 53 owed. (ECF No. 495 at 2). They argue that the Sirens Defendants' ability to continue to pay is jeopardized by an ongoing lawsuit in the Franklin County Court of Common Pleas about ownership of the Sirens club. (*Id.* at 5). As a remedy, Plaintiffs request that the Sirens Defendants be required to provide Plaintiffs with access to financial records for their strip club, and disclose their assets under oath, to establish how much revenue their strip club is currently generating. (*Id.* at 4–6).

The Court held a hearing to address Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement (ECF No. 490) and Plaintiffs' Motion for an Order to Show

5

Cause (ECF No. 492) on March 27, 2026.  At that hearing, the Court orally granted both motions.

The Show Cause Hearing was continued to July 1, 2026 due to counsel changes.  The bulk of this

Court's Opinion focuses on the Unopposed Motion for Preliminary Approval of Proposed

Settlement.  The Motion for an Order to Show Cause is addressed in Section IV, *infra*, as well as

in the Court's July 1, 2026 Compliance Order (ECF No. 514).

## II.    STANDARD OF REVIEW

Class action suits filed in federal court may be settled "only with the court's approval."

Fed. R. Civ. P. 23(e).  This court approval process ordinarily involves two steps.  First, counsel

submits proposed terms of settlement to the district court, and the court conducts a "preliminary

fairness evaluation."  Then, if the court is satisfied with its initial inquiry into the "fairness,

reasonableness, and adequacy" of the proposed settlement, it provides notice of a final Rule 23(e)

fairness hearing to the class.  *Andrews v. State Auto Mut. Ins. Co.*, 2023 WL 11104245, at *2 (S.D.

Ohio May 22, 2023) (Marbley, J.).

This Court evaluates the requirements of Rule 23 and the Sixth Circuit's earlier seven-

factor test to evaluate whether a proposed settlement is "fair, reasonable, and adequate."  Fed. R.

Civ. P. 23(e)(2).  Rule 23(e) provides that when a proposed settlement would be binding, district

courts must hold a hearing and evaluate four considerations:  whether (1) the class representatives

and class counsel adequately represented the class; (2) the proposal was negotiated at arm's length;

(3) the relief provided to the class is adequate; and (4) the proposal treats class members equitably.

*Id.*

The Sixth Circuit's seven-factor test is now harmonized[3] with the amended Rule 23(e)(2)

requirements.  *E.g.*, *In re Amazon.com, Inc. Fulfillment Ctr. FLSA Litig.*, 2024 WL 3361639, at

---

[3] The Sixth Circuit's seven-factor test predated the 2018 amendment to Rule 23.  Importantly, the 2018 amendment to Rule 23 did not "displace any factor" in the Sixth Circuit's test, "but rather

*1–2 (W.D. Ky. July 10, 2024); *In re E. Palestine Train Derailment*, 158 F.4th 704, 713 (6th Cir. 2025). Under the Sixth Circuit's seven-factor test, courts analyze: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Andrews*, 2023 WL 11104245, at *2; *Does 1–2 v. Deja-Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019); *see also Emp. Ret. Sys. of City of St. Louis v. Jones*, 2024 WL 659984, at *4 (6th Cir. 2024). The likelihood of success on the merits is considered the most important factor. *Does 1–2*, 925 F.3d at 895.

### III.    PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

This Court finds—for the purposes of preliminary approval of the Proposed Settlement between Plaintiffs, on behalf of the class, and the Settling Defendants—that Plaintiffs have adequately demonstrated that the Proposed Settlement is fair, reasonable, and adequate.

#### A.  Bona Fide Dispute

As a threshold matter, this Court must first determine whether the proposed settlement would resolve an actual dispute over Fair Labor Standards Act provisions. *See Hogan v. Cleveland Ave Rest., Inc.*, 2019 WL 6715976, at *4 (S.D. Ohio Dec. 10, 2019) (Marbley, J.). This requirement of a bona fide dispute ensures that "plaintiff employees have not—at least not without good cause—relinquished their rights to compensation guaranteed" by statute. *Carter v. Paschall Truck Lines, Inc.*, 2025 WL 899854, at *2 (W.D. Ky. Mar. 25, 2025) (internal quotation marks and citation omitted). If there is no bona fide dispute, then settlement would be inappropriate.

---

. . . focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

Plaintiffs did not specifically brief this issue,[4] so the Court raised it at the March 27 hearing. There, Plaintiffs confirmed the contours of the dispute. There can be no question that there is a bona fide dispute here. For instance, Plaintiffs recognize that there are the "substantial risks in proceeding to judgment," particularly given their antitrust and civil conspiracy claims. (*See* ECF No. 490 at 13). This case has been litigated for over ten years, with Plaintiffs alleging that Defendants conspired to deny Plaintiffs and other class members owed wages because Defendants required them to *pay rent* to Defendants' clubs to dance there, rather than *paying* them a minimum wage. *Hogan*, 690 F. Supp. 3d at 769–70, 785 (S.D. Ohio Sept. 6, 2023) (Marbley, J.). Having concluded that there is indeed a bona fide dispute, the next task is to conduct the required preliminary fairness inquiry.

## B. Fairness Evaluation

***Likelihood of success on the merits.*** The first and most important factor that this Court must consider in approving this Proposed Settlement is the Plaintiffs' probability of success on the merits, particularly when compared with the recovery provided for in the settlement. *Hafley v. Amtel, LLC*, 2024 WL 2313011, at *3 (S.D. Ohio May 21, 2024) (Marbley, J.). Although Plaintiffs appear confident in the viability of their minimum-wage claims, they recognize that the antitrust and civil conspiracy claims "present novel questions." (ECF No. 490 at 13). Moreover, Plaintiffs recognize that even if they should succeed, they may face further hurdles actually collecting from Defendants, particularly given issues with Defendants' recordkeeping and the nature of

---

[4] At the hearing, Plaintiffs' counsel represented that they believed it was no longer necessary in light of Judge Cole's decision in *Gilstrap*. In that case, Judge Cole concluded that district courts do not have "what amounts to a veto power over a private settlement agreement" because the settlement addresses a Fair Labor Standards Act case. *Gilstrap v. Sushinati LLC*, 734 F. Supp. 3d 710, 714 (S.D. Ohio 2024) (Cole, J.). But other courts have disagreed with *Gilstrap*, *see Maldonado v. WK Kellogg Co.*, 2025 WL 1427073, at *4–5 (W.D. Mich. May 6, 2025), and this Court has not adopted that approach. *E.g.*, *Hafley v. Amtel, LLC*, 2024 WL 2133011, at *5 (S.D. Ohio May 21, 2024) (Marbley, J.).

Defendants' businesses. (*Id.* at 13–14). In sum, uncertainty exists as to whether Plaintiffs would prevail on all their claims, and whether they even will be able to collect from Defendants. Settlement is "particularly sensible" where "continued litigation would . . . significantly delay[] . . . payments without any certainty of yielding a larger award." *Palestine*, 158 F.4th at 713. This first and most important factor "weighs in favor of approval"—as it also has at previous junctures in this case. *Hogan*, 2019 WL 6715976, at *5; *accord Hafley*, 2024 WL 2313011, at *3.

***Adequacy and equity of relief; complexity, expense, and likely duration of litigation.*** It is also important to consider whether "the relief provided for the class is adequate" in light of the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). In this particular case, the complexity of this litigation is intertwined with the adequacy of the proposed relief, as well as the need to treat class members equitably. *See* Fed. R. Civ. P. 23(e)(2)(D).

Plaintiffs argue that this "is not a garden-variety wage case," because it includes involved antitrust and civil conspiracy claims against a series of Defendants. (ECF No. 490 at 24). They also point out that this long-running case could take many more years if not resolved via settlement, due to the possibility of bankruptcies or appeals. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This risk of further litigation and the fact that settling Defendants "fail[ed] to maintain comprehensive wage and hour records"—to the detriment of Class Counsel being able to precisely determine damages and contact absent class members—would only further increase litigation costs and reduce the amount of money that could be recovered. (ECF No. 490 at 13–14); *see* Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iii).

Due to the limited record in this case and given the difficulty in establishing "the exact hours dancers worked," the Proposed Settlement would instead require class members to complete and submit a Claim Form, rather than immediately receiving a check with individualized awards

based on calculable hours worked.  (ECF Nos. 490 at 14–17; 490-1 at 4).  Plaintiffs propose that the "most equitable distribution method" would be subdividing the applicable Subfunds of the proposed Net Settlement Fund and dividing each Subfund equally among all dancers eligible for that Subfund, because there is no information to determine the specific hours each dancer worked. (ECF No. 490 at 17, 18–19).  Before any funds would be allocated to the Net Settlement Fund, the Proposed Settlement would award Class Counsel one-third of the settlement fund as attorneys' fees, plus reimbursement of litigation expenses totaling $15,293.49.  (*Id.* at 7, 17–18).  Factoring this in with the two proposed $5,000 service awards to the class representatives, Plaintiffs estimate that the net funds available to class members would approximate half a million dollars.  (*Id.*).

For the purposes of preliminary approval, Plaintiffs' proposed method of processing class-member claims appears appropriate, Fed. R. Civ. P. 23(e)(2)(C)(ii), (iv), and seems to treat class members as equitably as possible given the apparent dearth of information in Defendants' possession that would otherwise aid Class Counsel in ascertaining the hours worked by each class member.  Fed. R. Civ. P. 23(e)(2)(D).  The terms of the proposed award of attorneys' fees and compensation for litigation expenses, along with Plaintiffs' incentive payments, are in line with what is considered reasonable by courts within this circuit and this Court's previous awards in this case.  *Hogan*, 2019 WL 6715976, at *6 (finding proposed one-third attorneys' fees and two $10,000 incentive payments appropriate for purposes of preliminary approval); *see Palestine*, 158 F.4th at 714 (attorneys' fees of approximately 27% along with class representative awards of $15,000 were "within [the] acceptable range" where a settlement required "complex and lengthy negotiations"); Fed. R. Civ. P. 23(e)(2)(C)(iii).  The proposed attorneys' fees and litigation

expenses are sufficient for the purposes of preliminary approval, and a final determination will be made at the final approval stage.[5]

As this Court has already observed, settlement of this case would "eliminate[] the burden on the parties of preparing and proceeding with trial" where there are complex factual and legal issues due to the nature of the case and Defendants' recordkeeping issues. *Hogan*, 2019 WL 6715976, at *5. Thus, the factor evaluating the complexity, duration, and expense of the litigation—and its related requirements of the adequacy and equity of relief—weigh in favor of approval. *Id.*; Fed. R. Civ. P. 23(e)(2)(C)–(D).

***Stage of Proceedings.*** As Plaintiffs point out, although the parties have engaged in significant discovery efforts over the years, the nature of Defendants' recordkeeping has negatively impacted the possible universe of discoverable information. Indeed, a significant impediment to discovery has been the "lack of records for Defendants' exotic dancers, including their identities, dates of work, and contact information." (ECF No. 490 at 5; *id.* n.3; *see id.* at 25). This is unfortunate, but it appears that the possible discovery has essentially been done. Over many years, "the parties have had opportunity to review the substantial amount of information." *Hogan*, 2019 WL 6715976, at *5. This Court is satisfied that Plaintiffs have received adequate information to inform liability and damages and evaluate the Proposed Settlement. *Hafley*, 2024 WL 2313011, at *3.

***Arms-length negotiations.*** Plaintiffs maintain that the negotiations were conducted at arm's length. (*See* ECF No. 490 at 11–12). This Court begins with the presumption that there was no fraud or collusion, absent contrary evidence, *see id.*, and at present there is no reason to believe that the Proposed Settlement involves fraud or collusion. Indeed, as Plaintiffs point out, this case

---

[5] Class Counsel shall submit a tally of all hours spent on this matter, as well as their total litigation expenses, at that time.

11

has been vigorously prosecuted for a significant duration.  Thus, this requirement is satisfied.  Fed. R. Civ. P. 23(e)(2)(B).

*Judgment of Experienced Counsel and Class Representatives.*  Next, this Court evaluates the opinion of Class Counsel and the class representatives and considers whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  There is no question that Class Counsel has experience in litigating class action lawsuits in this district, (ECF No. 490 at 11–12), as this Court has noted in the past.  *See Hogan*, 2019 WL 6715976, at *5 (granting weight to the "belief of experienced counsel").  The class representatives believe that the Proposed Settlement is appropriate.  (*See* ECF No. 490 at 7).  Defendants and their counsel engaged in settlement negotiations, agreed to the Proposed Settlement, and do not oppose the pending motion.  (*Id.* at 5).  The requirement that class counsel and class representatives adequately represented the class has been met, Fed. R. Civ. P. 23(e)(2)(A), and this factor also weighs in favor of approval.

*Reaction of Absent Class Members.*  As Plaintiffs have pointed out, "this case poses significant challenges for reaching class members with the settlement notices . . . because Defendants do not have the work records on their dancers that one might expect to see in a typical wage and hour case."  (ECF No. 490 at 14; *see id.* at 25–27).  This factor will be best evaluated at the final approval stage, after class members are notified of the Proposed Settlement and can weigh in.  *Hogan*, 2019 WL 6715976, at *5.

*Public Interest.*  Finally, this Court must  consider whether the public interest would be served by settlement.  This factor weighs in favor of approval here, given that the Proposed Settlement would end long and protracted litigation.  *See Hogan*, 2019 WL 6715976, at *5.  In sum, the Rule 23(e)(2) requirements have been met, and the balance of the seven fairness factors

12

this Court must consider weigh in favor of approving the parties' Proposed Settlement on a preliminary basis.

### C.  Proposed Notice Plan

Next, Plaintiff proposes a notice plan with three forms of notice:  (1) notice via email to possible class members with known email addresses; (2) posted notice at all club Defendants' sites in a conspicuous location; and (3) a full-length notice available on the website of the Claims Administrator, and mailed to any possible class members for whom Class Counsel has mailing addresses but no email addresses.  (ECF No. 490 at 26).

This Court **APPROVES** the Proposed Notice Plan.  (*Id.* at 25–26; *see* ECF Nos. 490-3; 490-4; 490-5).   The Proposed Notice Plan is appropriately aligned with this Court's prior September 6, 2023 Order, which authorized notice by U.S. mail and email, by posted notice "at all club Defendants' sites in a conspicuous location," and on "a website" with "publication notices for dissemination." *Hogan*, 690 F. Supp. 3d at 780–81.

### D.  Proposed Claims Administrator and Claim Form

Plaintiffs also seek this Court's approval of the Proposed Claim Form (ECF No. 490-2), and approval of the appointment of Atticus Administration LLC as the Claims Administrator. (ECF No. 490 at 27).  Defendants have not objected.  Plaintiffs' Proposed Claim Form and the appointment of Atticus Administration LLC are **APPROVED**.  *See Hogan*, 690 F. Supp. 3d at 783.  Atticus Administration LLC is **GRANTED** fees in an amount not to exceed $10,000.

### E.  Proposed Timeline

Finally, Plaintiffs request that this Court approve the proposed timeline and dissemination of notices.  (ECF Nos. 490 at 26–27; 490-6).  Again, Defendants have not objected.  The proposed timeline and notice dissemination are **ADOPTED AND APPROVED** as follows.

13

| Post-Order Timeline | |
|---|---|
| **Notice Deadline:** Class Administrator to disseminate forms of notice by this date. | July 21, 2026 |
| **Objection Deadline:** All Class-Action Objections must be filed with the U.S. District Court, Southern District of Ohio in the matter of *Hogan v. Cleveland Ave Rest., Inc.*, Case No. 2:15-cv-2883 no later than 90 days from the Notice Deadline.  To be valid, Objections must be signed and must adhere to the requirements of Fed. R. Civ. P. 23(e)(5)(A).  Each Objector must provide their full name, mailing address, telephone number, identity of counsel (if represented by an attorney), and a statement providing (i) whether the Objector intends to appear at the Final Approval Hearing; and (ii) identifying all class action settlements the Objector has objected to in the previous five (5) years.  Finally, Objectors agree to submit to discovery related to their Objections. | October 20, 2026 |
| **Opt-Out Deadline:** All requests to opt out of the Class or object to the proposed Settlement Agreement must be received by Class Counsel no later than 90 days after the Notice Date. Any request to opt out should, to the extent possible, contain words or phrases such as "opt-out," "opt out," "exclusion," or words or phrases to that effect indicating an intent not to participate in the case or the settlement, or be bound by this Agreement.  Opt-out notices shall not be rejected simply because they were inadvertently sent to the Court so long as they are timely postmarked or received by Class Counsel. Class Members who seek to opt out shall receive no benefit or compensation under this Agreement. | October 20, 2026 |
| **Claims Deadline:** All Settlement Claims must be postmarked or received by the Claims Administrator no later than 90 days from the Notice Deadline.  Class Counsel and the Claims Administrator are each responsible for ensuring forms of notice reflect accurate dates. | October 20, 2026 |
| **Motion for Final Approval:** Deadline for any Motion seeking final approval of the Proposed Settlement.  Any objections to such a Motion shall be due within 14 days; any reply to said objections shall be due within 7 days after the objections are filed. | November 3, 2026 |
| **Final Approval Hearing:** The Final Approval Hearing shall take place in person at the U.S. District Court, Southern District of Ohio, 85 Marconi Boulevard, Courtroom 331, Columbus, Ohio 43215. | December 1, 2026 |

Should the Proposed Settlement be granted following the Final Approval Hearing, payment by the Settling Defendants shall be due within 30 days following the Order granting Final Approval.  Payment of the Class Member Claims, Class Representative Service Awards, Claims

14

Administrator Fees, and Attorneys' Fees and Expenses shall be made within 21 days following receipt of the Settling Defendants' payment.

### IV.     MOTION FOR ORDER TO SHOW CAUSE

Next, this Court **GRANTED** Plaintiffs' Motion for an Order to Show Cause (ECF No. 492) against the Sirens Defendants.  The Court previously cautioned the Sirens Defendants that they could be ordered to show cause if they failed to honor their future obligations.  (ECF No. 480 at 4).  The Sirens Defendants effectively conceded that they had failed to honor their future obligations.  (*See* ECF Nos. 493; 494).  As discussed at the hearings held before the Court on March 27, April 29, and July 1, 2026, as well as discussed in the Court's July 1, 2026 Order, the Court has sanctioned the Sirens Defendants and imposed a remedial schedule.  (*See* ECF No. 514).

### V.     CONCLUSION

For the foregoing reasons, and for good cause shown, Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement is **GRANTED**.  The Proposed Settlement is **APPROVED** as fair, reasonable, and adequate for the purposes of Fed. R. Civ. P. 23(e)(2), subject to further consideration at a Final Approval Hearing.  Atticus Administration LLC is **APPOINTED** to serve as Claims Administrator.  The Proposed Claim Form is **APPROVED**.  The Proposed Notice Plan and Proposed Timeline are each **ADOPTED** as addressed in Sections III(C) & (E), *supra*.  Notices **SHALL** be disseminated in accordance with that Plan and this Order.  This Court shall retain jurisdiction over the settlement agreement.

The parties **SHALL** appear before this Court for a Final Settlement Approval Hearing on **December 1, 2026 at <u>9:30 a.m.</u>** at the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Courtroom 331, Columbus, Ohio 43215.

Plaintiffs' Motion for an Order to Show Cause was **GRANTED** for the reasons stated on the record.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  July 6, 2026**

16