**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JESSICA HOGAN, *et al.*, *individually and on behalf of others similarly situated*,** | : | |
| **Plaintiffs,** | : | **Case No. 2:15-cv-2883** |
| **v.** | : | **Judge Algenon L. Marbley** |
| **CLEVELAND AVE REST., INC., *et al.*,** | : | **Magistrate Judge S. Courter Shimeall** |
| **Defendants.** | : | |

**ORDER**

On September 23, 2026, this Court issued a Contempt Opinion and Order to Show Cause why the Defendants—who have already been found by this Court to be in civil contempt—should not be further sanctioned for continuing to disregard the Court's previous orders to fulfill their payment obligations under a settlement agreement. (ECF No. 539). The Court held a hearing on this matter and found by clear and convincing evidence that Defendants are in violation of Court orders. (ECF No. 545). For the following reasons, the Court continues to **HOLD** Defendants in civil contempt for failure to comply with the Court's February 12, 2025 Order (ECF No. 480). The Court further **ORDERS** Defendants Michael Sharrak, Francis Sharrak, and Jay Nelson to be incarcerated until they purge themselves of the civil contempt by paying **$240,891.82.**

## I. BACKGROUND

In May 2021, this Court approved a settlement agreement pursuant to which Defendants Cleveland Ave Restaurant, Inc., Cleveland Avenue Café, Inc., Francis Sharrak, Michael Sharrak, and Jay Nelson agreed to pay $600,000 into a Settlement Fund to resolve Plaintiffs' and the Class Members' claims against them. (ECF No. 350). Under the terms of that agreement, the Defendants

were to make monthly payments of $8,000. (*See* Settlement Agreement, ECF No. 223-1). The agreement also provided for the appointment of a Special Master to ensure enforcement of payments. (*Id.*). The Special Master later appointed Special Counsel for collections purposes. (*See* ECF No. 502).

In February 2025, the Court held a conference to discuss Defendants' payment obligations after Class Counsel expressed concerns regarding untimely and missed payments. (ECF Nos. 476, 479). Following that conference, the Court issued its February 12, 2025 Order defining the scope of the Special Master's duties and setting forth a schedule to determine Defendants' outstanding financial obligations under the Settlement Agreement. (ECF No. 480). Of particular relevance here, the Court ordered the Defendants to resume their monthly payments of $8,000 by April 21, 2025, explicitly noting that they would be ordered to show cause as to why they should not be held in contempt if they failed to do so:

> On or before **April 21, 2025**, Defendants shall resume their monthly payment installments of **$8,000.00** to Class Members and shall file a notice of compliance upon making the payment.
>
> Should Defendants fail to tender payment on **April 21, 2025**, fail to comply with any other directives in this Order, or fail to honor their future obligations in accordance with the Settlement Agreement, they will be ordered to show cause why they should not be held in contempt or be subject to other sanctions.

(*Id.* at 4).

In September 2025, the Defendants failed to make the required monthly installment payment, and Plaintiffs moved for an order to show cause.[1] (ECF Nos. 492 at 4; 493 at 1–2). The Court granted the motion and held the first show cause hearing on March 27, 2026. (ECF Nos.

[1] Defendants ultimately made this payment, but it was untimely. No payments have been made to the class since November 2025.

497, 503). At the March 27, 2026 hearing, the Defendants' attorney moved to withdraw.[2] The Court granted that request and continued the hearing until April 29, 2026 to provide the Defendants additional time to secure counsel. The Court directed the Defendants to obtain counsel by the new date.

Despite the extension and the Court's direction, Defendants showed up to the second show cause hearing on April 29, 2026 without new counsel. (*See* ECF No. 511). Defendants Francis Sharrak and Jay Nelson also arrived nearly one hour late. The Court sanctioned Mr. Sharrak and Mr. Nelson for being late and again continued the matter to ensure Defendants were represented by counsel. The Court set the third show cause hearing for July 1, 2026. (ECF No. 506).

At the July 1, 2026 hearing, Defendants Cleveland Ave Restaurant, Inc., Jay Nelson, Francis Sharrak, and Michael Sharrak appeared represented by counsel. The Court concluded that the Defendants violated the terms of the Court's February 12, 2025 Order. The Court found that these defendants had "failed to comply with the terms of the [Settlement] Agreement, [and] that their failure . . . amount[ed] to a contempt of this Court and its orders." (ECF No. 524 at 30–31). As defense counsel stated candidly in requesting additional time to bring his clients back into compliance:

> **DEFENSE COUNSEL:** I've also told them, without putting words in your mouth, that 'You're going to get hit with a civil contempt charge. If I'm the judge, I'm going to hit you with a civil contempt charge.
>
> * * *
>
> **DEFENSE COUNSEL:** I'm only asking this to July 10th, Your Honor. If we have a hearing on the 10th—and the fact is, if we don't come up with the money, we don't come up with something, then if the guys have to go to jail, they go to jail. They realize that.

[2] The Motion to Withdraw was submitted by counsel for Defendants Cleveland Ave Restaurant, Inc. and Michael Sharrak. At that time, Francis Sharrak and Jay Nelson were proceeding *pro se*.

(*Id.* at 23–24).

Based in part on Defendants' representation that they could pay the outstanding balance of approximately $246,000 by July 10, the Court delayed enforcement of its contempt finding. In attempt to avoid incarcerating Defendants for their contempt, the Court issued a detailed Compliance Order that set forth a further schedule for Defendants to satisfy their outstanding payment obligations. (ECF No. 514). Among other things, the Court ordered:

> By **July 10, 2026**, Defendants **SHALL** pay the outstanding balance (approximately $246,000) that is owed under the Settlement Agreement.

(*Id.* at 4) (footnote omitted). In the event Defendants failed to pay that balance, the Court enumerated further procedures in an effort to get Plaintiffs the money they were owed while avoiding incarceration for Defendants. For instance, the Court ordered Defendants to surrender immediately to the Special Master or Special Counsel any payments made by any business in which any Defendant has an interest. (*Id.* at 5). The Court explicitly "retain[ed] the right, in the event Defendants fail to pay any of the outstanding balance, attorneys' fees, interest, sanction, or Special Counsel retainer, or otherwise adhere to this Order, to impose any additional sanctions for civil contempt permitted by law." (*Id.* at 6).

Despite the indication that Defendants could "come up with the money" by July 10, no additional payments of any kind were made to Special Counsel, the Special Master, or Plaintiffs by that date. (ECF No. 520 at 2). On September 14, 2026, Special Counsel filed a motion to show cause as to why Defendants should not be held in contempt for violation of the July 1, 2026 Order. (ECF No. 534). According to Special Counsel, documents filed in debtor Cleveland Avenue Café, Inc.'s bankruptcy proceeding indicated that since July 1, 2026, Defendants Michael Sharrak, Francis Sharrak, and Jay Nelson received $18,000.00, $21,000.00, and $12,000.00 respectively, while Special counsel received $0.00 despite the Court's July 1, 2026 Order. (*Id.* at 3). Special

Counsel requested that the Defendants "immediately pay over all amounts received by them since the Compliance Order of July 1, 2026," and "be arrested and held in contempt until said amounts are paid." (ECF No. 534 at 3–4). Special Counsel supplemented his Motion after learning that Michael Sharrak sold real estate for $1.1 million, with a deed showing transfer of August 31, 2026. (ECF No. 535 at 1).

In response to Special Counsel's motion, Defendants submitted an Expedited Motion requesting various relief and offered "more than $10,000 that is presently available for immediate payment toward compliance." (ECF No. 537 at 6). Defendants sought clarification that the turnover remedy came into effect on July 10. (*Id.* at 4–5). They acknowledged Michael Sharrak's property sale after July 10, but explained that there was no cash or wire distribution to Michael, although $200,000 remains in a court-ordered escrow account. (*Id.* at 3). Defendants sought to be able to add evidence to the record regarding the sale. (*Id.*). They requested a chambers conference before resolving "fact-dependent contempt issues," or alternatively sought until September 28, 2026 to submit a complete supplemental evidentiary response. (*Id.* 6–7). Defendants also sought leave to file a separate motion regarding essential expenses by September 28, 2026. (*Id.* at 7).

On September 23, 2026, the Court granted Defendants' request to submit supplemental evidence and file a separate motion regarding essential expenses by September 28. (ECF No. 539 at 8–10). The Court clarified that the turnover remedies came into effect on July 10, 2026 due to the undisputed failure of Defendants to pay the outstanding balance owed under the Settlement Agreement. (*Id.* at 9). The Court also granted Special Counsel's motion for a show cause hearing. (*Id.* at 12). Specifically, the Court ordered Defendants Cleveland Ave Restaurant, Inc., Michael

Sharrak, Francis Sharrak, and Jay Nelson to show cause as to why they should not be held in civil contempt and sanctioned for:

1. Their failure to comply with the Court's July 1, 2026 Compliance Order requiring them to pay the outstanding balance due and owed under the Settlement Agreement by July 10, 2026, as the Defendants represented to the Court that they would be able. (ECF No. 514 at 3–4).

2. Their failure to comply with the Court's July 1, 2026 Compliance Order requiring them, in the event that they either (a) "failed to pay the outstanding balance owed under the Settlement Agreement" by July 10, 2026, or (b) "failed to pay [the] amount of accrued interest as well as the attorneys' fees and costs" by August 10, 2026, to "immediately surrender the entirety of [any payment or thing] to the Special Master or to Special Counsel Koberg." (ECF No. 514 at 4–5).

3. Their prior civil contempt stemming from their ongoing violation of the Court's February 12, 2025 Order, which they have failed to purge themselves of to date.

(*Id.* at 12–13). The Court scheduled a show cause hearing for October 8, 2026 and ordered the Defendants to "be prepared to surrender themselves to the custody of the United States Marshals Service immediately following the hearing should the Court determine that incarceration is an appropriate sanction." (*Id.* at 13). Additionally, the Court ordered Defendants "to tender **immediately** to Special Counsel . . . the 'more than $10,000' they claim to have on hand 'that is presently available for immediate payment toward compliance.'" (*Id.* at 12). The Court "**CAUTIONED and REMINDED**" Defendants "that they remain under Court-ordered obligations to pay the Settlement Amount." (*Id.* citing *e.g.,* ECF Nos. 480 at 4; 514 at 4).

Following the Court's issuance of the Contempt Opinion and Order to Show Cause, both parties submitted supplemental filings. Defendants' supplemental filing did "not dispute that the full settlement balance was not paid by July 10," nor did it "ask the Court to vacate the prior civil contempt finding," or "alter the amount due under the Settlement Agreement." (ECF No. 540 at 1, 3). Instead, Defendants focused on transaction specific questions relating to what payments or things of value each Defendant received or controlled after July 10, 2026, contending the amounts

were less than the figures extrapolated by Special Counsel. (*Id.* at 3–4). According to Defendants, Michael Sharrak received three paychecks in July for $1,585.80 each and was prepared to surrender all three checks to the Court or Special Master, although one was issued before July 10. (*Id.* at 5–6). Francis Sharrak received approximately $8,200 in consulting receipts. (*Id.* at 8–9). And Jay Nelson received a check for $1,200 that cleared a day before July 10. (*Id.* at 9–10).

Plaintiffs' supplemental filing, on the other hand, contends, based on filings in Cleveland Avenue Café, Inc.'s bankruptcy proceeding, that more than half-a-million dollars flowed through Defendants from February 2025 to the present. (ECF No. 544 at 10). Plaintiffs assert that Defendants' club was taking in roughly $290,000 to $321,000 per month in gross revenues. (*Id.* at 3). Yet Defendants—who have not disputed this figure—have not made any $8,000 payments since November 4, 2025, bringing the balance owed under the agreement to $258,763.42, not including interest and attorneys' fees. (*Id.* at 1–2).

The Court held a show cause hearing on October 8, 2026. (ECF No. 545). Defendants appeared, represented by counsel, and provided Special Counsel an envelope with $14,700 in cash and two payroll checks in the amount of $1,585.80 each, for a combined total of $3,171.60. After subtracting those amounts from the $258,763.42 arrearage, $240,891.82 remains to be paid.[3]

## II. LAW & ANALYSIS

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Where contempt "consists of a refusal to obey a court order . . . the [person in contempt] may be confined until compliance." *Id.* (addressing witness refusal to testify). Indeed, "[t]he conditional nature of imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings

[3] At the hearing, this Court stated the outstanding balance was $240,891.60, beginning its calculations with the approximate arrearage of $258,763. The correct figure is $240,891.82.

absent the safeguards of indictment and jury, provided that the usual due process requirements are met." *Id.* at 370–71 (citation omitted). While the "precise procedures required by due process for a finding of civil, rather than criminal contempt, are somewhat unclear," contemnors are given due process where they receive "adequate notice of the contemptuous acts and the consequences of the contempt order, and by an opportunity to present their reasons for not complying with the exemplar order." *United States v. Mitchell*, 556 F.2d 371, 383 (6th Cir. 1977).

The "justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order." *United States v. Thompson*, 925 F.3d 292, 303 (6th Cir. 2019) (quoting *Shillitani*, 384 U.S. at 371) (alterations omitted); *accord Anderson v. Dunn*, 6 Wheat. 204, 231 (1821) (courts should exercise "[t]he least possible power adequate to the end proposed"). Contemnors may be jailed "*indefinitely*" until they comply, or until they establish that compliance is no longer possible. *Armstrong v. Guccione*, 470 F.3d 89, 110 (2d Cir. 2006).

The defendant has the burden of production to show that compliance is impossible. *United States v. Rylander*, 460 U.S. 752, 757 (1983). The "inability to comply is not established by evidence or denials which the court finds incredible in context. Rather, a defendant must show categorically and in detail why he or she is unable to comply with the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quotations omitted). Good faith is not a defense for failure to comply with a court order. *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989). Instead, courts "look to see whether the defendants took all reasonable steps within their power to comply with the court's order." *Id.* at 969.

"[T]he decision to hold a party in contempt is within the sound discretion of the district court." *Gascho v. Glob. Fitness Holdings,* LLC, 875 F.3d 795, 800 (6th Cir. 2017). Where a civil

contempt sanction "may deprive the contemnor of his liberty for some period," the "proof of violation of a court decree" must be shown by clear and convincing evidence. *In re Weiss*, 703 F.2d 653, 662 (2d Cir. 1983).

The Court has already found, and Defendants have conceded, that Defendants Cleveland Ave Restaurant, Inc., Michael Sharrak, Francis Sharrak, and Jay Nelson are in civil contempt of this Court's February 12, 2025 Order. The clear, unambiguous language of that Order required Defendants to resume their monthly payment installments of $8,000 to class members. (ECF No. 480 at 4). Defendants were aware of that Order and yet it is undisputed that Defendants have not made those payments since November 2025. The Court has been more than patient with Defendants and given them every opportunity to purge themselves of contempt.[4] Four show cause hearings later, Defendants' time has run out. The Court finds by clear and convincing evidence that Defendants are in continuing violation of the Court's February 12, 2025 Order and that a sanction of imprisonment until Defendants cure their contempt is appropriate. In order to cure their contempt, Defendants must pay the $240,891.82 in arrearage to the Special Counsel or Special Master.

The Court does not relish the prospect of imprisonment for civil contempt. The outcome here may have been different if Defendants were working assiduously to meet their obligations to the class members. But their cavalier approach to their duties has brought them to this point. While the Court need not decide if the Defendants are in civil contempt for violating orders other than the February 12, 2025 Order, it is worth a brief review of Defendants' continuous blatant disregard for this Court's orders. In February 2025, the Court ordered Defendants to resume their

[4] Defendants themselves acknowledge that this Court has been fair to them. *See* Tr. at 52:1–2 (Mr. Nelson: "I think you are a considerate person and a fair person[.]"); *id.* at 56:4–6 (Mr. Francis Sharrak: "I don't want you to think we're thumbing our nose at you, that did not happen, it would never happen, you've always been fair to us.").

monthly payments. (ECF No. 480). In September 2025, Defendants failed to make the monthly payment on time, only doing so after Plaintiffs filed a motion to show cause. (ECF Nos. 492, 493). After November 2025, Defendants never made another monthly payment to the class.

In July 2026, Defendants represented to the Court that they could pay the then-outstanding balance of $246,000 by July 10. (*See* ECF No. 524). The Court ordered them to do so. (ECF No. 514 at 4). Now, three months later, Defendants still have not made that payment. Also in July 2026, the Court ordered Defendants to turn over anything of value received by the business after July 10 to the Special Master or Special Counsel. (ECF No. 514 at 5). Defendants admit to receiving some payments after that date (ECF No. 540), but none of those payments was turned over prior to the show cause hearing on October 8, 2026. On September 21, 2026, Defendants represented to the Court that they had $10,000 immediately available toward their compliance obligations. (ECF No. 537). The Court ordered Defendants to tender immediately to Special Counsel all funds available for payment in an amount not less than $10,000. (ECF No. 539). Defendants did not do so prior to the show cause hearing on October 8. It is clear from Defendants' continued disregard for the Court's orders that they have not taken "all reasonable steps" to comply with the Court's order. *Peppers*, 873 F.2d at 969.

The purpose of a civil contempt proceeding is to secure compliance with judicial decrees. *United States v. Thompson*, 2022 WL 4182364, at *6 (S.D. Ohio Sept. 13, 2022) (Marbley, J.) (citing *Mitchell*, 556 F.2d at 383). As the Court has already reminded Defendants, they carry the keys to the prison in their own pocket, as they can end their incarceration at any moment by complying with the Court's order. *Hopper v. Plummer*, 887 F.3d 744, 753 (6th Cir. 2018). Defendants can, of course, show that they do not have the ability to comply with the Court's order. *Rolex Watch U.S.A., Inc.*, 74 F.3d at 720. But to do so, they must produce evidence that shows

"categorically and in detail" why they are "unable to comply with the court's order." *Id.* (internal quotations omitted). They have not done so to date.

To the contrary, Defendants explicitly stated they "do not rely on the present exhibits to assert a generalized inability to pay all obligations." (ECF No. 540 at 15). And at the July show cause hearing, Defendants represented that they could indeed pay the outstanding arrearage. (ECF 524 at 23–24). At the October hearing, Defendants appeared to change course, stating that they do not have the money to pay. *See, e.g.*, Tr. at 52:13–17; 55:22–23; 57:25–58:18. But Defendants' say so is not enough to meet their burden. *See, e.g.*, *Rolex Watch U.S.A., Inc.*, 74 F.3d at 720 ("[A]n inability to comply is not established by . . . denials which the court finds incredible in context."); *Elec. Workers Pension Tr. Fund of Loc. Union |58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003) (finding "testimony that the company's affairs had wound up shortly after the contempt hearing—presumably attempting to imply a lack of expendable funds—is hardly sufficient to show 'categorically and in detail' why [contemnor] is unable to comply with the court's order"). This is especially so when, as Mr. Nelson put it, "the credibility factor is virtually gone." (Tr. at 50:9–10).

To the extent Defendants now wish to argue that they are unable to pay their obligations, they are required to submit actual evidence to the Court proving as much. Defendants concede they have not done so. *See* Tr. at 51:19–25 (Mr. Nelson: "We can show you records that will demonstrate that if you cannot pay and you don't pay it's not a matter of unwillingness to pay. We do have those records. We have not shown you those records, and consequently the picture of our—of your understanding of our willingness to pay or lack of that is—it doesn't look good at the moment."); *id.* at 59:17–20 (Mr. Michael Sharrak: "I understand that through our - - if you tap - - it hasn't been shown we have the ability to pay. I don't know if there's a way to do that. Like

I said I have no issue opening everything I have to you so you can see I'm not lying[.]").

Plaintiffs, on the other hand, have adduced evidence through bankruptcy records that the defendants have had access to and exercised control and dominion over amounts exceeding $500,000, and approaching over $900,000.[5] (*See* ECF Nos. 504, 544). All Defendants have said in response to that evidence is that they have not received as much money as Plaintiffs and Special Counsel suggest. That is not sufficient. They have made no attempt to prove how much money they have received, nor have they submitted any evidence regarding their ability to pay. And they have had plenty of time to do so. They have known about this Court's February Order for over a year and a half. There have been four show cause hearings on this issue and a plethora of filings. Plaintiffs submitted a filing containing amounts Defendants received according to the bankruptcy filings back in April. (ECF No. 504). And the Court granted Defendants' request to submit additional evidence and a motion about their essential expenses (ECF No. 539), but they did not do so. To date, they have not shown an inability to comply with the Court's February 12, 2025 Order. Defendants must comply with that Order, or show categorically and detail why they are unable to do so, to purge themselves of contempt. Specifically, Defendants must pay $240,891.82 to Special Counsel or the Special Master, which represents the agreed upon total arrearage after subtracting the money Defendants paid to Special Counsel at the hearing.[6]

[5] This number is as high as approximately $915,000 if the money is counted the moment it flows, rather than reduced in an effort to avoid double counting money. *See* Tr. at 14:18–22.

[6] Following the hearing, the Special Master filed a notice informing the Court of a dispute over the monies paid over to Special Counsel at the hearing. (ECF No. 546). The Trustee in the Cleveland Ave Café's bankruptcy notified the Special Master that the cash likely came from the estate and asked that the funds be held until ownership is ascertained. Additionally, Special Counsel agreed to return/void the two checks totaling $3,171.60. Thus, the arrearage number is no longer $240,891.82 and is now higher, though the exact amount depends on resolution of the ownership of the cash. For purposes of purging the civil contempt, however, the Court will continue to use the $240,891.82 number, as it is unfair to hold the Defendants in contempt without a concrete way

## III. CONCLUSION

For the foregoing reasons, Defendants Cleveland Ave Restaurant, Inc., Michael Sharrak, Francis Sharrak, and Jay Nelson are **HELD** in civil contempt for their failure to comply with the Court's February 12, 2025 Order. The Court **ORDERS** Defendants Michael Sharrak, Francis Sharrak, and Jay Nelson to be incarcerated until they purge themselves of the contempt by paying **$240,891.82** to the Special Master or Special Counsel**.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: October 14, 2026**

---

to remedy the contempt. This is not to say that Defendants do not owe that money—the Court is not taking a position on that issue.